**Megan Pierce (SBN 314044)**
megan@loevy.com
Loevy & Loevy
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
Phone: (312) 243-5900
Fax: (312) 243-5902

**Jan Stiglitz (SBN 103815)**
js@cwsl.edu
Law Office of Jan Stiglitz
14462 Garden Tr.
San Diego, CA 92127
Phone: (619) 807-5890

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY LONG, <br><br> Plaintiff, <br><br> v. <br><br> THOMAS WEEKS, RONALD ANDERSON, DANIEL BLOOMFIELD, ROBERT NEWMAN, DANIEL VERDUGO, JEFFREY GLENN, UNKNOWN EMPLOYEES of the CITY OF CORONA, and the CITY OF CORONA, <br><br> Defendants. | Case No. <br><br> Hon. <br><br> District Judge <br><br> Hon. <br><br> Magistrate Judge <br><br> **COMPLAINT FOR DAMAGES & OTHER RELIEF** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff KIMBERLY LONG, by her undersigned attorneys, hereby complains against Defendants THOMAS WEEKS, RONALD ANDERSON, DANIEL BLOOMFIELD, ROBERT NEWMAN, DANIEL VERDUGO, JEFFREY GLENN, UNKNOWN EMPLOYEES of the CITY OF CORONA, and the CITY OF CORONA, and states as follows:

## JURISDICTION AND VENUE

1.      Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and California law to redress Defendants' tortious conduct and their violation of Plaintiff's rights secured by the U.S. Constitution.

2.      This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367.

3.      Venue is proper under 28 U.S.C. § 1391(b). Plaintiff's criminal case was investigated, tried, and appealed in Riverside County, California, such that a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this judicial district.

## INTRODUCTION

1.      Plaintiff Kimberly Long was a nurse and mother to two young children when Defendants framed her for the 2003 murder of Oswaldo Conde. She

was convicted and sentenced to 15 years to life in prison for a crime she did not commit.

2.      Long's wrongful conviction was caused by the misconduct of Defendant Corona Police Officers, who suppressed and fabricated evidence to secure Long's arrest, prosecution, and conviction.

3.      Among other things, Defendants suppressed exculpatory evidence showing that Long could not have been at the scene at the time of the murder, including evidence showing that there was no blood on the clothing that Long had been wearing on the day that the crime occurred.

4.      Defendants also suppressed important police reports detailing communications with a key alternative suspect, which undermined the suspect's alibi for the time of the crime. They hid the information from Long and her attorneys so that she could not point to the alternative suspect in her defense.

5.      And Defendants manipulated and fed information to witnesses to bolster their case against Long.

6.      Defendants never recovered a murder weapon, and no physical evidence has ever tied Long to the murder. Long's conviction was based solely on Defendants' wrongdoing.

7.     After spending roughly two decades attesting to her innocence and fighting this injustice, Long's conviction was vacated, and all charges dismissed against her in April 2021.

8.     Long seeks justice for the harm that Defendants have caused and redress for the loss of liberty and the terrible hardship that she has endured and continues to suffer as a result of Defendants' misconduct.

## PARTIES

9.     Plaintiff Kimberly Long spent more than 7 years wrongfully incarcerated for a murder that she did not commit. Long is a 46-year-old resident of West Covina, California. She is currently spending time with her parents and children, working on her dog grooming business, and actively speaking out against wrongful convictions as one of the founders of the Exoneree Support Committee.

10.     At all times relevant to the events described in this Complaint, Defendants Thomas Weeks, Ronald Anderson, Daniel Bloomfield, Robert Newman, Daniel Verdugo, Jeffrey Glenn, and other unknown law enforcement officers were police officers in the Corona Police Department acting under the color of law and within the scope of their employment for the City of Corona.

11.     At all times relevant to the events described in this Complaint, Defendant Thomas Weeks was a sergeant and supervisor in charge of the homicide unit of the Corona Police Department. Acting under color of law and within the

4

scope of his employment for the City of Corona, Weeks and other unknown supervisors participated in the misconduct alleged in this Complaint and/or facilitated, condoned, approved, and turned a blind eye to the constitutional violations committed by the officers in the preceding paragraph.

12.     Defendant City of Corona is a municipality located in Riverside County, California, and is and/or was the employer of each of the Defendants. The City is liable for all torts committed by Defendants pursuant to California law. The City is also responsible for indemnifying judgments against Defendants. The City is responsible for the policies, practices, and customs of the Corona Police Department that caused Long's wrongful conviction. And the supervising officers had final policymaking authority for the policies, practices, and customs of the Corona Police Department.

## FACTS

### Oswaldo Conde's Murder

13.     Oswaldo Conde returned home late from a night out on October 5, 2003. Sometime between then and the early morning hours of October 6, 2003, he was brutally murdered.

14.     Conde was Long's live-in boyfriend, and her life partner, whom she loved.

15.     Long was out with a friend at the time of the murder and did not witness the crime. She came home in the early morning hours and found Conde lying motionless on the couch with severe injuries to his head. Despite being in extreme shock, Long immediately called 911 for help.

16.     Police officers responded to the call. When they arrived, they noticed that there was blood on every wall of the living room in a 360-degree radius. There was no one else present at the house apart from Long, who was hysterical, having just found her boyfriend dead.

17.     The officers found no evidence of an attempt to clean up the house, no blood anywhere else in the house apart from the living room, and nothing to suggest that the sinks or showers had been recently used.

18.     Long was brought to the police station, where she waited for about five hours to be interviewed. She was grieving and sleep deprived, and yet she remained committed to cooperating with police officers to help them find out who had killed Conde.

19.     Defendants Weeks and Bloomfield interviewed Long. At the interview, Long consented to allowing her house to be searched and having evidence collected, including the clothes that she was wearing. She also identified Conde's ex-girlfriend, Shiana Lovejoy, as a potential suspect given their troublesome history and relationship.

20.     Defendants Newman, Anderson, Weeks, Glenn, and other non-defendant officers also spoke to Conde's relatives and conducted an initial canvass of Long's neighborhood to determine whether anyone heard or saw anything.

21.     Conde's siblings disclosed that Shiana Lovejoy had threatened to kill Conde and Long, and that she was violent and "not all there."

22.     One witness stated he heard a car alarm go off sometime between 1:30 a.m. and 2:30 a.m. Another witness stated she heard the car alarm at roughly 1:45 a.m., then soon after heard the sound of a motorcycle engine driving off, and within 10 to 15 minutes later heard someone screaming across the street.

23.     During the initial canvass, none of the witnesses identified Long as the perpetrator of the murder or even as a potential suspect.

24.     The reason no one identified Long as a suspect or the perpetrator is because Long had nothing to do with Conde's murder and no motive whatsoever to commit the crime.

**Defendants Frame Long for Conde's Murder**

25.     Though they had identified Lovejoy as a strong suspect, Defendants focused their attention on Long.

26.     Defendants fabricated and suppressed evidence to frame Long for the crime.

27.    Defendants interviewed Lovejoy. Their reports of their interactions with Lovejoy showed that her alibi was implausible and that she had the opportunity to commit the murder. But they suppressed these reports, hiding them from Long and her attorneys.

28.    Defendants also suppressed highly exculpatory physical evidence showing that Long could not have been the perpetrator.

29.    Defendants collected, documented, and suppressed evidence that when Long's clothing was found at the scene of the crime, it was free of any blood spatter.

30.    For example, Long's jacket was found on the rug near where Long had discovered Conde's body.

31.    The rug and everything around it were covered in blood.

32.    Given the 360-degree radius of the blood spatter, Defendants knew that it was impossible for the perpetrator not to have gotten blood on him or herself during the murder.

33.    Yet Long's jacket documented by Defendants was clean.

34.    Defendants suppressed this essential report regarding physical evidence, which fully supported Long's account of discovering Conde dead, and fatally undermined Defendants' theory that Long was the murderer.

35.     Had Defendants turned over this information to Long's defense attorney and the prosecutors, the prosecutor would not have been able to argue (as he did) at trial that Long killed Conde, disposed of the murder weapon, and cleaned herself and the scene before calling 911.

36.     In addition, Defendants manipulated, coerced, and fed information to witnesses to bolster their case against Long, despite her being innocent.

37.     For example, Defendant Weeks told Jeff Dills—who was with Long during the night of Conde's murder—that he was a suspect. Weeks, in concert with the other defendants, fed Dills information about the investigation and forced him to adopt a false timeline of events that placed Long at the scene of the crime at a time that undermined her alibi and created a window in which she could have committed the murder.

38.     Defendants pressured Dills into adopting their false version of events that cleared him of any wrongdoing or involvement. And they covered up this misconduct by failing to record or document material communications that they had with Dills.

39.     In addition, Defendants manipulated other witnesses into corroborating the false timeline they fabricated to match Defendants' theory of the case. They did so to ensure that Defendants could made the case that Long was at

home with enough time to kill Conde, dispose of the murder weapon, and clean herself and the scene  before calling the police.

40.     Defendants also suppressed and destroyed other evidence found at Long's house that would have shown that other individuals had been present at the time of the crime.

41.     In committing the misconduct described above, Defendants made an agreement with one another, and with others currently unknown to Plaintiff, to individually and jointly to manipulate and coerce witnesses into implicating Long in Conde's murder, to suppress exculpatory evidence, and to fabricate evidence and to use that false evidence to initiate and perpetuate false criminal charges against Long.

**Long's Arrest and Wrongful Conviction**

42.     As a result of Defendants' misconduct, Long was charged and prosecuted for the murder of Conde.

43.     The first jury trial ended in a mistrial, with most of the jurors believing that Long was innocent of the crime.

44.     Long was convicted of murder by a second jury trial.

45.     In denying her motion for a new trial, Judge Magers noted that had it been a bench trial, he would have acquitted Long.

46.     Long was sentenced to 15 years to life in prison.

47.     There was no physical evidence tying Long to the crime.

48.     No fingerprints, DNA, or any other forensic evidence ever linked Long to Conde's murder.

49.     In fact, physical evidence proved that Long could not have committed the crime.

50.     Long's conviction was based solely on Defendants' fabrications and suppressions of exculpatory evidence. Without Defendants' misconduct described above, Long would not have been prosecuted or convicted.

51.     Long was a young mother to two children when she was convicted of a crime she did not commit.

52.     Her whole life was turned upside down without any warning. Her formative adult years were consumed by the horror of her wrongful imprisonment.

53.     Because of Defendants' misconduct, Long was taken away from, and missed out on, the lives of her family and friends. She missed out on the ability to raise and get to know her children, and the ability to share holidays, births, and other life events with loved ones. And she missed out on the opportunity to mourn and grieve the loss of her life partner and loved one.

54.     Long was also robbed of her opportunity to continue her meaningful career as a nurse.

55.     In addition to the trauma of wrongful imprisonment and Long's loss of liberty, Defendants' misconduct caused and continues to cause her extreme physical and psychological pain and suffering, humiliation, constant fear, nightmares, anxiety, depression, despair, rage, and other physical and psychological effects. Plaintiff has been branded a murderer in her community. She has suffered profound and irreparable reputational harm as a result.

**Long's Exoneration**

56.     Long has steadfastly maintained her innocence and fought hard to correct this extreme miscarriage of justice.

57.     In November 2020, after noting the weakness of the prosecution's evidence against Long, the Supreme Court of California vacated Long's conviction.

58.     All charges were dismissed against her in April 2021.

**COUNT I – 42 U.S.C. § 1983**
**Due Process**
**(Fourteenth Amendment)**

59.     Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

60.     In the manner described more fully above, Defendants, while acting individually, jointly, and in conspiracy with one another, as well as under color of

law and within the scope of their employment, deprived Plaintiff of her constitutional right to due process and her right to a fair trial.

61.    In the manner described more fully above, Defendants deliberately withheld exculpatory and impeachment evidence from Plaintiff, Plaintiff's defense attorneys, and from prosecutors, among others, thereby misleading and misdirecting Plaintiff's criminal prosecution.

62.    Namely, Defendants concealed evidence point to a key alternative suspect and that undermined that suspect's alibi.

63.    Defendants also fabricated and manufactured evidence and solicited false evidence, fabricated reports and statements falsely implicating Plaintiff in the crime, obtained Plaintiff's conviction using that false evidence, and failed to correct fabricated evidence that they knew to be false when it was used against Plaintiff during her criminal case.

64.    Defendants also suppressed evidence that demonstrated Plaintiff's innocence, including evidence showing that there was no blood on the clothing that Plaintiff was wearing on the day that the crime occurred.

65.    And Defendants destroyed exculpatory evidence tending to show that other people, and not Plaintiff, were at the scene of the crime when Conde was murdered.

66.     In addition, based upon information and belief, Defendants concealed and fabricated additional evidence that is not yet known to Plaintiff.

67.     Defendants' misconduct described in this count resulted in Plaintiff's unjust and wrongful criminal prosecution and conviction, deprived her of her liberty, and denied her of her constitutional right to a fair trial guaranteed by the Fourteenth Amendment. Absent this misconduct, Plaintiff's prosecution could not and would not have been pursued.

68.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's innocence.

69.     As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages set forth above.

70.     The misconduct described in this Count by Defendants was undertaken pursuant to the policies and practices of the City of Corona and the Corona Police Department, in the manner more fully described below.

## COUNT II – 42 U.S.C. § 1983
### Illegal Detention and Prosecution
### (Fourth and Fourteenth Amendments)

71.     Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

72.     In the manner described more fully above, Defendants, while acting individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they knew Plaintiff was innocent, in violation of her rights secured by the Fourth and Fourteenth Amendments.

73.     In so doing, Defendants caused Plaintiff to be deprived of her liberty and detained without probable cause, in violation of her rights secured by the Fourth and Fourteenth Amendments.

74.     These Defendants initiated and continued judicial proceedings against Plaintiff maliciously and without probable cause, resulting in injury.

75.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's innocence.

76.     As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages set forth above.

77.     The misconduct described in this Count by Defendants was undertaken pursuant to the policies and practices of the City of Corona and the Corona Police Department, in the manner more fully described below.

## COUNT III – 42 U.S.C. § 1983
## Failure to Intervene

78.     Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

79.     In the manner described above, during the constitutional violations described herein, one or more of the Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity to do so.

80.     As result of Defendants' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered injuries, including but not limited to loss of liberty and physical and emotional distress. Defendants had ample, reasonable opportunities to prevent this harm but failed to do so.

81.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's innocence.

82.     As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages set forth above.

83.     The misconduct described in this Count by Defendants was undertaken pursuant to the policies and practices of the City of Corona and the Corona Police Department, in the manner more fully described below.

## COUNT IV – 42 U.S.C. § 1983
## Conspiracy to Deprive Constitutional Rights

84.     Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

85.     Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for a crime she did not commit and thereby to deprive her of her constitutional rights, as described in the various paragraphs of this Complaint.

86.     Defendants also continued to conspire after Plaintiff's conviction to deprive her of exculpatory material to which she is entitled and that would have led to her earlier exoneration.

87.     In so doing, these co-conspirators conspired to accomplish an unlawful purpose by unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

88.     In furtherance of this conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

89.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's innocence.

90.     As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages set forth above.

91.     The misconduct described in this Count by Defendants was undertaken pursuant to the policies and practices of the City of Corona and the Corona Police Department, in the manner more fully described below.

## COUNT V – 42 U.S.C. § 1983
### Policy and Practice Claim Against the City of Corona

92.     Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

93.     The constitutional violations that caused Long's wrongful conviction and the claims set forth in this Complaint were the result of the City of Corona's policies, customs, and practices of pursuing convictions without regard to the truth, through reliance on profoundly flawed investigations that involve withholding exculpatory evidence, suppressing evidence, and fabricating evidence to secure a conviction.

94.     At all relevant times and for a period of time prior thereto, the City of Corona and the Corona Police Department did not have adequate rules, regulations, policies and procedures governing questioning of criminal suspects, questioning of witnesses, preparation and presentation of witness testimony, preservation and disclosure of investigative materials and evidence, and the training, supervision, and discipline of employees and agents of the City of Corona and the Corona Police Department. The City of Corona was aware of the need for adequate policies, training, and supervision, was deliberately indifferent to the need, and made a deliberate choice not to adopt adequate policies, training, or supervision, all of which was an official policy.

95.     The City of Corona had notice of widespread practices by its officers and agents under which individuals suspected of criminal activity, such as Plaintiff, were routinely deprived of exculpatory evidence, were subjected to criminal proceedings based on false evidence, and/or were deprived of their liberty without

probable cause, such that individuals were routinely implicated in crimes to which they had no connection and for which there was scant evidence to suggest that they were involved.

96.    These widespread practices were allowed to flourish because the leaders, supervisors, and policymakers of the City of Corona and the Corona Police Department directly encouraged and were thereby the moving force behind the very type of misconduct at issue by failing to adequately train, supervise, and discipline their officers, agents and employees who withheld material evidence, fabricated false evidence and witness testimony, coerced false confessions and statements from witnesses and suspects, and pursued wrongful prosecutions and convictions.

97.    The above-described widespread practices, which were so well-settled as to constitute the de facto policy of the City of Corona and the Corona Police Department, were allowed to exist because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

98.    In addition, the misconduct described in this Count was undertaken pursuant to the policy and practices of the City of Corona and the Corona Police Department in that the constitutional violations committed against Plaintiff were

committed with the knowledge or approval of persons with final policymaking authority or were actually committed by persons with final policymaking authority.

99.    The policies, practices, and customs set forth above were the moving force behind the numerous constitutional violations in this case and directly and proximately caused Plaintiff to suffer the grievous and permanent injuries and damages set forth above.

100.    Plaintiff's injuries were directly and proximately caused by officers, agents, and employees of City of Corona and the Corona Police Department, including but not limited to Defendants Weeks, Anderson, Bloomfield, Newman, Verdugo, and Glenn, who acted pursuant to one or more of the policies, practices, and customs set forth above in engaging in the misconduct described in this Count.

## COUNT VI – State Law Claim
## Malicious Prosecution

101.    Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

102.    Plaintiff has complied with the California Tort Claims Act and has provided the City of Corona with a timely notice of the claim. The City of Corona denied the claim as untimely. This suit was initiated less than six months after the denial of that claim.

103.    In the manner described above, Defendants, while acting individually, jointly, and in conspiracy with one another, as well as under color of law and

within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate and to continue and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they knew Plaintiff was innocent.

104.   In so doing, these Defendants caused Plaintiff to be subjected improperly to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

105.   Defendants pursued Plaintiff's prosecution until it terminated in her favor when a court reversed Plaintiff's conviction and all the charges against her were dismissed.

106.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, and in total disregard of the truth and Plaintiff's innocence.

107.   As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

## COUNT VII – State Law Claim
## Intentional Infliction of Emotional Distress

108.   Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

109.   The actions, omissions, and conduct of Defendants, acting as investigators and as set forth above, were extreme and outrageous.

110.   These actions were rooted in an abuse of power and authority and were undertaken with the intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff, as is more fully alleged above.

111.   As a result of Defendants' misconduct described in this Count, Plaintiff suffered and continues to suffer severe and enduring emotional distress and other grievous and continuing injuries and damages set forth above.

## COUNT VIII – State Law Claim
## Civil Conspiracy

112.   Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

113.   As described more fully in the preceding paragraphs, the Defendants, acting in concert with other known and unknown co-conspirators, reached an agreement among themselves to frame Plaintiff for a crime she did not commit and conspired by concerted action to accomplish an unlawful purpose by unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

114.   In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was otherwise a willful participant in joint activity.

115.    The violations of California law described in this complaint, including Defendants' malicious prosecution of Plaintiff and their intentional infliction of emotional distress, were accomplished by Defendants' conspiracy.

116.    The misconduct described in this Count was objectively unreasonable, was undertaken intentionally, in total disregard of the truth and Plaintiff's innocence, and with willful indifference to Plaintiff's constitutional rights.

117.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages set forth above.

## COUNT IX – State Law Claim
### *Respondeat Superior*
**(Cal. Gov. Code § 815.2)**

118.    Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

119.    In committing the acts alleged in the preceding paragraphs, Defendants were employees of the City of Corona and the Corona Police Department, acting at all relevant times within the scope of their employment and under color of law.

120.    Plaintiff suffered the aforementioned injuries as a direct and proximate result of Defendants' misconduct.

121.   The City of Corona is liable as principal for all torts committed by its agents.

## COUNT X – State Law Claim
## Cal. Civ. Code § 52.1

122.   Plaintiff incorporates each paragraph of this Complaint as if restated fully herein.

123.   As described more fully above, Defendants intentionally interfered with Plaintiff's exercise or enjoyment of rights secured by the U.S. Constitution and the laws of California.

124.   Defendants' conduct in interfering with Plaintiff's rights was carried out by threats, intimidation, and or coercion, as described above.

125.   As a result of Defendants' threats, intimidation, and/or coercion, Plaintiff was deprived of her constitutional rights; wrongly prosecuted, detained, and imprisoned for over seven years; and subjected to other grievous injuries and damages as set forth above.

## COUNT XI – State Law Claim
## Indemnification
## (Cal. Gov. Code § 825)

126.   Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

127.   California law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

128.   At all relevant times, Defendants were employees of the Corona Police Department who acted within the scope of their employment in committing the misconduct described herein.

129.   The City of Corona is liable to indemnify any compensatory judgment awarded against Defendants.

WHEREFORE, Plaintiff, KIMBERLY LONG, respectfully requests that this Court enter judgment in her favor and against Defendants THOMAS WEEKS, RONALD ANDERSON, DANIEL BLOOMFIELD, ROBERT NEWMAN, DANIEL VERDUGO, JEFFREY GLENN, UNKNOWN EMPLOYEES of the CITY OF CORONA, and the CITY OF CORONA, awarding compensatory damages, attorneys' fees, and costs against each Defendant, and punitive damages against each of the individual Defendants, as well as any other relief this Court deems appropriate.

## JURY DEMAND

Plaintiff, KIMBERLY LONG, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,

**KIMBERLY LONG**

By:   <u>/s/ Megan Pierce</u>
       *One of Plaintiff's Attorneys*

Jon Loevy (jon@loevy.com)*
Steve Art (steve@loevy.com)*
Ruth Brown (ruth@loevy.com)*
Megan Pierce (megan@loevy.com)
Makeba Rutahindurwa (makeba@loevy.com)*
LOEVY & LOEVY
311 N. Aberdeen Street
Chicago, IL 60607
(312) 243-5900

Jan Stiglitz (js@cwsl.edu)
Law Office of Jan Stiglitz
14462 Garden Trail
San Diego, CA 92127
(619) 807-58900

*Pro hac vice* application forthcoming