**Megan Pierce** (SBN 314044)
**Ruth Brown**, IL Bar: 6299187*
**Steven Art**, IL Bar: 6302319*
**Makeba Rutahindurwa**, IL Bar: 6335098*
ruth@loevy.com
Loevy & Loevy
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
Phone: (312) 243-5900

**Jan Stiglitz** (SBN 103815)
js@cwsl.edu
Law Office of Jan Stiglitz
14462 Garden Tr.
San Diego, CA 92127
Phone: (619) 807-5890

**Michael D. Seplow** (SBN 150183)
mseplow@sshhzlaw.com
Schonbrun Seplow Harris
Hoffman & Zeldes LLP
9415 Culver Boulevard, #115
Culver City, CA 90232
Phone: (310) 396-0731
*Pro hac vice motions forthcoming*

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY LONG,<br><br>                    Plaintiff,<br><br>        v.<br><br>THOMAS WEEKS, RONALD ANDERSON, DANIEL BLOOMFIELD, ROBERT NEWMAN, DANIEL VERDUGO, JEFFREY GLENN, UNKNOWN EMPLOYEES of the CITY OF CORONA, and the CITY OF CORONA,<br><br>                    Defendants. | Case No. 5:21-cv-02008-DSF-E<br><br>Hon. Dale S. Fischer, District Judge<br><br>**PLAINTIFF'S RESPONSE TO MOTION TO DISMISS**<br><br>Hearing Date: March 7, 2022<br>Time: 1:30 p.m.<br>Place: Courtroom 7D<br>Trial Date: None Set |

LOEVY & LOEVY
Attorneys at Law

1

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

PLAINTIFF'S ALLEGATIONS ..........................................................................1

RESPONSE TO DEFENDANTS' "FACTS" .......................................................3

LEGAL STANDARD ...........................................................................................5

ARGUMENT ........................................................................................................5

  I.   Plaintiff's claims are timely. .........................................................................5

      A.  Plaintiff's § 1983 claims are timely pursuant to *Heck*. ...........................6

      B.  Plaintiff's federal claims accrued when charges were dismissed. ...........10

      C.  Plaintiff's state law claims are timely. .....................................................12

  II.   Plaintiff sufficiently pleads favorable termination for purposes of Count II...13

  III.  Plaintiff's federal claims are well-pleaded........................................................15

  IV.  Defendants are not entitled to immunity from Plaintiff's state law claims. ....17

  V.   The City is not entitled to dismissal of Counts VII, VIII, IX and XI. .............20

  VI.  Plaintiff states a Bane Act claim against the City in Count X. ........................22

  VII.  Plaintiff sufficiently pleads a lack of probable cause in Count II....................22

  VIII.  The individual Defendants are not entitled to qualified immunity..................24

  IX.  Any dismissal should be without prejudice. ....................................................25

LOEVY & LOEVY
Attorneys at Law

# TABLE OF AUTHORITIES

**Cases**

*Acosta v. California Highway Patrol*, 2019 WL 2579202
　　(N.D. Cal. June 24, 2019) ................................................................19

*AE ex rel. v. Cnty. of Tulare*, 666 F.3d 631 (9th Cir. 2012) .........................17

*Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) ....................................6, 18

*Alvarez v. Hill*, 518 F.3d 1152 (9th Cir. 2008) ....................................21

*Ash v. Twp. of Willingboro*, 2012 WL 6623986 (D.N.J. Dec. 18, 2012) ...................8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................5, 15, 16

*Awabdy v. City of Adelanto*, 368 F.3d 1062 (9th Cir. 2004) .....................13, 23

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1997) .....................25

*Banks v. Dretke*, 540 U.S. 668 (2004) .........................................25

*Barahona v. Union Pac. R.R.*, 881 F.3d 1122 (9th Cir. 2018) ......................25

*Blankenhorn v. Cty. of Orange*, 485 F. 3d 463 (9th Cir. 2007) ....................20

*Bradford v. Scherschligt*, 803 F.3d 382 (9th Cir. 2015) .....................7, 9, 11

*Bryant v. Monroe Cty.*, 2022 WL 119184 (W.D.N.Y. Jan. 12, 2022) ..................16

*Burgess v. Cty. of San Diego*, 2021 WL 5810662 (S.D. Cal. Dec. 7, 2021) .........20, 22

*Carrillo v. Cnty. of L.A.*, 798 F.3d 1210 (9th Cir. 2015) .........................25

*Cervantes v. Cty. of San Diego*, 5 F.3d 1273 (9th Cir. 1993) .......................6

*Thee Sombrero, Inc. v. Scottsdale Ins. Co.*, 28 Cal. App. 5th 729 (2018) .................21

*Cty. of Memphis v. Roberts*, 528 S.W.2d 201 (Tenn. 1975) ..........................22

*Coley v. Ventura Cty.*, 2019 WL 7905740 (C.D. Cal. Sept. 24, 2019) .......................8

*Collins v. Cty. of Alameda*, 2021 WL 254262 (N.D. Cal. Jan. 26, 2021) ..................19

*Cooper v. Ramos*, 704 F.3d 772 (9th Cir. 2012) .................................8

*Cornell v. Cty. of San Francisco*,
　　225 Cal. Rptr. 3d 356 (2017), as modified (Nov. 17, 2017) ..........................22

*Crowe v. Cty. of San Diego*, 608 F.3d 406 (9th Cir. 2010) ......................23, 24

*Delia v. Cty. of Rialto*, 621 F.3d 1069 (9th Cir. 2010) .............................17

LOEVY & LOEVY
Attorneys at Law

LOEVY & LOEVY
Attorneys at Law

1    *DeSoto Cab Co., Inc. v. Uber Techs., Inc.*, 2018 WL 10247483

2       (N.D. Cal. Sep. 24, 2018) ........................................................ 15, 16

3    *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) .............................. 25

4    *Dixon v. Holden*, 923 S.W.2d 370 (Mo. Ct. App. 1996) .......................... 22

5    *Ellins v. Cty. of Sierra Madre*, 710 F.3d 1049 (9th Cir. 2013) .................... 17

6    *Est. of Tucker ex rel. Tucker v. Interscope Recs., Inc.*,

7       515 F.3d 1019 (9th Cir. 2008) ................................................... 23

8    *Estate of Watts v. Heine*, 2008 WL 4058032 (E.D. Wis. Aug. 26, 2008) ............ 22

9    *Flores v. Cty. of Pasadena*, 2019 WL 5102465 (C.D. Cal. Oct. 10, 2019) ........... 19

10    *Garmon v. Cnty. of L.A.*, 828 F.3d 837 (9th Cir. 2016) .......................... 17

11    *Giglio v. U.S.*, 405 U.S. 150 (1972) ............................................ 25

12    *Glair v. Cty. of L.A.*, 2018 WL 3956728 (C.D. Cal. May 24, 2018) ................ 19

13    *Gomes v. Koumjian*, 2018 WL 4566881 (C.D. Cal. Aug. 17, 2018) ................... 7

14    *Gravelet-Blondin v. Shelton*, 728 F.3d 1086 (9th Cir. 2013) ..................... 16

15    *Gressett v. Contra Costa Cty.*, 2013 WL 2156278 (N.D. Cal. May 17, 2013) ......... 13

16    *Harvey v. Waldron*, 210 F.3d 1008 (9th Cir. 2000) ............................... 9

17    *Headley v. Church of Scientology Int'l*,

18       2009 WL 10671565 (C.D. Cal. Aug. 12, 2009) .................................... 6

19    *Heck v. Humphrey*, 512 U.S. 477 (1994) ..................................... *passim*

20    *Hernandez-Cuevas v. Taylor*, 723 F.3d 91 (1st Cir. 2013) ........................ 13

21    *Hill v. Cook Cty.*, 463 F. Supp. 3d 820 (N.D. Ill. 2020) ......................... 8

22    *Hyer v. City & Cnty. of Honolulu*, 2020 WL 7038953 (D. Haw. Nov. 30, 2020) ....... 17

23    *In re Long*, 10 Cal.5th 764 (2020) ....................................... 3, 4, 5, 11

24    *In re Pac. Fertility Ctr. Litig.*, 2019 WL 3753456 (N.D. Cal. Aug. 8, 2019) ......... 15

25    *Irons v. Neske*, 2021 WL 4191614 (E.D. Mo. Sept. 15, 2021) ...................... 16

26    *Johnson v. Cty. of Shelby*, 574 U.S. 10 (2014) (per curiam) ...................... 17

27    *Jones v. Bock*, 549 U.S. 199 (2007) .......................................... 6, 18

28    *Julian v. Hanna*, 732 F.3d 842 (7th Cir. 2013) ................................. 11

*Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012) ...................................24

*Lee v. City of L.A.*, 250 F.3d 668 (9th Cir. 2001) ........................................14

*Long v. Johnson*, 736 F.3d 891 (9th Cir. 2013)..............................................4

*Mackovski v. Cty. of Garden Grove*, 666 F. App'x 649 (9th Cir. 2016)....................19

*Maldonado v. Harris,* 370 F.3d 945 (9th Cir. 2004) ........................................6

*Manuel v. Cty. of Joliet,* 137 S. Ct. 911 (2017).......................................*passim*

*Manukyan v. Cach, LLC*, 2012 WL 6199938 (C.D. Cal. Dec. 11, 2012) ..................16

*Mayfield v. Cty. of Oakland*, 2007 WL 2261555 (N.D. Cal. Aug. 6, 2007) ..........20, 22

*McDonough v. Smith*, 139 S. Ct. 2149 (2019).........................................*passim*

*McSherry v. Cty. of Long Beach*, 584 F.3d 1129 (9th Cir. 2009)..........................24

*Mendez v. Cty. of Los Angeles*, 897 F.3d 1067 (9th Cir. 2018).............................19, 20

*Mills v. Cty. of Covina*, 921 F.3d 1161 (9th Cir. 2019) ................................9, 14

*Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).................................*passim*

*Moore v. Gerstein*, 107 F.3d 16 (9th Cir. 1996) ..........................................24

*Napue v. Illinois*, 360 U.S. 264 (1959) ...................................................25

*O'Brien v. Welty*, 818 F.3d 920 (9th Cir. 2016) ........................................5, 24

*Owens v. Baltimore Cty. State's Att'ys Off.*, 767 F.3d 379 (4th Cir. 2014) ................11

*Pac. Coast Fed'n of Fishermen's Assocs. v. Glaser*, 945 F.3d 1076 (9th Cir. 2019) ....5

*People v. Long*, 2018 WL 2057898 (May 3, 2018).......................................11

*Pyle v. State of Kansas*, 317 U.S. 213 (1942)...........................................25

*Raugust v. Montana*, 2020 WL 3832971 (D. Mont. July 8, 2020).............................12

*Reese v. Cty. of Sacramento*, 888 F.3d 1030 (9th Cir. 2018) ...........................12, 22

*Rehberg v. Paulk*, 566 U.S. 356 (2012)..................................................13

*Roberts v. Cty. of Fairbanks*, 947 F.3d 1191 (9th Cir. 2020)...............................12

*Roberts v. County of Riverside*, 2020 WL 3965027 (C.D. Cal. June 5, 2020)...9, 12, 16

*Roberts v. Cnty. of Riverside*, 2020 WL 5934303 (C.D. Cal. Sept. 9, 2020)...............16

*Roe v. Rialto Unified Sch. Dist.*, 2020 WL 2790008 (C.D. Cal. Feb. 26, 2020)..........19

*Rosales-Martinez v. Palmer*, 753 F.3d 890 (9th Cir. 2014) .....................................7, 11

LOEVY & LOEVY
Attorneys at Law

*Rodriguez v. Kwok*, 2014 WL 2110256 (N.D. Cal. May 20, 2014) ..............................7

*Sagana v. Tenorio*, 384 F.3d 731 (9th Cir. 2004)............................................................5

*Sams v. Yahoo! Inc.*, 713 F.3d 1175 (9th Cir. 2013) ....................................................18

*Sanchez v. Cty. of L.A.*, 2019 WL 4180014 (C.D. Cal. Apr. 24, 2019).......................19

*Sanchez v. Cty. of L.A.*, 2020 WL 9074714 (C.D. Cal. Apr. 28, 2020).......................17

*Sandoval v. Cty. of Sonoma*, 912 F.3d 509 (9th Cir. 2018)..........................................22

*Scott v. Kuhlmann*, 746 F.2d 1377 (9th Cir. 1984)...................................................6, 18

*Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone*,

      107 Cal. App. 4th 54 (2003) ...............................................................................21

*Sharp v. Cty. of Orange,* 871 F.3d 901 (9th Cir. 2017)...........................................19, 20

*Sheldon Appel Co. v. Albert & Oliker*, 47 Cal. 3d 863 (1989) ....................................23

*Soler v. Cty. of San Diego*, 2019 WL 6612011 (S.D. Cal. Dec. 4, 2019) ....................19

*Stapley v. Pestalozzi*, 733 F.3d 804 (9th Cir. 2013) .......................................................5

*Sullivan v. Cty. of Los Angeles*, 12 Cal. 3d 710 (1974) ....................................18, 19, 20

*Susag v. Cty. of Lake Forest*, 94 Cal. App. 4th 1401 (2002).........................................12

*Tennison v. Cty. of San Francisco*, 570 F.3d 1078 (9th Cir. 2009).............................23

*Tivoli LLC v. Sankey*, 2015 WL 12683801 (C.D. Cal. Feb. 3, 2015) ...........................15

*Trimble v. Cty. of Santa Rosa*, 49 F.3d 583 (9th Cir. 1995).........................................9

*Trulove v. D'Amico*, 2018 WL 1070899 (N.D. Cal. Feb. 27, 2018) ....................3, 9, 13

*Tye v. Cty. of L.A.*, 785 F. App'x 479 (9th Cir. 2019) ....................................................7

*U.S. v. United Healthcare Ins. Co.*, 848 F.3d 1161 (9th Cir. 2016)............................15

*U.S. ex rel. Air Control Techs. v. Pre Con Indus.*,

      720 F.3d 1174 (9th Cir. 2013) .............................................................................6

*U.S. ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667 (9th Cir. 2018) ...............15

*Valenzuela v. San Diego Police Dep't*, 2020 WL 804923

      (S.D. Cal. Feb. 18, 2020)....................................................................................19

*Walker v. Doe*, 2020 WL 1274674 (E.D. Cal. Mar. 17, 2020)......................................12

*Walker v. Jastremski*, 159 F.3d 117 (2d Cir. 1998).........................................................8

LOEVY & LOEVY
Attorneys at Law

*Wallace v. Kato*, 549 U.S. 384 (2007)..................................................................6, 9, 10

*Wilkins v. DeReyes*, 528 F.3d 790 (10th Cir. 2008) .......................................................13

*Williams v. Horvath*, 16 Cal.3d 834 (1976)....................................................................21

*Yang v. Boudreaux*, 2021 WL 4066460 (E.D. Cal. Sept. 7, 2021)............................19

*Young v. Cty. of Menifee*, 2019 WL 3037926 (C.D. Cal. Apr. 5, 2019) ...............19, 20

*Yount v. Cty. of Sacramento*, 183 P.3d 471, 43 Cal. 4th 885 (Cal. 2008) ...................12

**Statutes and Other Authorities**

Cal. Gov't Code § 815.2 .........................................................................................20, 22

Fed. R. Civ. P. 15(a)(2).................................................................................................25

LOEVY & LOEVY
Attorneys at Law

## INTRODUCTION

Kimberly Long brings this action to redress her wrongful prosecution and conviction for a murder she did not commit. As a result of Defendants' misconduct, Plaintiff spent over seven years wrongly incarcerated for the murder of her live-in boyfriend, Oswaldo Conde. Plaintiff alleges that Defendants Weeks, Anderson, Bloomfield, Newman, Verdugo, and Glenn framed her in ways that included suppressing exculpatory evidence that contravened their theory of guilt; fabricating false witness statements; and concealing communications with an alternative suspect that exposed inconsistencies in the suspect's alibi. As Long fought to clear her name, numerous courts expressed doubts about her guilt. In November 2020, the California Supreme Court threw out her conviction. Long's nightmare finally ended in April 2021, when the charges against her were dropped.

Defendants now seek dismissal of all of Long's claims. Their legal arguments mischaracterize her claims, misstate the law, and omit controlling precedent, necessitating their rejection. Also fatal to Defendants' argument is their approach. Ignoring the standard for review of a motion to dismiss, Defendants minimize Long's allegations and fail to take them as true, with inferences in her favor, as required. Worse still, Defendants propose a disputed set of *Defendants'* own facts, taken from such documents as a press release and selective and misleading references to past court proceedings that Plaintiff alleges were tainted by Defendants' misconduct. Defendants ask the Court to delve into disputed issues of fact from over 2,000 pages of records, and resolve those issues in their favor, prior to discovery. This strategy should be rejected out of hand. Later in the proceedings, Defendants will be free to present their alternative narratives to the triers-of-fact; at the pleading stage, Long's allegations suffice and provide fair notice of her claims.

## PLAINTIFF'S ALLEGATIONS

As set forth in her Complaint (Dkt. 1), Long alleges that she was wrongfully convicted of the murder of her boyfriend, Oswaldo Conde, who was brutally

LOEVY & LOEVY
Attorneys at Law

murdered in their shared home in 2003, sometime between the late evening of October 5, and the early morning hours of October 6. Dkt. 1 ¶¶13-14. Long was out with a friend at the time; she returned home to find Conde lying motionless on the couch in the living room with severe injuries to his head, and she immediately summoned the police by calling 911. *Id.* ¶15. No forensic or physical evidence tied Plaintiff to the crime. *Id.* ¶¶47-48, 50. Responding officers observed blood splatter on every wall of the living room and found no evidence of an attempt by Long to clean herself off. *Id.* ¶¶16-17. Defendants knew that the perpetrator would have been covered in blood, and yet there was no blood on Plaintiff's clothes. *Id.* ¶¶28-34. Defendants also knew of an alternative suspect: Conde's violent ex-girlfriend Shiana Lovejoy, who had recently made threats against Conde. *Id.* ¶19, 21, 23-24.

Despite the above, Defendants initiated an investigation, led by Weeks and Anderson, that pursued Long at the exclusion of other suspects and resorted to misconduct to pin the crime on her. *Id.* ¶¶25-26. Defendants violated Long's due process rights by suppressing evidence that included police reports of their interactions with Lovejoy which exposed inconsistencies in her alibi and showed that she had a motive and opportunity to commit the murder (*id.* ¶27); and evidence that police found Long's discarded and clean jacket on a bloody rug near where Long had discovered Conde's body, making it impossible for Plaintiff to have committed the murder (*id.* ¶¶28-34). They suppressed and destroyed evidence that would have shown that other individuals had been in the living room and present at the time of the crime. *Id.* ¶40. Had they turned this evidence over, the prosecutor would not have been able to argue (as he did) at trial that Long killed Conde, disposed of the murder weapon, and cleaned herself off before calling 911. *Id.* ¶35. Defendants also manipulated and fed information to witnesses to create a fabricated timeline that placed Long at the house at the time of the murder. *Id.* ¶¶36-39. The individual Defendants acted together in a conspiracy (*id.* ¶41), and pursuant to the Defendant City of Corona ("City")'s policies and practices (*id.* ¶¶93-98).

LOEVY & LOEVY
Attorneys at Law

1    As a result of this misconduct, Long was wrongfully convicted of murder. *Id.*

2    ¶¶42, 46. She maintained her innocence (*id.* ¶56), and the California Supreme Court

3    overturned her conviction in November 2020. *Id.* ¶57. The charges against her were

4    dismissed in April 2021. *Id.* ¶58.

5    In November 2021, Long sued to redress this miscarriage of justice. In Count I,

6    she alleges that Defendants concealed exculpatory evidence and fabricated evidence,

7    in violation of the Fourth Amendment's due process clause. Count II alleges that

8    Defendants subjected Long to post-process illegal detention without probable cause,

9    in violation of the Fourth Amendment.[1] Long also brings derivative claims against

10    Defendants for failure to intervene (Count III) and conspiracy (Count IV), as well as a

11    claim for municipal liability pursuant to *Monell v. Dep't of Social Servs.*, 436 U.S. 658

12    (1978) (Count V). Finally, Long asserts state law claims (Counts XI through XII).

**RESPONSE TO DEFENDANTS' "FACTS"**

14    Defendants' motion asking this Court to take judicial notice of thousands of

15    pages of documents is improper, and Plaintiff incorporates her brief in opposition

16    here. Dkt. 37. Yet even if the Court were to consider these records, they neither

17    disprove her allegations nor bar her claims.

18    First, Plaintiff disputes Defendants' selective and misleading presentation of the

19    prior proceedings, and the improper and transparent attempt to persuade the Court that

20    Plaintiff, whose conviction has been vacated, is nonetheless guilty. Defendants omit,

21    for example, that: (1) 9 out of 12 jurors at Long's first jury trial voted "not guilty." *In*

22    *re Long*, 10 Cal.5th 764, 767 (2020); (2) after her second trial, the trial judge stated,

23    "To make a perfectly clear record in this matter, if this was a court trial, . . . I would

24    have found the defendant not guilty," *In re Long*, 10 Cal.5th at 771-72; (3) in

25    considering Long's habeas petition, the Ninth Circuit concurrence expressed "grave

---

27    [1] In the past, this claim was referred to as a federal malicious prosecution claim. *See*
      *Trulove v. D'Amico*, 2018 WL 1070899, at *8 (N.D. Cal. Feb. 27, 2018). Long styles
28    it in terms preferred after *Manuel v. Cty. of Joliet*, 137 S. Ct. 911, 918 (2017).

LOEVY & LOEVY
Attorneys at Law

doubts about whether the State has convicted the right person in this case" and the majority opinion took pains to note: "Were we sitting as the reviewing court on direct appeal, we might have found the evidence to be insufficient," *Long v. Johnson*, 736 F.3d 891, 897 (9th Cir. 2013); (4) the trial judge denied Long's actual innocence claim on the basis of the "extraordinarily high burden" for the claim, clarifying that "the Court finds it highly unlikely that the petitioner committed the crime," Dkt. 30-10 at 750-751; and (5) when vacating Long's conviction on ineffective assistance of counsel grounds, the California Supreme Court's observations included that: (a) "[t]he prosecution's evidence against Long was not particularly strong"; (b) there was "no confession, no eyewitnesses, no murder weapon identified or recovered, and no bloody clothes or other physical or forensic evidence linking Long to the crime"; (c) the other suspects had threatened the couple prior to Conde's death; (d) Conde's time of death was a crucial issue; and (e) the sole testimony placing Long at home at the time of the murder came from Dills, himself a suspect. *In re Long*, 10 Cal.5th at 783-84. The procedural history thus supports, rather than disproves, Long's innocence.

Defendants also improperly quote at length from one court's summary of the evidence. But that summary, too, supports Long's contentions, such as that Defendants fed facts to witnesses to falsify a timeline. For example, "Dills estimated that he dropped defendant off at her house at 1:20 a.m. As he approached her home he turned off his motorcycle and coasted in so as not to wake Ozzy or the neighbors." Dkt. 29 at 10. "Dills then started his motorcycle and drove away, returning to his house, where he noticed that it was 1:36 a.m. as he was setting his alarm. At 1:20 to 1:30 a.m., defendant's neighbor heard a loud motorcycle going down the road." *Id.* Long called the police at 2:09 a.m. *Id.* Police also noticed an empty champagne bottle and plastic cup in the trash. Dkt. 29 at 11. The court affirmed the conviction, finding "ample circumstantial evidence" to support the verdict. Dkt. 29 at 12. It is exactly this "circumstantial evidence" that Long alleges resulted from Defendants' misconduct. Plaintiff alleges that Weeks told Dills that he was a suspect and pressured him to

LOEVY & LOEVY
Attorneys at Law

- 4 -

adopt a false narrative. Dkt. 1 ¶¶37-38. Defendants also collected and destroyed the champagne bottle, plastic cup, and other evidence which would have shown the presence of others at the murder scene. *Id.* ¶40. And Long alleges that Defendants manipulated witnesses into claiming that they heard noises at times that would corroborate the fabricated timeline. *Id.* ¶39.

Also improper are, for example, the pro-Defendant inferences that they ask the Court to make regarding Plaintiff's allegations that Defendants suppressed a police report indicating that, upon arrival at the scene, police found Long's clean discarded jacket on a bloody rug in the living room near where she found Conde's body— establishing that she had not murdered Conde and corroborating her account. *See* Dkt. 1 at ¶¶28-34; Dkt. 30-3 at RT 527-529, 465. Defendants not only minimize Long's allegations but also disparage them as "perplexing"—omitting the contrary concerns of multiple courts. *E.g.*, Dkt. 30-10 at RT 741; *In re Long*, 10 Cal.5th at 784.

### LEGAL STANDARD

Defendants ignore the standard for a motion to dismiss, pursuant to which "'[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.'" *Stapley v. Pestalozzi*, 733 F.3d 804, 809 (9th Cir. 2013). The Rules permit notice pleading and require only "a short and plain statement of the claim." Fed. R. Civ. P. 8(a); *Pac. Coast Fed'n of Fishermen's Assocs. v. Glaser*, 945 F.3d 1076, 1086 (9th Cir. 2019). The plaintiff is not required to make "detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the question is whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *O'Brien v. Welty*, 818 F.3d 920, 933 (9th Cir. 2016). "A party need not plead specific legal theories." *Sagana v. Tenorio*, 384 F.3d 731, 736-37 (9th Cir. 2004); *Glaser*, 945 F.3d at 1086.

### ARGUMENT

**I.    Plaintiff's claims are timely.**

Defendants assert a statute of limitations defense may not be raised by motion

LOEVY & LOEVY
Attorneys at Law

- 5 -

to dismiss. Dkt. 29 at 13-16. "Ordinarily[,] affirmative defenses may not be raised by motion to dismiss," *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984), "because a plaintiff is not required to say anything about [the facts concerning affirmative defenses] in his complaint." *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014); *see also Jones v. Bock*, 549 U.S. 199, 216 (2007). Such a motion "can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Cervantes v. Cty. of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993) (quotation omitted); *Headley v. Church of Scientology Int'l*, 2009 WL 10671565, at *2 (C.D. Cal. Aug. 12, 2009). Defendants cannot meet their burden to show any of the claims are time-barred on the Complaint's face. *U.S. ex rel. Air Control Techs. v. Pre Con Indus.*, 720 F.3d 1174, 1178 (9th Cir. 2013).

Even if this Court were to consider Defendants' premature arguments, Plaintiff's claims are timely because they are subject to deferred accrual pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994). Plaintiff does not need to invoke any tolling mechanism (see Cal. Gov't Code § 945.3 because she filed her claims within the statutory period after accrual. Section 945.3is inapposite.

### A.    Plaintiff's § 1983 claims are timely pursuant to *Heck*.

While state law determines the applicable statute of limitations in a §1983 action, federal law determines when a claim accrues. *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)); *Maldonado v. Harris*, 370 F.3d 945, 955 (9th Cir. 2004). Pursuant to *Heck's* deferred-accrual rule, claims such as Long's that imply the invalidity of an outstanding criminal prosecution or conviction do not accrue until favorable termination. 512 U.S. at 486-87; *McDonough*, 139 S. Ct. at 2158-60.

In *Heck*, the Supreme Court held that where a plaintiff asserts constitutional claims against officers for misconduct during a criminal investigation such as destroying exculpatory evidence, the claims do not accrue until the plaintiff's conviction has been invalidated, imposing an accrual rule that "applies whenever 'a

LOEVY & LOEVY
Attorneys at Law

- 6 -

judgment in favor of the plaintiff would necessarily imply' that his prior conviction or sentence was invalid." 512 U.S.. at 479, 486-87.  The *Heck* ruling rested on the importance of avoiding parallel litigation on the issue of guilt in the state and federal courts, precluding the possibility of conflicting judgments arising out of the same transaction, preventing collateral attacks on state convictions through civil suits, and promoting comity, finality and consistency. *Id.* at 485-86.

The Supreme Court recently reaffirmed and extended *Heck* in *McDonough*, concluding that its accrual rule also applies to claims that imply the invalidity of an ongoing criminal prosecution— squarely refuting Defendants' incorrect claim that "[t]here can be no *Heck* bar before there is a criminal conviction." Dkt. 29 at 20; *see McDonough*, 139 S. Ct. at 2158; *id.* at 2160 ("*Heck* explains why favorable termination is both relevant and required for a claim . . . that would impugn a conviction," and that same "rationale extends to an ongoing prosecution as well."). Where a claim challenges a state criminal proceeding, "[o]nly once the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of *Heck* will the statute of limitations begin to run." *Id.* at 2158 (citing *Heck*, 512 U.S. at 486-87).

Plaintiff's federal claims, which attack the integrity of the investigation and trial based on Defendants' suppression of evidence, fabrication of false evidence, malicious prosecution, and conspiracy to frame her, thus did not accrue until favorable termination. Courts have repeatedly found such claims to be subject to *Heck*. *E.g.*, *McDonough*, 139 S. Ct. at 2158 (fabrication of evidence claim); *Tye v. Cnty. of Los Angeles*, 785 F. App'x 479, 480 (9th Cir. 2019) (*Brady* claim); *Rosales-Martinez v. Palmer*, 753 F.3d 890, 898 (9th Cir. 2014) (*Brady* claim); *Rodriguez v. Kwok*, 2014 WL 2110256, at *2 (N.D. Cal. May 20, 2014) (*Brady* claim) (collecting cases); *Gomes v. Koumjian*, 2018 WL 4566881, at *2 (C.D. Cal. Aug. 17, 2018), report and recommendation adopted, 2018 WL 4566851 (Sept. 13, 2018) (fabrication and *Brady* claims); *Bradford v. Scherschligt*, 803 F.3d 382, 388 (9th Cir. 2015) (fabrication

LOEVY & LOEVY
Attorneys at Law

- 7 -

claim accrues upon favorable termination and citing *Walker v. Jastremski*, 159 F.3d 117, 119 (2d Cir. 1998), for the proposition that conspiracy claim with fabrication predicate accrues upon favorable termination); *Cooper v. Ramos*, 704 F.3d 772, 785 (9th Cir. 2012) (conspiracy claim which "attack[s] the integrity of the investigation and trial" is subject to *Heck*); *Ash v. Twp. of Willingboro*, 2012 WL 6623986, at *4 (D.N.J. Dec. 18, 2012) (*Monell* claims against municipalities that are derivative of *Heck*-deferred individual claims) (collecting cases); *Coley*, 2019 WL 7905740, at *4.

And when a §1983 claim sounds in malicious prosecution, such as Plaintiff's Count II, that claim likewise does not accrue until favorable termination. As in *Manuel*, Plaintiff brings a Fourth Amendment claim for unlawful pretrial detention following a judge's probable cause determination. 137 S. Ct. at 915, 918-920 (explaining that a Fourth Amendment violation has occurred "when the police hold someone without any reason before the formal onset of a criminal proceeding," but also "when a form of legal process resulted in a pretrial detention unsupported by probable cause." *Id.* at 918-919). *McDonough* clarified that such Fourth Amendment post-process illegal detention and prosecution claims do not accrue until favorable termination. 139 S. Ct. at 2158-60 ("*Heck* explains why favorable termination is both relevant and required for a claim analogous to malicious prosecution that would impugn a conviction, and that rationale extends to an ongoing prosecution as well: The alternative would impermissibly risk parallel litigation and conflicting judgments."); *Coley v. Ventura Cnty.*, 2019 WL 7905740, at *4 (C.D. Cal. Sept. 24, 2019); *Hill v. Cook Cnty.*, 463 F. Supp. 3d 820, 837 (N.D. Ill. 2020). Plaintiff's Fourth Amendment claim challenges her pretrial detention pursuant to legal process that was tainted by Defendants' fabricated evidence, so her claim sounds in malicious prosecution and necessarily impugns the validity of her criminal proceedings. *See id.*[2]

---

[2] Prior to *Manuel*, Plaintiff's illegal detention and prosecution claim was commonly referred to as a §1983 malicious prosecution claim. *See, e.g.*, *Awabdy*, 368 F.3d at 1069. "Ninth Circuit authority holds that" such claims are "most similar to a common

LOEVY & LOEVY
Attorneys at Law

Defendants assert, via unsupported "facts" in their brief, that the alleged misconduct all took place before Long's arrest. Dkt. 29 at 14. That assertion is not established by her pleading, taking inferences in her favor, or in any cited judicially noticeable facts. It also misses the point: there is no *Manuel* claim until Defendants' conduct has caused post-process pretrial detention based on a prosecution without probable cause.

Omitting this authority, Defendants argue for a contrary rule on the basis of three decisions addressing categorically different claims: *Mills v. Cty. of Covina*, 921 F.3d 1161 (9th Cir. 2019); *Trimble v. Cty. of Santa Rosa*, 49 F.3d 583 (9th Cir. 1995), and *Wallace v. Kato*, 549 U.S. 384 (2007). Yet the accrual analysis in each of these cases addressed claims that accrued both independently of, and before the filing of, any charges, and were thus not subject to *Heck. See, e.g., Roberts v. County of Riverside*, 2020 WL 3965027, at *6 (C.D. Cal. June 5, 2020). *Mills* addressed § 1983 claims arising from an illegal search, that all parties agreed accrued at the time of the search (*Mills*, 921 F.3d at 1166, 1168)—an express carve-out from *Heck*'s accrual rule. *Heck*, 512 U.S. at 487 n.7. *Mills* excluded from its accrual analysis the plaintiff's "claims for malicious prosecution and *Monell* liability," which were not time-barred. *Id.* at 1168.[3] *Trimble*, too, addressed a Fourth Amendment illegal search claim that satisfied the *Heck* carve-out. 49 F.3d at 587.  And *Trimble* excluded from its accrual analysis illegal search claims that did qualify for deferred accrual, as well as the plaintiff's Fifth and Sixth Amendment claims. Defendants' overextension of *Mills* and *Trimble* to cover the claims in this case, which do not arise from a search, conflicts with *Mills* and *Trimble*—as well with *McDonough*, which post-dates both decisions.

_____

law claim for malicious prosecution, which involves the right to be free from the use of legal process that is motivated by malice and unsupported by probable cause. The statute of limitations does not begin to run until a favorable termination or acquittal." *See Trulove*, 2018 WL 1070899, at *8 (citing *Bradford v. Scherschligt*, 803 F.3d 382, 388 (9th Cir. 2015)).

[3] *Harvey v. Waldron*, 210 F.3d 1008, 1015-16 (9th Cir. 2000), too, addressed an unreasonable search claim.

For its part, *Wallace* addressed the point of accrual for a Fourth Amendment claim challenging an unlawful arrest in the absence of any legal process. 549 U.S. at 388-89. This claim was deemed most analogous to the common law tort of false imprisonment because it concerned "detention without legal process." *Id.* at 389. And because the claim challenged a false arrest without any knowledge of whether criminal proceedings would follow, the claim could not possibly impugn the validity of any such hypothetical proceedings. *Id.* at 393. The Court therefore concluded that *Heck's* deferred accrual rule did not apply to Fourth Amendment claims for false arrest in the absence of legal process. *Id.* at 393-94. The Supreme Court's recent decision in *McDonough* confirms the limited scope of *Wallace*:

> A false-arrest claim, *Wallace* explained, has a life independent of an ongoing trial or putative conviction—it attacks the arrest only to the extent it was without legal process, even if legal process later commences. . . . By contrast, a claim [that] centers on evidence used to secure an indictment . . . directly challenges—and thus necessarily threatens to impugn—the prosecution itself.

139 S. Ct. at 2159. While the former will accrue with the initiation of legal process, the latter will not accrue until favorable termination of the prosecution. *Id.* at 2159-60.

Defendants' proposed accrual rule not only conflicts with controlling authority and rests on inapposite caselaw, but also raises all the same practical concerns in *Heck* and *McDonough* that compelled the Supreme Court to impose the favorable termination requirement in the first place, and thus further contravenes their reasoning. *See McDonough*, 139 S. Ct. at 2155, 2157.

**B.    Plaintiff's federal claims accrued when charges were dismissed.**

Long received a final judgment reversing her conviction by the California Supreme Court in November 2020, and dismissal of the charges only in April 2021. Dkt. 1 ¶¶57-58. The statute of limitations for her federal claims thus did not begin to run until April 2021. Her claims, filed in November 2021 (Dkt. 1), are thus timely.

Defendants take the position that Plaintiff's federal claims, even if barred by *Heck*, are still untimely because they accrued at the time the Superior Court of

1    Riverside County first entered an order vacating Long's conviction. They take this

2    position even though that order was non-final, the order was reversed by the Court of

3    Appeal (*People v. Long*, 2018 WL 2057898 (May 3, 2018)), there was no final

4    judgment vacating Long's conviction until the California Supreme Court's November

5    2020 decision (*In re Long*, 10 Cal.5th 764 (2020)), and the State could have retried

6    Long until dismissal of the charges in April 2021. Defendants cite no authority for

7    their rule, and their argument is so conclusory as to have been forfeited.

8         Controlling law is to the contrary. For purposes of the accrual date for *Heck*-

9    deferred claims, the dispositive question is whether the prosecution and/or conviction

10   is "outstanding." *Heck*, 512 U.S. at 487. Put another way, to satisfy *Heck* and

11   McDonough's intended purposes, such claims do not accrue "until the proceedings

12   against the plaintiff have terminated in such a manner that they cannot be revived,"

13   *Bradford v. Scherschligt*, 803 F.3d 382, 388 (9th Cir. 2015). Applying this rule, in

14   *Bradford*, the Ninth Circuit held that a fabrication of evidence claim did not accrue at

15   reversal of the initial conviction, but rather at the time of the acquittal at a second trial.

16   *Id.* at 388; *see also Julian v. Hanna*, 732 F.3d 842, 845 (7th Cir. 2013). Likewise,

17   *Bradford* affirmed the correctness of a rule pursuant to which a *Brady* claim would

18   accrue when prosecutors entered a *nolle prosequi* and not when the court granted

19   plaintiff a new trial, adopting the reasoning in *Owens v. Baltimore Cty. State's Att'ys

20   Off.*, 767 F.3d 379, 390 (4th Cir. 2014). *See* 803 F.3d at 387-88.[4]

21        Here, as in *Bradford* and *Owens*, Plaintiff's federal claims "did not accrue until

22   the charges were fully and finally resolved and could no longer be brought against

23   [her]," *Bradford*, 803 F.3d at 388-89, which occurred April 2021, when the State

24   _____

25   [4] In *Rosales-Martinez*, 753 F.3d 890, 896, 893 (9th Cir. 2014), the accrual date for
     *Heck*-deferred claims was determined to be the date that the plaintiff's conviction was
26   vacated but that was because the vacation came "in conjunction with a comprehensive
     plea agreement that resolved all outstanding charges against the plaintiff." *Bradford*,
27   803 F.3d at 387 (explaining that, in *Rosales-Martinez*, "[t]he date the conviction was
     vacated . . . marked the date on which the plaintiff could no longer be prosecuted for
28   the underlying charges.").

LOEVY & LOEVY
Attorneys at Law

- 11 -

dismissed the pending charges because, until then, Long remained subject to the same charges. *See Raugust v. Montana*, 2020 WL 3832971, at *5 (D. Mont. July 8, 2020). At a minimum, the claims did not accrue until the final judgment reversing her conviction in November 2020, so her claims are still timely.

### C.     Plaintiff's state law claims are timely.

The California Supreme Court has adopted *Heck*'s framework for state-law claims that challenge or imply the invalidity of a conviction. *See Yount v. Cty. of Sacramento*, 183 P.3d 471, 484 (Cal. 2008). In *Yount*, while explaining why it could think of no reason to distinguish between federal § 1983 claims and "a state tort arising from the same alleged misconduct," the Court "reiterated its concern about the use of civil suits to collaterally attack criminal judgments" and the fact that both *Heck* and California law "express similar concerns about judicial economy and the avoidance of conflicting resolutions." 183 P.3d at 484; *see also Susag v. Cty. of Lake Forest*, 94 Cal. App. 4th 1401, 1410-13 (2002) (finding it "unsound to distinguish between §1983 claims and state law claims arising from the same alleged misconduct" and applying the same principles that motivate *Heck* to conclude that the plaintiff could not pursue state law claims like Long's while he stood convicted). In sum, California law applies *Heck*'s rule of deferred accrual when assessing claims, like those here, that imply the invalidity of a criminal prosecution or conviction. *See, e.g., Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1046 (9th Cir. 2018); *Roberts*, 2020 WL 3965027, at *5; *Walker v. Doe*, 2020 WL 1274674, at *5 n.5 (E.D. Cal. Mar. 17, 2020). Long's claims are timely and she had no need to invoke § 945.3 tolling.

## II.     Plaintiff sufficiently pleads favorable termination for purposes of Count II.

Defendants next argue that Long has not pleaded favorable termination and thus that "any claims subject to *Heck*" have not accrued. Dkt. 29 at 16. As a preliminary matter, as Defendants fail to acknowledge, the requirements of "*Heck*'s favorable-termination requirement [for claim accrual]" are "distinct from" a favorable-termination element of a constitutional claim. *Roberts v. Cty. of Fairbanks*, 947 F.3d

- 12 -

1191, 1201 (9th Cir. 2020). Defendants do not cite any authority in support of the proposition that Plaintiff's due process claim includes a favorable termination element, nor could they. And to prevail on Plaintiff's *Manuel* claim, she need only show that she was seized and that her pretrial detention was without probable cause. *See Trulove*, 2018 WL 1070899, at *8 (excluding favorable termination in listing the elements of a Fourth Amendment claim for post-process illegal detention and prosecution). Common law "malicious prosecution" elements like favorable termination should not be imported ad hoc into this claim. *See Rehberg v. Paulk*, 566 U.S. 356, 366 (2012); *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 101 (1st Cir. 2013). Favorable termination is required for claim accrual, but not as an element.

But this Court need not resolve the elements of Long's Fourth Amendment claim now; even assuming that Long was required to plead favorable termination, she has done so. To obtain dismissal on this element, Defendants would have to establish as a matter of law that the murder charges were "dismissed for reasons other than doubts on the part of the court or the prosecutor about the legitimacy of the charge or as to . . . guilt" and that Plaintiff could "prove no set of facts consistent with the allegations set forth in [her] complaint of this element. *Awabdy v. Cty. of Adelanto*, 368 F.3d 1062, 1068, 1066 (9th Cir. 2004).

At the later fact-finding stage, when a dismissal of charges "is procured as the result of a motion by the prosecutor and there are allegations that the prior proceedings were instituted as the result of fraudulent conduct," favorable termination is satisfied "unless the defendants can establish that the charges were withdrawn on the basis of a compromise among the parties or for a cause that was not inconsistent with his guilt." *Id.* at 1067-68; *see Gressett v. Contra Costa Cnty.*, 2013 WL 2156278, at *11-13 (N.D. Cal. May 17, 2013) ("[A] voluntary dismissal of the action by the prosecuting party . . . [is] presumed to be a favorable termination on the merits.") (collecting cases); *Wilkins v. DeReyes*, 528 F.3d 790, 802-04 (10th Cir. 2008).

Defendants cannot meet the high burden to obtain dismissal at the pleading

- 13 -

stage on this element. Here, Long's conviction was overturned and the prosecution
voluntarily chose to dismiss all charges against her, raising inferences of innocence
and that the prosecution lacked enough evidence to convict. *See* Dkt. 1 ¶¶56-57, 7.
Long has further alleged that the prior proceedings were instituted as the result of
fraudulent conduct. *E.g.*, Dkt. 1 ¶¶2-6, 25-50. She thus pleads favorable termination.

Defendants' assertions of their own absence of misconduct and Plaintiff's guilt
(Dkt. 29 at 17-18) are obviously improper and contravene the motion to dismiss
standard. *See* Pl.'s Resp. to Mtn. for Judicial Notice, Dkt. 37; *Lee v. Cty. of L.A.*, 250
F.3d 668, 689-90 (9th Cir. 2001). Plaintiff also disputes the "facts" that Defendants
ask this Court to find regarding her innocence based on a selective, misleading, and
incomplete presentation of records from the appellate proceedings (*see supra* at 3-5);
they are not a proper subject of judicial notice and contrary to the standard on a
motion to dismiss. *Id.* And Defendants' request that this Court take judicial notice of
the truth of disputed statements contained in a press release purporting to contain the
prosecution's decision for dismissal (Dkt. 29 at 8, 17), is also improper, and, even at
summary judgment, would not be dispositive at face value of the prosecution's true
motives. The way that Defendants seek to invoke judicial notice would require
conversion to a summary judgment motion and an opportunity for Long to present
contrary evidence, after discovery into the circumstances of the dismissal of charges.

And even based on the misleading presentation of the procedural history
offered by Defendants, Long's conviction was overturned because the jury was denied
access to information that undermined the evidence of guilt and the prosecution did
not retry because it could not meet its burden. This case is thus factually dissimilar to
*Mills*, in which the conviction was overturned based on the suppression of evidence
pursuant to the exclusionary rule, for reasons unrelated to the reliability of the
evidence. 921 F.3d at 1171. Defendants' argument fails.

LOEVY & LOEVY
Attorneys at Law

- 14 -

**III.     Plaintiff's federal claims are well-pleaded.**

Defendants next argue that Plaintiff's federal claims (Counts I through IV) should be dismissed because, in their view, Long is not permitted to plead that misconduct was undertaken jointly by the group of Defendants who investigated or participated in the collection and destruction of evidence during the investigation. Dkt. 29 at 23-24. Yet under Ninth Circuit law, the same allegation directed at a group of defendants is sufficient to plead personal involvement after *Iqbal*, even if each defendant in the group is not named individually in each paragraph. *U.S. v. United Healthcare Ins.*, 848 F.3d 1161, 1184 (9th Cir. 2016) (even under Rule 9(b), "[t]here is no flaw in a pleading . . . where collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct"); *U.S. ex rel. Anita Silingo v. WellPoint*, 904 F.3d 667, 681 (9th Cir. 2018).

Long has alleged acts of misconduct by a group of investigating police officers and an evidence technician who worked for the police department during a single criminal investigation, and each of the Defendants is jointly responsible for each act of misconduct. And Long also alleges specific actions by certain Defendants and not others. *E.g.*, Dkt. 1 ¶¶19-20, 37. That is sufficient. Defendants argue without authority that the pleadings do apprise them of what misconduct they committed. Yet each of the individual Defendants is accused of each of the allegations directed against him, and is free to admit, deny, or claim lack of knowledge as to these allegations.

Numerous district courts have denied motions to dismiss asserting the same "group pleading" argument that Defendants advance here. *Tivoli LLC v. Sankey*, 2015 WL 12683801, at *3 (C.D. Cal. Feb. 3, 2015) ("Group pleading is not fatal . . . if the complaint still gives defendants fair notice of the claims against them."); *see also In re Pac. Fertility Ctr. Litig.*, 2019 WL 3753456, at *3 (N.D. Cal. Aug. 8, 2019) ("[W]here the defendants are alleged to be 'related entities' who acted in concert it is entirely possible that the [undifferentiated] allegations of wrongdoing are intended to include each and every entity defendant [and are thus sufficient]."); *DeSoto Cab Co.,*

LOEVY & LOEVY
Attorneys at Law

*Inc. v. Uber Techs., Inc.*, 2018 WL 10247483, at \*15 (N.D. Cal. Sep. 24, 2018); *Roberts v. Cnty. of Riverside*, 2020 WL 5934303, at \*4 (C.D. Cal. Sept. 9, 2020).

In a similar vein, courts across the country "have often applied Rule 8 leniently when considering civil rights claims brought by wrongfully convicted plaintiffs or victims of alleged police misconduct." *Roberts*, 2020 WL 3965027, at \*3 (collecting authority); *see also Irons v. Neske*, 2021 WL 4191614, at \*2 (E.D. Mo. Sept. 15, 2021) ("When, as in this case, a complaint contains specific allegations of misconduct by the named defendants, differentiating between a defendant, group of defendants, and all defendants satisfies Rule 8(a)."); *Bryant v. Monroe Cnty.*, 2022 WL 119184, at \*11 (W.D.N.Y. Jan. 12, 2022) ("context matters in notice pleading" and "the particular factual context of the case is even more important when pleadings allege police misconduct") (alterations and citation omitted). Long's allegations suffice.

Defendants cite to only one inapposite decision in support of their argument, *Manukyan v. Cach, LLC*, 2012 WL 6199938 (C.D. Cal. Dec. 11, 2012). That decision considered a plaintiff suing ten different large entities for violations of the Fair Credit Reporting Act, not a handful of employees of one police department working together on a single investigation. Regardless, the court in *Manukyan* correctly noted that a complaint must "put each defendant on notice of the alleged wrongdoing." *Id.* at \*3. That is what Plaintiff has done here.

Defendants next seek dismissal of Plaintiff's *Monell* claim (Count V) based on the same group pleading arguments and because they deem the claim to be conclusory. Dkt. 29 at 19. The first argument lacks merit for the reasons outlined above, and the claim is brought against a single municipal entity, not multiple defendants. Second, Plaintiff's *Monell* allegations suffice under *Twombly* and *Iqbal*.

"While local governments may be sued under § 1983, they cannot be held vicariously liable for their employees' constitutional violations." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013) (citing *Monell*, 436 U.S. at 694). Instead, "[u]nder *Monell*, municipalities are subject to damages under § 1983 in three

LOEVY & LOEVY
Attorneys at Law

situations: when the plaintiff was injured pursuant to an expressly adopted official

policy, a long-standing practice or custom, or the decision of a 'final

policymaker.'" *Ellins v. Cty. of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir.

2013) (quoting *Delia v. Cty. of Rialto*, 621 F.3d 1069, 1081-82 (9th Cir. 2010)). "A

municipality's failure to train its employees may [] constitute an actionable policy or

custom under § 1983 if it amounts to deliberate indifference to the rights of persons

with whom the untrained employees come into contact." *Garmon v. Cty. of L.A.*, 828

F.3d 837, 846 (9th Cir. 2016) (citation omitted). There is no heightened pleading

requirement for *Monell* claims. *Johnson v. Cty. of Shelby*, 574 U.S. 10, 11 (2014) (per

curiam). And this Court has noted that, at the motion to dismiss stage, the plaintiff

need only "allege plausible facts supporting the asserted policy or custom." *Sanchez v.*

*Cty. of L.A.*, 2020 WL 9074714, at *5 (C.D. Cal. Apr. 28, 2020) (Fischer, J) (citing

*AE ex rel. v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012).

Here, Long pleads several theories of municipal liability: widespread practice

and custom of engaging in misconduct, including withholding exculpatory evidence,

suppressing evidence, and fabricating evidence to secure a conviction during criminal

investigations (Dkt. 1 ¶¶93-97); failure to promulgate adequate policies related to the

questioning of criminal suspects, questioning of witnesses, preparation and

presentation of witness testimony, and preservation and disclosure of investigative

materials and evidence (*id.* ¶94); failure to train, supervise, and discipline employees

and agents when they engage in the misconduct described above (*id.*); and a

ratification theory by final policymakers (*id.* ¶98). These allegations give Defendant

City "fair notice" of the *Monell* claim and allow the City "to defend itself effectively."

*Hyer v. Cty. of Honolulu*, 2020 WL 7038953, at *7 (D. Haw. Nov. 30, 2020).

## IV.    Defendants are not entitled to immunity from Plaintiff's state law claims.

Defendants next invoke an affirmative defense of immunity pursuant to

California Government Code § 821.6. Dkt. 29 at 19-20. As a preliminary matter, their

argument is premature. "Ordinarily[,] affirmative defenses may not be raised by

LOEVY & LOEVY
Attorneys at Law

motion to dismiss." *Scott*, 746 F.2d at 1378. Granting a motion to dismiss based upon an affirmative defense is "rare because a plaintiff is not required to say anything about [the facts concerning affirmative defenses] in his complaint." *Albino*, 747 F.3d at 1169; *see also Jones*, 549 U.S. at 216 (same). Affirmative defenses, such as those brought under § 821.6, "may be considered properly on a motion to dismiss [only] where the allegations in the complaint suffice to establish the defense." *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013). That is not the case here, and the defense would be better adjudicated against the backdrop of a full evidentiary record.

If this Court reaches the merits of Defendants' affirmative defense, however, it should hold that § 821.6 immunity does not apply to Plaintiff's state law claims in Counts VII, VIII, and X, pursuant to binding recent Ninth Circuit authority. To be sure, § 821.6 precludes Plaintiff from moving forward with her state law malicious prosecution claim in Count VI, as she acknowledges.[5] The statute provides: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial . . . proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov't Code § 821.6.  But Defendants' attempt to expand this statute to bar Long's other state claims contravenes controlling authority.

As Defendants decline to discuss, the California Supreme Court has expressly confined the statutory immunity granted by § 821.6 to causes of action for malicious prosecution. *Sullivan v. Cnty. of Los Angeles*, 12 Cal. 3d 710, 721, 719 (1974) (holding that § 821.6 is "intended to protect public employees from liability only for *malicious prosecution*"). In reaching this conclusion, the California Supreme Court recognized that the legislative intent behind § 821.6 required limiting the statute to malicious prosecution actions. *Id.* at 719-21. In addition, *Sullivan* explained that its "narrow interpretation of section 821.6's immunity, confining its reach to malicious prosecution actions," was also consistent with other statutory provisions. *Id.* at 721.

Consistent with the statutory text, the Ninth Circuit has confined § 821.6 to

---

[5] Plaintiff asserts Count VI to preserve arguments in case of a change in the law.

LOEVY & LOEVY
Attorneys at Law

malicious prosecution claims. *Sharp v. Cnty. of Orange,* 871 F.3d 901, 920 (9th Cir. 2017) (rejecting attempted expansion of immunity under § 821.6, because that section is "limited to malicious-prosecution claims"); *Mendez v. Cnty. of Los Angeles*, 897 F.3d 1067, 1083 (9th Cir. 2018) (refusing to apply § 821.6 to negligence claim and rejecting request that immunity cover all acts during an investigation); *Garmon*, 828 F.3d at 847 (limiting § 821.6 to malicious prosecution claims because "[w]e think the California Supreme Court would adhere to *Sullivan* even though California Courts of Appeal have strayed from it.").

District courts have followed this binding precedent. *See, e.g.*, *Valenzuela v. San Diego Police Dep't*, 2020 WL 804923, at *4 (S.D. Cal. Feb. 18, 2020) (denying motion to dismiss based upon § 821.6, because "this Court finds itself bound by the Ninth Circuit's more recent holdings in *Sharp* and *Garmon*"); *Flores v. Cty. of Pasadena*, 2019 WL 5102465, at *10 (C.D. Cal. Oct. 10, 2019); *Acosta v. California Highway Patrol*, 2019 WL 2579202, at *15 (N.D. Cal. June 24, 2019) ("The California Supreme Court has not extended § 821.6 immunity to actions outside of malicious prosecution."); *Young v. Cty. of Menifee*, 2019 WL 3037926, at *9 (C.D. Cal. Apr. 5, 2019); *Collins v. Cty. of Alameda*, 2021 WL 254262, at *11 (N.D. Cal. Jan. 26, 2021) ("only the malicious prosecution claim is subject to dismissal based on § 821.6"); *Soler v. Cty. of San Diego*, 2019 WL 6612011, at *3 (S.D. Cal. Dec. 4, 2019); *Sanchez v. Cty. of L.A.*, 2019 WL 4180014, at *7 (C.D. Cal. Apr. 24, 2019) ("section 821.6 is of no assistance to Defendants because the Ninth Circuit has squarely held that it applies to only malicious prosecution claims."); *Yang v. Boudreaux*, 2021 WL 4066460, at *13 (E.D. Cal. Sept. 7, 2021); *Glair v. Cty. of L.A.*, 2018 WL 3956728, at *10 (C.D. Cal. May 24, 2018), report and recommendation adopted, 2018 WL 3954000 (Aug. 15, 2018); *Roe v. Rialto Unified Sch. Dist.*, 2020 WL 2790008, at *3 (C.D. Cal. Feb. 26, 2020).

Defendants' authority does not compel a different result. The non-binding unpublished decision in *Mackovski v. Cty. of Garden Grove*, 666 F. App'x 649, 655

- 19 -

1   (9th Cir. 2016), is unpersuasive because it predates *Sharp* (2017) and *Mendez* (2018),

2   and fails to consider the California Supreme Court's interpretation of § 821.6—

3   improperly relying on state appellate court decisions. *See Sharp*, 871 F.3d 901 at 921;

4   *Garmon*, 828 F.3d at 847. For its part, *Blankenhorn v. Cty. of Orange*, 485 F. 3d 463

5   (9th Cir. 2007), involved a disputed arrest-but-not-prosecution, and rejected an

6   attempt to apply § 821.6 to the plaintiff's assault and battery, negligence, and

7   intentional infliction of emotional distress ("IIED") claims. *Blankenhorn* did not have

8   occasion to determine the scope of § 821.6 beyond an arrest or even consider *Sullivan*.

9   *Sharp* and *Garmon* then narrowed the broader discussion of § 821.6 in *Blankenhorn*,

10  specifically holding that § 821.6 is confined to malicious prosecution claims.

11  **V.    The City is not entitled to dismissal of Counts VII, VIII, IX and XI.**

12          Defendants identify no legitimate basis for dismissal of Plaintiff's IIED, state

13  law civil conspiracy, respondeat superior, and indemnification claims against the City

14  in Counts VII, VIII, IX, and XI. Dkt. 29 at 20-21. Plaintiff's respondeat superior claim

15  against the City (Count IX) properly alleges the City's liability for the individual

16  Defendants' state-law violations pursuant to California Government Code § 815.2.

17  That provision makes the City vicariously liable for the state law violations of its

18  employees—here, those alleged in the IIED, civil conspiracy, and Bane Act counts:

19          A public entity is liable for injury proximately caused by an act or omission of
20          an employee of the public entity within the scope of his employment if the act
            or omission would, apart from this section, have given rise to a cause of action
21          against that employee or his personal representative.

22  Cal. Gov't Code § 815.2; *see also, e.g.*, *Burgess v. Cnty. of San Diego*, 2021 WL

23  5810662, at *5-8 (S.D. Cal. Dec. 7, 2021) (municipality can be liable under § 815.2(a)

24  for its employees' IIED and Bane Act violations); *Young*, 2019 WL 3037926, at *11

25  (IIED violations); *Mayfield v. Cty. of Oakland*, 2007 WL 2261555, at *8 n.7 (N.D.

26  Cal. Aug. 6, 2007) (Bane Act violations). This Court need go no further in its analysis,

27  because a claim may be dismissed only if "it appears beyond doubt that the plaintiff

28  can prove no set of facts in support of his claim which would entitle him to relief."

- 20 -

LOEVY & LOEVY
Attorneys at Law

*Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *Alvarez v. Hill*, 518 F.3d 1152, 1154, & 1158-59 (9th Cir. 2008). Defendants cite no contrary authority.

Defendants' observation that Plaintiff's state law conspiracy claim is derivative of liability for other state law claims likewise does not warrant dismissal. And should any of the individual Defendants be liable on the basis of a conspiracy theory for the IIED and Bane Act violations of others, the City would also be vicariously liable.

Nor is Plaintiff's indemnification claim (Count XI) subject to dismissal. That claim merely states that, when committing the pleaded misconduct, the individual Defendants were acting within the scope of their employment; thus, California law directs the City to pay any compensatory damages judgment against them. Dkt. 1 ¶¶126-29. Should Plaintiff prevail against the individual defendants (making them judgment debtors), Plaintiff would have standing to assert a statutory interest in indemnification against the City (the indemnitor) as a means of collecting the debt (as a judgment creditor). *Cf. Thee Sombrero, Inc. v. Scottsdale Ins. Co.*, 28 Cal. App. 5th 729, 735 (2018) (if the indemnitor has an obligation against third parties, those third parties as judgment creditors may proceed against the indemnitor); *Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone*, 107 Cal. App. 4th 54, 68 (2003).

Indeed, in *Williams*, the sole authority on which Defendants rely, the California Supreme Court recognized the importance of providing plaintiffs indemnification, even though doing so does not create substantive rights. *Williams v. Horvath*, 16 Cal.3d 834, 848 (1976) (explaining "the indemnification provisions . . . facilitate the bringing of actions against erring public servants, because the plaintiff is assured that the financial resources of the entity will stand behind the judgment" and the entity will "exercise an additional degree of caution in the hiring and supervision of employees whose functions carry a greater risk of potential liability").

Thus, while Plaintiff does not obtain any "additional rights" by seeking indemnification of an ultimate judgment by the County (*id.* at 845), she has standing to assert that the statute requires the City to pay a judgment, and allowing her to do so

- 21 -

will ensure fulfillment of the statutory purpose. Courts in other jurisdictions are in accord. *E.g.*, *Estate of Watts v. Heine*, 2008 WL 4058032, at *2-3 (E.D. Wis. Aug. 26, 2008); *Dixon v. Holden*, 923 S.W.2d 370, 374 (Mo. Ct. App. 1996); *Cty. of Memphis v. Roberts*, 528 S.W.2d 201, 205 (Tenn. 1975). Acknowledging Plaintiff's interest in indemnification by the City only means that if and when Plaintiff prevails at trial, she (and the individual Defendants) are assured that the City will satisfy the judgment. The City's motion to dismiss the indemnification claim should be denied.

## VI.   Plaintiff states a Bane Act claim against the City in Count X.

The City's bare-boned challenge to the Bane Act claim is so conclusory and devoid of authority as to have been forfeited. Dkt. 29 at 21. First, the City is liable for the actions of its employees as alleged in the claim. Cal. Gov't Code § 815.2. Thus, Long states a claim arising from the City's vicarious liability under the Bane Act. *See Burgess*, 2021 WL 5810662, at *7; *Mayfield*, 2007 WL 2261555, at *8 n.7.

Second, Plaintiff's allegations suffice. One way to plead a Bane Act claim is by alleging a Defendant's violation of a federal constitutional right, with specific intent to violate the right. *See Reese*, 888 F.3d at 1043 (citing *Cornell v. Cty. of San Francisco*, 225 Cal. Rptr. 3d 356, 382-85 (2017), as modified (Nov. 17, 2017)); *Sandoval v. Cnty. of Sonoma*, 912 F.3d 509, 520 (9th Cir. 2018). Here, Long alleges both that Defendants manipulated, coerced, and fed information to witnesses in violation of her federal constitutional rights, to frame her for murder (e.g., Dkt. 1 ¶¶25-51, 124-125), and Defendants' specific intent to violate her rights (*id.* ¶123).

## VII.   Plaintiff sufficiently pleads a lack of probable cause in Count II.

Defendants next argue that Plaintiff's complaint establishes as a matter of law that probable cause existed to prosecute her for murder because of the prosecutorial decision to charge and the state court's decision to hold her to answer following a preliminary hearing. Dkt. 29 at 22-24. Contrary to Defendants' unsupported contention, the sole claim that requires Plaintiff to allege a lack of probable cause is Plaintiff's *Manuel* claim, asserting violation of her Fourth Amendment right against

post-process unlawful detention, incorporated by the Fourteenth Amendment (Count II). Count I, for instance, alleges that a Fourteenth Amendment due process violation. An absence of probable cause is not an element of such a claim. *E.g.*, *Tennison v. Cty. of San Francisco*, 570 F.3d 1078, 1088-89 (9th Cir. 2009).

The probable cause inquiry applicable to Count II considers whether the arresting officers "had knowledge and reasonably trustworthy information of facts and circumstances sufficient to lead a prudent person to believe that the arrestee had committed or was committing a crime." *Gravelet-Blondin*, 728 F.3d at 1097-101 (quotation omitted). The inquiry turns on the "totality of the circumstances" known to the officers at the time, including "facts tending to dissipate probable cause." *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 433 (9th Cir. 2010). While probable cause is an objective inquiry, an officer's knowledge at the time of the initiation of charges is a fact issue that, if disputed, requires determination by a fact-finder. *Est. of Tucker ex rel. Tucker v. Interscope Recs., Inc.*, 515 F.3d 1019, 1031 (9th Cir. 2008) (citing *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal. 3d 863, 879-81 (1989)).

At the pleading stage, dismissal on this element is permissible only if it "appears beyond doubt" that Plaintiff could "prove no set of facts consistent with the allegations set forth in h[er] complaint" that would "establish that [s]he was prosecuted without probable cause." *Awabdy*, 368 F.3d at 1066. Defendants fall far short of so establishing. Plaintiff has alleged a lack of probable cause (*e.g.*, Dkt. 1 at ¶¶72 & 15-24), and Defendants are not permitted to set aside her allegations. Defendants' argument is directly foreclosed by *Awabdy*, in which the Ninth Circuit held that it would constitute error to dismiss a claim on this basis if, as here, the plaintiff has alleged "that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith." 368 F.3d at 1066. Plaintiff's allegations that Defendants based the arrest on "intentional and knowingly false accusations" defeat dismissal at the pleading stage, as do her allegations that Defendants knew that they were falsifying evidence against her. *Id.* at

LOEVY & LOEVY
Attorneys at Law

- 23 -

1067-68; *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 919 (9th Cir. 2012) (on plaintiffs' facts, the defendant "knew that . . . [plaintiffs] had not committed the crime . . . . [plaintiffs] have thus alleged [an absence of probable cause].").

Defendants' brief fails to identify *any* facts in Long's pleading that establish probable cause to charge her for murder, let alone facts that are untainted by allegations of misconduct by Defendants and that establish the element as a matter of law. Instead, Defendants impermissibly rely on their own "facts" – such as what they improperly characterize as "the strength of Dills' testimony regarding the timeline" and unidentified "third-party witness testimony." Dkt. 29 at 24. Defendants' extra-pleading allegations are contested, and not subject to judicial notice. *See* Pl.'s Resp. to Mtn. for Judicial Notice, Dkt. 37. Defendants also impermissibly "disregard[] facts tending to dissipate probable cause," such as the presence of alternative suspects. *Crowe*, 608 F.3d at 433. Even if Defendants had identified facts in Plaintiff's pleadings supporting probable cause (which they have not), Defendants would still fall far short of establishing that Long can prove no set of facts consistent with her allegations that would defeat probable cause, as required for dismissal. The probable cause inquiry relies on fact determinations that cannot be resolved at this early stage.

Defendants do not identify any cases granting dismissal on remotely analogous facts, defeating their argument. In *McSherry v. Cty. of Long Beach*, 584 F.3d 1129, 1135 (9th Cir. 2009), the case was allowed to proceed to discovery and the court merely held at summary judgment that the plaintiff failed to amass enough evidence.

## VIII. The individual Defendants are not entitled to qualified immunity.

The individual Defendants seek qualified immunity, arguing that "there was no clearly established law in 2003 . . . requiring the officers to handle the investigation any differently." Dkt. 29 at 30. To qualify for immunity at this early stage, Defendants must demonstrate that qualified immunity applies "based on the complaint itself." *O'Brien*, 818 F.3d at 936; *see also Moore v. Gerstein*, 107 F.3d 16 (9th Cir. 1996).

Defendants cannot so demonstrate. Plaintiff alleges that Defendants suppressed

- 24 -

LOEVY & LOEVY
Attorneys at Law

and fabricated evidence to secure her prosecution and conviction, beginning in 2003. Supreme Court and Ninth Circuit precedent leave no doubt that Defendants were aware in 2003 that they could not fabricate evidence or suppress exculpatory evidence to secure a conviction. *E.g.*, *Pyle v. State of Kansas*, 317 U.S. 213, 216 (1942) (fabricated testimony and suppression of favorable evidence violate due process); *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (use of false evidence violates due process); *Banks v. Dretke*, 540 U.S. 668, 694 (2004) ("It has long been established that the prosecution's deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice.") (quoting *Giglio v. U.S.*, 405 U.S. 150, 153 (1972)); *Carrillo v. Cnty. of L.A.*, 798 F.3d 1210, 1219 (9th Cir. 2015); *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001).

Defendants' contrary argument rests solely on their extra-pleading factual contentions. But once again, Defendants improperly omit and set aside Long's allegations (e.g., Dkt. 1 at ¶¶72 & 15-24). Defendants cannot prevail by relying on their own disputed facts. *See* Pl.'s Resp. to Mtn. for Judicial Notice, Dkt. 37.

## IX.  Any dismissal should be without prejudice.

Any dismissal should be without prejudice and with leave to replead. *See* Fed. R. Civ. P. 15(a)(2); *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1997) (the "standard for granting leave to amend is generous."); *Barahona v. Union Pac. R.R.*, 881 F.3d 1122, 1134 (9th Cir. 2018) (leave to amend is futile only if no set of facts can be proved that would constitute a valid and sufficient claim). Defendants offer no argument in support of their request for dismissal with prejudice (Dkt. 29 at 25). Defendants are incorrect that Long fails to plead sufficient facts. Even if their contention had merit, a dismissal on specificity grounds is precisely the scenario where leave to amend should be freely given under Rule 15, particularly where Long has not received the Court's guidance, let alone repeatedly failed to cure deficiencies.

WHEREFORE, for the foregoing reasons, Defendants' motion to dismiss should be denied.

**DATED:** February 14, 2021                    Respectfully submitted,


                                                **KIMBERLY LONG**


                                                By: /s/ Megan Pierce
                                                One of Plaintiff's Attorneys



**CERTIFICATE OF SERVICE**


    I, Megan Pierce, an attorney, certify that on February 14, 2022, the foregoing was filed via the court's ECF system, which effectuated service on all counsel who have appeared in the case.


                                                /s/ Megan Pierce

LOEVY & LOEVY
Attorneys at Law