JOHN D. HIGGINBOTHAM, Bar No. 204179
Assistant City Attorney
DEAN DERLETH
City Attorney
CITY OF CORONA
400 S. Vicentia Ave., 3rd Floor
Corona, California 92882
Telephone: (951) 279-3506
john.higginbotham@coronaca.gov

Attorneys for Defendants
CITY OF CORONA, THOMAS WEEKS,
RONALD ANDERSON, DANIEL
BLOOMFIELD, ROBERT NEWMAN,
DANIEL VERDUGO and JEFFREY GLENN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY LONG,<br><br>                    Plaintiff,<br><br>          v.<br><br>THOMAS WEEKS, RONALD ANDERSON, DANIEL BLOOMFIELD, ROBERT NEWMAN, DANIEL VERDUGO, JEFFREY GLENN, UNKNOWN EMPLOYEES of the CITY OF CORONA, and the CITY OF CORONA,<br><br>                    Defendants. | Case No. 5:21-cv-02008-DSF-E<br><br>Judge: Honorable Dale Susan Fischer<br><br>REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT<br><br>[Fed. R. Civ. Proc. 8, 12.]<br><br>Hearing<br>Date:    March 7, 2022<br>Time:    1:30 p.m.<br>Room:   7D |

# <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ............................................................................... 1

II.    LEGAL ARGUMENT ........................................................................ 2

    A.    Long's Claims Are Untimely ................................................... 2

    B.    Long's Claims Sounding in Due Process Based on Malicious Prosecution Fail For Lack of a Favorable Termination on the Merits or Reflecting Innocence ...................................... 5

    C.    Long's Undifferentiated Group Pleading Violates FRCP 8 for the Same Reasons Found by Judge Bernal in His Ruling on the Substantially Similar Roberts v. County of Riverside Complaint ......... 7

    D.    Long's State Law Claims Are Barred by Government Code 821.6 to the Extent They Sound in Malicious Prosecution ...................... 8

    E.    Long's Attorneys Have Consistently Lost the Argument that Government Code § 825 Creates a Cause of Action ......................... 9

    F.    Long Has Failed to Plead with Sufficient Factual Specificity or Particularity to State Plausible Claims ................................... 10

III.    CONCLUSION ................................................................................. 12

i

# TABLE OF AUTHORITIES

## Cases

*Arizona v. Youngblood*, 488 U.S. 51 (1988)...................................................................11
*Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004)............................6
*Bradford v. Scherschligt*, 803 F.3d 382, 386 (9th Cir. 2015)...................................11
*Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).....................................11
*Harper v. City of Los Angeles*, 533 F.3d 1010, 1028 (9th Cir. 2008).....................10
*Manuel v. City of Joliet, IL*, 137 S.Ct. 911 (2017) ...................................................3
*Manuel v. City of Joliet, IL*, 903 F.3d 667 (7 Cir. 2018).........................................3
*McDonough v. Smith*, 139 S.Ct. 2149 (2019)..........................................................4
*McGuffin v. Dannels*, 2021 WL 4453106 (D. Oregon July 27, 2021)..................5, 6
*McSherry v. City of Long Beach*, 584 F.3d 1129, 1136 (9th Cir. 2009) ................11
*Merritt v. Arizona*, 425 F.Supp.3d 1201, 1219 (D. Ariz. 2019.)............................11
*Mills v. City of Covina*, 921 F.3d 1161 (9th Cir. 2019)....................................1, 2, 3
*Newman v. County of Orange*, 457 F.3d 991, 994-95 (9th Cir. 2006)...................10
*Roberts v. City of Fairbanks*, 947 F.3d 1191 (9th Cir. 2020)..................................6
*Roberts v. County of Riverside*, 2020 WL 3965027
    (C.D. Cal. June 5, 2020)....................................................................1, 8, 9, 10
*Sullivan v. Cty. of Los Angeles*, 12 Cal.3d 710 (1974)............................................9
*Valle v. Morgado*, 2021 WL 5507180 (N.D. Cal. Nov. 24, 2021)..............1, 3, 9, 10
*Wallace v. Kato*, 549 U.S. 384 (2007).....................................................................4
*Williams v. Horvath*, 16 Cal.3d 834 (1976)........................................................9, 10
*Wilson v. Parker, Covert & Chidester*, 28 Cal.4th 811, 817 (2002) ......................10

## Statutes

Government Code section 821.6 ............................................................................4, 8
Government Code section 945.3 .................................................................................4

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The arguments in Long's Opposition were recently rejected by two other California District Courts which ruled on motions to dismiss substantially identical claims in the Loevy firm's cookie-cutter pattern complaint.

Just six days before Long's lawsuit was filed, the Northern District of California issued a ruling rejecting a number of the same arguments in Long's opposition.  (*Valle v. Morgado*, 2021 WL 5507180 (N.D. Cal. Nov. 24, 2021).) Most notably, the *Valle* court dismissed Count 2 (which is legally indistinguishable from Long's Count 2) on statute of limitation grounds because the *pre*-trial detention claim accrued at conviction pursuant to *Mills v. City of Covina*, 921 F.3d 1161 (9th Cir. 2019), and the claim for *post*-process detention accrued upon release from jail which, as here, was several years before the Loevy firm filed the lawsuit.

Judge Bernal also recently ruled on a motion to dismiss substantially identical claims in *Roberts v. County of Riverside*, 2020 WL 3965027 (C.D. Cal. June 5, 2020).  Judge Bernal granted the motion as to *all* of the plaintiff's federal claims based on impermissible 'group pleading' under Rule 8, granted the motion *without* leave based on the immunity in Government Code section 821.6 as to the malicious prosecution claim and several other state court claims to the extent they sounded in malicious prosecution (which Long admits in her Opposition that many of her claims do), granted the agency's motion *without* leave as to several of the state court claims and, like the *Valle* court, granted the motion *without* leave as to the section 825 claim based on controlling California Supreme Court precedent.

The 11 counts in Long's complaint are essentially a 'copy and paste' of substantially identical counts in both *Valle* and *Roberts*.  The only difference between the list of counts in those complaints and Long's complaint is that *Valle* and *Roberts* both included a separate federal *Brady* claim which, notably, is *not*

1

asserted here.  In both of those cases, which involved facts considerably more compelling than Long's case, the case was substantially parred down at the pleading stage.  At a minimum, the same should occur here.  All of Long's claims fail for one or more reasons, most of which are not seriously debatable.

That is so even without taking judicial notice of the underlying criminal proceedings which, contrary to Long's loquacious protestations, are *not* being offered for the 'truth' of anything asserted therein.  Those court records are offered to show 'what' indisputably occurred in the criminal proceedings, *not* whether anything that any particular witness said was 'true.'  The issue is not whether there was blood on Long's clothes or whether Lovejoy's alibi was strong or weak.  Rather, the issue is that those matters were exhaustively explored at Long's trial, and cannot reasonably be claimed 17 years later to have been 'suppressed.'  As for supposed police manipulation of Dills' testimony, Long unequivocally admitted through her attorney of record in open court that there was no support for that allegation.  If Long and her army of attorneys cannot do any better than such sham allegations – and there is *nothing* in the Opposition to suggest they have anything more or different to add – they should not be allowed to proceed with this lawsuit.

## II.   LEGAL ARGUMENT

### A.   Long's Claims Are Untimely

The City acknowledges that accrual of 1983 claims is determined by federal law, but that does not save Long's federal claims, even at the pleading stage.  Long's federal claims, to the extent based on a false arrest / false imprisonment theory relating to *pre*-process detention, accrued when she was arrested and charged in 2003, and, to the extent based on *post*-process detention, accrued when she was released from custody in 2016.

*Mills v. City of Covina*, 921 F.3d 1161 (9th Cir. 2019) is directly on point and requires that Long's claims be dismissed, either because they are untimely, or, as to malicious prosecution and *Monell*, for lack of a favorable termination.  Here, as in

2

*Mills*, Long "had complete and present causes of action for all but [her] malicious prosecution and *Monell* liability claims when [s]he … was arrested; therefore, those claims accrued at that time," which occurred in 2003. (*Mills* at 1166.) Long's malicious prosecution and *Monell* claims are also barred by *Mills* for lack of favorable termination, as discussed in Section II.B, below.

Long's attempt to characterize her Count II as a post-process detention claim under *Manuel v. City of Joliet, IL*, 137 S.Ct. 911 (2017) ("*Manuel I*") is unavailing and, in fact, confirms that Count II must be dismissed with prejudice. In *Manuel I*, the Supreme Court held that the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process, but remanded to the Seventh Circuit the question of when such a post-process detention claim accrues. (*Id.* at 922.) On remand, the Seventh Circuit held that the claim accrued, for limitations purposes, when the detainee was released from custody. (*Manuel v. City of Joliet, IL*, 903 F.3d 667 (7 Cir. 2018) ("*Manuel II*"). Reasoning that there is no such thing as a constitutional right not to be prosecuted without probable cause, but there is a constitutional right not to be held in custody without probable cause, the wrong is the detention rather than the existence of criminal charges. Thus, the period of limitations also should depend on the dates of the detention. (*Id.* at 670.)

The only case in the Ninth Circuit post-*Manuel II* just happens to be *Valle*, which involved the same Loevy cookie-cutter pattern complaint at issue here. *Valle* found the Seventh Circuit's reasoning in *Manuel II* persuasive, and adopted *Manuel II's* reasoning as its own, rejecting the Loevy firm's attempts to distinguish it. (*Valle* at *3-4.) *Valle* found that *Mills* was controlling, and that the plaintiff's claims were not tolled because, as in *Mills*, the plaintiff had not obtained a judicial determination that his claims were barred by *Heck* within the limitations period. (*Valle* at *5-6.) Thus, *Valle* dismissed Count II with prejudice. (*Valle* at *6.)

Long's Count II is, by her own admission, the same post-process detention claim addressed in *Manuel I* and *Manuel II*, and rejected in *Valle*. (Opposition at

3

fn. 1, 2.)  Thus, at a minimum, Long's Count II should be dismissed with prejudice for the same reasons as in *Valle*.  The cause of action accrued when she was no longer detained; i.e., in 2016.  Long's Counts III, IV and V, which she acknowledges are merely "derivative" of her fourth amendment claim (Opposition at 3:7-12), should be dismissed for the same reasons.

For the same reasons noted in *Valle*, *McDonough v. Smith*, 139 S.Ct. 2149 (2019) does not save Long's Fourth Amendment-based claims.  *McDonough* did not overrule *Wallace v. Kato*, 549 U.S. 384 (2007), nor did it cast any doubt on *Mills*.  Post-process detention claims accrue when the plaintiff is released from custody, which occurred more than five years before Long filed suit.  That Long's criminal case bounced around for another several years in the state appellate courts is inconsequential.  Federal law governs accrual, but state law governs tolling.

Even if some or all of Long's federal claims survive a timeliness challenge at the pleading stage, Long's state law claims do not.  State law claims are not controlled by federal law in any respect, but rather are governed by California's two-year state of limitations as modified as against public agency defendants by Government Code section 945.3, which expressly does "not extend the time within which a [Government Tort Claim] is required to be presented pursuant to Section 911.2," and expressly *only* tolls the deadline to file a lawsuit while criminal charges are pending before a superior court, *not* on appeal  Long's criminal case ceased to be "pending" before a superior court in mid-2016 when the trial court vacated her conviction and released her from prison.  At the very latest, Long's state law claims accrued at that time.

To the extent any of Long's state law claims sound in due process / malicious prosecution and this Court finds a later (i.e., 2020 or 2021) accrual date pursuant to *Heck* or *McDonough*, they fail both for lack of favorable termination and based on the immunity in Government Code section 821.6, as discussed in Sections II.B and II.D, below.

4

**B.**   **Long's Claims Sounding in Due Process Based on Malicious
Prosecution Fail For Lack of a Favorable Termination on the
Merits or Reflecting Innocence**

At the risk of stating the obvious, there is a fundamental substantive difference between: (1) a criminal case which is dismissed by prosecutors prior to trial because they don't think they can get a conviction, or a conviction which is vacated after DNA evidence unequivocally exonerates the accused; and (2) *this* criminal case in which Long *was* convicted, the conviction was repeatedly *affirmed* on direct and collateral review, Long already served more than seven years in prison, her conviction was ultimately vacated many years later based *solely* on ineffective assistance of counsel, the court concurrently *denied* a motion for determination of actual innocence, and the prosecutor declined to re-file 18 years after the crime because both key prosecution witnesses had died.

The court in *McGuffin v. Dannels*, 2021 WL 4453106 (D. Oregon July 27, 2021) recently confronted an eerily similar situation and concluded based on Oregon state law – which appears to be substantially similar to California law – that the disposition of the criminal case was *not* a favorable termination on the merits. After serving nine years in prison, McGuffin's conviction was vacated based on two claims of ineffective assistance of trial counsel, and one claim of discovery violation involving undisclosed DNA evidence, with the state court denying McGuffin's actual innocence claim. The DA, noting that he agreed with the court's statement that the record contained evidence of McGuffin's guilt, nonetheless moved to dismiss the charges against McGuffin. The DA noted that at least two of the witnesses at McGuffin's original trial were deceased, and that even if McGuffin were convicted on retrial, he could not receive a sentence longer than his original 10-year sentence for manslaughter, of which he had already served over 9 years. McGuffin was released from prison with all criminal charges against him dismissed. The federal court found that this did not constitute a favorable

5

1    termination under Oregon law.  (*McGuffin*, *supra*, at *3, 14-15.)

2        The *McGuffin* court went to seemingly conflate the distinction drawn by the

3    majority in the split-panel *Roberts v. City of Fairbanks*, 947 F.3d 1191 (9th Cir.

4    2020) opinion between the *Heck* standard and the elements of a malicious

5    prosecution claim under state law.  However, that is of no practical consequence

6    here because, even if this Court finds a favorable termination under *Heck* (which

7    this Court should not do), the favorable termination element of malicious

8    prosecution under controlling California law is not present for substantially the

9    same reason as in *Mills* and even more so in *McGuffin*.  Federal courts rely on state

10   law for elements of malicious prosecution. (*Awabdy v. City of Adelanto*, 368 F.3d

11   1062, 1066 (9th Cir. 2004).)  Here, as in *Mills* and *McGuffin*, the outcome leaves at

12   minimum 'some doubt' as to Long's innocence.  Actually, it leaves huge doubt.

13   Nearly 20 years later, Long is still, by far and away, Conde's most likely murderer.

14   There has never been any serious argument that anyone else did it.

15       *Mills* is controlling.  If a reversal of a conviction under the exclusionary rule

16   does not qualify as a favorable termination – and *Mills* and other courts before it

17   directly held that it does not – then there can be no serious argument that a reversal

18   of a conviction based on ineffective assistance of counsel somehow qualifies as a

19   favorable termination, particularly when the court concurrently denied a motion for

20   determination of actual innocence, as also occurred in *McGuffin*.  *McGuffin's*

21   analysis of the state law malicious prosecution element is remarkably on point and

22   should be considered highly persuasive.

23       As for the DA's subsequent decision not to retry Long 18 years after the

24   crime with both of the key prosecution witnesses having died in the interim, that

25   decision does not even remotely suggest innocence.  Plaintiff takes issue with the

26   DA's press release, but surely the DA is entitled to speak for himself as to why he

27   elected not to re-try the case.  It is the DA's opinion that matters, not Long's.  The

28   substantially similar statement by the DA in *McGuffin* was treated as dispositive.

1    In any event, nothing in the Complaint or in the Opposition so much as hints
2    at the DA having some hidden, ulterior rationale.  Indeed, the prosecution's conduct
3    over the past 18+ years supports only one reasonable conclusion: that they believe
4    Long murdered Conde.  The DA tried this case a second time in 2005 even after the
5    first jury allegedly hung 9-3 in Long's favor.  The DA actively defended the guilty
6    verdict over the many years that followed, including throughout the habeas
7    proceedings which eventually culminated in Long's conviction being reversed for
8    ineffective assistance of counsel.  After losing on that issue at the trial court in
9    2016, the DA appealed and secured a reversal in the state appellate court, and then
10   defended its position at the Supreme Court, filing an 87-page brief on the merits.

11   Under the circumstances, it is sheer folly for Long to suggest that any of the
12   prosecutors involved in this case harbored some secret belief in her innocence, or
13   that the decision not to re-try the case in 2021 was anything more than a recognition
14   of the practical challenges in replicating the 2005 guilty verdict 18 years after the
15   crime without living witnesses.  That is *not* a termination on the merits reflecting
16   innocence under any reasonable, common-sense interpretation.

17   **C.    Long's Undifferentiated Group Pleading Violates FRCP 8 for the**
18   **Same Reasons Found by Judge Bernal in His Ruling on the**
19   **Substantially Similar Roberts v. County of Riverside Complaint**

20   Long's arguments regarding FRCP 8 cannot be reconciled with Judge
21   Bernal's ruling on the identical issue regarding the Loevy firm's cookie-cutter
22   complaint in the *Roberts* case.  Here, as in that case, there is a *complete* lack of
23   differentiation regarding *any* of the seven named defendants, notwithstanding the
24   fact that they all unquestionably played very different roles in the investigation.

25   As Judge Bernal explained in *Roberts*, after extensively surveying the law on
26   this issue both in and out of the Ninth Circuit: "Regardless of context, Rule 8 does
27   require that claims be alleged with some specificity. … Thus, even at its most
28   lenient, Rule 8 requires some reasonable differentiation in Plaintiff's allegations."

7

(*Roberts* at *3-4.)  Here, there is literally *zero* differentiation in Long's allegations. The standard may not be incredibly demanding, but something more than zero is required.  It is not as if Long does not know what each officer's role was.  She has had all their reports for nearly two decades, and they all testified at the trial.

### D.  Long's State Law Claims Are Barred by Government Code 821.6 to the Extent They Sound in Malicious Prosecution

That Long's Count VI for malicious prosecution is barred by Government Code section 821.6 is beyond dispute.  There is a statute directly on point.  Public employees, including police officers, are unconditionally, unequivocally immune to malicious prosecution claims, even if they "act maliciously and without probable cause."  (Cal. Gov't. Code § 821.6.)  Long's opposition on this point is frivolous and in bad faith, particularly after she acknowledged during the LR 7-3 conference that the claim is not viable under the current state of law, and acknowledged in her Opposition that the claim is barred and included only to "preserve arguments in case of a change in the law" (Opposition at 18:11-13, fn. 5), albeit only after making a specious argument that the defense is improper at the pleading stage.

That Long's other state law claims are not viable to the extent they sound in malicious prosecution is also not seriously debatable.  It is not the label on the cause of action that matters, but the *substance* of the cause of action.  These exact same issues were decided against Long's attorneys in both the *Valle* and *Roberts* cases, which involved the exact same causes of action and substantially identical legal allegations in the same type of case involving a convicted criminal.

In *Roberts*, Judge Bernal acknowledged the recognized split of Ninth Circuit authority regarding the scope and application of Section 821.6 to state law claims other than those expressly styled as malicious prosecution claims, and harmonized those cases by looking beyond the labels at the substance of the allegations. (*Roberts* at *7 ("to determine whether § 821.6 immunity applies, [a court] must look to the conduct from which the claim arises, not merely the cause of action

8

1  under which the claim is pled.").)

2        Judge Bernal then explained that there was *no doubt* that some of plaintiff's

3  allegations fall squarely within the purview of malicious prosecution conduct as set

4  out in section 821.6 and the California Supreme Court's decision in *Sullivan v. Cty.*

5  *of Los Angeles*, 12 Cal.3d 710 (1974).  Those included the plaintiff's allegations

6  that the defendants conspired to frame plaintiff for a crime he did not commit,

7  fabricated and solicited false evidence, failed to disclose exculpatory evidence, and

8  otherwise exerted influence to initiate, continue, and perpetuate judicial

9  proceedings against plaintiff without any probable cause.  Because some of the

10  allegations underlying the plaintiff's IIED, conspiracy, and Bane Act claims were

11  premised on conduct instrumental in causing his prosecution, Judge Bernal found

12  that section 821.6 confers immunity for the malicious prosecution conduct

13  underlying those claims and dismissed them without leave to amend  (*Roberts* at

14  *7-8.)  The *Valle* court came to substantially the same conclusion.  (*Valle* at *8.)

15        Long's Counts 7 – 11, to the extent they sound in malicious prosecution –

16  which they do for the same reasons as in *Roberts* and *Valle* – fail for the same

17  reasons.  Indeed, Long repeatedly admits throughout her Opposition that her claims

18  sound in malicious prosecution.  (Opposition at 7:18-20, 8:8-9, 8:22-25, fn. 1, 2.)

19        The corollary, of course, is that Counts 7 – 11 are not barred by Section

20  821.6 to the extent they sound in wrongful detention and imprisonment.  (*Roberts* at

21  *8; *Valle* at *8.)  However, to the extent Long's state law claims sound in wrongful

22  detention and imprisonment, they are time-barred, as noted in Section II.A, above.

23  Either way, all of Long's state law claims should be dismissed with prejudice.

24      **E.**    **Long's Attorneys Have Consistently Lost the Argument that**

25          **Government Code § 825 Creates a Cause of Action**

26        The California Supreme Court directly held in *Williams v. Horvath*, 16

27  Cal.3d 834 (1976), that indemnification under Government Code 825 is a right held

28  by public employees and does *not* provide a cause of action to non-governmental

9

litigants who sue public agencies.  (*Id*. at 845.)  Notwithstanding that authority, the Loevy firm included a purported cause of action for 'indemnity' under Government Code section 825 in both the *Roberts* and *Valle* cases.  In both cases, the defendants challenged the claim on a Rule 12(b)(6) motion.  In both instances, the claim was dismissed with prejudice, with the court citing *Williams v. Horvath*.  (*Roberts* at *9; *Valle* at *10-11.)  This is not an open question, and the analysis is not a close call. The Loevy firm's continued assertion of this claim is frivolous.

### F.    Long Has Failed to Plead with Sufficient Factual Specificity or Particularity to State Plausible Claims

The Riverside DA elected to prosecute Long.  The evidence rebutting the presumption of prosecutorial independence "must be substantial."  (*Harper v. City of Los Angeles*, 533 F.3d 1010, 1028 (9th Cir. 2008); *Newman v. County of Orange*, 457 F.3d 991, 994-95 (9th Cir. 2006) (rebuttal evidence cannot consist merely of a plaintiffs own account of events).)  What is the substantial evidence rebutting the prosecution of prosecutorial independence?  Other than Long's own account of the timeline, what is the substantial evidence rebutting Dills' timeline?

Of course, the evidence was not merely sufficient to prosecute, it was sufficient to convict.  A "trial court judgment or verdict in favor of the plaintiff or prosecutor in the underlying case, unless obtained by means of fraud or perjury, establishes probable cause to bring the underlying action, even though the judgment or verdict is overturned on appeal or by later ruling of the trial court."  (*Wilson v. Parker, Covert & Chidester*, 28 Cal.4th 811, 817 (2002).)

Where are the facts showing that the conviction was the product of fraud or perjury?  What was the fraud?  What testimony was perjured?  While Long makes a number of conclusory allegations and legal arguments, she has not made a plausible factual showing that her conviction was obtained by means of fraud or perjury, particularly in light of the record of the proceedings in her criminal case attached to Defendants' request for judicial notice, which plainly shows that it was *not*.

10

Long seems to be attempting to plead a *Devereaux*-style claim, but to sustain such a claim, she must: "at a minimum, point to evidence that supports at least one of the following two propositions: (1) Defendants continued their investigation of [plaintiff] despite the fact that they knew or should have known that he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." (*Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).) "[M]ere allegations that Defendants used interviewing techniques that were in some sense improper, or that violated state regulations, without more, cannot serve as the basis for a claim under § 1983." (*Id*. at 1075.) "Fundamentally, the plaintiff must first point to evidence he contends the government deliberately fabricated." (*Bradford v. Scherschligt*, 803 F.3d 382, 386 (9th Cir. 2015).) What evidence was deliberately fabricated by the government? Where is the coercion?

"Theory, speculation, and an advocate's suppositions cannot do duty for probative facts and valid inferences." (*McSherry v. City of Long Beach*, 584 F.3d 1129, 1136 (9th Cir. 2009) (citation omitted).) "Plaintiff must identify evidence that Defendants acted inappropriately." (*Merritt v. Arizona*, 425 F.Supp.3d 1201, 1219 (D. Ariz. 2019.) The Supreme Court in *Arizona v. Youngblood*, 488 U.S. 51 (1988), held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." (*Id*. at 58.) Where are the facts showing that Defendants failed to preserve exculpatory evidence, much less that they did so in bad faith?

It has been more than 18 years since Long was arrested, more than 16 years since she was convicted, more than a decade since the Innocence Project got involved, and nearly six years since her conviction was vacated and she was released from prison. Is it really too much to expect, after all that time, that Long and her army of attorneys might be able to identify some specific tidbit of evidence that they claim was suppressed, fabricated, or destroyed, or some specific example

11

of the police manipulating a witness's testimony?  Is it too much to expect, after all these years, that they might allege at least some tiny morsel of well-pleaded fact that isn't flatly refuted by the transcript of the criminal trial?

Long is transparently hiding behind generalities because there are no specifics.  What evidence did Defendants supposedly fabricate, or suppress?  What are the facts showing that Dills' critical testimony that he dropped Long off at her house some 49 minutes before she called 911 was somehow coerced by the police?  That is a frivolous allegation in light of Keen's unequivocal admission at the February 24, 2006 sentencing hearing that it was unsupported.  What are the facts showing that any act or omission of any Defendant had any bearing on the outcome of the criminal trial, which was based almost entirely on the testimony of Dills and Virga?  Long's complete inability to identify any such evidence or facts is profoundly telling and renders her claims "implausible" under *Iqbal/Twombly*.

## III.    **CONCLUSION**

Long was convicted of murdering her live-in boyfriend in her own home. The evidence of motive, means and opportunity was more than sufficient not only to convict, but to survive a decade of direct and collateral review.  She got out of jail early on a technicality unrelated to the police or prosecution.  The allegations in Long's cookie-cutter pattern claims, especially read in light of the record of her criminal case, fail on the merits, including for the reasons the same claims were rejected in *Roberts* and *Valle* and, at a minimum, fail to negate qualified immunity.

Dated:    February 21, 2022          CITY ATTORNEY'S OFFICE


                                     By: /s/ _____
                                          JOHN D. HIGGINBOTHAM
                                          Attorneys for Defendants
                                          CITY OF CORONA, *et al*.

10261959_1.DOC