# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY LONG,<br>  Plaintiff,<br><br>   v.<br><br>THOMAS WEEKS, et al.,<br>  Defendants. | CV 21-2008 DSF (Ex)<br><br>Order GRANTING Defendants' Motion to Dismiss Complaint (Dkt. 29) |

  Defendants City of Corona, Thomas Weeks, Ronald Anderson, Daniel Bloomfield, Robert Newman, Daniel Verdugo, and Jeffrey Glenn (Individual Defendants, and collectively with the City, Defendants) move to dismiss Plaintiff Kimberly Long's complaint. Dkt. 29 (Mot.). Plaintiff opposes. Dkt. 38 (Opp'n). The Court deems these matters appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons stated below, Defendants' motion is GRANTED.

## I. BACKGROUND

  In October 2003, Plaintiff's live-in boyfriend, Oswaldo Conde, was murdered in his home. Dkt. 1 (Compl.) ¶¶ 13, 14. Plaintiff arrived home in the early morning hours to find Conde lying motionless on the couch with severe injuries to his head, and immediately called 9-1-1. Id. ¶ 15. When the police arrived, they observed blood on every wall of the living room, no evidence of an attempt to clean up the house, and no one else present at the house other than Plaintiff. Id. ¶¶ 16-17.

  The Individual Defendants were police officers in the Corona Police Department (the CPD) at all relevant times. Id. ¶ 10.

Defendant Weeks was a sergeant and supervisor in charge of the homicide unit of the CPD. Id. ¶ 11. The City is or was the employer of the Individual Defendants. Id. ¶ 12.

Plaintiff alleges that Defendants "fabricated and suppressed evidence" to frame her for Conde's murder and "suppressed highly exculpatory physical evidence showing that [she] could not have been the perpetrator." Id. ¶¶ 26, 28. Plaintiff also alleges that "Defendants manipulated, coerced, and fed information to witnesses to bolster their case against [her], despite her being innocent." Id. ¶ 36.

After one jury trial resulted in a mistrial, Plaintiff was convicted of murdering Conde in a second jury trial. Id. ¶¶ 9, 42-44. Plaintiff was sentenced to fifteen years to life in prison. Id. ¶ 46. In November 2020, the Supreme Court of California vacated Plaintiff's conviction, and all charges against her were dismissed in April 2021. Id. ¶¶ 57-58.

The Complaint asserts claims under 42 U.S.C. § 1983 for violation of due process, illegal detention and prosecution, failure to intervene, conspiracy to deprive constitutional rights, policy and practice (against the City); and state law claims for malicious prosecution, intentional infliction of emotional distress (IIED), civil conspiracy, respondeat superior, and claims under California Civil Code § 52.1 and California Government Code § 825. Id. ¶¶ 59-129.

## II. LEGAL STANDARD

Rule 12(b)(6) allows an attack on the pleadings for failure to state a claim on which relief can be granted. "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557). A complaint must "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. This means

that the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. There must be "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively . . . and factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Ruling on a motion to dismiss will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

### III. REQUEST FOR JUDICIAL NOTICE

Defendants request judicial notice of the reporter's transcript of the criminal proceedings against Plaintiff (Exs. 1, 3, and 5), the decision of the California Court of Appeal on direct review (Ex. 2), and the district attorney's April 22, 2021 press release regarding the dismissal of charges against Plaintiff (Ex. 4). Dkt. 30 (RJN). Plaintiff opposes on the grounds that Defendants' RJN is calculated to "use materials from outside of the complaint to raise factual challenges to the proceedings." Dkt. 37 at 1 (Opp'n to RJN).

Federal Rule of Evidence 201(b) provides that a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." A court may "take judicial notice of matters of public record" but "cannot take judicial notice of disputed facts contained in such public records." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018) (quoting Lee v.

City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001)). Matters of public record include "documents on file in federal or state courts." Harris v. Cnty. of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012).

The Court takes judicial notice of Exhibits 1, 2, 3, and 5. It does not accept any disputed facts as true and considers only the facts specifically stated in this Order.

## IV. DISCUSSION

Defendants contend Plaintiff's complaint should be dismissed because (1) Plaintiff's claims are untimely; (2) the claims subject to Heck v. Humphrey, 512 U.S. 477 (1994) fail for lack of favorable termination on the merits; (3) Counts I-V fail because they fail to identify which of the Defendants is responsible; (4) Plaintiff's state law claims are barred by immunity; (5) Counts VI-VIII fail to plead a statutory basis; (6) Counts VIII, IX and XI fail because they are not cognizable claims for relief; (7) Count X is inadequately pled; (8) Plaintiff does not identify the constitutional basis for her federal claims; and (9) the Individual Defendants are entitled to qualified immunity.

### A. Whether Plaintiff's Claims Are Untimely

Defendants argue Plaintiff's claims are time-barred either by the claim presentation deadlines in the California Government Claims Act or the two-year limitations period. The Court disagrees, with one exception.

Except where inconsistent with federal law, the applicable statute of limitations for § 1983 claims is the forum state's limitations period for personal injury actions. Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004). California's limitations period for personal injury actions is two years. Cal. Code Civ. Proc. § 335.1.

Claims that are analogous to those for malicious prosecution accrue "only once the underlying criminal proceedings have resolved in the plaintiff's favor." McDonough v. Smith, 139 S. Ct. 2149, 2156 (2019) (finding claim for fabrication of evidence leading to prosecution

was analogous to claim for malicious prosecution). "One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused. This requirement avoids parallel litigation over the issues of probable cause and guilt." Heck, 512 U.S. at 485 (simplified). In Heck, the Supreme Court applied the favorable termination requirement to "§ 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement," stating:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment . . . a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . .

Id. at 487.

The Supreme Court recently reaffirmed and extended its holding in Heck, ruling that the statute of limitations for a claim analogous to malicious prosecution or fabrication of evidence "does not begin to run until the criminal proceedings against the defendant (i.e., the § 1983 plaintiff) have terminated in his favor." McDonough, 139 S. Ct. at 2154-55. Additionally, the Ninth Circuit has held that where "a § 1983 plaintiff's conviction is vacated by a state court, that conviction has been 'declared invalid by a state tribunal authorized to make such determination'" under the third prong of Heck "and that Heck is therefore no bar to the suit." Roberts v. City of Fairbanks, 947 F.3d 1191, 1203 (9th Cir. 2020), cert. denied sub nom. City of Fairbanks, Alaska v. Roberts, 141 S. Ct. 1515 (2021).[1]

---

[1] Defendants are correct that under Mills v. City of Covina, 921 F.3d 1161 (9th Cir. 2019), favorable termination "requires a termination reflecting the merits of the action and plaintiff's innocence of the misconduct." Id. at 1170-71 (citing Pattiz v. Minye, 61 Cal. App. 4th 822, 827 (1998)). The Ninth Circuit explained that "'if the dismissal is on technical grounds, for

5

In Thompson v. Clark, 142 S.Ct. 1332, 1341 (2022), the Supreme Court analyzed the consensus of American tort law in 1871 when considering the parameters of the favorable termination requirement in the context of a Fourth Amendment claim for malicious prosecution and clarified that the favorable termination requirement is satisfied as long as the plaintiff can show that "the criminal prosecution ended without a conviction." The plaintiff need not "show that his prosecution ended with some affirmative indication of innocence." Id.

Some § 1983 claims, however, accrue before, or regardless of, favorable termination. In Mills, the Ninth Circuit held that the plaintiff's claims arising from a search in violation of the Fourth Amendment accrued at the time of the plaintiff's arrest in 2013 and were therefore not timely when they were asserted in 2016. 921 F.3d at 1166. Because the plaintiff's claims would have been barred absent equitable tolling, the Ninth Circuit considered whether the statute of limitations elapsed during the plaintiff's criminal appeal, noting that the parties agreed California Government Code § 945.3 tolled the statute of limitations during the proceedings in superior court. Id. at 1166-67. The Ninth Circuit expressly declined to adopt a rule "allowing California plaintiffs to wait until the resolution of their criminal appeals to file their § 1983 claims . . . ." Id. at 1168.

Defendants cite Wallace v. Kato, 549 U.S. 384 (2007), a case also involving a false arrest claim, in support of their argument that the

---

procedural reasons, or for any other reason not inconsistent with his guilt, it does not constitute a favorable termination.' Put differently, "[i]f the resolution of the underlying action leaves some doubt concerning plaintiff's innocence or liability, it is not a favorable termination sufficient to allow a cause of action for malicious prosecution.'" Id. (simplified). However, one year after Mills, the Ninth Circuit explained that the contours of the favorable termination requirement described in Mills are not to be conflated with the four distinct means of favorable termination outlined in Heck. See Roberts, 947 F.3d at 1201 ("Heck's favorable-termination requirement is distinct from the favorable-termination element of a malicious-prosecution claim.").

statute of limitations on Plaintiff's federal claims began to run when she was arrested. But in McDonough, the Supreme Court explained that a claim for false arrest is different from one that "centers on evidence used to secure an indictment and at a criminal trial" because the false arrest claim "has a life independent of an ongoing trial or putative future conviction – it attacks the arrest only to the extent it was without legal process, even if legal process later commences." McDonough, 139 S. Ct. at 2159. The statute of limitations for false-arrest claims begins running when the initial arrest takes place; "the injury caused by a classic malicious prosecution likewise first occurs as soon as legal process is brought to bear on a defendant, yet favorable termination remains the accrual date." Id. at 2160.

Here, Plaintiff's claims pertain to evidence and techniques allegedly used by Defendants to secure her arrest, prosecution, and conviction. Compl. ¶ 2 (second ¶ 2). To the extent Plaintiff's claims are based on conduct leading to her arrest, they are barred because she filed this action in 2021 – more than two years after her arrest. To the extent Plaintiff's claims are based on conduct by Defendants leading to her prosecution and conviction, they are not time-barred.

Plaintiff alleges that "[i]n November 2020, after noting the weakness of the prosecution's evidence against [her], the Supreme Court of California vacated [her] conviction." Compl. ¶ 57. Defendant argues that, "[e]ven assuming *arguendo* that some of Long's claims (malicious prosecution and Monell) did not accrue until her conviction was vacated and she was released from prison, that occurred on June 10, 2016, more than five years before she filed this lawsuit." Mot. at 16. But Plaintiff's case did not terminate in 2016. The termination was not final until at least November 30, 2020, when the California Supreme Court affirmed the trial court's 2016 decision to vacate Plaintiff's conviction on the grounds of ineffective assistance of counsel, reversing the judgment of the court of appeal. In re Long, 10 Cal. 5th 764, 767 (2020). This constituted a declaration of the invalidity of Plaintiff's conviction by a state tribunal authorized to make such a determination consistent with the third prong of Heck. See Heck, 512 U.S. at 487. Additionally, the prosecution ended "without a conviction," so

7

Defendants' argument that no favorable termination occurred because the basis for vacating Plaintiff's conviction was a finding of ineffective assistance of counsel fails under Thompson. Because favorable termination did not occur until 2020, Plaintiff's filing of the Complaint on November 30, 2021 was within the limitations period, and her federal claims pertaining to her prosecution and conviction – but not her arrest – were timely filed.

The Court also finds Plaintiff's state law claims are timely, except to the extent they pertain to her arrest. In Yount v. City of Sacramento, 43 Cal. 4th 885, 902 (2008), the California Supreme Court applied the delayed-accrual rule established in Heck to state law claims that imply the invalidity of a criminal conviction. Yount, 43 Cal. 4th at 902 ("[W]e cannot think of a reason to distinguish between section 1983 and a state tort claim arising from the same alleged misconduct and, as stated above, the parties offer none."); see also Jones v. Whisenand, 8 Cal. App. 5th 543, 557 (2017) ("Our Supreme Court adopted the Heck rule, and extended the rule to common law tort causes of action").

However, the Court notes that the Complaint does not allege when Defendants' conduct occurred and who took the specific actions Plaintiff alleges resulted in fabrication and suppression of evidence, suppression of exculpatory evidence, and manipulation and coercion of witnesses to bolster Defendants' case against Plaintiff. See Compl. ¶¶ 26, 28, 36. Therefore, the Complaint does not clearly allege whether what Defendants did caused Plaintiff's arrest – and would be time-barred – or helped the prosecution and conviction.

**B.     Whether Plaintiff Has Stated a Claim**

> **1.     Immunity Under California Government Code Section 821.6**

Defendants contend Plaintiff's claim for malicious prosecution (Count VI) is barred by qualified immunity under California Government Code Section 821.6. Defendants also argue that Counts VII-XI are barred because they "seem to be based on the same facts and legal theories." Mot. at 20.

8

California Government Code Section 821.6 provides: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov't Code § 821.6. Plaintiff concedes her claim for malicious prosecution is barred by Section 821.6. Opp'n at 18 & n.5. The Court therefore DISMISSES Count VI.

However, the Court declines to dismiss Counts VII-XI for failure to state a claim because Section 821.6 is confined to actions for malicious prosecution. Garmon v. Cty. of L.A., 828 F.3d 837, 847 (9th Cir. 2016). The Ninth Circuit has repeatedly declined to extend Section 821.6 to other claims because the California Supreme Court has not done so. See Sharp v. Cty. of Orange, 871 F.3d 901, 920-21 (9th Cir. 2017) (finding no immunity for state law claims under Section 52.1, false imprisonment, assault and battery, negligent infliction of emotional distress, and trespass); Mendez v. Cty. of L.A., 897 F.3d 1067, 1083 (9th Cir. 2018) (finding Section 821.6 did not bar negligence claim against public employee).

### 2. Failure to Plead Statutory Basis

Defendants argue Counts VI-VIII for malicious prosecution, IIED, and civil conspiracy also fail as against the City because Plaintiff has not pled a statutory basis for those claims. Defendants also argue the City is not a proper defendant as to Plaintiff's claim for civil conspiracy, but neither of the parties cites case law on this point, and it is not the role of the Court to make parties' arguments for them. See Indep. Towers of Wash. v. Washington, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court.").

As for Plaintiff's claim for IIED, a plaintiff adequately pleads a claim against a municipality as long as the plaintiff plausibly pleads the underlying tort and vicarious liability. See Burgess v. Cty. of San Diego, No. 21-CV-616-MMA (MSB), 2021 WL 5810662, at *4 (S.D. Cal. Dec. 7, 2021); Young v. City of Menifee, No. EDCV 17-1630 JGB (SPx),

9

2019 WL 3037926, at *11 (C.D. Cal. Apr. 5, 2019). In addition to the allegations contained in Plaintiff's claim for respondeat superior, Plaintiff alleges that "[t]he City is liable for all torts committed by Defendants pursuant to California law." Compl. ¶ 12. Plaintiff also alleges that the Individual Defendants acted "under the color of law and within the scope of their employment for the City of Corona." Id. ¶ 10. However, as stated above, Plaintiff has not sufficiently pled what wrongful acts were performed by which Individual Defendants and what acts, if any, occurred in connection with Plaintiff's arrest. Plaintiff's presently conclusory allegations concerning IIED fail to plausibly allege a claim against any specific Defendant and therefore also fail to plausibly allege the City's liability for IIED.

### 3. Claims Against Public Entities

Defendants contend Counts VIII, IX, and XI for civil conspiracy, respondeat superior, and indemnification under California Government Code Section 825 fail because they "are not cognizable claims for relief, particularly as against a public entity." Mot. at 21.

Under California law, "[t]here is no separate tort of civil conspiracy and no action for conspiracy to commit a tort unless the underlying tort is committed and damage results therefrom." Julian v. Mission Cmty. Hosp., 11 Cal. App. 5th 360, 390 (2017) (simplified) (finding claim for conspiracy not actionable because plaintiff had not alleged a state tort cause of action and could not show deprivation of her constitutional rights resulting from the alleged conspiracy); see also Sprewell v. Golden State Warriors, 266 F.3d 979, 992 (9th Cir. 2001) (holding that "to sustain a claim of civil conspiracy, [plaintiff] must prove that the [defendants] have committed an underlying tort."). To support a civil conspiracy claim, a plaintiff must allege: "(1) the formation and operation of the conspiracy; (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." Kidron v. Movie Acquisition Corp., 40 Cal. App. 4th 1571, 1581 (1995). "[T]he conspiring defendants must have actual knowledge that a tort is planned and concur in the scheme with knowledge of its unlawful purpose." Navarrete v. Meyer, 237 Cal. App.

4th 1276, 1292 (2015), as modified (July 22, 2015). The Court therefore declines to dismiss Plaintiff's civil conspiracy claim on the grounds that it is not cognizable.

With respect to Plaintiff's respondeat superior claim under California Government Code Section 815.2, the Court finds this is not a claim for relief, but rather a theory of liability. See, e.g., Raudelunas v. City of Vallejo, No. 2:21-CV-00394-KJM-JDP, 2022 WL 329200, at *13 (E.D. Cal. Feb. 3, 2022) ("Other district courts have recognized that respondeat superior is not a standalone cause of action, but rather a theory of liability."); A.H. v. Cnty. of Tehama, No. 2:18-CV-02917-TLN-DMC, 2020 WL 4474909, at *14 (E.D. Cal. Aug. 4, 2020) ("[Section] 815.2 does not, in of itself, create a standalone cause of action.").

California Government Code Section 825 provides that the government will pay on an employee's behalf the judgment arising from "any claim or action against him or her for an injury arising out of an act or omission occurring within the scope of his or her employment as an employee of the public entity . . . ." Cal. Gov't Code § 825. This section is intended to indemnify public employees against judgments, rather than to award damages to a successful plaintiff. Because Plaintiff cannot recover under Section 825, her indemnification claim cannot succeed.

### 4. Bane Act Claim

Defendants move to dismiss Plaintiff's Bane Act claim (Count X) on the grounds that it (1) does not impose a mandatory duty on public agencies; and (2) fails against all Defendants because the Complaint does not allege threats, intimidation, or coercion.

The Bane Act creates a cause of action against any person who "interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion," with the constitutional rights of an individual. Cal. Civ. Code § 52.1(b). To state a claim under the Bane Act, Plaintiff must allege "(1) interference with or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats,

intimidation, or coercion." Allen v. City of Sacramento, 234 Cal. App. 4th 41, 67 (2015), as modified on denial of reh'g (Mar. 6, 2015).

Defendants do not explain why Plaintiff's Bane Act claim allegedly fails as a matter of law against the City, and at any rate, "the valence of authority supports the proposition that agency liability applies to Bane Act claims." Est. of Mendez v. City of Ceres, 390 F. Supp. 3d 1189, 1214 (E.D. Cal. 2019).

Plaintiff alleges that "Defendants intentionally interfered with Plaintiff's exercise or enjoyment of rights secured by the U.S. Constitution and the laws of California" and that "Defendants' conduct in interfering with Plaintiff's rights was carried out by threats, intimidation, and or coercion, as described above" in the Complaint. Compl. ¶¶ 123-24. However, Plaintiff does not allege Defendants threatened, intimated, or coerced her, rather than other witnesses. Neither the parties nor the Court have identified cases imposing liability under the Bane Act when the alleged threatening, intimidating, or coercive acts were perpetrated on someone other than the plaintiff, and the legislative history does not provide any indication that the state legislature intended liability in such a case.[2]

The Court finds Plaintiff has failed to plausibly allege a claim under the Bane Act.

### 5. Failure to Identify Which Defendants are Liable

Defendants contend Counts I-V fail under Federal Rule of Civil Procedure 8 because they fail to identify which of the Defendants is responsible for which alleged violations.

"The Twombly plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that

---

[2] The legislative history of the Bane Act states it was intended to be a deterrent to hate crimes.

12

makes the inference of culpability plausible." Soo Park v. Thompson, 851 F.3d 910, 928 (9th Cir. 2017) (citing Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010). But Defendants argue that "[e]ach Defendant has a legitimate right to know what Long alleges he did wrong with considerably more factual specificity than is currently included in the Complaint," and that Plaintiff should have pleaded with more specificity what each Defendant was alleged to have done, given that "[s]he has had 18+ years to figure that out" and "[t]he criminal case was extensively litigated, including two jury trials." Mot. at 18-19. While Defendants presumably know the role, if any, they had with respect to the events at issue, they are entitled to know what role Plaintiff claims each had in the arrest, prosecution, and conviction.

Plaintiff alleges the Individual Defendants were police officers in the CPD, Compl. ¶ 10; Weeks was a sergeant and supervisor in charge of the homicide unit of the CPD, id. ¶ 11; and the City is or was the employer of the Individual Defendants, id. ¶ 12. With a few exceptions, the Complaint does not sufficiently allege the specific actions taken by each Individual Defendant and instead states the actions were undertaken by Defendants "while acting individually, jointly, and in conspiracy with one another," depriving Plaintiff of her constitutional rights. See id. ¶¶ 60, 72, 79, 85. Plaintiff does not adequately allege the different roles played by each of the Individual Defendants in the various stages of her arrest, prosecution, and conviction, making it impossible to determine whether any of the Individual Defendants should be dismissed, particularly in light of the Court's finding that Plaintiff's claims pertaining to her arrest are untimely. While some courts have applied Rule 8 leniently and permitted group pleadings in cases alleging police misconduct, the Court finds such leniency is not appropriate here, where Plaintiff unquestionably has substantial information provided to her counsel by law enforcement and the prosecution as required by law, transcripts relating to two jury trials and several hearings and appeals, and court decisions stating what information those courts relied on. She obviously knows exactly what evidence was presented at trial, and asserts she knows certain evidence was suppressed. The Court finds Plaintiff is not as reliant on discovery

13

procedures to determine the basic facts underlying the claims alleged in her Complaint as most civil rights plaintiffs and has not satisfied the pleading standard on a motion to dismiss. See Roberts v. Cnty. of Riverside, No. EDCV 19-1877 JGB (SHKx), 2020 WL 3965027, at *3 (C.D. Cal. June 5, 2020) (collecting cases).

As to the Monell claim, Defendants argue "it is impossible to determine which of the City's alleged customs, policies, and practices resulted in Long's alleged constitutional harm." Mot. at 19. At the motion to dismiss stage, the pleading standard articulated in Twombly and Iqbal applies to Monell claims; a plaintiff must allege plausible facts supporting the asserted policy or custom. AE v. Cnty. of Tulare, 666 F.3d 631, 637 (9th Cir. 2012). Here, Plaintiff alleges in conclusory and shotgun fashion that the City (1) "did not have adequate rules, regulations, policies and procedures governing questioning of criminal suspects, questioning of witnesses, preparation and presentation of witness testimony, preservation and disclosure of investigative materials and evidence, and the training, supervision, and discipline of employees and agents of the City of Corona and the Corona Police Department"; (2) "was aware of the need for adequate policies, training, and supervision, was deliberately indifferent to the need"; and (3) "made a deliberate choice not to adopt adequate policies, training, or supervision." Compl. ¶ 94. Plaintiff also alleges the City had widespread practices of depriving suspects of exculpatory evidence, subjecting them to criminal proceedings based on false evidence, or depriving those individuals of their liberty without probable cause, "such that individuals were routinely implicated in crimes to which they had no connection and for which there was scant evidence to suggest that they were involved." Id. ¶ 95. No factual support is submitted for this claim.

In the absence of more specific detail, the Court agrees that Plaintiff has failed to plausibly plead her Monell claim.

The Court finds Plaintiff has failed to satisfy Rule 8 with respect to Claims I-V.

14

### 6. Rebuttal of Presumptions Established in Criminal Trial

Defendants argue that the Complaint "establishes as a matter of law that probable cause existed to prosecute her for murder because of the prosecutorial decision to charge and the state court's decision to hold her to answer following a preliminary hearing." Mot. at 22. But Plaintiff alleges Defendants "suppressed and fabricated evidence to secure Long's arrest,[3] prosecution, and conviction" and suppressed exculpatory evidence and police reports undermining another suspect's alibi, Compl. ¶¶ 2-4, which undermines Defendants' reliance on prosecutorial discretion.[4]

In any event, the proper standard on a motion to dismiss is whether Plaintiff plausibly pleaded the elements of her claims. Defendants claim "t]here are really only three (3) factual allegations in the Complaint which even arguably rise to the level of well-pleaded facts." Mot at 9-13. First, Plaintiff alleges that Defendants "fabricated and suppressed evidence" to frame her for the crime of murdering Conde and "suppressed highly exculpatory physical evidence showing that Long could not have been the perpetrator." Compl. ¶¶ 26, 28. Specifically, Plaintiff states Defendants suppressed an "essential report" documenting that Plaintiff's clothing found at the crime scene was free of blood. Id. ¶¶ 28-34. However, at trial, the prosecution elicited testimony from Defendant Verdugo, who referred to a report and stated the female clothing found at the scene of the crime did not contain any blood. Dkt. 30-3 at 528-29. In fact, the prosecution used the fact that no blood was found on Plaintiff's clothing in support of its

---

[3] As the Court explained above, Plaintiff's claims based on her arrest are time-barred.

[4] As previously noted, this is an unacceptable group pleading. Plaintiff also alleges that "Defendants manipulated other witnesses into corroborating the false timeline they fabricated to match Defendants' theory of the case" but does not allege the names of any of those witnesses. Id. ¶ 38. Plaintiff should plead the facts in her possession concerning which officers manipulated which witnesses.

prosecution. Dkt. 30-5 at 1023-24. These judicially noticeable statements[5] from the state court transcript appear to directly rebut Plaintiff's allegation that Defendants suppressed exculpatory physical evidence regarding the lack of blood on the clothing found at the crime scene.

Second, Plaintiff alleges Defendants suppressed reports of their interactions with a suspect, Shiana Lovejoy, which allegedly "showed that her alibi was implausible and that she had the opportunity to commit the murder." Compl. ¶ 27. However, at trial, both the prosecution and defense examined the man Lovejoy was on a date with on the evening before Conde's murder, as well as the manager of the motel at which Lovejoy and that man stayed that evening. Dkt. 30-1 at 125-44. Although it appears doubtful that Plaintiff will prevail on her claim that Defendants suppressed information about Lovejoy's alibi[6], this testimony does not directly address what information was initially provided to the prosecutor before the charging decision was made.

Third, Plaintiff alleges that "Defendants manipulated, coerced, and fed information to witnesses to bolster their case against Long, despite her being innocent." Compl. ¶ 36. Plaintiff specifically alleges that Defendant Weeks told Jeff Dills, who was with Plaintiff on the night of Conde's murder, that he was a suspect, and "fed Dills information about the investigation and forced him to adopt a false timeline of events that placed Long at the scene of the crime at a time that undermined her alibi and created a window in which she could have committed the murder." Id. ¶ 37. However, at the conclusion of Plaintiff's trial, Plaintiff's counsel stated he reviewed the transcript of Dills' interview with police officers, and had determined the officers had not told Dills what to say regarding his or Plaintiff's guilt or innocence, nor had Dills asked them what to say. Dkt. 30-5 at 1212-14.

---

[5] These statements are not disputed. In fact, Plaintiff relies on their accuracy in arguing her innocence. In any event, the Court does not consider them for their truth, but simply as evidence that the evidence was presented at trial.

[6] Again, the Court is not relying on the truth of any of the statements.

16

Though this statement certainly provides some support for the Defendants' position, and it is a statement of Plaintiff's own counsel, it does not establish that there were no other conversations between Weeks and Dills that may not have been recorded.

Though the Defendants may well prevail on this issue on a motion for summary judgment, the Court finds Plaintiff may be able to plausibly allege lack of probable cause when the other defects in her pleading have been remedied.

### 7. Qualified Immunity

Finally, Defendants argue the Individual Defendants are entitled to qualified immunity, asserting "there was no clearly established law in 2003 precluding [Plaintiff's] arrest, nor requiring the officers to handle the investigation any differently." Id. at 25.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009). Qualified immunity is an entitlement not to go to trial, not merely a defense from liability. Saucier v. Katz, 533 U.S. 194, 200 (2001). It should be decided early in the proceedings. Id. Analysis of the qualified immunity defense is a two-prong inquiry. The Court asks whether, on the facts alleged, a constitutional right has been violated. If no such right has been violated, the plaintiff cannot prevail. Id. at 200-01.

The Court must also consider whether that right was "clearly established." "Clearly established" means the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 201 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 201. "While we do not require a case on all fours, 'existing precedent must have placed the

17

statutory or constitutional question beyond debate.'" Rico v. Ducart, 980 F.3d 1292, 1298 (9th Cir. 2020) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)).

A plaintiff bears the initial burden of proving that the rights allegedly violated by defendants were clearly established at the time of the alleged misconduct. Davis v. Scherer, 468 U.S. 183, 197 (1984); Houghton v. South, 965 F.2d 1532, 1534 (9th Cir. 1992). If the plaintiff meets his burden, then the burden shifts to the defendant to establish his actions were reasonable, even if they violated the plaintiff's rights. Doe v. Petaluma City Sch. Dist., 54 F.3d 1447, 1450 (9th Cir. 1995).

"[T]he proper fact-specific inquiry under Anderson is not whether the law is settled, but whether, in light of clearly established law and the information available to him, a reasonable person in [the defendant's] position could have objectively believed his actions to be proper." Floyd v. Laws, 929 F.2d 1390, 1394 (9th Cir. 1991) (citing Anderson, 483 U.S. at 641). "Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" Rico, 980 F.3d at 1298 (quoting D.C. v. Wesby, 138 S. Ct. 577, 589 (2018)).

Typically, when "defendants assert qualified immunity in a motion to dismiss under Rule 12(b)(6), 'dismissal is not appropriate unless [the court] can determine, based on the complaint itself, that qualified immunity applies.'" O'Brien v. Welty, 818 F.3d 920, 936 (9th Cir. 2016).[7] Plaintiff cites binding precedent that fabricating evidence, suppressing exculpatory evidence, and using false evidence violates due process, and has therefore met the "clearly established" prong.

As discussed above, the assertion of suppression of the lack of blood on Plaintiff's clothes appears demonstrably false. But the issues of the alternative suspects and possible comments by Weeks to Dills are disputed. A finding of qualified immunity at this stage of the proceedings is premature.

---

[7] It is not clear whether this includes judicially noticeable facts. The Court need not decide the issue.

## V. CONCLUSION

Defendants' motion to dismiss is GRANTED. Counts VI (malicious prosecution), IX (respondeat superior), and XI (indemnification) are DISMISSED with prejudice. Counts I-V, VII, VIII, and X are DISMISSED with leave to amend, if Plaintiff can do so consistent with this Order and Rule 11 of the Federal Rules of Civil Procedure. Plaintiff must state the constitutional basis for her § 1983 claims. Should Plaintiff choose to file an amended complaint, it must be filed and served no later than May 18, 2022.[8] Failure to file by that date will waive the right to do so. The Court does not grant leave to add new defendants or new claims. Leave to add defendants or new claims must be sought by a separate, properly noticed motion.

IT IS SO ORDERED.

Date: April 18, 2022

Dale S. Fischer
United States District Judge

---

[8] The present complaint separately numbers the "JURISDICTION AND VENUE" and the "INTRODUCTION" sections. Any amended complaint must number all paragraphs consecutively.