**Megan Pierce** (SBN 314044)
**Ruth Brown**, IL Bar: 6299187*
**Steven Art**, IL Bar: 6302319*
**Makeba Rutahindurwa**, IL Bar: 6335098*
ruth@loevy.com
Loevy & Loevy
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
Phone: (312) 243-5900

**Jan Stiglitz** (SBN 103815)
js@cwsl.edu
Law Office of Jan Stiglitz
14462 Garden Tr.
San Diego, CA 92127
Phone: (619) 807-5890

**Michael D. Seplow** (SBN 150183)
mseplow@sshhzlaw.com
Schonbrun Seplow Harris
Hoffman & Zeldes LLP
9415 Culver Boulevard, #115
Culver City, CA 90232
Phone: (310) 396-0731
*Admitted pro hac vice*

*Counsel for Plaintiff*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LOEVY & LOEVY
Attorneys at Law

# UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY LONG,       Plaintiff, <br><br> v. <br><br> THOMAS WEEKS, et al., <br><br>       Defendants. | Case No. 5:21-cv-02008-FWS <br><br> Hon. Fred W. Slaughter, District Judge <br><br> Magistrate Judge Charles F. Eick <br><br> **PLAINTIFF LONG'S RESPONSE TO MOTION TO DISMISS OF DEFENDANT CIY OF CORONA (Dkt. 69-1)** <br><br> Hearing Date: September 1, 2022 <br> Time: 10:00 AM <br> Place: Courtroom 10D (by Zoom) <br> Trial Date: None set |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LOEVY & LOEVY
Attorneys at Law

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION ..................................................................................... 1

ALLEGATIONS IN FIRST AMENDED COMPLAINT ............................ 2

I.    Oswaldo Conde is murdered ........................................................ 2

II.   Defendants frame Plaintiff for Conde's murder.............................. 2

III.  The Defendant Officers conspired to frame Long,
      acting pursuant to Defendant City of Corona's policies
      and practices ............................................................................... 7

IV.   Long was wrongfully convicted and then exonerated ................... 8

V.    Long filed this lawsuit to redress Defendants' deprivations
      of her rights ............................................................................... 8

STANDARD OF REVIEW ........................................................................ 9

ARGUMENT ........................................................................................... 10

I.    This Court should reject Defendants' efforts to contradict
      the Complaint with a skewed reading of outside materials ......... 10

      A.    This Court should not take judicial notice of the
            outside materials ............................................................... 10

      B.    Defendants' factual narrative is flatly incorrect.............. 13

II.   Long's *Monell* claims are plausibly pleaded................................ 15

      A.    Long has alleged violation of her constitutional rights .... 15

      B.    Long has pleaded *Monell* claims that comply with Rule 8. .............. 15

            1.    Long adequately pleads express policy theories ......... 17

            2.    Long adequately pleads widespread practice theories. .............. 18

            3.    Long adequately pleads failure to train and supervise
                  theories.................................................................... 20

            4.    Long adequately pleads final policymaker theories. ................... 21

            5.    Long adequately pleads ratification theories. ............................ 22

III.   Long's state law claims were timely presented and filed............................23

IV.    The City establishes no basis for dismissal of Long's state

       law claims. ...............................................................................................24

VI.    Any dismissal should be without prejudice. ..............................................25

CONCLUSION...................................................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LOEVY & LOEVY
Attorneys at Law

# TABLE OF AUTHORITIES

*CASES*

*AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631
  (9th Cir. 2012)...................................................................17

*Alba v. City of Barstow*, 2019 WL 1757983
  (C.D. Cal. Jan. 30, 2019).................................................22

*Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014).......................23

*Alvarez v. Hill*, 518 F.3d 1152 (9th Cir. 2008) ......................9

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)....................9, 16

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696
  (9th Cir. 1997)..................................................................25

*Barahona v. Union Pac. R.R.*, 881 F.3d 1122
  (9th Cir. 2018)..................................................................25

*Bd. of County Commissioners v. Brown*, 520 U.S. 397
  (1997)................................................................................19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............9, 16

*Christie v. Iopa*, 176 F.3d 1231 (9th Cir. 1999) .............16, 22

*Gill v. City of Milwaukee*, 850 F.3d 335 (7th Cir. 2017) ......19

*Eric Burrell M. v. Berryhill*, 2019 WL 2719411
  (C.D. Cal. June 28, 2019).................................................21

*Estate of Alejandro Sanchez v. County of Stanislaus*,
  2019 WL 1745868 (E.D. Cal. April 18, 2019)..................23

*Fairley v. Luman*, 281 F.3d 913 (9th Cir. 2002).................15

*Gibson v. County of Washoe*, 290 F.3d 1175 (9th Cir. 2002) ....18

*Gillette v. Delmore*, 979 F.2d 1342 (9th Cir. 1992) .......16, 21

*Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372
  (7th Cir. 2017) (en banc).................................................18

*Gregg v. Hawaii Dep't of Pub. Safety*, 870 F.3d 883
  (9th Cir. 2017)....................................................................9

*Heck v. Humphrey*, 512 U.S. 477 (1994) ......................23, 24

*Horton v. Santa Maria*, 915 F.3d 592 (9th Cir. 2019).........15

LOEVY & LOEVY
Attorneys at Law

*In re Long*, 10 Cal.5th 764 (2020) ...................................................... 13, 14

*Jackson v. Barnes*, 749 F.3d 755 (9th Cir. 2014)............................... 16, 20

*Jett v. Dallas Independent School Dist.*, 491 U.S. 701 (1989)............................22

*Johnson v. City of Shelby*, 574 U.S. 10 (2014) .........................................16, 19, 20

*Jones v. Bock*, 549 U.S. 199 (2007).........................................................23

*Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621 (9th Cir. 1988) ......................16

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) ............. 10, 11

*Leatherman v. Tarrant County Narcotics Intel. & Coordination Unit*,
    507 U.S. 163 (1993) .........................................................................16

*Lee v. City of L.A.*, 250 F.3d 668 (9th Cir. 2001)........................................11, 16, 22

*Long v. County of L.A.*, 442 F.3d 1178 (9th Cir. 2006) ..............................16

*Long v. Johnson*, 736 F.3d 891 (9th Cir. 2013) .........................................13

*Mack v. South Bay Beer Distribution*, 798 F.2d 1279 (9th Cir. 1986)...................11

*McDonough v. Smith*, 139 S. Ct. 2149 (2019)............................................ 23, 24

*Meehan v. L.A.*, 856 F.2d 102 (9th Cir. 1988) ...........................................20

*Menotti v. City of Seattle*, 409 F.3d 1113 (9th Cir. 2005)...........................19

*Monell v. Department of Social Services*, 436 U.S. 658 (1978)............................8

*O'Brien v. Welty*, 818 F.3d 920 (9th Cir. 2016) ..........................................9

*Pac. Coast Fed'n of Fishermen's Assocs. v. Glaser*, 945 F.3d 1076
    (9th Cir. 2019)................................................................................9

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) .................................. 16, 21

*Reese v. Cnty. of Sacramento*, 888 F.3d 1030 (9th Cir. 2018) ...........................24

*Reina-Rodriguez v. U.S.*, 655 F.3d 1182 (9th Cir. 2011)......................................11

*Roberts v. Cnty. of Riverside*, 2020 WL 3965027
    (C.D. Cal. June 5, 2020) .................................................................24

*Rosales-Martinez v. Palmer*, 753 F.3d 890 (9th Cir. 2014)..............................24

*Sagana v. Tenorio*, 384 F.3d 731 (9th Cir. 2004) ......................................9

*Scheuer v. Rhodes*, 416 U.S. 232 (1974)....................................................9

*Scott v. Kuhlmann*, 746 F.2d 1377 (9th Cir. 1984) ...................................23

LOEVY & LOEVY
Attorneys at Law

*Shah v. County of L.A.*, 797 F.2d 743 (9th Cir. 1986) ...........................................16

*Skaff v. Meridien North America Beverly Hills, LLC*,
    506 F.3d 832 (9th Cir. 2007) .........................................................................23

*Skinner v. Switzer*, 562 U.S. 521 (2011) ....................................................................9

*Southern Cross Overseas Agencies, Inc. v.*
*Wah Kwong Shipping Group Ltd.*, 181 F.3d 410
    (3rd Cir. 1999) ................................................................................................11

*St. Louis v. Praprotnik*, 485 U.S. 112 (1988) ..........................................................22

*Stapley v. Pestalozzi*, 733 F.3d 804 (9th Cir. 2013) ..............................................2, 9

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ..........................................................17

*Thompson v. City of L.A.*, 885 F.2d 1439 (9th Cir. 1989).......................................16

*Tsao v. Desert Palace*, 698 F.3d 1128 (9th Cir. 2012) ..........................................16

*Vasquez v. County of San Bernardino*, 2017 WL 10545385
    (C.D. Cal. Oct. 4, 2017) .................................................................................22

*Yount v. City of Sacramenta*, 43 Cal. 4th 885 (2008) ......................................23, 24

**RULES**

Federal Rule of Civil Procedure 8(a) ....................................................................9, 16

Federal Rule of Civil Procedure 12(b)(6).........................................................9, 10, 13

Federal Rule of Civil Procedure 15(a)(2)..................................................................25

Federal Rule of Evidence 201 ..........................................................................11, 13

**INTRODUCTION**

Kimberly Long brings this action to redress her wrongful prosecution and conviction for a murder she did not commit. As a result of Defendants' misconduct, Plaintiff spent over seven years wrongly incarcerated for the murder of her live-in boyfriend, Oswaldo Conde. Plaintiff alleges in detail how Defendants Weeks, Anderson, Bloomfield, Newman, Verdugo, and Glenn committed acts of misconduct to frame her, explaining how they suppressed exculpatory evidence that contravened their theory of guilt and evidence that could have been used to impeach key witnesses, including police witnesses; fabricated false witness statements; and concealed communications with alternative suspects that exposed inconsistencies in the alternative suspects' alibis. As Long fought to clear her name, numerous courts expressed doubts about her guilt. In November 2020, the California Supreme Court threw out her conviction. Long's nightmare finally ended in April 2021, when the charges against her were dropped.

Defendants now seek dismissal of all of Long's claims for a second time. But the allegations in Plaintiff's First Amended Complaint ("Complaint") soar far above the plausibility standard imposed by Rule 8, and state clearly established constitutional violations. In arguing otherwise, Defendants mischaracterize Plaintiff's claims, misstate the law, and omit controlling precedent. They also mischaracterize and omit Long's allegations, draw inferences in their own favor, and fail to take the allegations as true. Perhaps most problematically, Defendants improperly propose to resolve the motions to dismiss based on a disputed set of facts that they put forward, which directly contradict the complaint and rely on a selective and misleading reading of documents from Plaintiff's criminal proceedings—the same proceedings that Plaintiff alleges were tainted by Defendants' misconduct. Defendants ask the Court to delve into these disputed issues of fact at the pleading stage based on a one-sided reading of more than 2,000 pages of records, and to resolve those issues in their favor, prior to discovery. This strategy should be rejected outright. Later in the proceedings,

- 1 -

Defendants will be free to present their alternative narratives to the triers-of-fact. But at the pleading stage, Long's allegations are more than sufficient and provide ample notice of her claims against each of the Defendants.

**ALLEGATIONS IN FIRST AMENDED COMPLAINT**

In exquisite detail, Long's First Amended Complaint ("Complaint," Dkt. 61) alleges specific acts of investigative misconduct committed by each Defendant that caused her to be wrongfully convicted of murdering her boyfriend, Oswaldo Conde. Those allegations, recounted below, are taken as true, and inferences are drawn from them in Long's favor. *Stapley v. Pestalozzi*, 733 F.3d 804, 809 (9th Cir. 2013).

**I.    Oswaldo Conde is murdered.**

Conde was brutally murdered in the home that Long shared with him in 2003, sometime between the late evening of October 5, and the early morning of October 6. Dkt. 61 ¶¶4, 22. Long was out with a friend at the time. *Id.* She returned home to find Conde lying motionless on the couch in the living room with severe injuries to his head, and she immediately summoned the police by calling 911. *Id.* ¶24.

No forensic or physical evidence tied Plaintiff to the crime. *Id.* ¶¶82-84. Responding officers observed blood splatter on every wall of the living room and found no evidence of an attempt by Long to clean herself off. *Id.* ¶¶26-28. Defendants knew that the perpetrator would have been covered in blood, and yet there was no blood on Plaintiff's clothes. *Id.* ¶¶26-28, 52-54, 99.

Defendants also knew of and investigated at least two other alternative suspects. The first was Conde's violent ex-girlfriend Shiana Lovejoy, who Defendants learned had recently made threats against Conde. *Id.* ¶33, 36, 40-45. The second was Long's ex-husband, Joe Bugarski, who Defendants also learned had recently threatened Conde. *Id.* ¶¶37, 40-49. Defendants had ample reason to suspect these individuals, and no reason to suspect Plaintiff. *Id.* ¶¶ 40-49.

**II.    Defendants frame Plaintiff for Conde's murder.**

Nonetheless, Defendants initiated an investigation, led by Weeks and

- 2 -

Anderson, that pursued Long at the exclusion of any other suspects. As alleged in detail in the Complaint, to accomplish this task, the individual Defendants engaged in a conspiracy and resorted to investigative misconduct to exonerate the alternate suspects and falsely pin the crime on Long. *Id.* ¶¶4-10, 40-76.

As part of this scheme, Plaintiff alleges that the Defendants, including—and specifically—Anderson and Weeks, suppressed police reports that they wrote about Bugarski and Lovejoy. *Id.* ¶¶41-43. These reports questioned the credibility of these two alternative suspects in the murder and documented that Defendants thought they were lying. *Id.* Included among the suppressed reports were two written by Anderson, which reflected Defendants' belief that Bugarski was lying during the investigation and might be involved in the murder. *Id.* ¶¶41-43. Defendants including Anderson and Weeks also suppressed police reports that recounted how Lovejoy had previously lied to police officers by denying that she had vandalized Conde's truck before the murder. These suppressions of material exculpatory and impeachment police reports deprived Long of the opportunity during her criminal trial to undermine Bugarski's and Lovejoy's credibility by cross-examining them with their lies to police. *Id.* ¶44. In addition, they stopped Long from impeaching Defendants' own account that Long was the sole suspect in the crime. *Id.* ¶¶40, 97.

The suppression of these reports was particularly damaging given that Long's trial turned on the jury's assessment of the credibility of different suspects. *Id.* ¶¶41, 44-45. For example, because of Defendants' suppression, the prosecution was able to present Lovejoy to the jury as a credible witness—a truth-teller who admitted to police when she broke the law—and the defense was unable to rebut that presentation with evidence of Lovejoy's past lies to police about vandalizing Conde's truck. *Id.*

Defendants including Weeks, Anderson, and Bloomfield also suppressed evidence that gave the Defendants reason to doubt—and that actually caused them to doubt—Lovejoy's and Bugarski's alibis for the time of the crime. *Id.* ¶46. For example, Weeks, Anderson, and Bloomfield suppressed documents that detailed the

- 3 -

1  alibi Bugarski provided for the morning of October 6th; they suppressed all of the
2  information provided by Bugarski in an early interview with weeks, including details
3  about his alibi; and they suppressed information provided to Anderson by Bugarksi
4  during the portions of an interview that Anderson purposefully conducted away from
5  a recording device so he could conceal it. *Id.* ¶¶47, 48. Bugarski's earlier accounts of
6  his alibi provided reason to suspect him of the crime. But those accounts were
7  suppressed, and Bugarski instead had multiple days to refine his alibi, with alibi
8  witnesses and in concert with police officers determined to exonerate him and pin the
9  crime on Long. *Id.* ¶49. But because these Defendants suppressed Bugarski's earlier
10  accounts, Long could not later impeach Bugarski's alibi during the criminal
11  proceedings, and she could not impeach the police account that she was the
12  perpetrator of the crime. *Id.* ¶¶41, 46-49, 96-97.

13      Defendants including Bloomfield, Anderson, and Newman also conducted
14  interviews with Lovejoy prior to her recorded polygraph examination, but they
15  suppressed the contents and recordings of those interviews, including Lovejoy's
16  statements about her alibi, so that they could not be used by Long's defense. *Id.* ¶50.
17  The contents and recordings of these interviews would have showed that police knew
18  Lovejoy's alibi was implausible, that she had the opportunity to commit the murder,
19  and that she lacked credibility. *Id.*

20      Defendants including Anderson and Weeks also suppressed highly exculpatory
21  physical evidence showing that they knew Long could not have committed the crime.
22  *Id.* ¶51. For example, Anderson and Weeks suppressed documents written by
23  Anderson indicating that he—accompanied by Weeks, Verdugo, Bloomfield, and
24  Newman—had discovered the jacket Long had been wearing at the time she found
25  Conde's body, he had found it on the rug near where Long had discovered the body,
26  and he had observed that the jacket had no blood on it. *Id.* ¶52. While Long's jacket
27  found on the floor at the crime scene had no blood on it, the rug and everything
28  around the jacket were covered in blood. *Id.* ¶52. Given the 360-degree radius of the

LOEVY & LOEVY
Attorneys at Law

- 4 -

blood spatter, these Defendants knew it would have been impossible for the
perpetrator to have remained blood-free during the commission of the crime. *Id.* ¶53.
Nonetheless, Anderson and Weeks suppressed Anderson's report indicating that
police could see that Long's jacket was blood-free when it was discovered in the
middle of the bloody rug, and thus that Long could not have been present at the time
of the murder. *Id.* ¶54. This essential, suppressed report showed that Defendants'
initial impression of the physical evidence fully supported Long's account of
discovering Conde dead, and it fatally undermined Defendants' theory that Long was
the murderer. *Id.* ¶ 55. The suppressed report also impeached the Defendants' own
account of how the crime had occurred and how they had investigated the crime. *Id.*
At trial, Long of course attempted to defend herself by arguing that her jacket at the
scene would not have been blood-free if she had been the murderer. *Id.* All the while,
however, Defendants were suppressing a report by Anderson that would have
provided police corroboration of Long's defense theory. *Id.* Without the report, Long
could not show that the police, too, had observed and documented her clean jacket in
the middle of the scene of a bloody murder. *Id.*

Moreover, in furtherance of their plot to implicate Long, Defendants including
Weeks and Glenn manipulated, coerced, and fed information to witnesses to bolster
the case against Long. *Id.* ¶56. For example, Weeks and Glenn helped witnesses
create a false timeline that insulated the alternative suspects from scrutiny and that
implicated Long. *Id.* ¶57. Weeks intentionally manipulated and coerced alibi witness,
Oscar Castaneda, to provide a fabricated timeline of his activities on the night of the
murder. *Id.* ¶58. Adopting Weeks's fabricated narrative, Castaneda moved his
timeline of the night of the murder later, so that his account supported, rather than
defeated, Lovejoy's alibi. *Id.* Weeks coerced Castaneda in part by informing
Castaneda that Lovejoy was not involved in the murder, that Long was accusing
Lovejoy, and that police needed Castaneda to say he was with Lovejoy at the time of
the crime. *Id.* ¶58. Defendants including Weeks then withheld from Long's defense

LOEVY & LOEVY
Attorneys at Law

- 5 -

the improper tactics and coercion Weeks had used to fabricate Castandea's timeline. *Id.* ¶59.

As another example, Weeks threatened Jeff Dills—Long's alibi witness, who was with Long during the night of Conde's murder—telling Dills that he was a suspect in the murder. *Id.* ¶60. Weeks, in concert with other Defendants, then fed Dills information about the investigation and coerced Dills to adopt a false timeline of events that placed him far away from the crime scene at the time of the murder. *Id.* ¶61. Defendants including Weeks pressured Dills through the threat of prosecution to adopt this false timeline that cleared him of any wrongdoing or involvement, but that implicated Long in the murder, undermining her alibi. *Id.* ¶62. The false timeline that Defendants fabricated for Dills placed Long at the crime scene at 1:20am, sufficiently in advance of her 911 call at 2:09am. *Id.* ¶63. Without Defendants' fabrication of Dills's account, the prosecution would not have been able to argue that Long had time to commit the murder, dispose of the murder weapon, and clean herself off prior to calling 911. *Id.* ¶64.

Defendants not only fabricated an account for Dills, but they suppressed the tactics they used to force Dills to adopt the false account. Defendants including Weeks also suppressed material communications that Weeks had with Dills, so that the misconduct would not be discovered by Long's counsel or the prosecution. *Id.* ¶65. The suppressed communications included the details of an extensive interrogation of Dills conducted by Weeks on October 6—which concerned Dills's location at the time of Conde's murder. Weeks purposefully withheld the details of that interrogation from Long's defense. *Id.*

Likewise, Defendants including Glenn and Weeks manipulated neighborhood witnesses into corroborating the false timeline that they had fabricated, as discussed above, to support Defendants' theory of the case. *Id.* ¶66. They did so to ensure that Defendants could make the case that Long was at home with enough time to kill Conde, dispose of the murder weapon, and clean herself and the crime scene before

calling the police. *Id.* For example, one witness (Linda Alexander) heard a car alarm go off and motorcycle leave, and then heard a female voice screaming hysterically shortly thereafter, consistent with Long's account of her arrival home on Dills's motorcycle, her subsequent discovery of the body, and her 911 call. *Id.* ¶67. Defendants Glenn and Weeks manipulated this witness to significantly lengthen the time between when she supposedly heard the car alarm and motorcycle, and the time when she heard the screaming, so that the eyewitness account inculpated Long and was consistent with Defendants' theory that Long had had sufficient time after arriving home to kill Conde. *Id.* ¶68.

Defendants including Anderson, Newman, and Verdugo also purposefully suppressed and destroyed critical physical evidence, including a champagne bottle and cup found at the scene of Conde's murder, which showed that other individuals had been present with Conde at the time of the crime and which would have shown the identity of those individuals, had the evidence been forensically tested. *Id.* ¶69. These Defendants also purposefully did not collect other key physical evidence at the scene, ensuring that it was destroyed and unavailable to Long's defense, which would have shown the identity of others at the scene of Conde's death and that would have exonerated Long. *Id.* ¶¶70-72. This included fingerprint impressions and/or DNA from the door and doorknob used by the perpetrator to gain access to the home and the door and doorknob leading from the garage into the house which had been propped open during the assault. *Id.* They did this because they could already tie their suspect, Long, to the crime scene based on her discovery of the body at her residence, and they did not want to generate evidence that would call into question Long's guilt and implicate other suspects. *Id.*

## III. The Defendant Officers conspired to frame Long, acting pursuant to Defendant City of Corona's policies and practices.

While Weeks and Anderson led the investigation, and different Defendants fabricated and suppressed different pieces of evidence, Defendants worked together

Loevy & Loevy
Attorneys at Law

- 7 -

on an investigative team. *Id.* ¶¶12-20. When each of the individual Defendants committed the particular acts of misconduct described above, the Complaint alleges that they did so in conspiracy with one another. *Id.* ¶¶40, 76, 120-27, 155. Moreover, in committing the identified acts of investigative misconduct, the Defendants acted pursuant to the Defendant City of Corona ("City")'s policies and practices, *id.* ¶¶128-42, as discussed in more detail below, *infra* at 15-23.

## IV.    Long was wrongfully convicted and then exonerated.

As a result of Defendants misconduct, Long was wrongfully convicted of murder. *Id.* ¶¶77-79. She maintained her innocence, *id.* ¶91, and the California Supreme Court overturned her conviction in November 2020, *id.* ¶92. All charges against her were finally dismissed in April 2021. *Id.* ¶93.

## V.     Long filed this lawsuit to redress Defendants' deprivations of her rights.

In November 2021, Long filed this lawsuit to hold Defendants accountable for their misconduct and to redress the miscarriage of justice and wrongful conviction that she suffered. Dkt. 1; Dkt. 61 at ¶¶77-90. The first complaint was dismissed for failure to state a claim and with leave to replead each Defendants' misconduct. Dkt. 57. Plaintiff has responded to the invitation by providing even more detailed allegations about the manner in which each of the Defendants committed particular acts that violated her rights protected by the U.S. Constitution and by California law. Dkt. 61. Count I of the First Amended Complaint alleges that Defendants concealed exculpatory evidence and fabricated evidence, in violation of the Fourteenth Amendment's due process clause. Dkt. 61 ¶¶94-105. Count II alleges that Defendants subjected Long to post-process illegal detention without probable cause, in violation of the Fourth Amendment. *Id.* ¶¶106-113. Long also brings claims against Defendants for failure to intervene (Count III) and conspiracy (Count IV), as well as a claim that the City is liable because of its policies and practices, pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978) (Count V). Finally, Long asserts state-law claims (Counts VI through XII).

LOEVY & LOEVY
Attorneys at Law

- 8 -

1

## STANDARD OF REVIEW

2    Defendants fail to apply the standards that govern their motions to dismiss.

3    Rule 8 permits notice pleading and requires only "a short and plain statement of the

4    claim." Fed. R. Civ. P. 8(a); *Pac. Coast Fed'n of Fishermen's Assocs. v. Glaser*, 945

5    F.3d 1076, 1086 (9th Cir. 2019). A plaintiff is not required to make "detailed factual

6    allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the question is

7    whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a

8    claim to relief that is plausible on its face." *O'Brien v. Welty*, 818 F.3d 920, 933 (9th

9    Cir. 2016). While the Defendants deny the misconduct that Long alleges and deny

10   causing her wrongful conviction, their denials do not make Long's allegations less

11   plausible for purposes of Rule 12(b)(6). Indeed, it is not the Court's role at this

12   stage—as Defendants suggest—to assess whether Plaintiff's account will ultimately

13   hold up. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, (2007) (quoting *Scheuer v.*

14   *Rhodes*, 416 U.S. 232, 236 (1974), for the proposition that "a well-pleaded complaint

15   may proceed even if it appears 'that a recovery is very remote and unlikely'").

16   When considering a motion to dismiss, "'[a]ll allegations of material fact are

17   taken as true and construed in the light most favorable to the nonmoving party,'"

18   *Stapley*, 733 F.3d at 809, and the Court "draw[s] all reasonable inferences in favor of

19   the nonmoving party," *Gregg v. Hawaii Dep't of Pub. Safety*, 870 F.3d 883, 886-87

20   (9th Cir. 2017). Defendants disregard this standard, spending much of their motions

21   mounting skewed factual challenges to the well-pleaded allegations in the complaint.

22   Finally, a complaint need not plead legal theories at all, let alone specify

23   precisely how each legal theory works. *Skinner v. Switzer*, 562 U.S. 521, 531 (2011)

24   ("[A] complaint need not pin plaintiff's claim for relief to a precise legal theory");

25   *Sagana v. Tenorio*, 384 F.3d 731, 736-37 (9th Cir. 2004); *Alvarez v. Hill*, 518 F.3d

26   1152, 1157 (9th Cir. 2008) ("Notice pleading requires the plaintiff to set forth . . .

27   claims for relief, not causes of action, statutes or legal theories."). Defendants parse

28   and seek dismissal of particular sub-theories, but that approach contravenes the

LOEVY & LOEVY
Attorneys at Law

- 9 -

pleading standards. As with Defendants' factual arguments, such challenges are better reserved for later resolution, against the backdrop of a full evidentiary record.

## ARGUMENT

## I.    This Court should reject Defendants' efforts to contradict the Complaint with a skewed reading of outside materials.

Along with their motion to dismiss, Defendants have filed a motion for judicial notice, asserting that the Court should take judicial notice of disputed facts in thousands of pages of transcripts and judicial opinions from Long's underlying criminal prosecution. Dkt. 73. Defendants are not actually asking the Court to take judicial notice of readily determinable and undisputed facts about Plaintiff's prior criminal proceedings. Instead, they point to voluminous records of prior proceedings and urge this Court to adopt Defendants' own view of hotly disputed facts central to this lawsuit, all at the motion-to-dismiss stage.

While Defendants are incorrect in their factual assertions, it is critical at this stage to dispose of the issue without adjudicating Defendants' factual contentions. Applicable law does not permit a court to take judicial notice of facts in the way Defendants suggest. Defendants cannot use materials from outside of a complaint to raise factual challenges to the pleadings. And judicial notice cannot be used where the facts at issue are disputed by the parties. Defendants provide no legal support for their suggestion that the Court can accept their view of facts contained in thousands of pages of transcripts and judicial opinions; the Court should thus deny their motion.

## A.    This Court should not take judicial notice of the outside materials.

Two entwined rules govern the Court's resolution of this motion. First, "district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)[.]" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Rule 12(b)(6) provides that a challenge that depends on materials outside of the complaint must be treated as a summary judgment motion, and both sides allowed the opportunity to submit evidence. Fed. R. Civ. P. 12(b)(6).

LOEVY & LOEVY
Attorneys at Law

- 10 -

1      Second, Federal Rule of Evidence 201 establishes a narrow exception to this

2   prohibition at the pleadings stage, directing that courts may take judicial notice of

3   "matters of public record." *Mack v. South Bay Beer Distribution*, 798 F.2d 1279, 1282

4   (9th Cir. 1986).  However, fundamental to this narrow exception is the premise that a

5   fact can be judicial noticed only if it "is not subject to reasonable dispute." Fed. R. Evid.

6   201(b); *Lee v. City of L.A.*, 250 F.3d 668, 689-90 (9th Cir. 2001).

7      The Ninth Circuit has explained that, while a court may take judicial notice of

8   the fact that a proceeding occurred or that a document was filed in a prior proceeding,

9   it may not take judicial notice of disputed facts in public records. *Lee*, 250 F.3d at 689-

10   90. For example, "when a court takes judicial notice of another court's opinion, it may

11   do so 'not for the truth of the facts recited therein, but for the existence of the opinion,

12   which is not subject to reasonable dispute over its authenticity.'" *Id.* at 690 (quoting

13   *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d

14   410, 426-27 (3rd Cir. 1999)). Similarly, "[j]ust because [a] document itself is

15   susceptible of judicial notice does not mean that every assertion of fact within that

16   document is judicially noticeable for its truth." *Khoja*, 899 F.3d at 999. "It is improper

17   to judicially notice a transcript when the substance of the transcript 'is subject to varying

18   interpretations, and there is a reasonable dispute as to what the [transcript] establishes.'"

19   *Khoja*, 899 F.3d at 1000 (quoting *Reina-Rodriguez v. U.S.*, 655 F.3d 1182, 1193 (9th

20   Cir. 2011)). As a result, the Ninth Circuit has reversed grants of motions to dismiss

21   based on documents offered by the defense to contradict a complaint's allegations. *Lee*,

22   250 F.3d at 689-90. *Cf. Khoja*, 899 F.3d at 998 ("[T]he unscrupulous use of extrinsic

23   documents to resolve competing theories against the complaint risks premature

24   dismissals of plausible claims that may turn out to be valid after discovery.").

25      In Defendants' motion for judicial notice and motions to dismiss, Defendants

26   improperly ask this Court to take judicial notice of disputed facts in an effort to contest

27   the allegations in the complaint. They ask the Court to consider thousands of transcript

28   pages from other proceedings for the truth of matters that Defendants say are established

LOEVY & LOEVY
Attorneys at Law

- 11 -

by those transcripts and that contradict Plaintiff's well-pleaded facts in the Complaint. For example, in their motions to dismiss, Defendants quote extensively from underlying California court proceedings that Long alleges were tainted by Defendants' misconduct in an effort to establish as a factual matter that they did not cause Long's wrongful conviction. *E.g.*, Dkt. 69-1 at 4-9. In addition, they point to extrinsic materials in an attempt to characterize evidence and testimony introduced during Long's criminal proceedings, as a way of contending that they did not suppress evidence or to minimize the materiality of the evidence that they did suppress. *E.g.*, Dkt. 71-1 at 2-3, 10.

Asking the Court to look at these records and to adopt their version of facts from the records constitutes a wildly inappropriate request for judicial notice. The facts that Defendants identify are the central factual disputes that will be at issue in this civil suit not only at the pleading stage, but through summary judgment and at trial. Defendants' contention that these facts are readily determinable from the thousands of pages of transcripts and judicial opinions is incorrect. Ultimately, the transcripts of Long's criminal proceedings will support Long's view of the facts. But now is not the time for resolution of factual disputes, and the fact the Defendants are asking this Court to take judicial notice of disputed facts in prior proceedings, decide those facts in their favor, and use those facts to dismiss the Complaint mandates denial of their motion.

Similarly inappropriate is Defendants' attempt to establish a defense to a portion of Plaintiff's suppression claims by reference to trial transcripts. Defendants use these materials in an attempt to bolster the false case that Long alleges was concocted in order to frame her, suggesting, for example, that Bugarski's alibi, which among other things is the subject of an important factual dispute about Defendants' suppression of evidence in this civil case, was corroborated by an independent witness at trial. Dkt. 71-1 at 16. Such a contention *at best* might be presented to a jury at trial in this case. *Id.* at 10-11. But it is an impermissible appeal to judicial notice. Defendants are reading of portions of trial transcripts and making factual inferences, while ignoring other evidence that will ultimately be presented in the case, in an effort to persuade the Court to adopt their

LOEVY & LOEVY
Attorneys at Law

view of the facts at the motion-to-dismiss stage. Such an approach would be inappropriate even at summary judgment or trial, and it is plainly not authorized by Rule 12(b)(6) or Federal Rule of Evidence 201. Under established Ninth Circuit law, this Court should deny Defendants' motion for judicial notice.

**B.    Defendants' factual narrative is flatly incorrect.**

Although Defendants' motion for judicial notice is improper and should be rejected, and this Court should have no need to address factual disputes at this early stage of the case, it is worth noting briefly that that Defendants' factual account is wholly unsupported by the record. Nothing in the records Defendants point to outside of the Complaint disproves Long's allegations or bars her claims.

First, Plaintiff disputes Defendants' improperly selective and misleading presentation of the prior proceedings, which they present in a transparent attempt to persuade the Court that Long, whose conviction has been vacated, is nonetheless guilty. Defendants omit from their motions, for example, that: (1) 9 out of 12 jurors at Long's first jury trial voted "not guilty." *In re Long*, 10 Cal.5th 764, 767 (2020); (2) after her second trial, the trial judge stated, "To make a perfectly clear record in this matter, if this was a court trial, . . . I would have found the defendant not guilty," *In re Long*, 10 Cal.5th at 771-72; (3) in considering Long's habeas petition, the Ninth Circuit concurrence expressed "grave doubts about whether the State has convicted the right person in this case," and the majority opinion was clear: "Were we sitting as the reviewing court on direct appeal, we might have found the evidence to be insufficient," *Long v. Johnson*, 736 F.3d 891, 897 (9th Cir. 2013); (4) the trial judge denied Long's actual innocence claim on the basis of the "extraordinarily high burden" for the claim, clarifying that "the Court finds it highly unlikely that the petitioner committed the crime," Dkt. 30-10 at 750-751; and (5) when vacating Long's conviction on ineffective assistance of counsel grounds, the California Supreme Court's observations included that: (a) "[t]he prosecution's evidence against Long was not particularly strong"; (b) there was "no confession, no eyewitnesses, no

1    murder weapon identified or recovered, and no bloody clothes or other physical or

2    forensic evidence linking Long to the crime"; (c) the other suspects had threatened the

3    couple prior to Conde's death; (d) Conde's time of death was a crucial issue; and (e)

4    the sole testimony placing Long at home at the time of the murder came from Dills,

5    himself a suspect. *In re Long*, 10 Cal.5th at 783-84. The procedural history thus amply

6    supports Long's innocence, rather than calling it into doubt.

7         Defendants also improperly quote at length from the California Supreme

8    Court's summary of the evidence presented during Plaintiff's criminal proceedings.

9    Dkt. 69-1 at 4-8. But that summary, too, firmly support's Long's allegations of police

10   misconduct. To provide just one example, the quoted court opinion states that "Dills

11   informed police that he dropped Long off at her home around 1:20 or 1:25 a.m. Dills

12   then returned to his own home; he recalled seeing his alarm clock by his bedside at

13   1:36 a.m." *Id.* at 5. But this evidence relied upon to affirm Long's conviction is

14   evidence that Long alleges was manufactured by Defendants. Long alleges that Weeks

15   told Dills that he was a suspect and pressured him to adopt a false timeline that put

16   Long at the crime scene in advance of her 911 call and that defeated her alibi. Dkt. 61

17   ¶¶60-64. The fact that the California Supreme Court relied on these facts to affirm

18   Long's conviction demonstrates that Defendants' fabrications were material.

19        Also improper is, for example, Defendants' request that the Court conclude

20   from inferences in various transcripts that Defendants did not suppress Anderson's

21   police report indicating that, upon arrival at the scene, police found Long's clean

22   discarded jacket on a bloody rug in the living room and themselves recognized the

23   import of the evidence and how it corroborated her account. Defendants state their

24   own version of the facts—that this information was not suppressed—and declare

25   "[t]his false claim is accordingly not analyzed." Dkt. 71-1 at 2-3. Yet as discussed in

26   detail in Long's response to Anderson, Weeks, and Bloomfield's motion to dismiss,

27   none of Defendants' record citations even supports that the report reflecting police

28   impressions of the evidence was not suppressed, let alone establishing that fact as an

LOEVY & LOEVY
Attorneys at Law

undisputed matter. Dkt. 84 at 2-4.

**II.    Long's *Monell* claims are plausibly pleaded.**

 **A.    Long has alleged a violation of her constitutional rights.**

  The City first argues that the claims against it should be dismissed because Long has not pleaded that her constitutional rights were violated. Dkt. 69-1 at 11-12. It is well established that "[m]unicipal defendants may be liable under § 1983 even in situations in which no individual officer is held liable for violating a plaintiff's constitutional rights." *Horton v. Santa Maria*, 915 F.3d 592, 604 (9th Cir. 2019). Thus, if a "plaintiff establishes he suffered a constitutional injury by the City, the fact that individual officers are exonerated is immaterial to liability under § 1983," regardless of whether their exoneration is "on the basis of qualified immunity, because they were merely negligent, or for other failure of proof." *Fairley v. Luman*, 281 F.3d 913, 917 n.4 (9th Cir. 2002). As explained in her responses to the individual Defendants' motions to dismiss, Long alleges that a multitude of items of evidence were fabricated and suppressed, implicating her wrongly in the murder, and depriving her of evidence that would have shown her innocence and allowed the impeachment of alternative suspects and key witnesses. Dkt. 84 at 5-18; Dkt. 85 at 6-11; Dkt. 83 at 6-11. These are quintessential due process violations, and Long has alleged a violation of her constitutional rights.

 **B.    Long has pleaded *Monell* claims that comply with Rule 8.**

  Next, the City contends that Long has plausibly pleaded *Monell* claims because she has not responded to the prior dismissal of her *Monell* claims with enough "factual support" to satisfy Rule 8. Dkt. 69-1 at 12-13. The City attempts to impose an evidentiary burden at the pleading stage, and its arguments should be rejected.

  Long alleges that the City is liable under *Monell* for constitutional violations that occurred as the result of: (1) the City's written policies including gaps and deficiencies in those policies, Dkt. 61 at ¶¶7, 21, 128-29, 130-34, 141-42; *Long v. County of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Tsao v. Desert Palace*, 698 F.3d

1128, 1143 (9th Cir. 2012); (2) widespread practices endemic in the City of Corona
Police Department, Dkt. 61 at ¶¶7, 21, 128-29, 135-37, 141-42; *Thompson v. City of
L.A.*, 885 F.2d 1439, 1443-44 (9th Cir. 1989); (3) a failure to train and supervise
officers of the City of Corona Police Department, Dkt. 61 at ¶¶7, 21, 128-29, 133-34,
138-39, 141-42; *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014); (4) actions of
final policymakers who participated in the investigation of the Conde homicide, Dkt.
61 at ¶¶7, 21, 128-29, 139-42; *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir.
1992) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986)); and (5)
these supervisors' ratification of the misconduct outlined in the complaint, Dkt. 61 at
¶¶7, 21, 128-29, 139-42; *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999).

The cases cited in the previous paragraph establish that each of these is a viable
theory of *Monell* liability. Importantly, the bar for adequately pleading a *Monell*
theory is not high. The Supreme Court has made clear that even after *Twombly* and
*Iqbal*, there is no heightened pleading requirement for *Monell* claims. *Johnson v. City
of Shelby*, 574 U.S. 10, 11 (2014) (per curiam) ("[A] federal court may not apply a
standard 'more stringent than the usual pleading requirements of Rule 8(a)' in 'civil
rights cases alleging municipal liability[.]'") (quoting *Leatherman v. Tarrant County
Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993)). Adhering to this
dictate, the Ninth Circuit has long held that "a claim of municipal liability under
section 1983 is sufficient to withstand a motion to dismiss 'even if the claim is based
on nothing more than a bare allegation that the individual officers' conduct conformed
to official policy, custom, or practice.'" *Lee*, 250 F.3d at 682-83 (quoting *Karim-
Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988), and *Shah v. County of
L.A.*, 797 F.2d 743, 747 (9th Cir. 1986)). More recently, the court of appeals has
added that *Monell* allegations must plausibly give fair notice of the theories at issue
and cannot simply recite the elements of the cause of action. *AE ex rel. Hernandez v.
Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d
1202 (9th Cir. 2011)). Long's *Monell* allegations easily suffice—she alleges that the

LOEVY & LOEVY
Attorneys at Law

- 16 -

individual Defendants' misconduct conformed to the City's official policies and practices, resulted from gaps in needed policies, occurred because of inadequate training and supervision, and was committed, overseen, and ratified by policymakers.

Much of the City's argument for dismissal depends on characterizing Long's *Monell* pleadings narrowly as a "policy of inaction," and arguing that Long is required—but has failed—to allege facts establishing a pattern of other constitutional violations of which City policymakers had notice. Dkt. 69-1 at 13-14. This is an inaccurate characterization of the Complaint, and the City cannot obtain a dismissal by reading the pleadings in its own favor.

### 1.    Long adequately pleads express policy theories.

First, with respect to the City's written policies, Long pleads that the City failed to promulgate policies that were deficient, or failed to put in place policies, for the Corona Police Department governing (1) the conduct of interrogations of criminal suspects and witnesses; (2) the collection, documentation, preservation, testing, and disclosure of evidence, including physical evidence, exculpatory and impeachment evidence, and evidence bearing on the credibility of prosecution witnesses; (3) the writing of police reports and investigative notes; (4) the procurement of statements and testimony from witnesses and suspects; and (5) the maintenance of investigative files and disclosure of such files to the criminal justice system. Dkt. 61 at ¶130. Long alleges as well that the City's policies did not provide for training or supervision of Corona officers who conducted interrogations or interviews of criminal suspects and witnesses during criminal investigations. *Id.* ¶131. The fault for these policy defects, the Complaint continues, lies at the feet of the City's policymakers, who were aware of the need for adequate policies, training and supervision, but were indifferent in their choice not to adopt those policies. *Id.* ¶171.

This is not the type of *Monell* theory that requires proof of a pattern of other instances of misconduct. *See*, *e.g.*, *Gibson v. County of Washoe*, 290 F.3d 1175, 1195 (9th Cir. 2002) (a plaintiff may demonstrate a *Monell* claim for an omission in a

1    municipality's policies or procedures where the need to act is obvious, even in the

2    absence of examples of other misconduct); *see also Glisson v. Indiana Dep't of Corr*.,

3    849 F.3d 372, 379-80 (7th Cir. 2017) (en banc). Instead, Long is alleging that written

4    policy deficiencies in the five above-identified areas caused the individual Defendants

5    and others to inflict the constitutional harms set out in the Complaint, Dkt. 61 ¶¶141-

6    42—namely, by suppressing critical exculpatory and impeachment evidence,

7    including police reports and physical evidence, none of which were properly

8    documented, included in the file, or disclosed to state prosecutors, Long, or her

9    criminal defense attorneys, and by fabricating false witness and suspect statements

10    and testimony, using coercive and improper tactics, during interrogations and witness

11    interviews, *id.* ¶¶94-105. The City cannot reasonably contend that it lacks notice of

12    Long's *Monell* theories pertaining to the City's written policies, and it cannot obtain

13    dismissal by ignoring Long's claims about the City's express policies and arguing that

14    those claims require proof of a pattern of police misconduct.

15              **2.        Long adequately pleads widespread practice theories.**

16          Second, Long's *Monell* theory that widespread practices and customs of the

17    Corona Police Department caused the constitutional violations identified in the

18    Complaint reflects the City's lack of sufficient written policies. The Complaint alleges

19    that employees of the Department's policymakers had notice of practices whereby: (1)

20    officers did not record pertinent investigative information in police reports, maintain

21    complete investigative files, and disclose investigative materials to the criminal justice

22    system; (2) officers falsified witness statements and testimony, including by feeding

23    facts, issuing undisclosed threats, and manipulating witnesses; (3) officers destroyed

24    and suppressed evidence, including physical evidence; and (4) officers pursued the

25    wrong suspects in flawed investigations, resulting in the prosecution and conviction of

26    innocent individuals. *Id.* ¶135. Policymakers in supervising roles encouraged these

27    practices by failing to train and supervise officers on these subjects, which caused

28    these practices to become *de facto* policies of the City. *Id.* ¶¶136-37. These

LOEVY & LOEVY
Attorneys at Law

- 18 -

widespread practices are evident in the misconduct committed during the investigation of Conde's murder. These allegations give the City clear notice that its policymakers were deliberately indifferent in their refusal to implement training and supervision that would have brought these harmful practices to a halt. *See Bd. of County Commissioners v. Brown*, 520 U.S. 397, 409-10 (1997) (municipal liability attaches in situations where it is obvious "that the situation will recur and . . . that an officers lacking specific tools to handle that situation will violate citizens' rights"); *Menotti v. City of Seattle*, 409 F.3d 1113, 1147-48 (9th Cir. 2005) (denying summary judgment because repeated examples of unconstitutional conduct by defendant officers during a single protest, in the absence of any reprimand for the misconduct, was sufficient to show an unconstitutional practice). Rule 8 does not require more at this early stage.

The City contends that, to survive a motion to dismiss, Long must submit evidence establishing that the City's widespread practices repeatedly resulted in police misconduct known to Corona Police Department policymakers. But there are two problems with that argument. First, it imposes an evidentiary burden far too high at the pleading stage. *Johnson*, 574 U.S. at 11. "At the pleading stage," a plaintiff pursuing a widespread practice theory of *Monell* liability need only "allege facts that permit the reasonable inference that the practice is so widespread so as to constitute governmental custom," *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017), and need not provide evidence supporting the widespread practice.

Second, Long does, in fact, plead Corona's widespread customs in much more detail than simply stating that they were widespread. She alleges that the misconduct during the Conde homicide investigation—carried out openly amongst at least six officers of different ranks in a small department—demonstrates the pervasive nature of the Department's misconduct. Dkt. 61 ¶139. She also alleges that Corona's alleged widespread practices of misconduct and lack of oversight led to retaliation against officers who attempted to report corruption and misconduct involving Corona police association with the Vagos motorcycle gang. *Id.* ¶138. Supervisors in the Corona

LOEVY & LOEVY
Attorneys at Law

1    Police Department told the officer reporting the lawless misconduct that there would

2    be no investigation, that she should "get over it and let it go," and that it was "none of

3    [her] business," before retaliating against her. *Id.* The same retaliation occurred to

4    other officers who reported an association with the Vagos gang and were transferred

5    out of coveted positions. *Id.* The misconduct within the Corona Police Department

6    had to be reported to outside authorities before a meaningful investigation could

7    occur. *Id.* These allegations are plainly sufficient to satisfy Rule 8 and to give rise to

8    the inference that the Corona Police Department's pattern of investigative misconduct

9    was widespread, such that Corona policymakers had notice of it.

10        The City cites to *Meehan v. L.A.*, 856 F.2d 102 (9th Cir. 1988), for the

11    proposition that two prior incidents are insufficient to establish *Monell* liability. Dkt.

12    69-1 at 15. But that case was an appeal from a direct verdict at trial, and it concerned

13    the evidence necessary to sustain a verdict, not the pleading standards that apply to the

14    motions currently before the Court. The City's citation to *Meehan* demonstrates that it

15    is attempting to impose a heightened pleading standard that mimics an evidentiary

16    burden, a tactic the Supreme Court has expressly forbidden. *Johnson*, 574 U.S. at 11.

17        **3.    Long adequately pleads failure to train and supervise theories.**

18        Third, Long alleges that the City's failure to train and supervise its officers

19    caused the fabrications and suppressions of evidence that violated Long's rights. Dkt.

20    61 at ¶¶131, 136. Long alleges that the City had insufficient written policies requiring

21    training in the five subject areas discussed above, *id.* at ¶ 131, and failed to train,

22    supervise, and discipline in police investigations, *id.* ¶ 136. These, too, are established

23    theories of municipal liability. *Canton v. Harris*, 489 U.S. 378, 397 (1989); *Jackson*,

24    749 F.3d at 763. Such claims require a showing that the need for additional training

25    was obvious, and that the inadequacy was likely to cause constitutional violations.

26    *Canton*, 489 U.S. at 397.

27        The City repeats the arguments that it made with respect to Long's widespread

28    practice theory, asserting that Long must allege facts establishing existing training

LOEVY & LOEVY
Attorneys at Law

- 20 -

policies were insufficient and resulted in constitutional violations. Dkt. 69-1 at 17-18.
For the same reasons outlined in the previous subsection, the City's argument applies
far too stringent a pleading standard, and Long has specifically pleaded that the City
failed to implement training policies, was on notice that its training and supervision
was insufficient, and that the Conde investigation and the failure to discipline Corona
officers conspiring with a motorcycle gang are examples. *Supra* at 19-20. These
allegations are sufficient to state a failure to train and supervise claim under Rule 8.

### 4.    Long adequately pleads final policymaker theories.

Fourth, Long also alleges a *Monell* theory that final policymakers for Corona
actually committed misconduct during the investigation of the Conde homicide. Dkt.
61 ¶140. The City does not address this theory in its motion, and thus any argument
for dismissal is forfeited. *Eric Burrell M. v. Berryhill*, 2019 WL 2719411, at *8 n.20
(C.D. Cal. June 28, 2019) (arguments raised for the first time in a reply are forfeited).
It is a *Monell* theory that is different from a ratification theory. Long is alleging that
individuals with final policymaking authority committed constitutional torts. The
Supreme Court and Ninth Circuit have long acknowledged that such direct
participation by policymakers gives rise to municipal liability. *Gillette*, 979 F.2d at
1346-47 (citing *Pembaur*, 475 U.S. at 480-81). Specifically, Long pleads that
Defendant Weeks was a supervisor at the Corona Police Department during the
investigation, Dkt. 61 at ¶¶16, 140; and that he was a policymaking official who
engaged in the acts of misconduct alleged in the complaint, *id.* ¶140. Those
allegations are plausibly pleaded and state a claim against Corona as well.

To the extent that the City argues throughout its motion that Plaintiff has not
adequately pleaded what policymakers had notice of its policies, customs, and training
and supervision failures, *e.g.*, Dkt. 69-1 at 15-16, it is doubly incorrect. First, as just
discussed, Long pleads that Weeks was a policymaker. Second, the determination of
who held final policymaking authority at the Corona Police Department is not an issue
of fact that needs to be alleged. *St. Louis v. Praprotnik*, 485 U.S. 112 (1988), and *Jett*

- 21 -

*v. Dallas Independent School Dist.*, 491 U.S. 701 (1989), hold that the determination of where final policymaking authority lies in a local governmental unit depends on the laws of the state and the Court's legal interpretation of those laws in advance of a trial on the merits. *Jett*, 491 U.S. at 737; *Praprotnik*, 123-124 & n.1. The City cites no authority requiring the allegation of the identity of all policymakers to state a claim.

### 5.    Long adequately pleads ratification theories.

Fifth, in addition to being involved directly in inflicting the constitutional violations at issue, Defendant Weeks, acting as a policymaker, is alleged to have approved his subordinates' acts of misconduct, Dkt. 61 at ¶¶ 16, 140, which gives rise to municipal liability under a ratification theory, *Christie*, 176 F.3d at 1239. Long alleges that this supervising Defendant approved his colleagues' decisions to coerce false witness statements, and to suppress exculpatory evidence. To be clear, this is not a situation where a supervisor is disengaged from the investigation. On the contrary, the Complaint alleges that Weeks was responsible for overseeing and approving all aspects of the Conde homicide investigation, in which the alleged misconduct took place. *Id.* This *Monell* theory, too, is plausibly pleaded.

\* \* \*

Viewed together, there can be no reasonable dispute that Long's *Monell* allegations meet or exceed the types of allegations that the Ninth Circuit have found passed muster in other cases. *See*, *e.g.*, *Lee*, 250 F.3d at 682; *Alba v. City of Barstow*, 2019 WL 1757983, at \*3 (C.D. Cal. Jan. 30, 2019); *Vasquez v. County of San Bernardino*, 2017 WL 10545385, at \*12 (C.D. Cal. Oct. 4, 2017). Put slightly differently, to accept the City's arguments would mean that Long would not only need to plead his *Monell* theories but also prove them up at the pleading stage of the case. Such an approach has been explicitly rejected by the Ninth Circuit at the pleading stage in a variety of contexts. *See*, *e.g.*, *Skaff v. Meridien North America Beverly Hills, LLC*, 506 F.3d 832, 841-42 (9th Cir. 2007) (rejecting the notion that a plaintiff should have to plead "in specific detail" or "support such pleadings with evidence"). To

LOEVY & LOEVY
Attorneys at Law

- 22 -

require a plaintiff to plead *Monell* theories with the great level of specificity that the City seeks would be both contrary to the law of the circuit, and also impractical to the point of imposing an unreasonable burden on Long. *See Estate of Alejandro Sanchez v. County of Stanislaus*, 2019 WL 1745868, at *5 (E.D. Cal. April 18, 2019) ("It is a rare plaintiff who will have access to the precise contours of a policy or custom prior [to] having engaged in discovery, and requiring a plaintiff to plead its existence in detail is likely to be no more than an exercise in educated guesswork."). Long's *Monell* claim is plausibly pleaded, and dismissal is unwarranted.

### III.    Long's state law claims were timely presented and filed.

Defendants re-raise an argument about the timeliness of Long's state law claims that was rejected during the first round of motions to dismiss. Dkt. 69-1 at 21-23. The City contends that Long failed to timely present her claims after their accrual, as required by California law. *Id.* Yet this Court already correctly rejected that argument, Dkt. 57 at 8, because the California Supreme Court in *Yount v. City of Sacramenta*, 43 Cal. 4th 885, 902 (2008), applied *Heck v. Humphrey*, 512 U.S. 477 (1994), to hold that the accrual of state-law claims alleging a wrongful conviction is delayed until the conviction has been invalidated. A statute of limitations defense is generally improper at the motion to dismiss stage. *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014); *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984); *see also Jones v. Bock*, 549 U.S. 199, 216 (2007).

*McDonough v. Smith*, 139 S. Ct. 2149 (2019), recently reaffirmed and extended *Heck*, concluding that its delayed-accrual rule applies both to federal claims alleging that misconduct caused a wrongful conviction and to allegations that it caused a wrongful prosecution. *Id.* at 2155. So, from the moment a criminal prosecution begins, any claims that official misconduct corrupted those proceedings or caused a resulting conviction must wait until the prosecution comes to an end of the conviction has been set aside. *Id.* The California Supreme Court in *Yount* applied *Heck*'s rule of deferred accrual to all state tort claims, like those at issue here, that imply the

- 23 -

1    invalidity of a criminal prosecution or conviction. *Reese v. Cnty. of Sacramento*, 888
2    F.3d 1030, 1046 (9th Cir. 2018); *Roberts v. Cnty. of Riverside*, 2020 WL 3965027, at
3    *1 (C.D. Cal. June 5, 2020). Long's state claims, like her federal claims, attack the
4    integrity of the Defendants' investigation and allege that the Defendants fabricated
5    and suppressed evidence that caused Long to be prosecuted and convicted of murder.
6    None of her claims concern merely her initial arrest by police. As a result, all of her
7    claims are subject to a deferred accrual rule. *E.g.*, *McDonough*, 139 S. Ct. at 2158
8    (fabrication of evidence claim); *Rosales-Martinez v. Palmer*, 753 F.3d 890, 898 (9th
9    Cir. 2014) (*Brady* claim).

10           Long received a final judgment reversing her conviction by the California
11    Supreme Court in November 2020, and dismissal of the charges only in April 2021.
12    Dkt. 61 ¶¶92-93. Her federal and state claims did not accrue, and the statute of
13    limitations did not begin to run, until April 2021. She timely presented her claims the
14    following month, and she timely filed her lawsuit in November 2021. The City's
15    timeliness argument must again be rejected.

16    **IV.    The City establishes no basis for dismissal of Long's state law claims.**

17           In a final section of its brief (Dkt. 69-1 at 23-24), the City contends that Long's
18    state-law claims for intentional infliction of emotional distress (Count VII) and
19    conspiracy (Count VIII), as well as her Bane Act claim (Count X), are not adequately
20    alleged, incorporating arguments made in the individual Defendants' motions to
21    dismiss. *See* Dkt. 69-1 at 23-24. Long incorporates here her response to those
22    arguments. Dkt. 83 at 15-20.

23           In response to the City's arguments regarding Counts VI, IX, and XI (Dkt. 69-1
24    at 20), Long incorporates her response to Newman and Verdugo (Dkt. 85 at 24-25).

25    **V.    Any dismissal should be without prejudice.**

26           The initial complaint in this case plausibly alleged facts that put Defendants'
27    fairly on notice the misconduct they committed that caused Long's wrongful
28    conviction and the clearly established law that they violated. The First Amended

LOEVY & LOEVY
Attorneys at Law

- 24 -

Complaint provides even more detail about the precise acts of misconduct that each
Defendant committed giving rise to liability, and how those acts violated Long's
rights and caused her to be convicted of a crime she did not commit. If this Court
concludes that there is an argument of Defendants that has merit, any dismissal of any
part of a claim should be without prejudice, and with leave to replead. *See* Fed. R.
Civ. P. 15(a)(2); *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1997) (the
"standard for granting leave to amend is generous."); *Barahona v. Union Pac. R.R.*,
881 F.3d 1122, 1134 (9th Cir. 2018) (leave to amend is futile only if no set of facts
can be proved that would constitute a valid and sufficient claim).

In their second round of motions to dismiss, Defendants abandoned many of the
arguments they made in their first round of motions to dismiss. Their second round of
motions are premised largely on different arguments than those that served as the
basis for their request for dismissal the first time around. Reflecting the enlarged and
different content of their second round of motions to dismiss, Defendants this time
have devoted nearly 100 pages to their four motions, exploring issues in greater detail
than they did the first time, when their single motion totaled 25 pages. To the extent
that the Court finds any of Defendants' newly developed arguments compelling, Long
should have the opportunity to replead to correct any deficiency in her pleadings to
respond to new arguments, unless Defendants can show that they previously raised the
same argument and Long failed to correct her complaint in response.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the City's motion to dismiss should
be denied.

**DATED:** August 4, 2022                 Respectfully submitted,

                                          **KIMBERLY LONG**

                                          By:  /s/ Ruth Brown

                                                One of Plaintiff's Attorneys


### CERTIFICATE OF SERVICE

I, Ruth Brown, an attorney, certify that on August 4, 2022, the foregoing was filed via the court's ECF system, which effectuated service on all counsel who have appeared in the case.


                              /s/ Ruth Brown