**Megan Pierce** (SBN 314044)
**Ruth Brown**, IL Bar: 6299187*
**Steven Art**, IL Bar: 6302319*
**Makeba Rutahindurwa**, IL Bar: 6335098*
ruth@loevy.com
Loevy & Loevy
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
Phone: (312) 243-5900

**Jan Stiglitz** (SBN 103815)
js@cwsl.edu
Law Office of Jan Stiglitz
14462 Garden Tr.
San Diego, CA 92127
Phone: (619) 807-5890

**Michael D. Seplow** (SBN 150183)
mseplow@sshhzlaw.com
Schonbrun Seplow Harris
Hoffman & Zeldes LLP
9415 Culver Boulevard, #115
Culver City, CA 90232
Phone: (310) 396-0731
*Admitted pro hac vice*

*Counsel for Plaintiff*

LOEVY & LOEVY
Attorneys at Law

# UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

| KIMBERLY LONG, Plaintiff, v. THOMAS WEEKS, et al., Defendants. | Case No. 5:21-cv-02008-FWS<br><br>Hon. Fred W. Slaughter, District Judge<br><br>Magistrate Judge Charles F. Eick<br><br>**PLAINTIFF LONG'S RESPONSE TO MOTION TO DISMISS OF DEFENDANT GLENN (Dkt. 70-1)**<br><br>Hearing Date: September 1, 2022<br>Time: 10:00 AM<br>Place: Courtroom 10D (by Zoom)<br>Trial Date: None set |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iii

INTRODUCTION ............................................................................................. 1

MISCONDUCT BY GLENN ............................................................................ 1

ARGUMENT .................................................................................................... 2

I.    Long does not assert any false arrest claims, and her claims are timely. ........................................................................ 2

II.   Long sufficiently identified which Defendants fabricated the testimony of which witnesses. ............................................. 2

III.  Glenn is not entitled to qualified immunity on Long's federal claims. ...................................................................... 5

    A.    Qualified immunity overview ............................................. 5

    B.    Long's federal claims are well-pleaded. ............................ 6

        1.    Due process claim (Count I) .................................. 6

            a.    Fabrication of evidence is plausibly alleged ......... 6

            b.    Causation is plausibly alleged ..................... 10

            c.    Glenn fails to challenge Long's suppression theories. ..................................................... 11

        2.    Fourth Amendment claim (Count II) ................... 11

        3.    Failure to intervene claim (Count III) ................. 12

        4.    Federal conspiracy claim (Count IV) .................. 12

    C.    Long alleges violations of clearly established law. ............ 12

        1.    Due process claim (Count I) ................................ 13

        2.    Fourth Amendment claim (Count II) ................... 14

        3.    Failure to intervene and conspiracy claims (Counts III and IV) ............................................. 14

IV.   Defendants establish no basis for dismissal of Long's state law claims. ...................................................................... 14

A.    Counts VI, IX, and XI ...........................................................14

B.    Timeliness of Long's state-law claims .............................14

C.    Affirmative defense of Section 821.6 immunity ............15

D.    Bane Act claim (Count X) ...............................................17

E.    IIED claim (Count VII) ....................................................19

F.    State law conspiracy claim (Count VIII) .........................21

V.    Any dismissal should be without prejudice. ............................21

CONCLUSION .........................................................................................21

LOEVY & LOEVY
Attorneys at Law

# TABLE OF AUTHORITIES

## CASES

*Acosta v. California Highway Patrol*, 2019 WL 2579202
    (N.D. Cal. June 24, 2019) ........................................................ 16

*Avery v. City of Milwaukee*, 847 F.3d 433 (7th Cir. 2017) .................................. 11

*Banks v. Dretke*, 540 U.S. 668 (2004) ........................................................ 6, 13

*Blankenhorn v. Cty. of Orange*, 485 F. 3d 463 (9th Cir. 2007).......... 5, 6, 12, 14, 17

*Bros. v. Town of Millbury*, 2014 WL 4102436
    (D. Mass. Aug. 14, 2014) ..................................................... 20

*Burgess v. Baltimore Police Dep't*, 2016 WL 795975
    (D. Md. Mar. 1, 2016) ........................................................... 4

*C.B. v. City of Sonora*, 769 F.3d 1005 (9th Cir. 2014) .................................. 13

*Carrillo v. Cnty. of L.A.*, 798 F.3d 1210 (9th Cir. 2015) .................................. 6

*Century of Progress Prods. v. Vivendi S.A.*, 2018 WL 4191340
    (C.D. Cal. Aug. 28, 2018) ..................................................... 4

*Collins v. Cty. of Alameda*, 2021 WL 254262
    (N.D. Cal. Jan. 26, 2021) ..................................................... 16

*Cooper v. Triwest Healthcare All. Corp.*, 2013 WL 12064477
    (S.D. Cal. June 13, 2013) ..................................................... 19

*Cornell v. San Francisco*, 17 Cal. App. 5th 766 (2017) ................................ 18

*Cornell v. San Francisco*, 225 Cal. Rptr. 3d 356 (2017),
    as modified (Nov. 17, 2017) ................................................ 18

*Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101
    (9th Cir. 2010) ................................................................. 5, 6

*County Inmate Telephone Services Cases*, 48 Cal. App. 5th 354
    (2020) ............................................................................ 18

*Cunningham v. Gates*, 229 F.3d 1271 (9th Cir. 2000) .................................. 5

*D.C. v. Wesby*, 138 S. Ct. 577 (2018) ....................................................... 13

*DeSoto Cab Co., Inc. v. Uber Techs., Inc.*, 2018 WL 10247483
    (N.D. Cal. Sep. 24, 2018)...................................................... 3

*Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) (en banc)......................... 6, 13

LOEVY & LOEVY
Attorneys at Law

- iii -

*Dinius v. Perdock*, 2012 WL 1925666 (N.D. Cal. May 24, 2012) ........................20

*Duenez v. City of Manteca*, 2012 WL 4359229
    (E.D. Cal. Feb. 23, 2012) ...............................................................20

*Echavarria v. Roach*, 2017 WL 3928270 (D. Mass. Sept. 7, 2017) ........................4

*Eric Burrell M. v. Berryhill*, 2019 WL 2719411
    (C.D. Cal. June 28, 2019)...............................................................11

*Est. of Gonzales v. Hickman*, 2007 WL 3237727
    (C.D. Cal. May 30, 2007)...............................................................10

*Flores v. Cty. of Pasadena*, 2019 WL 5102465
    (C.D. Cal. Oct. 10, 2019) ...............................................................16

*Galbraith v. Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) ...............................19

*Garmon v. L.A.*, 828 F.3d 837 (9th Cir. 2016).......................................................15

*Giglio v. U.S.*, 405 U.S. 150 (1972) ...............................................................6, 13

*Glair v. Cty. of L.A.*, 2018 WL 3956728 (C.D. Cal. May 24, 2018),
    report and recommendation adopted, 2018 WL 3954000
    (Aug. 15, 2018) ...............................................................16

*Hill v. City of Chicago*, 2020 WL 509031 (N.D. Ill. Jan. 31, 2020)....................20

*Hope v. Pelzer*, 536 U.S. 730 (2002) ...............................................................13

*Huskins v. City of Vallejo*, 2017 WL 2868534
    (E.D. Cal. July 5, 2017) ...............................................................19

*In re Pac. Fertility Ctr. Litig.*, 2019 WL 3753456
    (N.D. Cal. Aug. 8, 2019)...............................................................3

*John v. Lake Cnty.*, No. C 18-06935 WHA, 2019 WL 859227
    (N.D. Cal. Feb. 22, 2019)...............................................................19

*Leon v. Cty. of Riverside*, 64 Cal. App. 5th 837 (2021).......................................17

*Lies v. Farrell Lines, Inc.*, 641 F.2d 765 (9th Cir. 1981)....................................10

*Mackovski v. Cty. of Garden Grove*, 666 F. App'x 649 (9th Cir. 2016) ...............17

*Marsh v. San Diego Cnty.*, 432 F. Supp. 2d 1035 (S.D. Cal. 2006) ....................20

*Mendez v. Cnty. of Los Angeles*, 897 F.3d 1067 (9th Cir. 2018)....................15, 17

*Moore v. Gerstein*, 107 F.3d 16 (9th Cir. 1996) ...............................................5

*Napue v. Illinois*, 360 U.S. 264 (1959) ...............................................................6, 13

LOEVY & LOEVY
Attorneys at Law

- iv -

*O'Brien v. Welty*, 818 F.3d 920 (9th Cir. 2016) ...................................................5

*People v. Long*, 2008 WL 4958575 (Cal. Ct. App. Nov. 21, 2008) ......................3

*People v. Long*, 2018 WL 2057898 (Cal. Ct. App. May 3, 2018),
  as modified on denial of reh'g (May 23, 2018)..........................................3

*Pyle v. State of Kansas*, 317 U.S. 213 (1942)..............................................6, 13

*Reese v. Sacramento,* 888 F.3d 1030 (9th Cir. 2018)........................................18

*Richardson-Bass v. State Ctr. Cmty. Coll. Dist.*, 2020 WL 5658225
  (E.D. Cal. Sept. 23, 2020) .................................................................. 19, 20

*Roberts v. Cnty. of Riverside*, 2020 WL 5934303
  (C.D. Cal. Sept. 9, 2020).............................................................................3

*Roberts v. Cty. of Riverside*, 2020 WL 3965027
  (C.D. Cal. June 5, 2020) ...........................................................................17

*Rodriguez v. L.A.*, 891 F.3d 776 (9th Cir. 2018)..............................................18

*Roe v. Rialto Unified Sch. Dist.*, 2020 WL 2790008
  (C.D. Cal. Feb. 26, 2020) .........................................................................16

*Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364 (2009)......................12

*Sanchez v. Cty. of L.A.*, 2019 WL 4180014 (C.D. Cal. Apr. 24, 2019) ...............16

*Sandoval v. Cnty. of Sonoma*, 912 F.3d 509 (9th Cir. 2018)..............................18

*Sandoval v. County of San Diego*, 985 F.3d 657 (9th Cir. 2021) .................. 12, 14

*Sharp v. Cnty. of Orange,* 871 F.3d 901 (9th Cir. 2017) ..........................15, 16, 17

*Shoyoye v. L.A.*, 203 Cal. App. 4th 947 (2012)................................................18

*Soler v. Cty. of San Diego*, 2019 WL 6612011 (S.D. Cal. Dec. 4, 2019) .............16

*Spencer v. Peters*, 857 F.3d 789 (9th Cir. 2017)................................................6

*Sullivan v. Cnty. of Los Angeles*, 12 Cal. 3d 710 (1974) ..........................15, 16, 17

*Tahoe Sierra Pres. Council., Inc. v. Tahoe Reg'l Planning Agency*,
  34 F.3d 753 (9th Cir. 1994)......................................................................10

*Tivoli LLC v. Sankey*, 2015 WL 12683801 (C.D. Cal. Feb. 3, 2015)....................3

*Tolan v. Cotton*, 572 U.S. 650 (2014)...........................................................12

*U.S. ex rel. Anita Silingo v. WellPoint*, 904 F.3d 667 (9th Cir. 2018)...................3

*U.S. v. United Healthcare Ins.*, 848 F.3d 1161 (9th Cir. 2016)............................3

LOEVY & LOEVY
Attorneys at Law

*United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539
        (9th Cir. 1989) ..............................................................................5

*Valenzuela v. San Diego Police Dep't*, 2020 WL 804923
        (S.D. Cal. Feb. 18, 2020) ...........................................................16

*Wheat v. Lee*, 2013 WL 2285174 (N.D. Cal. May 23, 2013)...............................17

*Wilson v. City of Chicago*, 2009 WL 3242300 (N.D. Ill. Oct. 7, 2009)..................4

*Yang v. Boudreaux*, 2021 WL 4066460 (E.D. Cal. Sept. 7, 2021) ......................16

*Young v. Cty. of Menifee*, 2019 WL 3037926 (C.D. Cal. Apr. 5, 2019) ...............16

### *RULES*

Federal Rule of Civil Procedure 8(a) ...............................................................3

Federal Rule of Civil Procedure 9(b)......................................................... 3, 4, 17

Federal Rule of Civil Procedure 12(b)(6)..........................................................5

### *STATUTES*

California Government Code § 821.6.....................................................15, 16, 17

LOEVY & LOEVY
Attorneys at Law

**INTRODUCTION**

Plaintiff Kimberly Long incorporates from her response to the City's motion to dismiss: her introduction (Dkt. 82 at 1-2), summary of the allegations in her complaint (*id.* at 2-8), presentation of the applicable standard of review (*id.* at 9-10), and response to Defendants' improper request for judicial notice (*id.* at 10-15).

**MISCONDUCT BY GLENN**

In summary, Defendant Officer Jeffrey Glenn participated in a frame-up investigation that resorted to misconduct to pin the murder of Oswaldo Conde on Long and falsely exonerate the alternate suspects. Dkt. 61 ¶¶12, 19, 4-6, 40, 76, 155. Glenn was a patrol officer whose activities included responding to the scene; searching the crime scene; and conducting a canvas and interviews of neighborhood witnesses. *Id.* ¶19.

Plaintiff discovered the victim, called 911, and voluntarily assisted with the investigation. *Id.* ¶¶24, 29-32. No witnesses or family members identified her as a suspect during the initial canvas and interviews (*id.* ¶38); no forensic or physical evidence tied Long to the crime (*id.* ¶¶8, 82-84); and Defendants knew of at least two alternative suspects who had recently made threats against Conde (*id.* ¶¶33, 36-37, 40-50). Responding officers including Newman and Verdugo observed blood splatter on every wall of the living room in which Conde was found. *Id.* ¶¶26, 52-53. They knew that it would have been impossible for the perpetrator to have remained blood-free during the commission of the murder, and yet there was no blood on Long's clothes found at the scene or later observed on her when she submitted to questioning that night, and Defendants found no evidence of any attempt by Long to clean herself off. *Id.* ¶¶26-28, 52-54, 99. Despite the above, Glenn conspired with other Defendants and third parties to frame Long. *Id.* ¶¶4-6, 40, 76, 155, 12-20, 48-49, 60-65, 121.

As his part in the scheme, Glenn knowingly manipulated, coerced, and fed information to various witnesses to create a false timeline that protected the alternative suspects and implicated Long. *Id.* ¶¶56-57. For example, Glenn, along with Weeks,

manipulated neighborhood witnesses into corroborating the false timeline that they had fabricated to match Defendants' theory of the case. *Id.* ¶66. They did so to ensure that Defendants could made the case that Long was at home with enough time to kill Conde, dispose of the murder weapon, and clean herself and the scene before calling the police. *Id.* For example, one eyewitness (Linda Alexander) heard a car alarm go off and motorcycle leave, and then heard a female voice screaming hysterically shortly thereafter, consistent with Long's account of her arrival home on Jeff Dills' motorcycle, subsequent discovery of the body, and 911 call. *Id.* ¶67. Glenn and Weeks manipulated this eyewitness to significantly lengthen the time between which she supposedly heard the car alarm and motorcycle, and the time when she heard the screaming, so that the eyewitness account inculpated Long and was consistent with Defendants' theory that Long had had sufficient time after arriving home to kill Conde, dispose of the murder weapon, clean herself up, and then call 911. *Id.* ¶68.    In carrying out this misconduct, Glenn acted purposefully and with malice, to frame Long. *Id.* ¶¶99-103, 4-6, 40, 76, 155.

### ARGUMENT

**I.    Long does not assert any false arrest claims, and her claims are timely.**

In response to Glenn's incorporation of an argument in Newman and Verdugo's motion to dismiss (Dkt. 70-1 at 2), Long incorporates her response (Dkt. 85 at 2-6).

**II.    Long sufficiently identified which Defendants fabricated the testimony of which witnesses.**

Long complied with the Court's request that she plead "facts in her possession regarding which officers manipulated which witnesses" when pleading her fabrication claim. Dkt. 57 at 15 n.4. Long specified that Defendant Weeks fabricated testimony by Lovejoy's alibi witness, Oscar Castaneda. Dkt. 61 at ¶58. Long specified that Weeks fabricated testimony by prosecution witness Jeff Dills. *Id.* ¶¶60-63. Pertinent to Defendant Glenn's motion, Long also specified that "Defendants Glenn and Weeks" fabricated the testimony of an eyewitness (Linda Alexander), who "heard a car alarm

- 2 -

LOEVY & LOEVY
Attorneys at Law

go off and motorcycle leave, and then heard a female voice screaming hysterically shortly thereafter." *Id.* ¶¶67-68. The detail in Plaintiff's complaint makes clear this witness is Linda Alexander. Multiple judicial opinions that Defendants themselves cite in their briefs (*e.g.*, Dkt. 69-1 at 1, 4, 8, 9; Dkt. 70-1 at 1) do as well. *E.g.*, *People v. Long*, 2018 WL 2057898, at *10 (Cal. Ct. App. May 3, 2018), as modified on denial of reh'g (May 23, 2018) ("Alexander heard a car alarm . . . . Approximately five minutes later, Alexander heard a motorcycle traveling away from the street . . . . Five to 10 minutes later, Alexander heard defendant screaming, 'no, no, no.'"); *People v. Long*, 2008 WL 4958575, at *17 (Cal. Ct. App. Nov. 21, 2008) (same). Long has sufficiently alleged Glenn's personal involvement in specific acts of misconduct, consistent with Rule 8(a)(2)'s requirement of a short, plain statement of the claim at the pleading stage. Glenn identifies no permissible basis for dismissal based on the allegations in paragraphs 67-68 of the Complaint.

Nor is Glenn entitled to dismissal because Long alleges that Glenn acted alongside Weeks to fabricate Alexander's testimony. *See Roberts v. Cnty. of Riverside*, 2020 WL 5934303, at *4 (C.D. Cal. Sept. 9, 2020) ("Plaintiff's allegations satisfy Rule 8(a) because they place categories of Defendants on notice of the allegations against them."); *In re Pac. Fertility Ctr. Litig.*, 2019 WL 3753456, at *3 (N.D. Cal. Aug. 8, 2019) (finding allegations sufficient "where the defendants are alleged to be 'related entities' who acted in concert"); *DeSoto Cab Co., Inc. v. Uber Techs., Inc.*, 2018 WL 10247483, at *15-16 (N.D. Cal. Sep. 24, 2018) (allegations against a "small number of defendants" who "acted in concert with . . . each other" provide the requisite fair notice); *Tivoli LLC v. Sankey*, 2015 WL 12683801, at *3 (C.D. Cal. Feb. 3, 2015) (pleading against a collective group of defendants is sufficient "if the complaint still gives defendants fair notice of the claims against them.").[1] Defendants would not need four

---

[1] Even under the more stringent pleading standard of Rule 9(b) for allegations of fraud, collective allegations are appropriate when multiple defendants engage in the same conduct. *U.S. v. United Healthcare Ins.*, 848 F.3d 1161, 1184 (9th Cir. 2016); *U.S. ex rel. Anita Silingo v. WellPoint*, 904 F.3d 667, 681 (9th Cir. 2018).

LOEVY & LOEVY
Attorneys at Law

separate motions to dismiss, raising a host of arguments specific to each Defendant, if Long had not sufficiently differentiated between their conduct.

Nor, still yet, is Glenn entitled to dismissal because elsewhere in the complaint, Long refers to misconduct by, for example, "*Defendants including* Glenn and Weeks." Dkt. 61 at ¶66 (emphasis added). Plaintiff has plead specific facts in her possession to state a claim against each Defendant, as required. The very nature of some torts prevents plaintiffs from ascertaining which of many individual defendants participated in every act of misconduct. It remains unclear to Long—though not to Defendants, who possess greater personal knowledge—whether additional Defendants other than Glenn and Weeks participated in the fabrication of eyewitness testimony. This does not mean there is a pleading defect that is grounds for dismissal. *See generally Century of Progress Prods. v. Vivendi S.A.*, 2018 WL 4191340, at *14 (C.D. Cal. Aug. 28, 2018) (holding that, even in a case governed by Rule 9(b)'s particularity pleading requirement for fraud, where a group of defendants worked together in a common scheme such that "[p]laintiffs would not know all minute details of the alleged fraud," dismissal due to "minor ambiguities" is not appropriate); *Burgess v. Baltimore Police Dep't*, 2016 WL 795975, at *10 (D. Md. Mar. 1, 2016) ("[N]or do *Iqbal* and *Twombly* demand that a plaintiff possess full and complete knowledge of the defendant's alleged actions. Rather, a plaintiff need only submit facts sufficient to plead a plausible claim for relief. Indeed, it is the purpose of discovery to establish the presence or absence of facts with which the plaintiff intends to prove his claim."); *Echavarria v. Roach*, 2017 WL 3928270, at *3-4 (D. Mass. Sept. 7, 2017) (same); *Wilson v. City of Chicago*, 2009 WL 3242300, at *2 (N.D. Ill. Oct. 7, 2009) ("The Defendants, and not [the Plaintiff], are in possession of the knowledge of precisely which of them, if any, interrogated, manipulated, threatened, or coerced [individuals] into giving false testimony").

Finally, considering all of the different federal claims together provides a separate reason that Long has the better of this argument. Long can win her case even if she is never able to identify precisely which Defendants performed which acts of

LOEVY & LOEVY
Attorneys at Law

- 4 -

1  misconduct. Although personal responsibility is no doubt required to establish liability,

2  that requirement is met where defendants fail to intervene to prevent the violation of a

3  plaintiff's constitutional rights, or where defendants conspire to

4  perpetrate violations of constitutional rights. *Cunningham v. Gates*, 229 F.3d 1271,

5  1289 (9th Cir. 2000) ("[P]olice officers have a duty to intercede when their fellow

6  officers violate the constitutional rights of a suspect or other citizen."); *United*

7  *Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir. 1989) ("To

8  be liable, each participant in the conspiracy need not know the exact details of the plan,

9  but each participant must at least share the common objective of the conspiracy.").

10  Defendants' position that Long must provide a finite list at the pleading stage of every

11  Defendant that participated in every act of misconduct cannot be reconciled with this

12  authority. If Long can win this lawsuit without identifying which Defendant committed

13  each act of suppression or fabrication, for example, then she is certainly entitled to get

14  past a motion to dismiss and commence discovery.

15  **III.    Glenn is not entitled to qualified immunity on Long's federal claims.**

16      **A.    Qualified immunity overview**

17      Defendant Glenn seeks qualified immunity.  Dkt. 70-1 at 3. Plaintiff agrees that

18  the qualified immunity analysis proceeds in "two steps: the Court must first determine

19  whether Plaintiff has alleged that Defendants violated h[er] constitutional rights, then

20  assess whether those rights were clearly established at the time of the violation."

21  *Blankenhorn v. City of Orange*, 485 F.3d 463, 471 (9th Cir. 2007) (citing *Costanich v.*

22  *Dep't of Social & Health Servs.*, 627 F.3d 1101, 1109 (9th Cir. 2010)). However, Glenn

23  omits that, at this early stage, he must demonstrate that qualified immunity applies

24  "based on the complaint itself." *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016). In

25  other words, "like any affirmative defense, qualified immunity may be upheld on a

26  12(b)(6) motion only when it is established on the face of the complaint." *Moore v.*

27  *Gerstein*, 107 F.3d 16, 16 (9th Cir. 1996). "Defendants are entitled to [qualified

28  immunity at the pleading stage] only if the facts alleged . . . , resolved in [the plaintiff]'s

LOEVY & LOEVY
Attorneys at Law

favor and viewed in the light most favorable to h[er], show that their conduct did not violate a federal right; or, if it did, the scope of that right was not clearly established at the time." *Blankenhorn*, 485 F.3d at 471.

Glenn cannot so demonstrate. As set forth below in section B, Plaintiff's federal claims are well-pleaded, and as set forth below in section C, Glenn had fair notice of the unconstitutionality of the pleaded misconduct.

**B.    Long's federal claims are well-pleaded.**

**1.    Due process claim (Count I)**

**a.    Fabrication of evidence is plausibly alleged**.

Glenn argues that Long has not plausibly pleaded allegations that he fabricated evidence. Dkt. 70-1 at 5-10. The argument has no merit. The Supreme Court has long made clear that police fabrication of evidence used to charge, prosecute, and convict individuals violates due process. *E.g.*, *Pyle v. State of Kansas*, 317 U.S. 213, 216 (1942) (fabricated testimony and suppression of favorable evidence violate due process); *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (use of false evidence violates due process); *see also Banks v. Dretke*, 540 U.S. 668, 694 (2004) ("It has long been established that the . . . deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice.") (quoting *Giglio v. U.S.*, 405 U.S. 150, 153 (1972)). The Ninth Circuit has held that this "proposition is virtually self-evident." *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (en banc); *see also Carrillo v. Cnty. of L.A.*, 798 F.3d 1210, 1219 (9th Cir. 2015).

At trial, a plaintiff can prove a fabrication claim: (1) directly, by pointing to straightforward evidence of fabrication; (2) circumstantially, by pointing to evidence that the defendants generated false evidence despite the fact they knew or should have known Long was innocent; or (3) circumstantially, by pointing to the use of abusive or coercive techniques officers knew or should have known yield false information. *Spencer v. Peters*, 857 F.3d 789, 793 (9th Cir. 2017); *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010). Although Glenn's brief focuses

LOEVY & LOEVY
Attorneys at Law

- 6 -

only on the first type of theory, waiving arguments about the others, Long has plausibly pleaded allegations that support all three theories against Defendants.

The Complaint alleges that Glenn was among the first officers at the scene, that he searched the crime scene, and conducted a canvas of neighborhood witnesses. Dkt. 61 at ¶¶19, 25-26, 35. Glenn and Anderson observed blood on every surface around the body in a 36-degree radius. *Id.* at ¶26. There was no evidence of an attempt to clean the scene. *Id.* at ¶28. Anderson and Weeks suppressed Anderson's report documenting their observation that Long's jacket found in the center of the bloody rug was clean, consistent with her account, depriving Long of critical corroboration that undermined Defendants' theory of the case and supported Long's defense that she was not present at the time of the murder. *Id.* at ¶¶54-55.

Glenn and Weeks "manipulated, coerced, and fed information" to witnesses to create a false witness account concerning the timeline of events that occurred and where people were on the night of the crime. *Id.* at ¶¶56-57. This false account throughout the investigation and criminal prosecution had two effects: (1) it exculpated alternative suspects, by making it impossible that they had been close to Conde's house at the time of the crime; and (2) it implicated Long falsely, by putting her at the scene in time to have committed the murder prior to her 911 call, despite the physical evidence that she had not been there. *Id.* at ¶¶56-57.

For example, Glenn and Weeks manipulated a neighborhood witness Linda Alexander into changing her initial account of the night of the crime. *Id.* at ¶¶66-68. Initially, Alexander's account was that she heard a car alarm go off and a motorcycle leave the scene, and then heard a female voice screaming hysterically shortly thereafter. *Id.* at ¶67. This was consistent with Long's account that she arrived home on Dills's motorcycle, discovered the body, and called 911. *Id.* But Glenn and Weeks manipulated Alexander to significantly lengthen the time between which she heard the car alarm and motorcycle, and the time that she heard the screaming. *Id.* at ¶68. They did this in order to inculpate Long, to create the opportunity in witness accounts for her to have

LOEVY & LOEVY
Attorneys at Law

committed the crime, and to make Alexander's description match their theory of Long committing the crime. *Id.* at ¶68.

Glenn and Weeks did this to ensure that the Defendants could make the case that Long was at home with enough time to kill Conde, dispose of the murder weapon, and clean herself, before calling police. *Id.* at ¶68. They did this even though they knew the physical evidence and state of the scene at the time Glenn arrived precluded such a theory. *Id.* at ¶¶26, 28.

This fabricated evidence, which falsely implicated Long and undermined her defense, caused her to be wrongly prosecuted and convicted of murder. *Id.* at ¶¶74, 77, 85, 94-105. It was a proximate cause of her wrongful prosecution and conviction, just as the other fabricated witness statements and evidence were, and just as the Defendants' suppressions and destructions of evidence were. *Id.* at ¶¶94-105.

These detailed allegations of precisely what Glenn did to change key witness accounts from the truth, which exculpated Long, to false accounts, which implicated her, are far more than enough to state a claim of fabrication of evidence in violation of due process. The allegations are enough to state such a claim under any of the three theories of proof that Long might pursue at trial. These allegations are direct evidence of fabrication: Glenn and Weeks took a witness account that did not give Long time to commit the crime, and they changed it to one that gave her ample time. The allegations are circumstantial evidence of fabrication, because Glenn and Weeks generated this evidence even though they knew that Long was innocent—she had not cleaned the scene and that the physical evidence indicated she had not been present. And the allegations are circumstantial evidence of fabrication in that the Complaint alleges that Glenn and Weeks manipulated, coerced, and fed information to witnesses in order to obtain the fabricated accounts. These techniques were not only obviously going to yield false information, Glenn and Weeks used these techniques intending to do just that. The allegations state a claim a plausible claim for fabrication of evidence against Glenn that far more than satisfies Rule 8.

Glenn's arguments otherwise lack merit. He first argues that Long alleges that he fabricated a "false timeline," and continues, "But a timeline is not itself evidence." Dkt. 70-1 at 5. This is not legal argument about the sufficiency of pleadings, it is another bald attempt to mischaracterize the allegations in the complaint. Long alleges that Glenn fabricated false witness accounts in order to implicate Long in a crime she did not commit. *Supra* at 7-8. The fact that these false witnesses accounts arose from manipulation of witness timelines about where Long had been on night of the crime concerns the subject matter of the fabrication. It is not something that undermines that the allegation that the witnesses' accounts of this crucial information were fabrications. Defendants cannot prevail by relying on their own disputed facts. What is important is that these fabricated accounts became the evidence against Long at trial—both implicating her in the crime and preventing her from mounting a defense.

Glenn also argues that Long does not allege that he deliberately fabricated evidence. Dkt. 70-1 at 5-6. But that is obviously not the case. The account set out above concerns an intentional fabrication of a false account from a key witness, accomplished by manipulation, coercion, and fact-feeding. Glenn's argument that there is no allegation that he mispresented what any witness told him fails for the same reason. *Id.* at 6. Long's allegation is that he took a truthful statement that a witness provided, and he turned it into a lie.

In addition, Glenn argues that the Complaint does not allege that he engaged in misconduct despite knowing Long was innocent. *Id.* at 7. Not so. Not only does the Complaint allege that Glenn specifically had reason to believe based on his initial observation of the scene that Long was innocent, the very witness statement that he manipulated in order to change the timeline of events exculpated Long initially, before he changed it. Moreover, Defendants had ample evidence in the investigation they jointly led that pointed to alternative suspects, and they focused instead on Long. At trial, such circumstantial evidence is enough to present a fabrication claim to a jury (even in the absence of direct evidence). At the pleading stage, these allegations are

LOEVY & LOEVY
Attorneys at Law

- 9 -

certainly enough.

Last but not least, Glenn argues that Long must allege exactly what Glenn did when interviewing a specific witness to create false evidence. *Id.* at 8-9. Again, the Complaint does that, alleging that Glenn manipulated Alexander and fed her facts so that she would increase in her account the amount of time between when Long arrived home and when she heard screaming, in order to transform Alexander from a witness who supported Long to one who supported the police theory of the crime. Long plainly was not present when the fabrication of this witness statement occurred, and so she provides in her Complaint the level of detail available to her at this stage of the case. It is plainly sufficient to survive a motion to dismiss.

### b.    Causation is plausibly alleged.

In an undeveloped argument, Glenn also contends that Long has not sufficiently alleged that his fabrications of evidence caused her wrongful prosecution and conviction. Dkt. 70-1 at 9-10. This argument, too, rests on a reading of the Complaint that contradicts Long's allegations. As discussed, the Complaint alleges that Glenn's fabricated evidence falsely implicated Long and undermined her defense, causing her to be wrongly prosecuted and convicted. *Id.* at ¶¶74, 77, 85, 94-105.

Moreover, the argument misapplies the law. "[A] question of causation is preeminently a question of fact, to be decided after trial." *Tahoe Sierra Pres. Council., Inc. v. Tahoe Reg'l Planning Agency*, 34 F.3d 753, 756 (9th Cir. 1994). Dismissing a civil rights claim for failure to prove causation at the pleading stage is error. *Id.* Indeed, courts should not resolve causation questions even at summary judgment. The Ninth Circuit has made clear that causation becomes a question of law only if "the proof is insufficient to raise a reasonable inference that the act complained of was the proximate cause of the injury." *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 770 (9th Cir. 1981); *Est. of Gonzales v. Hickman*, 2007 WL 3237727, at *16 (C.D. Cal. May 30, 2007) ("Questions of causation involve factual disputes, which cannot be resolved by the court on a motion to dismiss or even on a motion for summary judgment."). However,

LOEVY & LOEVY
Attorneys at Law

- 10 -

because "the sufficiency of proof test involves a legal determination by the court, proximate cause may be said to be a mixed question of law and fact, which is generally sufficient to preclude summary judgment." *Id.* Glenn's causation contention cannot be resolved at this stage of the case.

Moreover, "[f]alsified evidence will never help a jury perform its essential truth-seeking function. That is why convictions premised on deliberately falsified evidence will always violate the defendant's right to due process." *Avery v. City of Milwaukee*, 847 F.3d 433, 439 (7th Cir. 2017). Glenn's position that turning a truthful witness account that supported Long's proclamations of innocence into a false one that contradict the facts of the night of the crime, undermined Long's account, and supported the police theory of the crime, which even police knew was false, was not material to Long's criminal prosecution and conviction is not only contrary to the Complaint, but it does not pass the straight-face test.

### c.    Glenn fails to challenge Long's suppression theories.

Though Glenn and Weeks do not address it, as referenced earlier, Defendants do not address anywhere in their motions that Glenn's and Weeks's fabrications of false accounts from witnesses *also* themselves constitute suppression of evidence in violation of due process, providing yet another reason that Long states a due process claim against them. Dkt. 61 at ¶¶96, 65-68. Where a police officer suppresses information about how a false witness statement was obtained, suppressed the fact that a statement is false, or suppresses earlier versions of the statement that are inconsistent with the later false statement, those suppressions of material impeachment evidence state constitutional claims. *E.g.*, *Avery v. City of Milwaukee*, 847 F.3d 433, 443-44 (7th Cir. 2017). Defendants do not challenge these allegations, and so they have forfeited any argument to the contrary. *Eric Burrell M. v. Berryhill*, 2019 WL 2719411, at *8 n.20 (C.D. Cal. June 28, 2019) (arguments raised for the first time in a reply are forfeited).

### 2.    Fourth Amendment claim (Count II)

In response to Glenn's incorporation of a challenge to this claim (Dkt. 70-1 at

LOEVY & LOEVY
Attorneys at Law

10), Long incorporates her response to Newman and Verdugo (Dkt. 85 at 11-13).

### 3.    Failure to intervene claim (Count III)

In response to Glenn's incorporation of a challenge to this claim (Dkt. 70-1 at 10), Long incorporates her response to Newman and Verdugo (Dkt. 85 at 13-16).

### 4.    Federal conspiracy claim (Count IV)

In response to Glenn's incorporation of a challenge to this claim (Dkt. 70-1 at 10), Long incorporates her response to Newman and Verdugo (Dkt. 85 at 16-18).

### C.    Long alleges violations of clearly established law.

This Court already held during the first round of motions to dismiss that "Plaintiff cites binding precedent that fabricating evidence, suppressing exculpatory evidence, and using false evidence violates due process, and has therefore met the 'clearly established' prong." Dkt. 57 at 18. Defendants offer no basis for untimely reconsideration of that law of the case. Nonetheless, Glenn again contests whether the misconduct alleged violated rights that were "clearly established" at the time of the 2003 homicide investigation and Plaintiff's subsequent two trials (Dkt. 61 at ¶¶78-79) – the second prong of qualified immunity. Dkt. 70-1 at 10. To qualify for immunity at this early stage, Glenn must show that there is no set of facts consistent with the complaint that would entitle Long to relief. *Supra* at 5-6. The Supreme Court has emphasized "the importance of drawing inferences in favor of the nonmovant, even when, as here, a court decides . . . the clearly-established prong." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

The requirement of clearly established law "does not mean that the very action at issue must have been held unlawful before qualified immunity is shed." *Blankenhorn*, 485 F. 3d at 481; *Sandoval v. County of San Diego*, 985 F.3d 657 (9th Cir. 2021). "[T]he salient question is [] whether, at the time of the encounter, Defendants had "fair warning" that their conduct was unconstitutional. *Blankenhorn*, 485 F.3d at 481. Outrageous conduct "obviously will be unconstitutional." *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 377 (2009). "But even as to action less than an outrage,

LOEVY & LOEVY
Attorneys at Law

'officials can still be on notice that their conduct violates established law ... in novel factual circumstances.'" *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). This occurs when a "general constitutional rule ... may [still] apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful.'" *C.B. v. City of Sonora*, 769 F.3d 1005, 1026-27 (9th Cir. 2014) (quotation omitted). Alternatively, the rule "must be 'settled law,' which means it is dictated by 'controlling authority' or 'a robust consensus of cases of persuasive authority.'" *D.C. v. Wesby*, 138 S. Ct. 577, 589-90 (2018) (quotations omitted).

### 1.    Due process claim (Count I)

Glenn mounts a conclusory and generic challenge to Long's due process claim as not implicating clearly established law. Dkt. 70-1 at 11. Supreme Court and Ninth Circuit precedent leave no doubt that a prudent officer had fair notice in 2003 that he could not fabricate evidence to secure a conviction. *E.g.*, *Pyle v. State of Kansas*, 317 U.S. 213, 216 (1942) (fabricated testimony and suppression of favorable evidence violate due process); *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (use of false evidence violates due process); *Banks v. Dretke*, 540 U.S. 668, 694 (2004) ("It has long been established that the prosecution's deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice.") (quoting *Giglio v. U.S.*, 405 U.S. 150, 153 (1972)); *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (en banc) ("We are persuaded that there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government."); *id.* at 1075 (such a right is "virtually self-evident").

Here, Long has alleged that Glenn intentionally fabricated false witness testimony to implicate her in a crime she did not commit, through manipulation, coercion, and fact-feeding. *Supra* at 7-8 (citing, *e.g.*, Dkt. 61 at ¶¶56-57, 66-68). Such misconduct does not within the contours of the qualified immunity defense, which

LOEVY & LOEVY
Attorneys at Law

- 13 -

serves to provide government agents with "breathing room to make reasonable but mistaken judgments about open legal questions,' while at the same time ensuring that a plaintiff can recover damages from a defendant who acts . . . unreasonably." *Sandoval*, 985 F.3d at 674. Glenn claims that more detail about the manner in which he manipulated, coerced, and fed facts to Linda Alexander is required, but identifies no authority to that effect, and, as set forth above in detail, Long states a fabrication claim against him pursuant to the applicable pleading standards. *Supra* at 6-11.

"Defendants are entitled to [qualified immunity at the pleading stage] only if the facts alleged . . . , resolved in [the plaintiff]'s favor and viewed in the light most favorable to h[er], show that their conduct did not violate a federal right; or, if it did, the scope of that right was not clearly established at the time." *Blankenhorn*, 485 F.3d at 471; *see also supra* at 5-6. Glenn does not meet the standard for dismissal at the pleading stage on such a defense, as this Court already held: "A finding of qualified immunity at this stage of the proceedings is premature." Dkt. 57 at 18.

### 2.    Fourth Amendment claim (Count II)

Glenn's challenge to Long's Fourth Amendment claim (Dkt. 70-1 at 12) fails for the reasons set forth in Long's response to the motion to dismiss of Anderson, Weeks, and Bloomfield, and Plaintiff incorporates her response. Dkt. 84 at 22-24.

### 3.    Failure to intervene and conspiracy claims (Counts III and IV)

In response to Glenn's challenges to Count III and IV (Dkt. 70-1 at 12), Long incorporates her response to Defendants Newman and Verdugo (Dkt. 85 at 20-24).

## IV.    Defendants establish no basis for dismissal of Long's state law claims.

### A.    Counts VI, IX, and XI

In response to Glenn's arguments on these counts (Dkt. 70-1 at 12), Long incorporates her response to Defendants Newman and Verdugo (Dkt. 85 at 24-25).

### B.    Timeliness of Long's state-law claims

In response to Glenn's challenge to the timeliness of her state law claims in Counts VII, VIII, and X (Dkt. 70-1 at 12), Plaintiff incorporates her response to the

LOEVY & LOEVY
Attorneys at Law

1  City's motion to dismiss (Dkt. 82 at 23-24).

2  **C.    Affirmative defense of Section 821.6 immunity**

3      Defendants next invoke an affirmative defense of immunity that this Court

4  already expressly rejected (Dkt. 57 at 9), improperly presenting new arguments and

5  authorities that they failed to cite earlier. *Compare* Dkt. 29 at 19-20; *with* Dkt. 72-1 at

6  14-21 and Dkt. 70-1 at 12 (incorporating arguments). Defendants did not timely seek

7  reconsideration, and this Court's previous holding is the law of the case.

8      As this Court has held already, immunity pursuant to California Government

9  Code § 821.6 does not apply to Plaintiff's state law claims in Counts VII, VIII, and X,

10  pursuant to binding recent Ninth Circuit authority. Dkt. 57 at 9. To be sure, § 821.6

11  precludes Plaintiff from moving forward with her state law malicious prosecution claim

12  in Count VI, as she has acknowledged. But Defendants' attempt to expand this statute

13  to bar Long's other state claims contravenes controlling authority.

14      The California Supreme Court has expressly confined the statutory immunity

15  granted by § 821.6 to causes of action for malicious prosecution. *Sullivan v. Cnty. of*

16  *Los Angeles*, 12 Cal. 3d 710, 721, 719 (1974) (holding that § 821.6 is "intended to

17  protect public employees from liability only for *malicious prosecution*"). In reaching

18  this conclusion, the California Supreme Court recognized that the legislative intent

19  behind § 821.6 required limiting the statute to malicious prosecution actions. *Id.* at 719-

20  21. In addition, *Sullivan* explained that its "narrow interpretation of section 821.6's

21  immunity, confining its reach to malicious prosecution actions," was also consistent

22  with other statutory provisions. *Id.* at 721.

23      Consistent with the statutory text, the Ninth Circuit has confined § 821.6 to

24  malicious prosecution claims. *Sharp v. Cnty. of Orange,* 871 F.3d 901, 920 (9th Cir.

25  2017) (rejecting attempted expansion of immunity under § 821.6, because that section

26  is "limited to malicious-prosecution claims"); *Mendez v. Cnty. of Los Angeles*, 897 F.3d

27  1067, 1083 (9th Cir. 2018) (refusing to apply § 821.6 to negligence claim and rejecting

28  request that immunity cover all acts during an investigation); *Garmon v. L.A.*, 828 F.3d

LOEVY & LOEVY
Attorneys at Law

- 15 -

837, 847 (9th Cir. 2016) (limiting § 821.6 to malicious prosecution claims because "[w]e think the California Supreme Court would adhere to *Sullivan* even though California Courts of Appeal have strayed from it.").

District courts have followed this binding precedent. *See, e.g.*, *Valenzuela v. San Diego Police Dep't*, 2020 WL 804923, at *4 (S.D. Cal. Feb. 18, 2020) (denying motion to dismiss based upon § 821.6, because "this Court finds itself bound by the Ninth Circuit's more recent holdings in *Sharp* and *Garmon*"); *Flores v. Cty. of Pasadena*, 2019 WL 5102465, at *10 (C.D. Cal. Oct. 10, 2019); *Acosta v. California Highway Patrol*, 2019 WL 2579202, at *15 (N.D. Cal. June 24, 2019) ("The California Supreme Court has not extended § 821.6 immunity to actions outside of malicious prosecution."); *Young v. Cty. of Menifee*, 2019 WL 3037926, at *9 (C.D. Cal. Apr. 5, 2019); *Collins v. Cty. of Alameda*, 2021 WL 254262, at *11 (N.D. Cal. Jan. 26, 2021) ("only the malicious prosecution claim is subject to dismissal based on § 821.6"); *Soler v. Cty. of San Diego*, 2019 WL 6612011, at *3 (S.D. Cal. Dec. 4, 2019); *Sanchez v. Cty. of L.A.*, 2019 WL 4180014, at *7 (C.D. Cal. Apr. 24, 2019) ("section 821.6 is of no assistance to Defendants because the Ninth Circuit has squarely held that it applies to only malicious prosecution claims."); *Yang v. Boudreaux*, 2021 WL 4066460, at *13 (E.D. Cal. Sept. 7, 2021); *Glair v. Cty. of L.A.*, 2018 WL 3956728, at *10 (C.D. Cal. May 24, 2018), report and recommendation adopted, 2018 WL 3954000 (Aug. 15, 2018); *Roe v. Rialto Unified Sch. Dist.*, 2020 WL 2790008, at *3 (C.D. Cal. Feb. 26, 2020). This makes sense, because where conduct is so egregious that it violates both the state's prohibition on malicious prosecution, and, separately, its prohibition on conduct causing emotional distress that is so egregious that it exceeds all bounds of that usually tolerated in a civilized community, the IIED claim remains available notwithstanding § 821.6.

Defendants' authority does not compel a different result. Defendants' contrary authorities improperly rely on state appellate court decisions, rather than considering the California Supreme Court's interpretation, as required. *See Sharp*, 871 F.3d 901 at

- 16 -

921; *Garmon*, 828 F.3d at 847. *Mackovski v. Cty. of Garden Grove*, 666 F. App'x 649, 655 (9th Cir. 2016), is a non-binding unpublished decision. For its part, *Blankenhorn v. Cty. of Orange*, 485 F. 3d 463 (9th Cir. 2007), involved a disputed arrest-but-not-prosecution, and rejected an attempt to apply § 821.6 to the plaintiff's assault and battery, negligence, and intentional infliction of emotional distress ("IIED") claims. *Blankenhorn* did not have occasion to determine the scope of § 821.6 beyond an arrest or even consider *Sullivan*. *Sharp* and *Garmon* then narrowed the broader discussion of § 821.6 in *Blankenhorn*, specifically holding that § 821.6 is confined to malicious prosecution claims. Defendants also rely heavily on *Leon v. Cty. of Riverside*, 64 Cal. App. 5th 837, 846 (2021), but the California Supreme Court has granted certiorari in that case.

Defendants urge this Court to disregard *Sharp*, *Mendez*, and *Garmon* based on the rationale that this Court must followed earlier three-judge panel decisions. Yet Defendants ignore that this Court's task is to decide how the California Supreme Court would construe § 821.6—not look to California appellate courts. Defendants' claim that it is the "earlier" three-judge-panel opinions that constrain this Court do not apply to federal appellate authority assessing the current status of *state* supreme court authority as to an issue. The exact opposite is true: as the state law evolves, so, too, must the federal law construing it. Defendants provide no basis for reconsideration of this Court's prior ruling, which was correct.

At the very least, Long's claim would not be subject to dismissal to the extent that it relies on theories of recovery separate from the initiation of charges, such as from Defendants' misconduct that subjected her to an unfair trial. *E.g.*, *Wheat v. Lee*, 2013 WL 2285174, at *8-12 (N.D. Cal. May 23, 2013); *Roberts v. Cty. of Riverside*, 2020 WL 3965027, at *6-8 (C.D. Cal. June 5, 2020).

### D.    Bane Act claim (Count X)

Defendants also fail to establish any basis for dismissal of Long's Bane Act allegations. *See* Dkt. 70-1 at 13 (incorporating arguments at Dkt. 72-1 at 21-24). A

LOEVY & LOEVY
Attorneys at Law

plaintiff may plead a Bane Act claim by alleging a Defendant's violation of a federal constitutional or state law right, and specific intent to violate the right. *See Reese v. Sacramento,* 888 F.3d 1030, 1043 (9th Cir. 2018) (citing *Cornell v. San Francisco*, 225 Cal. Rptr. 3d 356, 382-85 (2017), as modified (Nov. 17, 2017)); *Sandoval v. Cnty. of Sonoma*, 912 F.3d 509, 520 (9th Cir. 2018).   Alternatively, where the alleged misconduct is merely negligent, the plaintiff may state a claim by alleging violation of the right and the use of threats, intimidation, or coercion. *Sandoval*, 912 F.3d at 519; *Rodriguez*, 891 F.3d at 800-802; *Shoyoye v. L.A.*, 203 Cal. App. 4th 947 (2012).

Controlling authority from the Ninth Circuit rejects the proposition that a plaintiff alleging intentional torts need also allege a "threat, intimidation or coercion" that is transactionally independent from the violation to state a claim. *See Reese*, 888 F.3d at 1042-1044 & n.5; *Sandoval*, 912 F.3d at 519-20; *Rodriguez v. L.A.*, 891 F.3d 776, 799-802 (9th Cir. 2018). This Ninth Circuit authority applies updated guidance from the California state courts in decisions such as *Cornell v. San Francisco*, 17 Cal. App. 5th 766, 801-02 (2017), and is controlling on this Court. Defendants' district court citations (Dkt. 72-1 at 22) are unpersuasive. Most do not consider updated and controlling guidance by the Ninth Circuit and California state courts in cases such as *Reese*, *Sandoval*, *Cornell*, and *Rodriguez*. As for *County Inmate Telephone Services Cases*, 48 Cal. App. 5th 354, 371 (2020), that decision affirms that plaintiffs may state a viable Bane Act claim by alleging *either* a specific intent to violate the plaintiff's rights, or threats, intimidation, or coercion.

Here, Long's Complaint identifies the "rights secured by the U.S. Constitution and the laws of California" with which she alleges interference: her Fourteenth Amendment rights, Fourth Amendment rights, and state law rights against intentional infliction of emotional distress. *E.g.*, Dkt. 61 at ¶165 & Counts I, II, & VI. Defendants present no authority requiring any different presentation of those rights.

As for the second element, Long alleges in detail Defendants' specific intent to violate her rights and frame her for murder. *E.g.*, Dkt. 61 at ¶¶166, 4-6, 40, 76, 96-100,

LOEVY & LOEVY
Attorneys at Law

- 18 -

107-111, 151-53, 155. Defendants ignore that "Federal Rule of Civil Procedure 9(b) allows plaintiffs at this stage to generally plead intent, knowledge, and other conditions of a person's mind." *John v. Lake Cnty.*, No. C 18-06935 WHA, 2019 WL 859227, at *5 (N.D. Cal. Feb. 22, 2019); *see also Galbraith v. Santa Clara*, 307 F.3d 1119, 1124-26 (9th Cir. 2002). Even if specificity were required, Plaintiff provides extensive factual detail, such as allegations that, despite knowing of her innocence, and as part of their scheme to frame Plaintiff (*supra* at 1; *see also* Dkt. 61 at ¶¶4-6, 76, 103, 121), Anderson, Weeks and Bloomfield deliberately suppressed the contents of undisclosed interviews; withheld their own exculpatory police reports; destroyed and failed to preserve evidence in bad faith; and fabricated evidence by knowingly feeding facts to, manipulating, and coercing various witnesses (Dkt. 82 at 2-7); Newman and Verdugo destroyed exculpatory evidence in bad faith (Dkt. 85 at 1-2), and Glenn intentionally fabricated witness testimony (*supra* at 1-2). As set forth elsewhere, this conduct was obviously unreasonable and also violated clearly established law (*see* Dkt. 57 at 18; *supra* at 13-14; Dkt. 84 at 19-24; Dkt. 85 at 20-24). Although not required, Long also alleges that Weeks and Glenn used threats, coercion, and manipulation to fabricate witness testimony and frame Long. Dkt. 61 ¶¶58, 60-62, 66-68.

### E.    IIED claim (Count VII)

Defendants fail to satisfy their burden to establish any basis for dismissal of Plaintiff's IIED claim. *Huskins v. City of Vallejo*, 2017 WL 2868534, at *7 (E.D. Cal. July 5, 2017); Dkt. 70-1 at 16. To state a claim, Long need only allege "extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress," and resulting harm. *See Cooper v. Triwest Healthcare All. Corp.*, 2013 WL 12064477, at *6 (S.D. Cal. June 13, 2013). "A defendant's conduct may be considered extreme and outrageous if the defendant abuses a relation or position which gives him power to damage the plaintiff's interest." *Huskins v. City of Vallejo*, 2017 WL 2868534, at *7 (E.D. Cal. July 5, 2017); *Richardson-Bass v. State Ctr. Cmty. Coll. Dist.*, 2020 WL 5658225, at *10 (E.D. Cal. Sept. 23, 2020). At

LOEVY & LOEVY
Attorneys at Law

the pleading stage, Plaintiff need only plead sufficient facts to raise an inference of the requisite intent or reckless disregard. *Duenez v. City of Manteca*, 2012 WL 4359229, at *15 (E.D. Cal. Feb. 23, 2012).

Here, Long alleges that, among other things, Defendants engaged in extreme and outrageous conduct by, for example, intentionally fabricating witness testimony (Anderson and Glenn), deliberately suppressing evidence such as undisclosed interviews and police reports (Anderson, Weeks, and Bloomfield), purposefully destroying and failing to preserve evidence in bad faith, framing her for a crime they knew she did not commit (Dkt. 82 at 2-8), causing her to be subjected to over seven years of wrongful incarceration. Dkt. 61 at ¶¶4, 11, 168. She further alleges that Defendants conspired and worked together to frame Plaintiff for murder by taking these actions (*id.* at ¶¶4-6, 40, 76, 155); abused their positions of authority (*id.* ¶152); and acted to "secure" Long's wrongful prosecution and conviction (*id.* ¶5), with "reckless disregard" for the devastating distress they would cause her (*id.* ¶152, 77-90).

Courts routinely find that analogous allegations suffice. *E.g.*, *Dinius v. Perdock*, 2012 WL 1925666, at *9 (N.D. Cal. May 24, 2012) (allegations of "conspiracy, corruption, fabrication of false evidence . . . point to at least a reckless disregard . . . to cause . . . emotional distress"); *Hill v. City of Chicago*, 2020 WL 509031, at *5 (N.D. Ill. Jan. 31, 2020) ("If, as alleged, defendants fabricated false or misleading evidence of [plaintiff's] guilt or concealed exculpatory evidence from prosecutors, that behavior is sufficiently 'outrageous' to support a claim for intentional infliction of emotional distress."); *Bros. v. Town of Millbury*, 2014 WL 4102436, at *8 (D. Mass. Aug. 14, 2014) (allegation that police officer destroyed exculpatory evidence and produced reports full of false statements suffices); *Marsh v. San Diego Cnty.*, 432 F. Supp. 2d 1035, 1055 (S.D. Cal. 2006). "Defendants failed to cite any relevant authority holding that the foregoing conduct is considered, as a matter of law, neither atrocious nor utterly intolerable in today's civilized community." *Richardson-Bass v. State Ctr. Cmty. Coll. Dist.*, 2020 WL 5658225, at *11 (E.D. Cal. Sept. 23, 2020).

LOEVY & LOEVY
Attorneys at Law

### F.    State law conspiracy claim (Count VIII)

Defendants' observation (Dkt. 70-1 at 16) that Plaintiff's state law conspiracy claim is derivative of liability for other state law claims does not warrant dismissal because Plaintiff states viable IIED and Bane Act claims.

## V.    Any dismissal should be without prejudice.

Any dismissal should be without prejudice, for the reasons set forth in Long's response to the City's motion (Dkt. 82 at 24-25).

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendant's motion to dismiss should be denied.

**DATED:** August 4, 2022                          Respectfully submitted,

                                                            **KIMBERLY LONG**

                                                            By: /s/ Ruth Brown

                                                            One of Plaintiff's Attorneys

## CERTIFICATE OF SERVICE

I, Ruth Brown, an attorney, certify that on August 4, 2022, the foregoing was filed via the court's ECF system, which effectuated service on all counsel who have appeared in the case.

                                                            By: /s/ Ruth Brown

                                                            One of Plaintiff's Attorneys

LOEVY & LOEVY
Attorneys at Law

- 21 -