**Megan Pierce** (SBN 314044)
**Elizabeth Wang**, CO Bar: 45976, IL
Bar 6287634*
**Lauren Carbajal** (SBN 336485)
**Steven Art**, IL Bar: 6302319*
carbajal@loevy.com
Loevy & Loevy
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
Phone: (312) 243-5900
Fax: (312) 243-5902

**Jan Stiglitz (SBN 103815)**
js@cwsl.edu
Law Office of Jan Stiglitz
14462 Garden Tr.
San Diego, CA 92127
Phone: (619) 807-5890

**Michael D. Seplow** (SBN 150183)
mseplow@sshhzlaw.com
Schonbrun Seplow Harris
Hoffman & Zeldes LLP
9415 Culver Boulevard, #115
Culver City, CA 90232
Phone: (310) 396-0731

Counsel for Plaintiff

*Pro hac vice admission

## UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY LONG,<br><br>                    Plaintiff,<br><br>                    v.<br><br>THOMAS WEEKS, RONALD ANDERSON, DANIEL BLOOMFIELD, ROBERT NEWMAN, DANIEL VERDUGO, JEFFREY GLENN, UNKNOWN EMPLOYEES of the CITY OF CORONA, and the CITY OF CORONA,<br><br>                    Defendants. | Case No. 5:21-cv-02008-FWS<br><br>Hon. District Judge Fred W. Slaughter<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES & OTHER RELIEF**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff KIMBERLY LONG, by her undersigned attorneys, hereby complains against Defendants THOMAS WEEKS, RONALD ANDERSON, DANIEL BLOOMFIELD, ROBERT NEWMAN, DANIEL VERDUGO, JEFFREY GLENN, UNKNOWN EMPLOYEES of the CITY OF CORONA, and the CITY OF CORONA, and states as follows:

## JURISDICTION AND VENUE

1.    Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and California law to redress Defendants' tortious conduct and their violation of Plaintiff's rights secured by the U.S. Constitution.

2.    This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367.

3.    Venue is proper under 28 U.S.C. § 1391(b). Plaintiff's criminal case was investigated, tried, and appealed in Riverside County, California, such that a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this judicial district.

## INTRODUCTION

4.    Plaintiff Kimberly Long was a nurse and mother to two young children when Defendants framed her for the 2003 murder of Oswaldo Conde. She was convicted and sentenced to 15 years to life in prison for a crime she did not

commit.

5.     Long's wrongful conviction was caused by the misconduct of Defendant Corona Police Officers, who suppressed and fabricated evidence to secure Long's prosecution and conviction.

6.     As set forth in more detail below, Defendants suppressed evidence and police reports implicating alternative suspects; exculpating Long; and revealing the bias and illegitimacy of the police investigation. Defendants also manipulated and fed information to witnesses to bolster their case against Long.

7.     In doing so, the Defendant Officers acted pursuant to the City of Corona Police Department's unconstitutional policies and practices, including its failure to discipline and supervise officer misconduct and allowance of evidence suppression and fabrication.

8.     Defendants never recovered a murder weapon, and no physical evidence has ever tied Long to the murder—indeed, the physical evidence exonerated her. Long's conviction was based solely on Defendants' wrongdoing.

9.     After spending roughly two decades attesting to her innocence and fighting this injustice, Long's conviction was vacated, and all charges against her were dismissed in April 2021.

10.     Long seeks justice for the harm that Defendants have caused and redress for the loss of liberty and the terrible hardship that she has endured and

SECOND AMENDED COMPLAINT - 3

continues to suffer as a result of Defendants' misconduct.

## PARTIES

11.     Plaintiff Kimberly Long spent more than 7 years wrongfully incarcerated for a murder that she did not commit. Long is a 45-year-old resident of West Covina, California. She is currently spending time with her parents and children, working on her dog grooming business, and actively speaking out against wrongful convictions as one of the founders of the Exoneree Support Committee.

12.     At all times relevant to the events described in this Complaint, Defendants Thomas Weeks, Ronald Anderson, Daniel Bloomfield, Robert Newman, Daniel Verdugo, Jeffrey Glenn, and other unknown law enforcement officers were police officers in the Corona Police Department acting under the color of law and within the scope of their employment for the City of Corona.

13.     At all times relevant to the events described in this Complaint, Defendant Thomas Weeks was a Detective Sergeant and supervisor in charge of the homicide unit of the Corona Police Department. Acting under color of law and within the scope of his employment for the City of Corona, Weeks and other unknown supervisors participated in the misconduct alleged in this Complaint and/or facilitated, condoned, approved, and turned a blind eye to the constitutional violations committed by the officers in the preceding paragraph.

14.     Defendant Detective Sergeant Weeks responded to the scene of the

SECOND AMENDED COMPLAINT - 4

Conde homicide investigation, led many of the interviews, determined many of the investigative steps, and participated in the misconduct described below.

15. Defendant Ronald Anderson was a Senior Detective assigned to investigate the Conde homicide. Defendant Anderson responded to the scene; led many interviews; and determined many investigative steps.  Acting under color of law and within the scope of his employment for the City of Corona, Anderson directly participated in the misconduct alleged in this Complaint and/or facilitated, condoned, approved, and turned a blind eye to the constitutional violations committed by his subordinates: Defendants Bloomfield, Newman, Glenn, and Verdugo, and other unknown law enforcement officers.

16. Defendants Daniel Bloomfield and Robert Newman were detectives assigned to investigate Conde's murder under Anderson and Weeks's supervision, and they participated in the misconduct described below.

17. Defendant Bloomfield's investigative assignments included responding to the scene, searching for and collecting evidence, and interviewing suspects and witnesses.

18. Defendant Newman's investigative assignments included responding to the scene; processing the scene, including searching for and collecting evidence; and interviewing suspects and witnesses.

SECOND AMENDED COMPLAINT - 5

19.    Defendant Jeffrey Glenn was a patrol officer that was dispatched to the scene in response to Plaintiff's 911 call and was among the first officers to enter the crime scene.  Glenn's investigative assignments included responding to the scene; searching the crime scene; and conducting a canvas and interviews of neighborhood witnesses. Defendant Glenn participated in the misconduct described below.

20.    Defendant Daniel Verdugo was an evidence technician who responded to the scene of the Conde murder, was responsible for collecting and logging forensic evidence, and participated in the misconduct described below.

21.    Defendant City of Corona is a municipality located in Riverside County, California, and is and/or was the employer of each of the Defendants. The City is liable for all torts committed by Defendants pursuant to California law. The City is also responsible for indemnifying judgments against Defendants. The City is responsible for the policies, practices, and customs of the Corona Police Department that caused Long's wrongful conviction. And the supervising officers had final policymaking authority for the policies, practices, and customs of the Corona Police Department.

SECOND AMENDED COMPLAINT - 6

# FACTS

## Oswaldo Conde's Murder

22.     Oswaldo Conde returned home late from a night out on October 5, 2003. Sometime between then and the early morning hours of October 6, 2003, he was brutally murdered.

23.     Conde was Long's live-in boyfriend, and her life partner, whom she loved.

24.     Long was out with a friend at the time of the murder and did not witness the crime. She came home in the early morning hours and found Conde lying motionless on the couch with severe injuries to his head. Despite being in extreme shock, Long immediately called 911 for help.

25.     Police officers including Defendant Glenn responded to the call, and the other individual Defendants—Weeks, Anderson, Bloomfield, Newman, and Verdugo—also arrived at the scene.

26.     Officers including Defendants Glenn and Anderson noticed that there was blood on every wall of the living room in a 360-degree radius.

27.     There was no one else present at the house when officers arrived, apart from Long, who was hysterical, having just found her boyfriend dead.

SECOND AMENDED COMPLAINT - 7

28.     Officers found no evidence of an attempt to clean up the house, no blood anywhere else in the house apart from the living room, and nothing to suggest that the sinks or showers had been recently used.

29.     Long was brought to the police station, where she waited for about five hours, voluntarily, to be interviewed.

30.     Long was grieving and sleep-deprived, and yet she remained committed to cooperating with police officers to help them find out who had killed Conde.

31.     Defendants Weeks and Bloomfield conducted an initial interview of Long.

32.     At the interview, Long consented to allowing her house to be searched and having evidence collected, including the clothes that she was wearing.

33.     Long also identified Conde's ex-girlfriend, Shiana Lovejoy, as a potential suspect given their troublesome history and relationship.

34.     Officers including Defendant Newman interviewed Conde's relatives.

35.     Officers including Defendant Glenn conducted an initial canvass of Long's neighborhood to determine whether anyone heard or saw anything.

36.     Conde's siblings disclosed that Shiana Lovejoy had threatened to kill Conde and Long, and that she was violent and "not all there."

SECOND AMENDED COMPLAINT - 8

37.     Another potential suspect was Joe Bugarski, Long's ex-husband, who had a recent history of threatening behavior towards Conde and Long.

38.     During the initial canvass and interviews, none of the witnesses identified Long as the perpetrator of the murder or even as a potential suspect.

39.     The reason no one identified Long as a suspect or the perpetrator is because Long had nothing to do with Conde's murder and no motive whatsoever to commit the crime.

**Defendants Frame Long for Conde's Murder**

40.     Although Defendants had identified Conde's vengeful ex-girlfriend Lovejoy, and Long's violent ex-husband Bugarski as suspects in Conde's death, Defendants settled on Long alone and built a case against her by suppressing and destroying evidence that cast doubt on their theory of the case and by fabricating additional evidence against her.

41.     Defendants including Anderson and Weeks suppressed their own documentation and police reports calling into question Bugarski and Lovejoy's credibility and indicating that police believed they were lying. Withholding of this documentation deprived Long of the opportunity throughout her prosecution and trial to cast doubt on Lovejoy and Bugarksi's credibility.

SECOND AMENDED COMPLAINT - 9

42.    For example, Defendants including Anderson suppressed a police report by Anderson reflecting that Anderson thought that Bugarski was lying during the police investigation of the Conde murder.

43.    Likewise, Defendants including Anderson suppressed documentation in yet another police report authored by Anderson indicating that Anderson wouldn't be surprised if Bugarski was involved in the murder.

44.    Defendants including Anderson and Weeks also suppressed police reports that documented that Lovejoy had previously lied to police officers by denying that she had vandalized Conde's truck.  Lovejoy eventually admitted to the vandalism, but due to the suppression, Long was deprived of the opportunity throughout the prosecution and trial to call into doubt Lovejoy's credibility due to her prior lies to police.

45.    Instead, because of Defendants' suppression, the prosecution was able to present Lovejoy at trial as a truth-teller who admitted to police when she broke the law, and the defense was unable to rebut that presentation with evidence of Lovejoy's past lies to police about vandalizing Conde's truck.

46.    Defendants including Weeks, Anderson, and Bloomfield also suppressed evidence that police had reason to doubt, and did doubt, Lovejoy and Bugarski's alibis.

SECOND AMENDED COMPLAINT - 10

47.    For example, Defendants including Weeks, Anderson, and Bloomfield suppressed documentation and/or recordings of Bugarski's interviews with police—including the details of Bugarski's alibi provided the morning of October 6th and all information provided by Bugarski, including about his alibi, in a suppressed early interview with Weeks.

48.    Likewise, Defendants including Anderson suppressed all information provided by Bugarksi during portions of an interview with Anderson that Anderson purposefully conducted away from a recording device so as to conceal the communications from Long's defense.

49.    Without this information, Long was deprived of access to Bugarski's inconsistent earlier accounts of his alibi, given before Bugarski had had multiple days to refine the alibi, in concert with police officers determined to exonerate Bugarski and pin the crime on Long, and Bugarski's alibi witnesses.

50.    Similarly, Defendants including Bloomfield, Anderson, and Newman conducted interviews with Lovejoy prior to her recorded polygraph examination, but suppressed the contents and recordings of those interviews, including Lovejoy's statements about her alibi, so that they could not be used by Long's defense. The contents and recordings of these interviews would have showed that police knew Lovejoy's alibi was implausible, that she had the opportunity to commit the murder, and that she lacked credibility.

51.    Defendants including Anderson and Weeks also suppressed highly exculpatory physical evidence showing that they knew Long could not have been the perpetrator.

52.    For example, Defendants Anderson and Weeks suppressed documentation by Anderson indicating that Anderson—accompanied by Defendants Weeks, Verdugo, Bloomfield, and Newman—had found Long's jacket on the rug near where Long had discovered Conde's body and recognized that the jacket had no blood on it, unlike the rug and everything around it, which were covered in blood.

53.    Given the 360-degree radius of the blood spatter, these Defendants knew that it would have been impossible for the perpetrator to have remained blood-free during the commission of the murder.

54.    Nonetheless, Defendants Anderson and Weeks suppressed Anderson's report indicating that police could see that Long's jacket was blood-free when it was discovered on the bloody rug and thus Long could not have been present at the time of the murder. The suppressed essential report reflecting police impressions of the physical evidence fully supported Long's account of discovering Conde dead, and fatally undermined Defendants' theory that Long was the murderer.

55.    Had Defendants Anderson and Weeks turned over Anderson's report to Long's defense attorney and the prosecutors, it would have been impossible for

SECOND AMENDED COMPLAINT - 12

prosecutors to pursue a theory (as they did) that Long killed Conde, disposed of the murder weapon, and cleaned herself at the scene before calling 911. The suppressed police report also impeached the Defendants' own account of how the crime had occurred and how they had investigated the crime. At trial, Long tried to defend herself by arguing that her jacket at the scene would not have been clean if she had been the murderer. All the while, Defendants were suppressing a report by Anderson completely supporting Long's theory.

56.    As a result of suppressing this exculpatory evidence, Defendants obtained Long's arrest pursuant to a judicial warrant, detention, prosecution, and conviction, without probable cause.

57.    In addition, Defendants including Weeks and Glenn manipulated, coerced, and fed information to other witnesses to bolster their case against Long, despite her innocence.

58.    Defendants including Weeks and Glenn knowingly manipulated, coerced, and fed information to various witnesses to create a false timeline that protected the alternative suspects and implicated Long.

59.    For example, Defendants including Weeks intentionally used manipulation and coercion to fabricate the timeline by which Lovejoy's alibi witness, Oscar Castaneda, stated that he returned home from an outing with Lovejoy on the night of the murder—moving the timeline later such that Castaneda

would support, rather than defeat, Lovejoy's alibi for the time of the murder.

Weeks coerced Castaneda in part by informing Castaneda that Lovejoy was not

involved in the murder, that Long was accusing Lovejoy, and that police needed

Castaneda to say he was with Lovejoy at the time of the crime.

60.    Defendants including Weeks then withheld from Long's defense the

improper tactics and coercion that they used to fabricate the timeline of when

Castaneda separated from Lovejoy on the night of Conde's death.

61.    As another example, Defendant Weeks threatened Jeff Dills—Long's

alibi witness, who was with Long during the night of Conde's murder—that Dills

was a suspect in the murder.

62.    Weeks, in concert with other defendants, then fed Dills information

about the investigation and manipulated Dills to adopt a false timeline of events

that placed him far away from the crime scene at the time of the murder.

63.    Defendants including Weeks pressured Dills through the threat of

prosecution to adopt this false timeline that cleared him of any wrongdoing or

involvement and implicated Long.

64.    Dills's false timeline, fabricated by Defendants, was manufactured to

place Long at the scene of the crime at 1:20am, sufficiently in advance of her 911

call at 2:09am.

SECOND AMENDED COMPLAINT - 14

65.    Without Defendants' fabrication of Dills's testimony, the prosecution would not have been able to argue that Long had had time to commit the murder, dispose of the murder weapon, and clean herself off and the scene prior to calling 911.

66.    Defendants including Weeks also covered up their misconduct by failing to record or document material communications that Weeks had with Dills, so that the misconduct would not be discovered by Long's counsel or the prosecution. The withheld information included the details of the extensive interrogation by Weeks of Dills on October 6 – which covered Dills's location at the time of Conde's murder – that Weeks purposefully withheld from Long's defense.

67.    Likewise, Defendants including Glenn and Weeks manipulated neighborhood witnesses into corroborating the false timeline that they had fabricated to match Defendants' theory of the case. They did so to ensure that Defendants could made the case that Long was at home with enough time to kill Conde, dispose of the murder weapon, and clean herself and the scene before calling the police.

68.    For example, one eyewitness heard a car alarm go off and motorcycle leave, and then heard a female voice screaming hysterically shortly thereafter,

SECOND AMENDED COMPLAINT - 15

consistent with Long's account of her arrival home on Dills's motorcycle,

subsequent discovery of the body, and 911 call.

69.    Defendants Glenn and Weeks manipulated this eyewitness to

significantly lengthen the time between which she supposedly heard the car alarm

and motorcycle, and the time when she heard the screaming, so that the eyewitness

account *inculpated* Long and was consistent with Defendants' theory that Long

had had sufficient time after arriving home to kill Conde, dispose of the murder

weapon, clean herself up, and then call 911.

70.    Defendants including Anderson, Newman, and Verdugo also

purposefully suppressed and destroyed physical evidence including a champagne

bottle and cup found at the house with Conde that, had it been tested, would have

shown that other individuals had been present with Conde at the time of the crime

and identified them.

71.    Likewise, Defendants including Anderson, Newman, and Verdugo

also purposefully declined to collect other key evidence at the crime scene such

that it was destroyed and unavailable to Long's defense.

72.    These Defendants did so because they could already tie their suspect,

Long, to the scene of the crime based on her discovery of the body at her

residence, and did not want to generate evidence that would call into question

Long's guilt and implicate any additional suspects.

SECOND AMENDED COMPLAINT - 16

73.     These Defendants thus purposefully failed to collect, or to cause to be collected, evidence that they knew would detail who was present at the time of the murder with Conde, such as fingerprint impressions and/or DNA from: (1) the door and doorknob used by the perpetrator to gain access to the home; (2) the door and doorknob leading from the garage into the house which had been propped open during the assault; (3) the closet door in the master bedroom which contained a shotgun that Defendants knew had gone missing at the time of the murder; and (4) the kitchen cabinet which contained a change bowl associated with alternate suspect Bugarski that disappeared in connection with the murder.

74.     By purposefully failing to collect, and thus destroying, this evidence, Defendants including Anderson, Newman, and Verdugo denied Plaintiff access to evidence that would have shown the presence and identity of others at the scene of the crime with Conde at the time of his death, and exonerated her.

75.     All of the misconduct alleged above caused Plaintiff to be wrongfully arrested pursuant to a judicial warrant, detained, prosecuted and tried for Conde's murder, all without probable cause.

76.     Defendants also committed other misconduct, including that which is presently unknown to Plaintiff prior to discovery.

77.     In committing the misconduct described above, Defendants reached an agreement with one another, and with others currently unknown to Plaintiff, to

SECOND AMENDED COMPLAINT - 17

individually and jointly to manipulate and coerce witnesses into implicating Long in Conde's murder, to suppress exculpatory evidence, and to fabricate evidence and to use that false evidence to initiate and perpetuate false criminal charges against Long.

### Long's Prosecution and Wrongful Conviction

78.    On the basis of Defendants' misconduct, an arrest warrant was issued for Long.

79.    Because the basis of Long's arrest was due to Defendants' fabrication and manipulation of evidence, there was no probable cause to arrest Long.

80.    Prior to her criminal trials, Long was deprived of liberty, including but not limited to: loss of custody of her daughter, having to pay fees  to spend time with her daughter under court supervision, restrictions on travel and other freedom of movement, having to post bond, and having to call in and report to a bail bondsman every week. Long also suffered harm to her reputation as a respected nurse.

81.    Long's first jury trial ended in a mistrial, with most of the jurors believing that she was innocent of the crime.

82.    Long was convicted of murder by a second jury trial.

SECOND AMENDED COMPLAINT - 18

83.    In denying her motion for a new trial, Judge Magers noted that had it been a bench trial, he would have acquitted Long.

84.    Long was sentenced to 15 years to life in prison.

85.    There was no physical evidence tying Long to the crime.

86.    No fingerprints, DNA, or any other forensic evidence ever linked Long to Conde's murder.

87.    In fact, physical evidence proved that Long could not have committed the crime.

88.    Long's conviction was based solely on Defendants' fabrications and suppressions and destruction of exculpatory evidence. Without Defendants' misconduct described above, Long would not have been prosecuted or convicted as there was no probable cause to support her arrest and pretrial detention.

89.    Long was a young mother to two children when she was convicted of a crime she did not commit.

90.    Her whole life was turned upside down without any warning. Her formative adult years were consumed by the horror of her wrongful imprisonment.

91.    Because of Defendants' misconduct, Long was taken away from, and missed out on, the lives of her family and friends. She missed out on the ability to raise and get to know her children, and the ability to share holidays, births, and

SECOND AMENDED COMPLAINT - 19

other life events with loved ones. And she missed out on the opportunity to mourn and grieve the loss of her life partner and loved one.

92.     Long was also robbed of her opportunity to continue her meaningful career as a nurse.

93.     In addition to the trauma of wrongful imprisonment and Long's loss of liberty, Defendants' misconduct caused and continues to cause her extreme physical and psychological pain and suffering, humiliation, constant fear, nightmares, anxiety, depression, despair, rage, and other physical and psychological effects. Plaintiff has been branded a murderer in her community. She has suffered profound and irreparable reputational harm as a result.

**Long's Exoneration**

94.     Long has steadfastly maintained her innocence and fought hard to correct this extreme miscarriage of justice.

95.     In November 2020, after noting the weakness of the prosecution's evidence against Long, the Supreme Court of California vacated Long's conviction.

96.     All charges were dismissed against her in April 2021.

**Defendant City of Corona's Unconstitutional Policies, Practices, and Customs**

97.     Defendants engaged in repeated, blatant violations of constitutional law as described herein pursuant to the policies and practices of the Defendant City

of Corona and the Corona Police Department. Defendant City and the Department

failed to provide adequate training, supervision, and guidance with respect to the

fabrication, suppression, and manipulation of evidence. That misconduct took

place at every phase of the Conde's murder investigation, demonstrates

Defendants' inadequate policies and training with respect to adhering to

constitutional obligations while conducting criminal investigations.

98.    The Defendant City is liable because the violations of Plaintiff's rights

as described in this Complaint were caused by the policies, practices, customs, and

actions of policymakers for these Defendants.

99.    The Corona Police Department manual governing Corona Police

Officers' conduct in 2003 was titled "2002 - October Employee Policy Manual"

("Corona Police Manual" or "Manual").

100.    In 2003, the Manual had no policies, procedures, rules, or regulations

relating to Corona Police Officers' constitutional obligations under *Brady v.

Maryland*, 373 U.S. 83 (1963), to disclose and preserve exculpatory or

impeachment evidence.

101.    While the Manual contained a "Constitutional Requirements" section,

it failed to explain, or even list, what those requirements were. Instead, the one-line

policy merely instructs employees to "observe and comply with every person's

clearly established constitutional rights under the United States and California

SECOND AMENDED COMPLAINT - 21

Constitution." This vague policy statement failed to state what any constitutional rights were and failed to provide any guidance to officers on how to properly execute constitutional requirements, including how to comply with the exculpatory evidence obligations arising under *Brady*.

102.   The Manual likewise contained no policies, rules, or guidance regarding the collection and preservation of evidence, conduct of interrogations, writing of police reports, or notes of witness statements.

103.   For example, in lieu of an adequate investigation policy, the Manual contained a bare-bones "Investigation & Prosecution" section that consists of two general subsections. Neither subsection provides guidance on preservation or disclosure of exculpatory or impeachment evidence, conduct of interrogations, writing of police reports, or notes of witness statements. The Manual also failed to address an officer's duty to maintain accurate records. Falsification of records or the failure to disclose material facts is only vaguely addressed in the disciplinary section, and it is listed among a variety of infractions that are not distinguished by severity. For instance, the infraction listed immediately after records falsification concerns loaning out Department property, indicating that records falsification is not considered a serious offense. Additionally, the policies regarding falsification of documents and failing to disclose facts apply to all Department documents and

records, not just those involved in criminal investigations; thus, there is no

indication that this misconduct would constitute a violation of the Constitution.

104.    Upon information and belief, the final policymakers for the City and

Department were on notice, as early as February 2003, that the outdated Corona

Police Manual was wholly inadequate, likely to lead to constitutional violations by

officers, and needed to be completely rewritten.

105.    A revision to the Manual dated February 2003 contained a new Brady

section describing the procedure for releasing exculpatory information contained

within confidential peace officer personnel files. This demonstrated that city

policymakers were aware of the importance of officers' *Brady* obligations.

106.    However, despite the Defendant City's awareness of its *Brady*

obligations, the operative Manual at the time of Long's arrest and the subsequent

revision contained no policies, procedures, or systems for ensuring the disclosure

of any and all exculpatory information arising from a criminal investigation.

107.    The misconduct described herein was undertaken pursuant to the

policy and practice of the Defendant City and the Department in that they had a

policy of inadequate guidance, training, and supervision of Corona police officers

with respect to the following, even though the need for such training and

supervision was obvious: the obligation to disclose exculpatory and impeachment

evidence; the handling, preserving and disclosure of exculpatory or impeachment

SECOND AMENDED COMPLAINT - 23

evidence; the conduct of interrogations; and writing of police reports or notes of witness statements.

108.   Despite the great potential for misconduct, Defendant City's policies failed to adequately inform its employees of their constitutional obligations, which directly led to the violation of Long's constitutional rights.

109.   Upon information and belief, Defendant City also failed to train its officers in constitutional interrogations and techniques to be used when questioning criminal suspects and witnesses; the production and disclosure of evidence, including physical evidence, material exculpatory evidence and impeachment evidence, and information bearing upon the credibility of both lay and law-enforcement witnesses; the writing of police reports and taking of investigative notes; obtaining statements and testimony from witnesses; and the maintenance of investigative files and disclosure of the files in criminal proceedings, despite the obvious need for such training.

110.   The training provided by Defendant City on these techniques and skills was outdated, insufficient, and inconsistent with generally accepted standards and practices. Defendant City had knowledge of the importance of complying with constitutional obligations while conducting criminal investigations and its failure to adequately train officers in how to comply with these obligations constituted deliberate indifference.

111.   Defendant City and its policymakers knew that such training was obviously needed, and without it, constitutional violations would occur.

112.   Finally, Defendant City had a policy, practice, or widespread custom of failing to discipline officers for misconduct on and off-duty. Within the Corona Police Department, a culture of impunity, a code of silence, and a failure to discipline and supervise allowed widespread misconduct to go unchecked.

113.   As but one example, Corona Police Department officer Kelly Anderson suffered retaliation when attempting to report a co-worker's corruption and misconduct, including a close association between that police officer with members of the Vagos outlaw motorcycle gang. Supervisors told Kelly Anderson that there would be no investigation, to "get over it and let it go," and that it was "none of [her] business," and then retaliated against her. When a second officer carried on an open association with members of the Vagos gang, other Corona police officers who spoke out about the misconduct also suffered retaliation in the form of transfers from coveted positions. Kelly Anderson had to report the misconduct outside of the City of Corona Police Department in order for it to be meaningfully investigated, and she was only able to address the retaliation that she faced by filing a state court lawsuit, which the City of Corona was ultimately forced to settle.

SECOND AMENDED COMPLAINT - 25

114.    The constitutional violations complained of by Long were a highly predictable consequence of failure to equip Corona police officers with specific tools – including policies, training, and supervision – to handle the recurring the situations of how to handle, preserve, and disclose exculpatory or impeaching evidence, how to conduct interrogations, and how to write police reports or notes of witness statements.

115.    As a result of the Defendant City and the Department's failure to train its officers in the requirements of *Brady* and its failure to promulgate a policy addressing the requirements of *Brady*, officers were led to believe that they could violate citizens' constitutional rights with impunity.

**COUNT I – 42 U.S.C. § 1983**
**Due Process**
**(Fourteenth Amendment)**

116.    Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

117.    In the manner described more fully above, Defendants, while acting individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, deprived Plaintiff of her constitutional right to due process and her right to a fair trial.

118.    In the manner described more fully above, Defendants deliberately withheld exculpatory and impeachment evidence from Plaintiff, Plaintiff's defense

SECOND AMENDED COMPLAINT - 26

attorneys, and from prosecutors, among others, thereby misleading and misdirecting Plaintiff's criminal prosecution.

119.   Namely, Defendants concealed evidence that pointed to alternative suspects and that undermined those suspects' credibility and alibis.

120.   Defendants also fabricated and manufactured evidence and solicited false evidence, fabricated reports and witness statements falsely implicating Plaintiff in the crime, obtained Plaintiff's conviction using that false evidence, and failed to correct fabricated evidence that they knew to be false when it was used against Plaintiff during her criminal case.

121.   Defendants also suppressed evidence that demonstrated their knowledge of Plaintiff's innocence, including evidence showing that they knew that there was no blood on the clothing that Plaintiff was wearing on the day that the crime occurred.

122.   And Defendants purposefully failed to collect, and in some cases, destroyed, exculpatory physical evidence tending to show the presence and identity of other people at the scene of the crime when Conde was murdered.

123.   In addition, based upon information and belief, Defendants concealed and fabricated additional evidence that is not yet known to Plaintiff.

SECOND AMENDED COMPLAINT - 27

124.    Defendants' misconduct described in this count resulted in Plaintiff's unjust and wrongful criminal prosecution and conviction, deprived her of her liberty, and denied her of her constitutional right to a fair trial guaranteed by the Fourteenth Amendment. Absent this misconduct, Plaintiff's prosecution could not and would not have been pursued.

125.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's innocence.

126.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages set forth above.

127.    The misconduct described in this Count by Defendants was undertaken pursuant to the policies and practices of the City of Corona and the Corona Police Department, in the manner more fully described below.

SECOND AMENDED COMPLAINT - 28

## COUNT II – 42 U.S.C. § 1983
### Illegal Detention and Prosecution
### (Fourth Amendment)

128.    Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

129.    In the manner described more fully above, Defendants, while acting individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they knew Plaintiff was innocent, in violation of her rights secured by the Fourth and Fourteenth Amendments.

130.    In so doing, Defendants caused Plaintiff to be deprived of her liberty and detained without probable cause, in violation of her rights secured by the Fourth Amendment.

131.    These Defendants initiated and continued judicial proceedings against Plaintiff maliciously and without probable cause, resulting in injury.

132.    Plaintiff's prosecution ended without a criminal conviction.

SECOND AMENDED COMPLAINT - 29

133.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's innocence.

134.   As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages set forth above.

135.   The misconduct described in this Count by Defendants was undertaken pursuant to the policies and practices of the City of Corona and the Corona Police Department, in the manner more fully described below.

## COUNT III – 42 U.S.C. § 1983
### Failure to Intervene

136.   Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

137.   In the manner described above, during the constitutional violations described herein, one or more of the Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity to do so during the prolonged prosecution and trial of Plaintiff.

138.   As result of Defendants' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered injuries, including but not

SECOND AMENDED COMPLAINT - 30

limited to loss of liberty and physical and emotional distress. Defendants had

ample, reasonable opportunities to prevent this harm but failed to do so.

139.   The misconduct described in this Count was objectively unreasonable

and was undertaken intentionally, with malice, with reckless indifference to the

rights of others, and in total disregard of the truth and Plaintiff's innocence.

140.   As a result of Defendants' misconduct described in this Count,

Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation,

physical and emotional pain and suffering, and other grievous and continuing

injuries and damages set forth above.

141.   The misconduct described in this Count by Defendants was

undertaken pursuant to the policies and practices of the City of Corona and the

Corona Police Department, in the manner more fully described below.

## COUNT IV – 42 U.S.C. § 1983
## Conspiracy to Deprive Constitutional Rights

142.   Plaintiff incorporates each paragraph of this Complaint as if fully

restated herein.

143.   Defendants, acting in concert with other co-conspirators, known and

unknown, reached an agreement among themselves to frame Plaintiff for a crime

she did not commit and thereby to deprive her of her constitutional rights, as

described in the various paragraphs of this Complaint.

SECOND AMENDED COMPLAINT - 31

144.   Defendants also continued to conspire after Plaintiff's conviction to deprive her of exculpatory material to which she is entitled and that would have led to her earlier exoneration.

145.   In so doing, these co-conspirators conspired to accomplish an unlawful purpose by unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

146.   In furtherance of this conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

147.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's innocence.

148.   As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages set forth above.

149.   The misconduct described in this Count by Defendants was undertaken pursuant to the policies and practices of the City of Corona and the Corona Police Department, in the manner more fully described below.

SECOND AMENDED COMPLAINT - 32

# COUNT V – 42 U.S.C. § 1983
## Policy and Practice Claim Against the City of Corona

150.   Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

151.   Plaintiff's injuries described in this complaint and the violations of her constitutional rights discussed above were caused by the policies and customs of the City of Corona, as well as by the actions of policy-making officials for the City of Corona.

152.   At all times relevant to the events described in this complaint and for a period of time before and after, City of Corona and its police department failed to promulgate proper or adequate rules, regulations, policies, and procedures governing: the conduct of interrogations and questioning of criminal suspects and witnesses; the collection, documentation, preservation, testing, and disclosure of evidence, including physical evidence, material exculpatory evidence and impeachment evidence, and information bearing upon the credibility of both lay and law-enforcement witnesses; writing of police reports and taking of investigative notes; obtaining statements and testimony from witnesses and suspects; and the maintenance of investigative files and disclosure of those files in criminal proceedings.

153.   In addition or alternatively, City of Corona and its police department failed to promulgate proper and adequate rules, regulations, policies, procedural safeguards, and procedures for the training and supervision of officers of the City of Corona Police Department, with respect to the conduct of interrogations and techniques to be used when questioning criminal suspects and witnesses; the production and disclosure of evidence, including physical evidence, material exculpatory evidence and impeachment evidence, and information bearing upon the credibility of both lay and law-enforcement witnesses; the writing of police reports and taking of investigative notes; obtaining statements and testimony from witnesses; and the maintenance of investigative files and disclosure of the files in criminal proceedings.

154.   Officers and agents of City of Corona committed these failures to promulgate proper or adequate rules, regulations, policies, and procedures.

155.   The City of Corona was aware of the need for adequate policies, training, and supervision, was deliberately indifferent to the need, and made a deliberate choice not to adopt adequate policies, training, or supervision, all of which was an official policy.

156.    Had officers and agents of the City of Corona promulgated appropriate policies, then the violation of Plaintiff's constitutional rights would have been prevented.

157.    In addition, at all times relevant to the events described in this complaint and for a period of time before, the City of Corona had notice of practices and customs of officers and agents of the City of Corona Police Department that included one or more of the following: (1) officers did not record investigative information in police reports, did not maintain proper investigative files, and/or did not disclose investigative or other materials to prosecutors and criminal defendants; (2) officers falsified statements and testimony of witnesses, including by feeding facts, issuing undisclosed threats, and manipulating witnesses; (3) officers failed to maintain and/or preserve material evidence and/or destroyed evidence, including physical evidence; and/or (4) officers pursued wrongful convictions through profoundly flawed investigations.

158.    These practices and customs, individually and/or together, were allowed to flourish because the leaders, supervisors, and policymakers of the City of Corona directly encouraged and were thereby the moving force behind the very type of misconduct at issue by failing to adequately train, supervise, and control their officers, agents, and employees; by failing to adequately punish and discipline prior instances of similar misconduct; and by maintaining a code of silence

SECOND AMENDED COMPLAINT - 35

pursuant to which officers were encouraged not to rat one another out, thus directly

encouraging future abuses like those affecting Plaintiff.

159.    The above practices and customs, so well settled as to constitute de

facto policies of the City of Corona were able to exist and thrive, individually

and/or together, because policymakers with authority over the same exhibited

deliberate indifference to the problem, thereby effectively ratifying it, even though

it was foreseeable that such practices and customs would result in wrongful

convictions such as Plaintiff's.

160.    Within the Corona Police Department, a culture of impunity, a code of

silence, and a failure to discipline and supervise allowed widespread misconduct to

go unchecked.

161.    The fact that the misconduct described in this complaint during the

Conde homicide investigation was carried out openly and conspiratorially amongst

at least six officers of different ranks in the investigation, including those as high

ranking as Defendant Detective Sergeant Weeks and Defendant Senior Detective

Anderson, reflects the widespread, pervasive nature of the misconduct in the

Corona Police Department at times relevant to the events described in this

complaint.

162.    In addition, the misconduct described in this count was undertaken

pursuant to the City of Corona's policies and practices in that the constitutional

SECOND AMENDED COMPLAINT - 36

violations committed against Plaintiff were committed with the knowledge, approval, or endorsement of persons with final policymaking authority for the City of Corona, or were actually committed by persons with such final policymaking authority, including Defendant Detective Sergeant Weeks.

163.   The policies, practices, and customs set forth above were the moving force behind the numerous constitutional violations in this case and directly and proximately caused Plaintiff to suffer the grievous and permanent injuries and damages set forth above.

164.   Plaintiff's injuries were directly and proximately caused by officers, agents, and employees of City of Corona and the Corona Police Department, including but not limited to Defendants Weeks, Anderson, Bloomfield, Newman, Verdugo, and Glenn, who acted pursuant to one or more of the policies, practices, and customs set forth above in engaging in the misconduct described in this Count.

## COUNT VI – State Law Claim
### Malicious Prosecution[1]

165.   Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

166.   Plaintiff has complied with the California Tort Claims Act and has provided the City of Corona with a timely notice of the claim. The City of Corona denied the claim as untimely. This suit was initiated less than six months after the denial of that claim.

167.   In the manner described above, Defendants, while acting individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate and to continue and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they knew Plaintiff was innocent.

168.   In so doing, these Defendants caused Plaintiff to be subjected improperly to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

---

[1] Plaintiff understands that this claim has been dismissed by the Court, *see* Dkt. 103, but repleads it simply to preserve it.

SECOND AMENDED COMPLAINT - 38

169.    Defendants pursued Plaintiff's prosecution until it terminated in her favor when a court reversed Plaintiff's conviction and all the charges against her were dismissed.

170.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, and in total disregard of the truth and Plaintiff's innocence.

171.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

## COUNT VII – State Law Claim
## Intentional Infliction of Emotional Distress

172.    Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

173.    The actions, omissions, and conduct of Defendants, acting as investigators and as set forth above, were extreme and outrageous.

174.    These actions were rooted in an abuse of power and authority and were undertaken with the intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff, as is more fully alleged above.

SECOND AMENDED COMPLAINT - 39

175.    As a result of Defendants' misconduct described in this Count,

Plaintiff suffered and continues to suffer severe and enduring emotional distress

and other grievous and continuing injuries and damages set forth above.

### COUNT VIII – State Law Claim
### Civil Conspiracy

176.    Plaintiff incorporates each paragraph of this Complaint as if fully

restated herein.

177.    As described more fully in the preceding paragraphs, the Defendants,

acting in concert with other known and unknown co-conspirators, reached an

agreement among themselves to frame Plaintiff for a crime she did not commit and

conspired by concerted action to accomplish an unlawful purpose by unlawful

means. In addition, these co-conspirators agreed among themselves to protect one

another from liability for depriving Plaintiff of these rights.

178.    In furtherance of the conspiracy, each of the co-conspirators

committed overt acts and was otherwise a willful participant in joint activity.

179.    The violations of California law described in this complaint, including

Defendants' malicious prosecution of Plaintiff and their intentional infliction of

emotional distress, were accomplished by Defendants' conspiracy.

180.    The misconduct described in this Count was objectively unreasonable,

was undertaken intentionally, in total disregard of the truth and Plaintiff's

innocence, and with willful indifference to Plaintiff's constitutional rights.

SECOND AMENDED COMPLAINT - 40

181.   As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages set forth above.

### COUNT IX – State Law Claim
### *Respondeat Superior*[2]
### (Cal. Gov. Code § 815.2)

182.   Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

183.   In committing the acts alleged in the preceding paragraphs, Defendants were employees of the City of Corona and the Corona Police Department, acting at all relevant times within the scope of their employment and under color of law.

184.   Plaintiff suffered the aforementioned injuries as a direct and proximate result of Defendants' misconduct.

185.   The City of Corona is liable as principal for all torts committed by its agents.

_____

[2] Plaintiff understands that this claim has been dismissed by the Court, *see* Dkt. 103, but repleads it simply to preserve it.

SECOND AMENDED COMPLAINT - 41

## COUNT X – State Law Claim
### Cal. Civ. Code § 52.1

186.   Plaintiff incorporates each paragraph of this Complaint as if restated fully herein.

187.   As described more fully above, Defendants intentionally interfered with Plaintiff's exercise or enjoyment of rights secured by the U.S. Constitution and the laws of California.

188.   Defendants' conduct in violating Plaintiff's rights was carried out with specific intent to violate those rights, and to frame her, as described above.

189.   Defendants' conduct in interfering with Plaintiff's rights was also carried out by threats, intimidation, and/or coercion, including of witnesses, as described above.

190.   As a result of Defendants' threats, intimidation, and/or coercion, Plaintiff was deprived of her constitutional rights; wrongly prosecuted, detained, and imprisoned for over seven years; and subjected to other grievous injuries and damages as set forth above.

SECOND AMENDED COMPLAINT - 42

## COUNT XI – State Law Claim
### Indemnification[3]
### (Cal. Gov. Code § 825)

191. Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

192. California law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

193. At all relevant times, Defendants were employees of the Corona Police Department who acted within the scope of their employment in committing the misconduct described herein.

194. The City of Corona is liable to indemnify any compensatory judgment awarded against Defendants.

WHEREFORE, Plaintiff, KIMBERLY LONG, respectfully requests that this Court enter judgment in her favor and against Defendants THOMAS WEEKS, RONALD ANDERSON, DANIEL BLOOMFIELD, ROBERT NEWMAN, DANIEL VERDUGO, JEFFREY GLENN, UNKNOWN EMPLOYEES of the CITY OF CORONA, and the CITY OF CORONA, awarding compensatory

--------------------

[3] Plaintiff understands that this claim has been dismissed by the Court, *see* Dkt. 103, but repleads it simply to preserve it.

SECOND AMENDED COMPLAINT - 43

damages, attorneys' fees, and costs against each Defendant, and punitive damages against each of the individual Defendants, as well as post-judgment interest and any other relief this Court deems appropriate.

## JURY DEMAND

Plaintiff, KIMBERLY LONG, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,

**KIMBERLY LONG**

By:    /s/ Lauren Carbajal

**Megan Pierce** (SBN 314044)
**Lauren Carbajal** (SBN 336485)
**Elizabeth Wang**, CO Bar: 45976, IL Bar: 6287634*
**Steven Art**, IL Bar: 6302319*
carbajal@loevy.com
megan@loevy.com
elizabethw@loevy.com
steve@loevy.com
Loevy & Loevy
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
Phone: (312) 243-5900

SECOND AMENDED COMPLAINT - 44

1

**Jan Stiglitz** (SBN 103815)
js@cwsl.edu

2

Law Office of Jan Stiglitz
14462 Garden Tr.

3

San Diego, CA 92127
Phone: (619) 807-5890

4

5

**Michael D. Seplow** (SBN 150183)
mseplow@sshhzlaw.com

6

Schonbrun Seplow Harris
Hoffman & Zeldes LLP

7

9415 Culver Boulevard, #115
Culver City, CA 90232

8

Phone: (310) 396-0731

9

*Counsel for Plaintiff*

10

*Admitted pro hac vice

11

12

13

14

15

16

17

18

19

20

SECOND AMENDED COMPLAINT - 45

21

22

# **CERTIFICATE OF SERVICE**

I, Lauren Carbajal, an attorney, certify that on January 26, 2023, I caused the foregoing motion to be filed via the Court's electronic filing system, which effected service on all counsel of record.


/s/ Lauren Carbajal_____

SECOND AMENDED COMPLAINT - 46