**Elizabeth Wang**, CO Bar: 45976*
elizabethw@loevy.com
**Steve Art**, IL Bar: 6302319*
steve@loevy.com
**Megan Pierce** (SBN 314044)
megan@loevy.com
**Lauren Carbajal** (SBN 336485)
carbajal@loevy.com
LOEVY & LOEVY
311 N. Aberdeen Street, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
*admitted pro hac vice

**Jan Stiglitz** (SBN 103815)
js@cwsl.edu
Law Office of Jan Stiglitz
14462 Garden Tr.
San Diego, CA 92127
Phone: (619) 807-5890

**Michael D. Seplow** (SBN 150183)
mseplow@sshhzlaw.com
Schonbrun Seplow Harris
Hoffman & Zeldes LLP
9415 Culver Blvd. #115
Culver, City, CA 90232
Phone: (310) 396-0731
*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Kimberly Long,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>Thomas Weeks, *et al*.<br><br>　　　　　Defendants. | Case No. 5:21-cv-02008-FWS-E<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Date:　　　　April 6, 2023<br>Time:　　　　10:00 a.m.<br>Courtroom:　　10D<br>Judge:　　　　Hon. Fred W. Slaughter |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

PROCEDURAL HISTORY....................................................................................1

ALLEGATIONS IN SECOND AMENDED COMPLAINT ..................................3

LEGAL STANDARD..............................................................................................6

ARGUMENT ..........................................................................................................7

    I.    The Court Should Not Take Judicial Notice of Material Outside the Complaint ...........................................................................................7

    II.    The Court Granted Leave to Amend the Fourth Amendment Claim.........8

    III.    Plaintiff Sufficiently Pled a *Monell* Claim against the City.......................9

        A. Plaintiff Sufficiently Pled a Policy Theory ..........................................10

            1. Plaintiff adequately pleads express municipal policy that caused constitutional violations ..............................................10

            2. Alternatively, Plaintiff adequately pleads a policy of inaction that caused constitutional violations ......................................12

        B. Plaintiff Sufficiently Pled a Failure to Train Theory ..........................14

        C. Plaintiff Sufficiently Pled a Ratification Theory .................................15

CONCLUSION .....................................................................................................15

# TABLE OF AUTHORITIES

*AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631 (9th Cir. 2012)....................10

*Alvarez v. Hill*, 518 F.3d 1152 (9th Cir. 2008) ..........................................................6

*Armstrong v. Squadrito*, 152 F.3d 564 (7th Cir. 1998)............................................11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .....................................................................6

*Avery v. Burke Cnty.*, 660 F.2d 111 (4th Cir. 1981)................................................11

*Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397 (1997).............13

*Brady v. Maryland*, 373 U.S. 83 (1963) ...................................................................4

*Calhoun v. Ramsey*, 408 F.3d 375 (7th Cir. 2005) .................................................11

*City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989) ............................................11

*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) ..............................................9

*Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175 (9th Cir. 2002) ..........................11

*Jackson v. Barnes*, 749 F.3d 755 (9th Cir. 2014) ...................................................10

*Johnson v. City of Shelby*, 574 U.S. 10 (2014) .......................................................10

*Jones v. City of Chicago*, 787 F.2d 200 (7th Cir. 1986).........................................11

*Hyun Ju Park v. City and County of Honolulu*,
952 F.3d 1136 (9th Cir. 2020) ...........................................................................13, 14

*KarimPanahi v. L.A. Police Dep't*, 839 F.2d 621 (9th Cir. 1988).........................10

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018).......................7

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ......................................10

*McDonough v. Smith*, 139 S. Ct. 2149 (2019)..........................................................8

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)..........................................9, 11

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001).......................................................6

*O'Brien v. Welty*, 818 F.3d 933 (9th Cir. 2016) .......................................................6

*Pac. Coast Fed'n of Fishermen's Assocs. v. Glaser*,
945 F.3d 1076 (9th Cir. 2019) ....................................................................................6

*Pembaur v. City of Cincinnati*, 475 U.S. 483 (1986) ...............................................9

*Sangana v. Tenorio*, 384 F.3d 731 (9th Cir. 2004)..................................................6

*Shah v. County of L.A.*, 797 F.2d 743 (9th Cir. 1986) ............................................. 10

*Stapley v. Pestalozzi*, 733 F.3d 804 (9th Cir. 2013) ....................................................... 6

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) .............................................................. 10

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) ................................................. 7

*Jackson v. Barnes*, 749 F.3d 755 (9th Cir. 2014) ................................................ 16, 20

**Rules**

Fed. R. Civ. P. 8 ............................................................................................................ 6

# INTRODUCTION

Plaintiff Kimberly Long spent over seven years in prison for a murder she did not commit. In her Second Amended Complaint ("SAC"), Plaintiff alleges in detail how Defendants conspired to frame her, explaining how they suppressed exculpatory evidence that contravened their theory of guilt and evidence that could have been used to discredit and impeach key witnesses, including police witnesses; fabricated false witness statements; and concealed communications with alternative suspects that exposed inconsistencies in their alibis. As Long fought to clear her name, numerous courts expressed doubts about her guilt. In November 2020, the California Supreme Court threw out her conviction. Long's nightmare finally ended in April 2021, when the charges against her were dropped.

Defendant City of Corona ("City") now seeks dismissal of Plaintiff's claims against it. But the allegations in Plaintiff's Second Amended Complaint exceed the plausibility standard imposed by Rule 8. In arguing otherwise, Defendant City mischaracterizes Plaintiff's allegations, fail to take the allegations as true, and draw inferences in their own favor. At this stage, Plaintiff's allegations are more than sufficient and provide ample notice of her *Monell* claims against Defendant City.

# PROCEDURAL HISTORY

On December 27, 2022, the Court granted in part and denied in part Defendants' motions to dismiss the First Amended Complaint. Dkt. 103. The Court denied the individual Defendants' motions to dismiss Plaintiff's Section 1983 claims on qualified immunity grounds. *Id.* at 9-16. As to Plaintiff's Fourth Amendment claim, the Court observed that Plaintiff did not assert any arrest-based claims, and, "To the extent that Plaintiff believes she was detained illegally before her trial (*see* Dkt. 85 at 5-6), the court observes that the FAC does not clearly allege facts regarding illegal detention." *Id.* at 8 n.3. As to Plaintiff's *Monell* claim, the Court granted Defendants' motion to dismiss, explaining that Plaintiff's

1

supporting factual allegations concerning retaliation against an officer who had reported a fellow officer's association with a gang and that the "FAC does not provide sufficient factual allegations supporting any of the three theories of *Monell* liability." *Id.* at 18. The Court dismissed the *Monell* claim without prejudice and ordered Plaintiff to file any Second Amended Complaint within thirty days of the notice of the order. *Id.* at 22.

On January 26, 2023, Plaintiff filed a Second Amended Complaint. Dkt. 108. In her Second Amended Complaint, she provided factual detail supporting her Fourth Amendment claim—which is based on detention without probable cause after issuance of legal process (a warrant). *See id.* Dkt. 108 ¶ 75 ("All of the misconduct alleged above caused Plaintiff to be wrongfully arrested pursuant to a judicial warrant, detained, prosecuted and tried for Conde's murder, all without probable cause."), ¶¶ 78-79 (arrest pursuant to a warrant without probable cause), ¶ 80 (describing deprivation of liberty prior to criminal trials). Plaintiff also provided additional factual allegations supporting her *Monell* claim against Defendant City because the Individual Defendant Officer's misconduct was a direct result of the City's policies. In an attempt to evade responsibility, Defendant City seeks dismissal of Plaintiff's *Monell* claims.[1] In pursuit of this, the City takes great strides to redefine and mischaracterize Long's well-pled *Monell* claims. As discussed below, Plaintiff alleges that the City made a conscious decision to adopt an inadequate policy that was sure to lead to constitutional violations. The City also attempts to impose a higher pleading standard on Plaintiff's claims than Rule 8 requires and erroneously argues that Plaintiff must plead deliberate indifference

---

[1] Plaintiff acknowledges that her state law claims for malicious prosecution, *respondeat superior*, and indemnification were previously dismissed with prejudice. Dkt. 103 at 2 n.2.

to support her policy claims. The factual allegations in the SAC and the relevant case law do not support this claim.

Plaintiff has sufficiently pled her *Monell* policy claim against the City. The City's motion to dismiss should be denied.

## ALLEGATIONS IN SECOND AMENDED COMPLAINT

In her SAC, Plaintiff alleges that the Defendant Officers conspired with one another to convict Long of her boyfriend's murder. Defendants initiated an investigation, led by Weeks and Anderson, that pursued Long to the exclusion of any other suspects. They engaged in a conspiracy and resorted to investigative misconduct to exonerate the alternative suspects and falsely pin the crime on Long. Dkt. 108 ¶¶ 4-10, 40-77. Long alleges that Defendants suppressed exculpatory police reports that they wrote about Bugarski and Lovejoy and suppressed evidence that police had reason to doubt their alibis. *Id.* ¶¶ 41-44, 46-49. Defendants also conducted interviews with Lovejoy prior to her recorded polygraph examination, but they suppressed the contents and recordings of those interviews, including Lovejoy's statements about her alibi, so that they could not be used by Long's defense. *Id.* ¶ 50. The contents and recordings of these interviews would have shown that police knew Lovejoy's alibi was implausible, that she had the opportunity to commit the murder, and that she lacked credibility. *Id.* The suppression of this evidence was particularly damaging given that Plaintiff's trial turned on the jury's assessment of the credibility of different suspects. *Id.* ¶ 45.

Defendants also suppressed highly exculpatory evidence showing that they knew Plaintiff could not have committed the crime, including documents written by Anderson indicating that he and other Defendants had discovered the jacket Plaintiff had been wearing at the time she found Conde's body, it was on the rug near where Long had discovered the body, and he had observed that the jacket had

3

no blood on it. *Id.* ¶ 52. Given the 360-degree radius of the blood spatter, the Defendants knew that it would have been impossible for the perpetrator to have remained blood-free during the commission of the murder. *Id.* ¶ 53. The suppressed report reflecting police impressions of the physical evidence fully supported Plaintiff's account of discovering Conde dead, and fatally undermined Defendants' theory that Long was the murderer. The suppressed report also impeached Defendants' own account of how the crime had occurred and how they had investigated the crime. *Id.* ¶¶ 54-55.

Defendants also manipulated, coerced, and fed information to witnesses to bolster their case against Plaintiff. *Id.* ¶¶ 57-69. They also purposefully suppressed and destroyed physical evidence and declined to collect other key evidence. *Id.* ¶¶ 70-73.

Plaintiff alleges that Defendant City is liable because the violations of Plaintiff's rights as described in the SAC were caused by the policies, practices, customs, and actions of policymakers for the City. *Id.* ¶ 98.

At the time of the investigation and Plaintiff's arrest, the Corona Police Department Manual governing officers' conduct had no policies, procedures, rules or regulations relating to Corona police officers' constitutional obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), to disclose and preserve exculpatory or impeachment evidence. *Id.* ¶ 100. The Manual contained a "Constitutional Requirements" section, but it failed to explain, or even list, what those constitutional requirements were. *Id.* ¶ 101. Instead, the one-line policy merely instructed employees to "observe and comply with every person's clearly established constitutional rights under the United States and California Constitution." *Id*. This vague policy statement failed to explain what any constitutional rights were and failed to provide any guidance to officers on how to

properly execute any constitutional requirements, including how to comply with the exculpatory evidence obligations arising under *Brady*. *Id.*

Other sections of the Manual were also similarly deficient—both in terms of what actual policies provided and what policies were needed but missing. For instance, the Manual contained no policies, rules, or guidance regarding the collection and preservation of evidence, conduct of interrogations, writing of police reports, or notes of witness statements. *Id.* ¶ 102. And, in lieu of an adequate investigation policy, the Manual contained a bare-bones "Investigation & Prosecution" section that consisted of two general subsections. Neither of them provided guidance on preservation or disclosure of exculpatory or impeachment evidence, conduct of interrogations, writing of police reports, or notes of witness statements. *Id.* ¶ 103. The Manual also failed to address an officer's duty to maintain adequate records. *Id.* The only place that falsification of records or failure to disclose material facts is addressed is vaguely in the disciplinary section, and they are listed among a variety of infractions that are not distinguished by severity. *Id.*

The final policymakers for the City were on notice at the time of the investigation that their policies were wholly inadequate and likely to cause constitutional violations. *Id.* ¶ 104. This notice is shown by, among other things, the fact that a revision to the Manual contained a new *Brady* section describing the procedure for releasing exculpatory information contained within confidential peace officer personnel files. This demonstrated that City policymakers were aware of the importance of officers' *Brady* obligations and providing specific guidance on those obligations. *Id.* ¶ 105. However, despite the City's awareness of officers' *Brady* obligations, the operative Manual at the time of Long's arrest contained no policies, procedures, or systems for ensuring the disclosure of any and all exculpatory information arising from a criminal investigation. *Id.* ¶ 106. And, the

policies that did exist were so inadequate that any reasonable policymaker would have known that they were likely to cause constitutional violations. Thus, despite the great potential for misconduct, the City's policies failed to adequately inform police officers of their constitutional obligations, which directly led to the violation of Long's constitutional rights. *Id*. ¶ 108.

## LEGAL STANDARD

When considering a motion to dismiss under Fed. R. Civ. Pro. 12 (b)(6) "'[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.'" *Stapley v. Pestalozzi*, 733 F.3d 804, 809 (9th Cir. 2013).

The Federal Rules permit notice pleading and only require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *Pac. Coast Fed'n of Fishermen's Assocs. v. Glaser*, 945 F.3d 1076, 1086 (9th Cir. 2019). The plaintiff is not required to make "detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the question at the pleading stage is whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *O'Brien v. Welty*, 818 F.3d 920, 933 (9th Cir. 2016) (internal quotation marks omitted). Moreover, "[a] party need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case." *Sagana v. Tenorio*, 384 F.3d 731, 736-37 (9th Cir. 2004) (internal quotations omitted); *see also Glaser*, 945 F.3d at 1086. A claim may be dismissed pursuant to Rule 12(b)(6) only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (quotation omitted); *see also Alvarez v. Hill*, 518 F.3d 1152, 1154, & 1158-59 (9th Cir. 2008).

# ARGUMENT

## I. The Court Should Not Take Judicial Notice of Materials Outside the Complaint

As Plaintiff argued in response to Defendants' prior round of motions to dismiss, the Court should not take judicial notice of materials outside the pleadings. Plaintiff incorporates those arguments by reference herein. Dkt. 82 at 10-13. In addition, Defendants are incorrect in their expansive reading of the "incorporation-by-reference" doctrine. As the Ninth Circuit explained in the case cited by Defendants, "Although the doctrine is straightforward in its purpose, it is not always easy to apply." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). In *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003), the court held that a document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." But, "[h]ow 'extensively' must the complaint refer to the document? This court has held that 'the mere mention of the existence of a document is insufficient to incorporate the contents of a document' under *Ritchie*." *Khoja*, 899 F.3d at 1002. Moreover:

> if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint. Otherwise, defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims. … Although the incorporation-by-reference doctrine is designed to prevent artful pleading by plaintiffs, the doctrine is not a tool for defendants to short-circuit the resolution of a well-pleaded claim.

*Id.* at 1002-03. In sum, "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts in a well-pleaded complaint." *Id.* at 1003. Thus, the Court should not take judicial notice of the documents Defendants reference in their request for judicial notice, Dkt. 113.

## II. The Court Granted Leave to Amend the Fourth Amendment Claim

In her First Amended Complaint, Plaintiff alleged that she was wrongfully detained without probable cause in violation of the Fourth Amendment. Dkt. 61 ¶¶ 106-13 (Count II). When Defendants moved to dismiss this claim on statute of limitations grounds, Plaintiff explained that her Fourth Amendment claim is timely because she alleges wrongful pretrial detention pursuant to legal process without probable cause, not a Fourth Amendment false arrest claim. *See* Dkt. 85 at 2-6. There are different species of Fourth Amendment claim. A false arrest claim accrues upon arrest. However, a Fourth Amendment claim that "centers on evidence used to secure an indictment … directly challenges—and thus necessarily threatens to impugn—the prosecution itself." *McDonough v. Smith*, 139 S. Ct. 2149, 2159 (2019). While a Fourth Amendment false arrest claim accrue with the initiation of legal process, the latter type of Fourth Amendment claim (often referred to as a Fourth Amendment malicious prosecution claim) does not accrue until favorable termination. *Id.* at 2159-60.

Defendants persist in arguing that this claim is untimely despite the Court's prior rejection of this very argument in the first round of motion-to-dismiss briefing:

> The statute of limitations for false arrest claims begins running when the initial arrest takes place; "the injury caused by a classic malicious prosecution likewise first occurs as soon as legal process is brought to bear on a defendant, yet favorable termination remains the accrual date."

Dkt. 57 at 7 (quoting *McDonough*, 139 S. Ct. at 2159-60). As Plaintiff previously explained, she does not assert a *Wallace* [*v. Kato*]-style false arrest claim for arrest without legal process. She instead asserts that she was detained pretrial pursuant to post-arrest legal process (e.g., a warrant) that was tainted by Defendants' misconduct, a claim that accrues at favorable termination. *See* Dkt. 85 at 5.

In its Order on the FAC, the Court stated:

8

> Plaintiff argues the FAC does not assert any false arrest claims and there are no claims subject to dismissal on timeliness grounds. (*See, e.g.*, Dkt. 85 at 3.) After reviewing the claims in the FAC, the court agrees Plaintiff asserts no arrest-based claims subject to dismissal. (*See generally* FAC.) Accordingly, the court does not further discuss Defendants' arguments regarding arrest-based claims. To the extent that Plaintiff believes she was detained illegally before her trial (*see* Dkt. 85 at 5-6), the court observes that the FAC does not clearly allege facts regarding her illegal detention.

*Id.* at 8 n.3. In light of the court's observation, Plaintiff added allegations to her SAC that make clear that she was illegally detained without probable cause pursuant to legal process (a warrant). Dkt. 108 ¶¶ 56, 75, 79-80, 88, 128-35. The Court denied Defendants' motion to dismiss Counts I through IV, which included the Fourth Amendment claim (Count II). *See* Dkt. 103 at 16. Thus, Plaintiff was permitted to clarify the factual allegations behind her Fourth Amendment claim in the SAC.

Because Defendants knowingly chose not to move to dismiss this claim, they have waived any argument for its dismissal. They knew that this claim had not been dismissed, and that the Court's observation in footnote 3 of its order allowed Plaintiff an opportunity to clearly allege facts regarding her illegal detention.

**III. Plaintiff Sufficiently Pled a *Monell* Claim against the City**

A municipality can be directly liable under § 1983 for constitutional violations caused by: (1) enforcement of a municipal policy, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); (2) a widespread, though unwritten, custom or practice, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); or (3) action of a municipal final policymaker, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Plaintiff alleges that the City's enforcement of a municipal policy resulted in the constitutional violations committed by the Defendant Officers, and that the City made a conscious decision not to adopt an adequate *Brady* policy.

### A. Plaintiff Sufficiently Pled a Policy Theory

The City argues that Plaintiff's allegations of policy and custom liability are deficient. They are incorrect in how they characterize the allegations.

The Supreme Court has made clear that there is no heightened pleading requirement for *Monell* claims. *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam) ("[A] federal court may not apply a standard 'more stringent than the usual pleading requirements of Rule 8(a) in civil rights cases alleging municipal liability[.]") (internal quotations omitted). Accordingly, the Ninth Circuit has long held that "a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss 'even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 682-83 (9th Cir. 2001) (quoting *KarimPanahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988), and *Shah v. County of L.A.*, 797 F.2d 743, 747 (9th Cir. 1986)). *Monell* allegations must plausibly give fair notice of the theories at issue and cannot simply recite the elements of the cause of action. *AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011)). Plaintiff's allegations exceed this standard.

#### 1. Plaintiff adequately pleads express municipal policy that caused constitutional violations

Defendants agree that the City can be held liable under Section 1983 for policies of inaction as well as policies of action. Dkt. 112-1 (citing *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014)). Plaintiff has alleged both in the SAC.

The "policy of action" is the express, official policy referenced in Paragraph 101 of the SAC. In that section of the Corona Police Department Manual, the policy merely instructed officers to comply with the federal and state constitutions. Dkt. 108 ¶ 101. This "express policy" theory applies "where a policy explicitly

violates a constitutional right when enforced." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005); *see also Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1185-86 (9th Cir. 2002). Defendants do not contest that the policies in the Manual are express policies of the City, approved by final policymakers. The policy in the Manual was a "policy of action" which caused Plaintiff's constitutional violations precisely because it was so inadequate and vague.

Courts have recognized municipal liability under § 1983 for its deliberate choice not to have a policy when one is required. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989); *see also Armstrong v. Squadrito*, 152 F.3d 564, 577-78 (7th Cir. 1998) (liability occurs in "a situation that demands a policy," where the failure to implement a policy "ignored a plainly obvious danger"); *Jones v. City of Chicago*, 787 F.2d 200, 204 (7th Cir. 1986) ("[i]n situations that call for procedures, rules or regulations, the failure to make policy itself may be actionable."); *Avery v. Burke Cnty.*, 660 F.2d 111, 114 (4th Cir. 1981) ("[o]fficial policy may be established by the omissions of supervisory officials as well as from their affirmative acts.").

In *Canton*, the Supreme Court "distinguished between a city's deliberate or conscious choice not to have a policy, which can fairly be characterized as a municipal policy, and the city's occasional negligent administration of an otherwise sound program." 489 U.S. at 391 (internal citations and quotation marks omitted). Express theories do not require a showing of deliberate indifference. *See Monell*, 436 U.S. at 694. Thus, Plaintiff's allegation that the City deliberately decided to forgo adopting an adequate *Brady* policy is sufficient to plead a *Monell* violation.

Plaintiff alleges that the City made a deliberate choice to adopt an inadequate policy: it was aware of its obligations under *Brady* but instead of creating a policy to address it (and prevent highly likely constitutional violations),

11

the City decided to adopt a bare-bones policy that simply instructed officers to comply with the Constitution. The City made the deliberate choice to adopt the policy, despite knowing that it would lead to constitutional violations. As articulated in *Canton*, this decision amounts to a municipal policy, not a policy of inaction. Since *Monell* allegations concerning express policies are sufficient to pled *Monell* liability, Plaintiff's factual allegations, taken as true as the Court is required to do at the motion-to-dismiss stage, are sufficient to plead a *Monell* policy claim against the City.

### 2. Alternatively, Plaintiff adequately pleads a policy of inaction that caused constitutional violations

Even if the City's policy failures were characterized as a policy of inaction, Plaintiff has adequately pled this. She alleges that the City made a *deliberate choice* not to promulgate a policy that would advise Corona police officers of their obligations under *Brady*. The City was on notice of the need to adopt a more comprehensive *Brady* policy around the same time that Corona Police Officers were investigating the Conde murder. Dkt. 108 ¶ 104. However, during the relevant time period, there was zero guidance on *Brady* obligations in the operative Police Manual. *Id.* ¶ 103. Nor were there any policies on related and obviously important investigative tasks, such as the collection and preservation of evidence, the conduct of interrogations, writing of police reports, or taking notes of witness statements. *Id.* ¶ 102. The implications on a citizen's due process rights arising from a failure to disclose exculpatory evidence have been well-known since the Supreme Court issued the *Brady* decision in 1963. Yet, despite being aware of its *Brady* obligations and the potential for constitutional violations by police officers, the City made a conscious decision not to adopt any policies relating to *Brady*, or any of its requirements. The City knew that adopting policies and training officers

12

on *Brady* obligations was important; they adopted policies on this topic later. *Id.* ¶¶ 104-06.

The City argues that Plaintiff must plead deliberate indifference to support a policy of inaction claim. Under the Supreme Court's decisions, pleading deliberate indifference is not required if it can be inferred from the plain text of the policy. *Canton*, 489 U.S. at 390.

As Defendants concede (Dkt. 112-1 at 15-16), deliberate indifference exists where a policy is "so facially deficient that any reasonable policymaker would recognize the need to act." *Hyun Ju Park v. City and Cnty. of Honolulu,* 952 F.3d 1136, 1141 (9th Cir. 2020); *see also Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997). "When that is the case, a plaintiff need point only to the policy itself to establish that the municipality's policymakers were on notice that the plaintiff's federally protected rights would likely be violated if they failed to act." *Hyun Ju Park*, 952 F.3d at 1141-42. Only "if the policy is not obviously, facially deficient," does a plaintiff need to "point to a pattern of prior, similar violations of federally protected rights, of which the relevant policymakers had actual or constructive notice." *Id.* at 1142.

Here, Plaintiff does not need to allege a pattern of prior, similar violations because the City's policy was obviously, facially deficient. The only policy that existed merely instructed officers to comply with the California and United States Constitutions. Officers could not possibly understand what to do given such a vague, boilerplate policy. And, there were *no* policies whatsoever governing officers' *Brady* obligations. Dkt. 108 ¶¶ 102-03. Plaintiff alleges that the Police Department Manual failed to provide any guidance (any policy at all) concerning (1) the conduct of interrogations and questioning of criminal suspects and witnesses; (2) the collection, documentation, preservation, testing, and disclosure of evidence, including physical evidence, material exculpatory evidence and

13

impeachment evidence, and information bearing upon the credibility of both lay and law-enforcement witnesses; (3) writing of police reports and taking of investigative notes; (4) obtaining statements and testimony from witnesses and suspects; and (5) the maintenance of investigative files and disclosure of those files in criminal proceedings. *Id.* ¶¶ 103, 152. The Manual's "Investigation & Prosecution" section failed to provide *any guidance* on the preservation or disclosure of exculpatory or impeachment evidence, conduct of interrogations, writing of police reports, or notes of witness statements. *Id.* ¶ 103. The Manual also did not address an officer's duty to maintain adequate records, and only vaguely addressed the falsification of records and the failure to disclose material facts. *Id.* ¶ 103; *see also id.* ¶¶ 106-08.

Given the obvious inadequacies and gaps in the Manual on very basic investigative topics, including officers' *Brady* obligations, "any reasonable policymaker would recognize the need to take action." *Hyun Ju Park*, 952 F.3d at 1141. In arguing otherwise (*see* Dkt. 112-1 at 16), Defendants simply ignore the allegations of the SAC. The express policy described in Paragraph 101 of the SAC is obviously facially deficient, and any reasonable policymaker would recognize the need to take action. And, the complete absence of any policy concerning preservation and disclosure of exculpatory evidence, interrogations, writing of police reports, witness interviews and statements, makes the Manual obviously facially deficient.

### B. Plaintiff Sufficiently Pled a Failure to Train Theory

Given the complete absence of any policies in the Manual concerning *Brady* or the other investigative topics described above, it can be inferred that the Defendant City also failed to train its officers in "constitutional interrogations and techniques to be used when questioning criminal suspects and witnesses; the production and disclosure of evidence, including physical evidence, material

14

exculpatory evidence and impeachment evidence, and information bearing upon the credibility of both lay and law-enforcement witnesses; the writing of police reports and taking of investigative notes; obtaining statements and testimony from witnesses; and the maintenance of investigative files and disclosure of the files in criminal proceedings, despite the obvious need for such training." Dkt. 108 ¶ 109. Plaintiff alleges that the City had knowledge of the obvious need for this training but failed to provide it even though without it, constitutional violations would occur. *Id.* ¶ 111.

For the same reasons as discussed in Plaintiff's response to the City's motion to dismiss the First Amended Complaint, the City's arguments apply too stringent a pleading standard. *See* Dkt. 82 at 27. Plaintiff urges the Court to reject the City's motion to dismiss this theory with prejudice; however, she acknowledges that the Court dismissed this theory in the FAC and that her SAC does not add new factual allegations on failure to train (given that Defendants have refused to produce discovery or depositions of witnesses on this topic to date). *See* Dkt. 103 at 18.

### C. Plaintiff Sufficiently Pled a Ratification Theory

Plaintiff incorporates by reference the arguments she made in her response to Defendants' motion to dismiss this theory from the FAC. *See* Dkt. 82 at 28. However, Plaintiff acknowledges that the Court dismissed this theory in the FAC and that her SAC does not add new factual allegations on ratification (given that Defendants have refused to produce discovery or depositions of witnesses on this topic to date). *See* Dkt. 108 at 18.

### CONCLUSION

For the foregoing reasons, the City's motion to dismiss should be denied.

Respectfully submitted,

**KIMBERLY LONG**

By: s/ Elizabeth Wang

*One of Plaintiff's attorneys*

**Elizabeth Wang**, CO Bar: 45976*
elizabethw@loevy.com
**Steve Art**, IL Bar: 6302319*
**Megan Pierce** (SBN 314044)
**Lauren Carbajal** (SBN 336485)
LOEVY & LOEVY
311 N. Aberdeen Street, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
*admitted pro hac vice

## CERTIFICATE OF SERVICE

I, Elizabeth Wang, an attorney, certify that on March 9, 2023, I caused the foregoing reply to be filed via the Court's electronic filing system, which effected service on all counsel of record.

s/ Elizabeth Wang

16