John D. Higginbotham (SBN 204179)
Neil D. Okazaki (SBN 201367)
Dean Derleth, City Attorney
City Attorney's Office
City of Corona
400 S. Vicentia Ave., 3rd Floor
Corona, CA 92882
Tel.: (951) 279-3506
E-mail: john.higginbotham@coronaca.gov
        neil.okazaki@coronaca.gov

Dean Gazzo Roistacher LLP
Mitchell D. Dean, Esq. (SBN 128926)
Lee H. Roistacher, Esq. (SBN 179619)
440 Stevens Avenue, Suite 100
Solana Beach, CA 92075
Telephone: (858) 380-4683
Facsimile: (858) 492-0486
E-mail:     mdean@deangazzo.com
            lroistacher@deangazzo.com

Attorneys for Defendants
City of Corona, Thomas Weeks,
Ronald Anderson, Daniel Bloomfield,
Robert Newman, Daniel Verdugo and
Jeffrey Glenn

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY LONG,<br><br>    Plaintiff,<br><br>    v.<br><br>THOMAS WEEKS, RONALD ANDERSON, DANIEL BLOOMFIELD, ROBERT NEWMAN, DANIEL VERDUGO, JEFFREY GLENN, UNKNOWN EMPLOYEES of the CITY OF CORONA, and the CITY OF CORONA,<br><br>    Defendants. | Case No.: 5:21-cv-02008-FWS-E<br><br>**DEFENDANTS' OBJECTION TO PLAINTIFF'S SUPPLEMENTAL BRIEFING [DOCS. 144, 144-1]**<br><br>Dept:      Courtroom 10D<br>Judge:     Fred W. Slaughter<br>Hearing:   July 11, 2024 |

///

///

1

1    Pursuant to this Court's May 24, 2024 order regarding the mandated
2    individualized assessment of the individual defendants entitlement to qualified
3    immunity, this Court limited supplemental briefing to "no more than **fifteen (15)**
4    **pages.**" Doc. 138, p. 2 (original emphasis).  The briefing was due by 5:00 p.m.
5    on June 12, 2024.  *Id.*

6    Defendants timely filed their brief, strictly complying with the 15-page
7    limitation.  Doc. 141.

8    After the 5:00 p.m. filing deadline on June 12, Long filed her supplemental
9    briefing at 10:46 pm.  Docs. 144, 144-1.  She submitted a full 15 pages of
10   briefing.  Doc. 144.  Long also attached as Exhibit A to her brief the 59-page
11   appellate brief filed in the Ninth Circuit, which contained her appellate
12   arguments on why the individual defendants are not entitled to qualified
13   immunity.

14   Long had no reason to attach her 59 pages of appellate briefing other than
15   to provide this Court with additional briefing exceeding the 15-page limit
16   ordered by this Court.

17   At worst, Long exceeds the court ordered page limit by 59 pages.

18   At best, Long has exceeded the court ordered page limit by 21 pages.

19   Fifteen times Long specifically referenced a total of 21 pages of argument
20   from her appellate brief. [1]  Doc. 144, p. 11:20-22 ("Long set out her arguments
21   that Weeks was not entitled to immunity on these claims in her ... appellate brief,
22   Ex. A at 37-39, 46-50."), p. 12:24-26 ("Long set out her arguments that Weeks

---

[1] To further exceed the 15-page limit, Long also repeatedly referred to arguments
she previously made in her briefing on defendants' motions to dismiss.  *See e.g.,*
Doc. 144, p. 10:15-17 ("Long set out her arguments that Weeks was not entitled
to immunity on these claims in her response to his motion to dismiss, Dkt. 84 at
2-4, 7-8 …."), p. 17:1-3 ("Long set out her arguments that Anderson was not
entitled to immunity on these claims in her response to his motion to dismiss,
Dkt. 84 at 13 (incorporating Dkt. 85 at 7-11) …").

1    was not entitled to immunity on these claims in her ... appellate brief, Ex. A at

2    37-39, 42-43, 47-50."), p. 13:22-24 ("Long set out her arguments that Weeks was

3    not entitled to immunity on these claims in her ... appellate brief, Ex. A at 10-12,

4    46-47."), p. 15:15-17 ("Long set out her arguments that Weeks was not entitled

5    to immunity on these claims in her ... appellate brief, Ex. A at 38-44."), pp.

6    15:26-16:2 ("Long's arguments are set out in her ... brief ... Ex. A at 44-50."), p.

7    16:5-6 ("Long's arguments are set out in her ... brief ... Ex. A at 44-50."), p.

8    16:10-11 ("Long's arguments are set out in her ... brief ... Ex. A at 44-50."), p.

9    17:10-11 ("Long's arguments are set out in her ... brief ... Ex. A at 51-53."), p.

10   17:15-16 ("Long's arguments are set out in her ... brief ... Ex. A at 51-53."), p.

11   17:20-21 ("Long's arguments are set out in her ... brief ... Ex. A at 44-49."), p.

12   17:25-26 ("Long's arguments are set out in her ... brief ... Ex. A at 44-49."), p.

13   18:3-4 ("Long's arguments are set out in her ... brief ... Ex. A at 44-50."), p. 18:9

14   ("Long's arguments are set out in her ... brief ... Ex. A at 51-53."), p. 18:18-19

15   ("Long discusses this theory ... in her appellate brief, Ex. A at 53."), p. 19:13-14

16   ("Long also discusses these arguments in her past briefing. ...Ex. A at 57-58.").

17           Long has without question provided more than 15 pages of briefing and

18   argument and has thus violated this Court's order.  This Court should strike her

19   brief under its inherent powers.  *Nathalie Thuy Van v. Black Angus Steakhouses,*

20   *LLC*, 2018 U.S. Dist. LEXIS 97098, at *4 (N.D. Cal. June 8, 2018) ("the district

21   court may sua sponte strike a document filed in violation of procedural rules or

22   court orders"); *see also Procentury Ins. Co. v. Ezor*, 2021 U.S. Dist. LEXIS

23   248769, at *10 (C.D. Cal. Dec. 17, 2021) ("the Court does possess the inherent

24   power to strike materials from the docket").

25   ///

26   ///

27   ///

28   ///

1     If the Court does not strike Long's brief and considers the arguments in

2  her appellate brief, fairness demands the Court consider the arguments in the

3  defendants' briefs, which are attached as Exhibits 1 and 2.

4

5   Dated: June 21, 2024                              Dean Gazzo Roistacher LLP

6

7

8                                          By: _/s/ Lee H. Roistacher_
                                               Mitchell D. Dean
9                                              Lee H. Roistacher
                                               Attorneys for Defendants
10                                             City of Corona, Thomas Weeks,
                                               Ronald Anderson, Daniel
11                                             Bloomfield, Robert Newman,
                                               Daniel Verdugo and Jeffrey Glenn
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

No. 23-55004

# IN THE UNITED STATES COURT OF APPEAL
# FOR THE NINTH CIRCUIT

---

KIMBERLY LONG,
*Plaintiff-Appellee,*

vs.

THOMAS WEEKS, RONALD ANDERSON, DANIEL
BLOOMFIELD, ROBERT NEWMAN, DANIEL VERDUGO,
JEFFREY GLENN,
*Defendants/Appellants.*

---

On Appeal from the United States District Court for the
Central District of California
Case No. 5:21-cv-02008-FWS-E
Judge: Hon. Fred W. Slaughter

---

## APPELLANTS' OPENING BRIEF

---

*Lee H. Roistacher, Esq.
(SBN 179619)
Mitchell D. Dean, Esq.
(SBN 128926)
Dean Gazzo Roistacher LLP
440 Stevens Avenue, Suite 100
Solana Beach, CA 92075
Tel.: (858) 380-4683
Fax: (858) 492-0486
E-mail: lroistacher@deangazzo.com
      mdean@deangazzo.com

John D. Higginbotham (SBN 204179)
Neil D. Okazaki (SBN 201367)
Dean Derleth, City Attorney
City Attorney's Office
City of Corona
400 S. Vicentia Ave., 3rd Floor
Corona, CA 92882
Tel: (951) 279-3506
E-mail: john.higginbotham@coronaca.gov
      neil.okazaki@coronaca.gov

# TABLE OF CONTENTS

INTRODUCTION................................................................17

STATEMENT OF JURISDICTION................................19

ISSUES PRESENTED....................................................20

STATEMENT OF THE CASE.........................................23

    A.    First Amended Complaint.............................23

    B.    Motions To Dismiss......................................25

    C.    District Court Order......................................26

STANDARD OF REVIEW..............................................27

SUMMARY OF ARGUMENT.........................................28

ARGUMENT...................................................................31

    A.    Qualified Immunity......................................31

    B.    District Court's Faulty Qualified Immunity
           Analysis.......................................................36

           1.    Failure To Conduct An "Individualized"
                  Inquiry................................................36

           2.    District Court's Improper Analysis Of
                  Clearly Established Law.......................40

    C.    Qualified Immunity Bars Long's Failure To
           Intervene Claim Against The Officers.............46

           1.    Long Fails To Plead Plausible Claims......47

2. Long Failed To Meet Her Burden To Show Clearly Established Law..............50

D. Qualified Immunity Bars Long's Civil Rights Conspiracy Claims Against The Officers..........59

1. The Intracorporate Conspiracy Doctrine Bars Long's Claims.............................59

2. Long Failed To Meet Her Burden To Show Clearly Established Law..............69

E. Qualified Immunity Bars Long's Fourteenth And Fourth Amendment Claims Against Anderson, Newman, And Verdugo For Failing To Collect Or Preserve Evidence....................71

1. Long Fails To Plead Cognizable Claims....73

2. Long Failed To Meet Her Burden Of Showing Clearly Established Law..........81

F. Qualified Immunity Bars Long's Fourteenth And Fourth Amendment Claims Against Weeks and Glenn For Fabricating Evidence..............83

1. Long Fails To Allege A Plausible Claim....83

2. Long Failed To Meet Her Burden To Show Clearly Established Law..............92

G. Qualified Immunity Bars Long's Fourteenth And Fourth Amendment Claims Against Anderson, Weeks, Newman, and Bloomfield For Suppressing Evidence............................94

1. Long Fails To Allege A Plausible Claim....94

2. Long Failed To Meet Her Burden To Show Clearly Established Law..............101

CONCLUSION...........................................................104

CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. APP. 32(A)(7)(C) AND CIRCUIT RULE 32-1 FOR CASE NO. 23-55004..........................................105

STATEMENT OF RELATED CASES UNDER NINTH CIRCUIT RULE 28-2.6...........................................106

CERTIFICATE OF SERVICE......................................107

# TABLE OF AUTHORITIES

## Cases

*Alcocer v. Mills*
906 F.3d 944 (11th Cir. 2018)…………………………………36

*Alicia St. v. Leyshock*
41 F.4th 987 (8th Cir. 2022)………………………………..70

*Arizona v. Youngblood*
488 U.S. 51 (1988)…………………………………………...*Passim*

*Ashcroft v. al-Kidd*
563 U.S. 731 (2011)………………………………19, 31, 32

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)……………………….……………*Passim*

*Avery v. City of Milwaukee*
847 F.3d 433 (7th Cir. 2017)……………………………..87

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007)………………………………………..28

*Black v. Montgomery County*
835 F.3d 358 (3d Cir. 2016)…………………………..…84

*Bledsoe v. Carreno*
53 F.4th 589 (10th Cir. 2022)…………………….....43, 58

*Bowie v. Maddox*
642 F.3d 1122 (D.C. Cir. 2011)………………..……61, 62

*Bradford v. Scherschligt*
803 F.3d 382 (9th Cir. 2015)……………………………84

*Brady v. Maryland*
    373 U.S. 83 (1963)……………………………...…*Passim*

*Bruner v. Dunaway*
    684 F.2d 422 (6th Cir. 1982)………………….............52

*Byrd v. Brishke*
    466 F.2d 6 (7th Cir. 1972)…………….…….……..52, 53

*Byrd v. Clark*
    783 F.2d 1002 (11th Cir. 1986)…………………….…52

*Caldwell v. City & County of San Francisco*
    889 F.3d 1105 (9th Cir. 2018)……………………..…88

*California v. Trombetta*
    467 U.S. 479 (1984)…………………….......…….*Passim*

*Camreta v. Greene*
    563 U.S. 692 (2011)……………………………………52

*Carrillo v. County of Los Angeles*
    798 F.3d 1210 (9th Cir. 2015)…………….82, 102, 103

*City of Escondido v. Emmons*
    139 S. Ct. 500 (2019)………………………………….54

*Coleman v. City of Peoria*
    925 F.3d 336 (7th Cir. 2019)…………………..…….87, 88

*Cooper v. Calderon*
    255 F.3d 1104 (9th Cir. 2001)……………………….…75

*Copperweld Corp v. Independence Tube Corp.*
    467 U.S. 752 (1984)……………………………....59, 60

*Costanich v. Department of Soc. & Health Servs.*
    627 F.3d 1101 (9th Cir. 2010)…………………………85

*Cunningham v. City of Wenatchee*
    345 F.3d 802 (9th Cir. 2003)……………….…..*Passim*

*Cunningham v. Gates*
    229 F.3d 1271 (9th Cir. 2000)………….…..…*Passim*

*David v. Kaulukukui*
    38 F.4th 792 (9th Cir. 2022)………………………19, 27

*Devereaux v. Abbey*
    263 F.3d 1070 (9th Cir. 2001)………….…..…*Passim*

*District of Columbia v. Wesby*
    138 S. Ct. 577 (2018)……………………….……*Passim*

*Estate of Williams v. Cline*
    902 F.3d 643 (7th Cir. 2018)………………..…37, 38

*Fatai v. City & Cnty. of Honolulu*, 2021 U.S. Dist. LEXIS
130037 (D. Haw. July 13, 2021) …………………………..70, 71

*Fazaga v. FBI*
    965 F.3d 1015 (9th Cir. 2020)…………….......…..*Passim*

*Felarca v. Birgeneau*
    891 F.3d 809 (9th Cir. 2018)………………………..32

*Gagnon v. Ball*
    696 F.2d 17 (2d Cir. 1982)…………………………..56, 57

*Gantt v. City of Los Angeles*
    717 F.3d 702 (9th Cir. 2013)……………………….88, 90

*Gausvik v. Perez*
    345 F.3d 813 (9th Cir. 2003)………………….....86, 87

*Giglio v. United States*
    405 U.S. 150 (1972)………………………………….95

*Gill v. City of Milwaukee*
    850 F.3d 335 (7th Cir. 2017)………………………………92

*Gordon v. County of Orange*
    6 F.4th 961 (9th Cir. 2021)………………………………35

*Grider v. City of Auburn*
    618 F.3d 1240 (11th Cir. 2010)……………...……46, 62, 70

*Guerrero v. RJM Acquisitions LLC*
    499 F.3d 926 (9th Cir. 2007)………………………………68

*Hall v. Maioho-Pohina*
    2023 U.S. App. LEXIS 10811
    (9th Cir. May 3, 2023)………………………………………49

*Halsey v. Pfeiffer*
    750 F.3d 273 (3d Cir. 2014)………………………………86

*Hamby v. Hammond*
    821 F.3d 1085 (9th Cir. 2016)……………………………52

*Harris v. Mahr*
    838 F. App'x 339 (10th Cir. 2020)………………………55

*Hasbrouck v. Yavapai County*
    2021 U.S. Dist. LEXIS 18360
    (D. Ariz. Feb. 1, 2021)………………………..………………61

*Hendricks v. Calderon*
    70 F.3d 1032 (9th Cir. 1995)……………………………91

*Hoefer v. Fluor Daniel, Inc.*
    92 F.Supp.2d 1055 (C.D. Cal. 2000)……………………61

*Hooper v. Shinn*
    985 F.3d 594 (9th Cir. 2021)………………………………96

*Hughes v. Rodriguez*
          31 F.4th 1211 (9th Cir. 2022)……………………..…42, 43

*Hunter v. Bryant*
          502 U.S. 224 (1991)……………………………………19

*Hurt v. Wise*
          880 F.3d 831 (7th Cir. 2018)……………………...56, 57

*Hyde v. City of Willcox*
          23 F.4th 863 (9th Cir. 2022)……………………...19, 27

*In re Long*
          10 Cal.5th 764 (2020)…………………………18, 91, 98

*Jackson v. Brown*
          513 F.3d 1057 (9th Cir. 2008)……………………..*Passim*

*Jackson v. City of Cleveland*
          925 F.3d 793 (6th Cir. 2019)………………...…46, 66, 70

*Japanese Vill., Ltd. Liab. Co. v. Fed. Transit Admin.*
          843 F.3d 445 (9th Cir. 2016)……………………………26

*Jones v. Cannon*
          174 F.3d 1271 (11th Cir. 1999)………………..…44, 58

*Keates v. Koile*
          883 F.3d 1228 (9th Cir. 2018)……………………………27

*Khoja v. Orexigen Therapeutics, Inc.*
          899 F.3d 988 (9th Cir. 2018)………………………...28

*Kirkpatrick v. County of Washoe*
          843 F.3d 784 (9th Cir. 2016)……………………………33

*Kisela v. Hughes*
          138 S. Ct. 1148 (2018)……………………32, 57, 92

*K.J.P. v. City of Santee*
     748 F. App'x 133 (9th Cir. 2019)................................37

*Kramer v. Cullinan*
     878 F.3d 1156 (9th Cir. 2018).................................33

*Kroll v. County of Los Angeles*
     2021 U.S. Dist. LEXIS 195693
     (C.D. Cal. June 28, 2021)..................................61, 71

*Kyles v. Whitley*
     514 U.S. 419 (1995)...........................................102

*Lane v. Franks*
     573 U.S. 228 (2014)...........................................33

*Leer v. Murphy*
     844 F.2d 628 (9th Cir. 1988).........................47, 48, 76

*Livers v. Schenck*
     700 F.3d 340 (8th Cir. 2012)..................................58

*Long v. Johnson*
     736 F.3d 891 (9th Cir. 2013)..................................17

*Long v. Lattimore*
     2012 U.S. Dist. LEXIS 56652
     (C.D. Cal. Mar. 16, 2012)......................................17

*Long v. Lattimore*
     2012 U.S. Dist. LEXIS 56655 (Apr. 19, 2012)............17

*Lozano v. New Jersey*
     9 F.4th 239 (3d Cir. 2021).....................................57

*Manansingh v. United States*
     2023 U.S. App. LEXIS 7320
     (9th Cir. Mar. 28, 2023)...................................60, 69

*Mattos v. Agarano*
    661 F.3d 443 (9th Cir. 2011)..................................35

*McSherry v. City of Long Beach*
    423 F.3d 1015 (9th Cir. 2005)................................85

*Mellen v. Winn*
    900 F.3d 1085 (9th Cir. 2018)..................…..……95, 101

*Miller v. Gettel*
    2023 U.S. App. LEXIS 8997
    (6th Cir. Apr. 14, 2003)……………………………….…..54

*Miller v. Vasquez*
    868 F.3d 1116 (9th Cir 1989)………………........…*Passim*

*Morris v. Ylst*
    447 F.3d 735 (9th Cir. 2006)……………………..…97, 100

*Moore v. City of Oakland*
    242 F.Supp.3d 891 (N.D. Cal. 2017)…………………....76

*Mullenix v. Luna*
    577 U.S. 7 (2015)………………………….......…27, 41, 54

*Napue v. Illinois*
    360 U.S. 264 (1959)…………………………………….94

*Norton v. Arpaio*
    2015 U.S. Dist. LEXIS 199451
    (D. Ariz. Nov. 20, 2015)…………………………………61

*O'Neill v. Krzeminski*
    839 F.2d 9 (2d Cir. 1988)……………………….……52, 57

*Onyiah v. City of Philadelphia*
    2023 U.S. Dist. LEXIS 40386
    (E.D. Pa. Mar. 10, 2023)…………………………………58

*Ortiz v. Stewart*
    149 F.3d 923 (9th Cir. 1998)................................99

*Pasene v. Correa,* __ F.Supp.3d __,
    2023 U.S. Dist. LEXIS 27691
    (D. Haw. Feb. 17, 2023)......................................48

*Penaloza v. City of Rialto*
    836 F. App'x 547 (9th Cir. 2020)............................51

*Pennsylvania v. Ritchie*
    480 U.S. 39 (1987)................................................91

*People v. Long*
    2008 Cal. App. Unpub. LEXIS 9448 (Nov. 21, 2008)...17

*People v. Long*
    2009 Cal. LEXIS 1483 (Feb. 25, 2009)....................17

*People v. Long*
    2018 Cal. App. Unpub. LEXIS 3097 (May 3, 2018)....18

*Phillips v. Woodford*
    267 F.3d 966 (9th Cir. 2001)................................77

*Putman v. Gerloff*
    639 F.2d 415 (8th Cir. 1981)................................53

*Pyle v. State*
    317 U.S. 213 (1942)...............................................94

*Ramirez v. Butte-Silver Bow Cty.*
    298 F.3d 1022 (9th Cir. 2002)...........................*Passim*

*Richards v. County of San Bernardino*
    39 F.4th 562 (9th Cir. 2022)..........................84, 85

*Reese v. County of Sacramento*
    888 F.3d 1030 (9th Cir. 2018)……………………………31

*Richards v. County of San Bernardino*
    2022 U.S. App. LEXIS 17535
    (9th Cir. June 24, 2022)…………………………………80

*Rosales-Martinez v. Palmer*
    753 F.3d 890 (9th Cir. 2014)…………………………..28

*Rosenfeld v. Talamantes*
    2022 U.S. Dist. LEXIS 132566
    (C.D. Cal. May 23, 2022)………………..……...……60, 61

*Rubalcava v. City of San Jose*
    2021 U.S. Dist. LEXIS 132281
    (N.D. Cal. July 15, 2021)…………………………………48

*Sabra v. Maricopa County Cmty. Coll. Dist.*
    44 F.4th 867 (9th Cir. 2022)…………………….35, 54, 59

*Sakamoto v. Duty Free Shoppers, Ltd.*
    764 F.2d 1285 (9th Cir. 1985)……………………....…68

*S.B. v. County of San Diego*
    864 F.3d 1010 (9th Cir. 2017)………………………33, 52

*Sharp v. County of Orange*
    871 F.3d 901 (9th Cir. 2017)………………....35, 41, 50

*Singh v. Prunty*
    14 F.3d 1157 (9th Cir. 1998)………………...….102, 103

*Smith v. Arthur Andersen Ltd. Liab. P'ship*
    421 F.3d 989 (9th Cir. 2005)………………………..51

*Spencer v. Peters*
    857 F.3d 789 (9th Cir. 2017)…………………………..84, 85

*Strickler v. Greene*
527 U.S. 263 (1999)……………………………….39, 95, 102

*Sykes v. California*
497 F.2d 197 (9th Cir. 1974)………….……….…….44, 45

*Tatum v. Moody*
768 F.3d 806 (9th Cir. 2014)……………………………..96

*Tennison v. City & County of San Francisco*
570 F.3d 1078 (9th Cir. 2009)……………………103, 104

*Thornton v. City of St. Helens*
425 F.3d 1158 (9th Cir. 2005)………………………68, 69

*Thorpe v. City of Philadelphia*
2020 U.S. Dist. LEXIS 158682
(E.D. Pa. Aug. 31, 2020)…………………………………58

*Tobias v. Arteaga*
996 F.3d 571 (9th Cir. 2021)………………....47, 52, 56

*Torres v. City of St. Louis*
39 F.4th 494 (8th Cir. 2022)………………....46, 68, 70

*Trujillo-Lopez v. City of Vallejo*
2022 U.S. Dist. LEXIS 203467
(N.D. Cal. Nov. 8, 2022)…………………………………60

*Turner v. United States*
137 S. Ct. 1885 (2017)…………………...……………..96

*United States v. Agurs*
427 U.S. 97 (1976)…………………………...………96, 101

*United States v. Bagley*
473 U.S. 667 (1985)……………………………………...102

14

*United States v. Butler*
    567 F.2d 885 (9th Cir. 1978)................................102

*United States v. Cooper*
    983 F.2d 928 (9th Cir. 1993)..................................82

*United States v. Crawford*
    372 F.3d 1048 (9th Cir. 2004)...............................89

*United States v. Drake*
    543 F.3d 1080 (9th Cir. 2008)...............................75

*United States v. Emor*
    573 F.3d 778 (D.C. Cir. 2009)...............................99

*United States v. Koon*
    34 F.3d 1416 (9th Cir. 1994)..........................*Passim*

*United States v. Martinez-Martinez*
    369 F.3d 1076 (9th Cir. 2004)...............................75

*United States v. Olsen*
    704 F.3d 1172 (9th Cir. 2013)...............................98

*United States v. Oruche*
    484 F.3d 590 (D.C. Cir. 2007)...............................99

*United States v. Robertson*
    895 F.3d 1206 (9th Cir. 2018)...............................74

*United States v. Sanchez*
    176 F.3d 1214 (9th Cir. 1999)...............................98

*United States v. Vgeri*
    51 F.3d 876 (9th Cir. 1995)...................................99

*Ventura v. Rutledge*
    978 F.3d 1088 (9th Cir. 2020)....................42, 43, 92

*W. Watersheds Project v. United States DOI*
    677 F.3d 922 (9th Cir. 2012)……………………………….51

*Weimer v. County of Fayette*
    972 F.3d 177 (3d Cir. 2020)……………………….…44, 58

*West v. City of Caldwell*
    931 F.3d 978 (9th Cir. 2019)……………………....32, 36, 50

*White v. Pauly*
    580 U.S. 73 (2017)……………………………......……*Passim*

*Williams v. Woodford*
    384 F.3d 567 (9th Cir. 2002)……….…………..89, 90, 91

*Yang v. Hardin*
    37 F.3d 282 (7th Cir. 1994)……………………………..56

*Ziglar v. Abbasi*
    582 U.S. 120 (2017)…………………………....*Passim*

## Statutes

28 U.S.C. § 1291………………………………………………19

28 U.S.C. § 1331……………………………………………....19

42 U.S.C. § 1983………………………………………....*Passim*

42 U.S.C. § 1985……………………………………62, 64, 70

Fed. R. App. Proc. 4…………………………………………20

Fed. R. Civ. P. 12(b)(6)……………………………………27

Fed. R. Evid. 701……………………………………………98

# INTRODUCTION

City of Corona police officers Thomas Weeks, Ronald Anderson, Daniel Bloomfield, Robert Newman, Daniel Verdugo, and Jeffrey Glenn (collectively "Officers," unless context requires otherwise) appeal from the district court's order denying their qualified immunity-based motion to dismiss Kimberly Long's four 42 U.S.C. section 1983 claims alleging police misconduct caused her "wrongful conviction."

In 2005, Long was convicted for the 2003 murder of her live-in boyfriend Oswaldo Conde. After years of unsuccessful post-conviction challenges in state and federal courts,[1] on an order to show cause from the California Supreme Court, the trial court vacated Long's conviction in 2016 for ineffective assistance of counsel for not consulting a time of death expert but denied Long's factual innocence claim. ER-128-

---

[1] *E.g., Long v. Johnson* 736 F.3d 891 (9th Cir. 2013); *Long v. Lattimore,* 2012 U.S. Dist. LEXIS 56652 (C.D. Cal. Mar. 16, 2012); *Long v. Lattimore*, 2012 U.S. Dist. LEXIS 56655 (Apr. 19, 2012); *People v. Long*, 2009 Cal. LEXIS 1483 (Feb. 25, 2009); *People v. Long*, 2008 Cal. App. Unpub. LEXIS 9448 (Nov. 21, 2008).

132. On the government's appeal, the California court of appeal reversed the ineffective assistance of counsel finding, *People v. Long*, 2018 Cal. App. Unpub. LEXIS 3097 (May 3, 2018), but the California Supreme Court agreed with the trial court and vacated Long's conviction in 2020. *In re Long*, 10 Cal.5th 764, 767 (2020).

Not once in her post-conviction briefing did Long ever claim constitutional misconduct by the Officers. *See* District Court Electronic Case Filing System (ECF) Doc. 73, pp. 3-4, 6-179 (post-conviction briefs).

Only now in her civil suit does Long claim being "wrongfully convicted" because the Officers suppressed, fabricated, failed to collect, and failed to preserve evidence.

Qualified immunity insulates the Officers from liability on Long's section 1983 claims. Concluding otherwise, the district court erred.

Although this appeal follows the denial of a motion to dismiss, the Officers' appeal is no less important.

"[R]esolving immunity questions at the earliest possible stage in litigation" is crucial, *Hunter v. Bryant*, 502 U.S. 224, 227 (1991), because "qualified immunity is 'effectively lost if a case is erroneously permitted to go to trial,'" *White v. Pauly*, 580 U.S. 73, 79 (2017). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) ("The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including 'avoidance of disruptive discovery.'"). This includes resolution, when appropriate, of qualified immunity questions raised on pleading challenges.  *See, e.g., Hyde v. City of Willcox*, 23 F.4th 863, 873-75 (9th Cir. 2022).

## STATEMENT OF JURISDICTION

The district court had jurisdiction over Long's section 1983 claims under 28 U.S.C. section 1331.

This Court has jurisdiction over this interlocutory appeal of the district court's order denying the Officers qualified immunity.  28 U.S.C. § 1291; *David v. Kaulukukui*, 38 F.4th 792, 799 (9th Cir. 2022); *Hyde,* 23 F.4th at 869.

19

Jurisdiction exists to determine whether Long sufficiently alleges constitutional violations against each officer and whether the unconstitutionality of each officer's conduct was "clearly established" in 2003.  *Iqbal*, 556 U.S. 672-75.

On January 4, 2023, the Officers timely appealed the district court's December 27, 2022 order, ER-28-29.  Fed. R. App. Proc. 4.

## ISSUES PRESENTED

This appeal presents the following issues:

* Did the district court err in denying qualified immunity to the Officers by: (1) not conducting the required "individualized" examination of whether Long's factual allegations against each of the six officers plausibly alleged viable claims against each officer; and (2) relying on general propositions of constitutional law supporting Long's liability theories divorced from Long's factual allegations underlying her liability

theories to conclude the law was "clearly
established" in 2003?

\*     Are the Officers entitled to qualified immunity
from liability on Long's section 1983 claim for
failure to intervene in each other's Constitutional
violations because: (1) Long did not allege how
each officer failed to intervene in another's
unconstitutional conduct while it was occurring;
or (2) Long failed to meet her burden to show it
was "clearly established" in 2003 that an officer
had a constitutional obligation to intervene in
another's suppression, fabrication, failure to
collect, and failure to preserve evidence?

\*     Are the Officers entitled to qualified immunity
from liability on Long's section 1983 claim for
conspiracy to violate civil rights because: (1) the
intracorporate conspiracy doctrine precludes the
Officers – members of the same police
department – from conspiring to violate Long's

civil rights; or (2) Long failed to meet her burden to show it was "clearly established" in 2003 that section 1983 conspiracy claims are resistant to the intracorporate conspiracy doctrine?

* Are Anderson, Newman, and Verdugo entitled to qualified immunity from liability on Long's section 1983 claims for failing to collect and failing to preserve evidence because: (1) Long fails to plausibly allege a bad faith failure to collect or preserve exculpatory evidence against Anderson, Newman, or Verdugo; or (2) Long failed to meet her burden to show it was "clearly established" in 2003 that a police officer has a constitutional obligation to assume fingerprints or DNA evidence from a crime scene are exculpatory and therefore must collect and test the evidence before disposing of it?

* Are Weeks and Glenn entitled to qualified immunity from liability on Long's section 1983

22

claim for fabricating evidence because: (1) Long does not plausibly allege deliberate fabrication of evidence by Weeks or Glenn; or (2) Long failed to meet her burden to show it was "clearly established" in 2003 that any interviewing tactics Weeks or Glenn used on witnesses were so coercive or abusive that all reasonable officers would have understood the tactics would generate fabricated evidence?

\* Are Weeks, Anderson, Newman, and Bloomfield entitled to qualified immunity from liability on Long's section 1983 claim for suppressing evidence because: (1) Long failed to plausibly allege suppression of exculpatory evidence by Weeks, Anderson, Newman, or Bloomfield; or (2) Long failed to meet her burden to show it was "clearly established" in 2003 that Weeks, Anderson, Newman, or Bloomfield suppressed exculpatory evidence?

23

# STATEMENT OF THE CASE

## A.    First Amended Complaint

After the district court found all Long's claims insufficiently pled and dismissed her complaint, ECF Doc. 57, Long filed her first amended complaint ("complaint"). ER-34-70.

Long's complaint alleges four section 1983 claims against the Officers: a Fourteenth Amendment substantive due process claim (Count I); a Fourth Amendment malicious prosecution claim (Count II); a failure to intervene in constitutional violations claim (Count III); and a conspiracy to violate constitutional rights claim (Count IV).  ER-53-59.

Although plead as a single "count," Long's Fourteenth Amendment claim is four distinct claims asserted against different "groups" of officers: (1) suppressing exculpatory evidence against Anderson, Newman, Weeks, and Bloomfield, ER-42-46 ¶¶ 41-55; (2) fabricating evidence against Weeks and Glenn, ER-46-49 ¶¶ 56-68; (3); failing to collect evidence against Anderson, Newman, and Verdugo;

and (4) failing to preserve evidence against Anderson, Newman, and Verdugo, ER-49-50 ¶¶ 69-73.[2]

Long's Fourth Amendment malicious prosecution claim alleges the Officers prosecuted her without probable cause by violating her substantive due process rights. ER-42-50, 55-56.

Long's failure to intervene claim alleges the Officers failed to intervene in each other's suppression, fabrication, failure to collect, and failure to preserve evidence. ER-42-50, 56-57.

Long's conspiracy to violate civil rights claim alleges the Officers conspired to frame her for murder. ER-42-50, 58-59.

---

[2] The Officers later expound on the allegations relating to each claim. However, the district court, relying on judicially noticeable public records, previously found untrue Long's allegation regarding the suppression of her blood free jacket. ECF Doc. 57, pp. 15-16. That allegation is accordingly not later discussed.

## B.   Motions To Dismiss

The Officers brought qualified immunity challenges to each of Long's section 1983 claims arguing Long failed to plead plausible claims against each officer but, even if she did, the law in 2003 did not clearly establish the wrongfulness of the specific conduct alleged against each officer for each of Long's liability theories.  ECF Docs. 70-74. Long opposed, and the Officers replied.  ECF Docs. 83-86, 88-90.

## C.   District Court Order

On December 27, 2022, the district court rejected the Officers' arguments finding Long sufficiently alleged clearly established constitutional violations.[3]  ER-4-26.

---

[3] The district court took judicial notice of records relating to Long's criminal proceedings submitted with the subject motion to dismiss and a prior motion to dismiss.  ER-10-12; *see* ECF Docs. 73, 30.  Because the material is in the record, no separate request for judicial notice to this Court is necessary. *Japanese Vill., Ltd. Liab. Co. v. Fed. Transit Admin.*, 843 F.3d 445, 454 (9th Cir. 2016)

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's denial of a motion to dismiss based on qualified immunity. *David*, 38 F.4th at 799. The Court "consider[s] whether the complaint alleges sufficient facts, taken as true, to support the claim that the officials' conduct violated clearly established constitutional rights of which a reasonable officer would be aware 'in light of the specific context of the case.'" *Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).

"Under Rule 12(b)(6), a complaint should be dismissed if it fails to include 'enough facts to state a claim to relief that is plausible on its face.'" *Hyde*, 23 F.4th at 869. "A complaint's claims are plausible when the pleaded facts 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. (quoting *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements," "conclusory statements," and "'legal conclusion[s] couched as [] factual allegation[s]'" are insufficient. *Iqbal*,

27

556 U.S. at 678. Allegations establishing potential liability are likewise insufficient. *Id.* at 679 ("Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.") (simplified); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

The court can consider judicially noticeable facts when ruling on a motion to dismiss. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018); *see Rosales-Martinez v. Palmer*, 753 F.3d 890, 894-95 (9th Cir. 2014 (taking judicial notice of judicial proceedings of other courts because material "provide[d] relevant and material details adding to and clarifying the allegations of the complaint").

## SUMMARY OF ARGUMENT

This case is not a typical "wrongful conviction" case based on government misconduct. No court found the

Officers did anything unconstitutional. That Long's more than competent post-conviction attorneys (Federal Defenders and California Innocence Project) never raised constitutional misconduct by the Officers speaks volumes as to why Long has twice been unable to make more than insufficient generalized and non-specific allegations of misconduct by the Officers.

The district court erred in its qualified immunity analysis by conducting a superficial and non-individualized analysis of Long's allegations against each officer and further erred by relying on broad general legal principals rather than examining the state of the law in 2003 to determine whether each officer's specific conduct violated the Constitution.

Government officials *have* qualified immunity *unless* a complaint's allegations sufficiently show violations of clearly established constitutional obligations. It is Long's burden to overcome this presumption, and allegations that might be "close enough" for some cases do not sufficiently do that. Nor

is it an appropriate answer in the qualified immunity context to wait for the issues to be "hashed out" during discovery or evaluated on summary judgment.

Although this is true for all Long's insufficiently pled claims, it is especially true for her conspiracy and failure to intervene claims because the Officers are entitled to qualified immunity on those two claims even assuming Long's general allegations are sufficient and true.

The conspiracy claim fails because the intracorporate conspiracy doctrine precludes it or intracorporate conspiracy liability under section 1983 did not in 2003, and does not today, clearly exist, and the failure to intervene claim fails because of the absence of a clearly established constitutional obligation to intervene in the suppression, fabrication, failure to collect, or failure to preserve evidence.

By rejecting the Officers' assertion of qualified immunity, the district court placed the precise litigation burdens on the Officers that qualified immunity serves to avoid.

## ARGUMENT

### A.    Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Reese v. County of Sacramento*, 888 F.3d 1030, 1037 (9th Cir. 2018).  "'Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.  When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

Courts engage in a two-pronged analysis to determine whether qualified immunity applies. "Qualified immunity shields federal and state officials from money damages *unless a plaintiff pleads facts* showing (1) that the official violated a statutory or constitutional right, and (2) that the

right was 'clearly established' at the time of the challenged conduct." *al-Kidd*, 563 U.S at 735 (emphasis added); *West v. City of Caldwell*, 931 F.3d 978, 982-83 (9th Cir. 2019) ("Police officers *have* qualified immunity for their official conduct *unless* (1) they violate a federal statutory or constitutional right and (2) that right was clearly established at the time of the challenged conduct.") (emphasis added) (citing *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)).

The plaintiff bears the burden of establishing both prongs of the qualified immunity analysis. *Felarca v. Birgeneau*, 891 F.3d 809, 815 (9th Cir. 2018).

To be "clearly established," precedent existing at the time must "squarely govern[] the specific facts" of the present case, *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018), such that it "placed the [un]constitutionality of the officer's conduct 'beyond debate,'" *Wesby*, 138 S. Ct. at 589. *See also White,* 580 U.S. at 79 ("[T]he clearly established law must be 'particularized' to the facts of the case.").

32

The "clearly established" standard is "demanding" and "exacting." *Wesby*, 138 S. Ct. at 589; *Kirkpatrick v. County of Washoe*, 843 F.3d 784, 792 (9th Cir. 2016) (en banc); *see also S.B. v. County of San Diego*, 864 F.3d 1010, 1015, 1017 (9th Cir. 2017) (hearing the Supreme Court's instructions on qualified immunity "loud and clear" and recognizing its "exacting standards").

"Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Wesby*, 138 S. Ct. at 589 (simplified). "So long as existing case law 'did not preclude' an official from reasonably believing that his or her conduct was lawful, the official has a right to qualified immunity." *Kramer v. Cullinan*, 878 F.3d 1156, 1163 (9th Cir. 2018) (quoting *Lane v. Franks*, 573 U.S. 228, 243 (2014)).

Thus, "[t]o be clearly established ... [t]he rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive

authority. It is not enough that the rule is suggested by then-existing precedent." *Wesby*, 138 S. Ct. at 589-90 (simplified). "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that every reasonable official would know." *Id.* at 590 (simplified).

"The clearly established standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *Id.* (simplified). "The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted. This requires a high degree of specificity." *Id.* (simplified).

"[C]ourts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Id.* (simplified). "A rule is too general if the unlawfulness of the

officer's conduct does not follow immediately from the conclusion that the rule was firmly established." *Id.* (simplified).

As this Court has recognized, "[e]xcept in the rare case of an obvious instance of constitutional misconduct" "[p]laintiffs must point to prior case law that articulates a constitutional rule specific enough to alert these [officers] in this case that their particular conduct was unlawful."[4] *Sharp v. County of Orange*, 871 F.3d 901, 911 (9th Cir. 2017).

To achieve that kind of notice, "'the prior precedent must be "controlling"—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a "consensus" of courts

---

[4] "[T]he bar for finding such obviousness is quite high." *Mattos v. Agarano*, 661 F.3d 443, 42 (9th Cir. 2011) (en banc). As recently said: "[W]e have repeatedly emphasized that [obvious] cases are few and far between, [citation], and thus, we are hesitant to find a right clearly established without a body of relevant case law." *Sabra v. Maricopa County Cmty. Coll. Dist.*, 44 F.4th 867, 888 (9th Cir. 2022).

outside the relevant jurisdiction.'"[5] *Gordon v. County of Orange*, 6 F.4th 961, 969 (9th Cir. 2021) (quoting *Sharp*, 871 F.3d at 911); *see also West*, 931 F.3d at 983 ("we must locate a controlling case that 'squarely governs the specific facts at issue'").

## B.    District Court's Faulty Qualified Immunity Analysis

## 1.    Failure To Conduct An "Individualized" Inquiry

A proper qualified immunity analysis is "individualized" requiring "a court [to] carefully examine the specific factual allegations against each individual defendant." *Cunningham v. Gates,* 229 F.3d 1271, 1287 (9th Cir. 2000); *accord Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018) ("[E]ach defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions.").

---

[5] The Supreme Court has "not yet decided what precedents - other than [its] own - qualify as controlling authority for purposes of qualified immunity." *Wesby*, 138 S. Ct. at 591 n. 8.

Long alleges four section 1983 claims against six different officers based on four distinct theories of liability – suppressing evidence, fabricating evidence, not collecting evidence, and not preserving evidence. And not all Long's theories of liability are alleged against all the Officers. Even Long's distinct liability theories are often based on different conduct by different officers. *E.g.*, ER-42-46 ¶¶ 41-55 (describing different evidence different officers allegedly suppressed); ER-46-49 ¶¶ 56-68 (describing different evidence different officers fabricated).

After articulating the elements of Long's claims, the district court *generally* recited Long's allegations against each officer. ER-14-17.

Not done was "an individualized assessment of the conduct of each of the various defendants in their myriad roles" and, thus, the district court did not dig deep enough into Long's allegations for a proper qualified immunity analysis. *K.J.P. v. City of Santee*, 748 F. App'x 133, 134 (9th Cir. 2019); *see also Estate of Williams v. Cline*, 902 F.3d 643,

37

652 (7th Cir. 2018) ("[E]ach defendant-officer had a different degree of contact with Williams and had different assigned responsibilities with respect to the apprehension of Williams and investigation of the alleged armed robbery. Although the district court's recitation of facts acknowledges the officers' varying encounters with Williams, its qualified-immunity analysis lacks any individualized assessment.").

Here are three examples of the district court's generalized analysis.

Regarding Long's suppressing evidence claim, the district court observed Long alleged Anderson, Weeks, and Bloomfield "suppressed reports about Bugarski and Lovejoy" and Newman "suppressed interviews with Lovejoy." ER-16-17.

But beyond Long's vague reference to "reports" and "interviews," the district court never examined what evidence Long alleged the reports or interviews contained. This is a necessary examination because suppressing reports or interviews is not itself unconstitutional; due process is

38

violated *only if* they contain exculpatory or impeachment evidence. *Strickler v. Greene*, 527 U.S. 263, 281-82; *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

Thus, the only way to determine if Long plausibly alleged Anderson, Weeks, Newman, or Bloomfield suppressed evidence in violation of due process is to examine whether each specific report or interview allegedly suppressed by each officer contained *Brady* evidence. The district court did not do this.

Regarding Long's fabricating evidence claim, the district court observed Long alleged Weeks "manipulated witnesses Oscar Castaneda, Jeff Dills and Linda Alexander" and Glenn "manipulated a neighborhood witness." ER-16-17.

Manipulating a witness, however, is not itself unconstitutional. Missing was the necessary analysis of whether Long sufficiently alleged Weeks or Glenn engaged coercive or abusive interviewing techniques known to

generate fabricated evidence. *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001).

Regarding Long's failure to collect and preserve evidence claims, the district court observed Anderson, Glenn, and Newman "failed to collect evidence from the scene" and "destroyed physical evidence collected at the scene." ER-16-17.

Failing to collect or failing to preserve evidence is not a constitutional violation. The district court failed to examine Long's allegations to determine if she sufficiently alleged a bad faith failure to collect or preserve known exculpatory evidence. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *Miller v. Vasquez*, 868 F.3d 1116, 1119-20 (9th Cir 1989).

Those three examples amply show the absence of the required "individualized" qualified immunity analysis.

## 2. District Court's Improper Analysis Of Clearly Established Law

Regarding Long's due process claims, the district court stated Long "alleges Defendants withheld, suppressed, and destroyed exculpatory and impeachment evidence, fabricated

and manufactured affirmative evidence, and failed to collect evidence." ER-18. Those are Long's theories. The district court then cited general propositions of constitutional law set forth in *Brady, Devereaux,* and *Youngblood* and said: "Based on the law cited, the court concludes the law regarding *Brady*, fabrication of evidence, and a failure to preserve evidence was clearly established in 2003 at the time of Defendants' investigation." ER-18-19.

The district court's analysis is precisely what the Supreme Court rejects – a reliance on general constitutional principles rather than an officer's actual conduct. *Wesby*, 138 S. Ct. at 589-90. The district court not only failed to define the constitutional violations in terms of each officer's "particular conduct" but also failed to examine whether precedent existing in 2003 placed "beyond debate" the wrongfulness of each officer's "particular conduct." *White*, 137 S. Ct. at 551; *Mullenix*, 577 U.S. at 11; *see also Sharp*, 871 F.3d at 910 ("The Supreme Court has repeatedly instructed that we examine 'whether the violative nature of

41

particular conduct is clearly established' by controlling precedent, not whether the conduct violates a general principle of law.").

A proper qualified immunity analysis required the district court to first examine the underlying facts alleged against each officer to determine whether Long plausibly alleged due process claims for suppressing, fabricating, failing to collect, and failing to preserve evidence, and then look to precedent existing in 2003 to determine whether "every reasonable officer," *Ventura v. Rutledge*, 978 F.3d 1088, 1091 (9th Cir. 2020), would have known the specific conduct alleged against each officer "in this case" was wrongful in the situation presented to "these officers," *Hughes v. Rodriguez*, 31 F.4th 1211, 1223 (9th Cir. 2022). This was not done.

Regarding Long's failure to intervene claim, the district court cited *Cunningham*, 229 F.3d at 1289 for the proposition that officers have a duty to intervene "'when fellow officers violate the constitutional rights of a suspect or

42

other citizen.'" ER-19. Again, "[b]ased on the law cited," the district court concluded "the law regarding a failure to intervene was clearly established in 2003." ER-19.

But *Cunningham's* broad constitutional proposition is not fact specific to this case. *Cunningham* was an excessive force case. A case about intervening in excessive force would not provide notice to all reasonable officers of a constitutional obligation to intercede in the constitutional violations Long alleges. *Hughes*, 31 F.4th at 1223; *Ventura*, 978 F.3d at 1091.

Denying qualified immunity required either controlling precedent or a consensus of cases placing beyond debate the existence of an officer's constitutional obligation in 2003 to intervene in another's suppression, fabrication, failure to collect, and failure to preserve evidence.

Controlling precedent does not exist and a persuasive body of case law evidences the *absence* of such a clearly established intervention obligation. *See, e.g., Bledsoe v. Carreno*, 53 F.4th 589, 617 (10th Cir. 2022) (failure to

43

intervene liability for violations of constitutional rights regarding suppression and fabrication of evidence not clearly established in 1999); *Weimer v. County of Fayette*, 972 F.3d 177, 191-92 (3d Cir. 2020) (not clearly established between 2001-2006 that a prosecutor has a duty to intervene to prevent an unconstitutional police investigation); *Jones v. Cannon*, 174 F.3d 1271, 1286 (11th Cir. 1999) ("While officers have been subject to liability for failing to intervene when another officer uses excessive force" "[t]here is no controlling authority clearly establishing that once a police officer knows another officer has fabricated a confession in a police report for a warrantless arrest, that police officer has a constitutional duty to intervene to stop the other officer's conduct.").

Regarding Long's civil rights conspiracy claim, the district court cited *Sykes v. California*, 497 F.2d 197, 200 (9th Cir. 1974) for the elements of a section 1983 conspiracy claim and then concluded, once again, "[b]ased on the law cited," the "law regarding conspiracy to violate civil rights

was clearly established in 2003." ER-20.   A case setting

forth the elements of a conspiracy claim under section 1983

does not suffice.

Moreover, the Officers argued it was not clearly

established in 2003 that the intracorporate conspiracy

doctrine did not bar section 1983 conspiracy claims.  *See*

*Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017) (discussing

doctrine).  *Sykes* did not address that issue, and the district

court's response to the Officers' argument was relegated to a

footnote:

> Defendants argue the intra-corporate conspiracy
> doctrine bars this claim but also concede that 'the
> Ninth Circuit has not held the intracorporate
> conspiracy doctrine applies to civil rights claims.'
> [Citation]. In the absence of binding law holding
> the doctrine applies to Section 1983 claims, the
> court declines to find that the claim is barred.

ER-20.

The district court's analysis is backward.

The absence of this Court's consideration of the issue

means there is no precedent from this Court on the issue,

and there is also no precedent from the Supreme Court on the issue.

Thus, the Officers had qualified immunity unless a persuasive body of law from other courts placed beyond debate the inapplicability of the intracorporate conspiracy doctrine to section 1983 conspiracy claims.

That body of law does not exist. *See Torres v. City of St. Louis*, 39 F.4th 494, 507 (8th Cir. 2022) ("it is not clearly established that the intracorporate conspiracy doctrine does not apply to § 1983 conspiracy claims"). Indeed, only two circuit courts have squarely addressed the issue, and each held the intracorporate conspiracy doctrine bars section 1983 conspiracy claims. *Jackson v. City of Cleveland*, 925 F.3d 793, 817-18 (6th Cir. 2019); *Grider v. City of Auburn*, 618 F.3d 1240, 1261 (11th Cir. 2010).

## C. Qualified Immunity Bars Long's Failure To Intervene Claim Against The Officers

Long alleges the Officers violated her constitutional rights by suppressing, fabricating, not collecting, and not preserving evidence. ER-42-50 ¶¶ 41-73. Long further

alleges "one or more of the Defendants stood by without intervening to prevent the violation of [her] constitutional rights, even though they had the opportunity to do so during [her] prolonged prosecution and trial."  ER-57 ¶ 115.

### 1. Long Fails To Plead Plausible Claims[6]

"'[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen'" "'if they had an opportunity to intercede.'" *Tobias v. Arteaga*, 996 F.3d 571, 583-84 (9th Cir. 2021) (citations omitted).

To plead a section 1983 claim, Long must "set forth specific facts" outlining each defendant's wrongdoing.  *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).  Long must show "that each [officer] defendant, through the [officer's] own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  Long did not do this, ER-50 ¶ 76; ER-

---

[6] This discussion presumes failure to intervene liability extends to the constitutional claims Long alleges.  The next discussion shows that it does not or, at the very least, it is not clearly established.

56-57 ¶¶ 114-119, and the district court did not address the issue.  ER-16-17.

For example, Long "does not specify which individual defendants are liable for which failures to intervene. Nor does [s]he allege facts demonstrating that each individual had an opportunity to intervene in the conduct of the other individual defendants." *Rubalcava v. City of San Jose*, 2021 U.S. Dist. LEXIS 132281, at *34 (N.D. Cal. July 15, 2021).

Long's allegation that "one of more of the Defendants" failed to intervene "even though they had the opportunity to do so" constitutes nothing more than inadequate "group pleading" and insufficient recitations of a failure to intervene claim's elements.  *Iqbal*, 556 U.S. at 678; *see Pasene v. Correa*, __ F.Supp.3d __, 2023 U.S. Dist. LEXIS 27691, at *32 (D. Haw. Feb. 17, 2023) ("[A] plaintiff may not attribute general liability for an alleged wrong to a group of defendants but rather must make 'individualized' allegations.") (quoting *Leer*, 844 F.2d at 634).

Long's claims are also insufficient because they allege a failure to intervene *after* the constitutional violation purportedly occurred.  ER-57 ¶ 115 (alleging officers had the opportunity to intervene "during [her] prolonged prosecution and trial").  The district court did not address this issue either.  ER-16-17.

Long's after-the-fact intervention claim is not viable because failure to intervene liability exists only if the officer can realistically intercede. C*unningham*, 229 F.3d at 1290.  Indeed, failure to intervene liability exists to stop the constitutional violation from occurring in the first instance. *See id*. ("officers who were not present at the time of the shootings could not intercede to prevent their fellow officers from shooting" and "non-shooting officers who were present at the shootouts had no 'realistic opportunity' to intercede").

No officer can intervene to prevent a completed constitutional violation from occurring.  *See Hall v. Maioho-Pohina*, 2023 U.S. App. LEXIS 10811, at *5 (9th Cir. May 3, 2023) (unpub.) (observing in the context of supervisor

liability that "[i]t does seem difficult to prevent what has already happened").

## 2. Long Failed To Meet Her Burden To Show Clearly Established Law

Long had to identify a "controlling case" existing in 2003 "that 'squarely governs the specific facts at issue'" here. *West*, 931 F.3d at 983. This required Long to cite Supreme Court or Ninth Circuit precedent existing in 2003 establishing the Officers had a duty to intervene to prevent another from suppressing, fabricating, failing to collect, and failing to preserve evidence. *Sharp*, 871 F.3d at 911.

Absent that controlling authority, the rule Long seeks to invoke – officers have a constitutional obligation to intervene in the suppression and fabrication of evidence and the failure to collect and preserve evidence – must have been adopted by "a robust consensus of cases of persuasive authority" from other jurisdictions placing the rule "beyond debate." *Wesby*, 138 S. Ct. at 589-90.

Long did not and cannot show either because the case law she needs is nonexistent.

50

Before demonstrating the insufficiency of the cases Long relied on below, qualified immunity is appropriate on Long's after-the-fact failure to intervene claim because "[this Court's] precedent does not clearly establish when an officer has a 'realistic opportunity to intercede.'" *Penaloza v. City of Rialto*, 836 F. App'x 547, 549 (9th Cir. 2020).[7]  This goes to the heart of the after-the-fact intervention theory Long pursues.

Notwithstanding, Long did not rely on a Supreme Court case because the Supreme Court has never addressed failure to intervene liability under section 1983.  Long did cite cases from this Court, but none help her.

Long relied on *United States v. Koon*, 34 F.3d 1416 (9th Cir. 1994), *rev'd on other grounds*, 518 U.S. 81 (1996), *Cunningham*, 229 F.3d 1271, *Ramirez v. Butte-Silver Bow*

---

[7] Although not specifically raised below, this Court can consider the argument as an elaboration on the qualified immunity arguments made. *W. Watersheds Project v. United States DOI*, 677 F.3d 922, 925 (9th Cir. 2012); *Smith v. Arthur Andersen Ltd. Liab. P'ship*, 421 F.3d 989, 999 (9th Cir. 2005).

*Cty.*, 298 F.3d 1022, 1029 (9th Cir. 2002), and *Tobias*, 996 F.3d 571.[8]  ECF Doc. 85, pp. 28-29.  The Officers first address *Koon*, *Cunningham,* and *Ramirez* because they predate 2003, and then address *Tobais*.

*Koon* was a criminal case involving excessive force.  34 F.3d at 1424-26. In a footnote citing to *civil cases* from other jurisdictions, this Court observed in dictum that "[p]ursuant to a long line of civil cases, police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." 34 F.3d at 1447 & n.25. Notably, the cases cited involved intervening in excessive force.  *Id.* (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988); *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986); *Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir. 1982);

---

[8] Long also relied on district court cases but "'"district court decisions - unlike those from the courts of appeals - do not necessarily settle constitutional standards or prevent repeated claims of qualified immunity."'" *S.B.*, 864 F.3d at 1016 (quoting *Hamby v. Hammond*, 821 F.3d 1085, 1095 (9th Cir. 2016) (quoting *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011))).

*Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981); *Byrd v. Brishke*, 466 F.2d 6, 10-11 (7th Cir. 1972)).

In *Cunningham*, also an excessive force case, this Court quoted *Koon's* dicta observing "'police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen'" before finding no chance to intervene and no liability.  299 F.3d at 1289-90 (quoting *Koon*, 34 F.3d at 1447 n. 25).

*Ramirez*, a case about a search warrant, also quoted *Koon's* dicta before finding no failure to intervene liability because there was no Fourth Amendment violation. 298 F.3d at 1029-30.

Neither *Koon*, *Cunningham* nor *Ramirez* involved failing to intervene in constitutional violations for suppressing, fabricating, failing to collect, or failing to preserve evidence.  Those constitutional violations are very different than force or search violations.

Thus, Long cited no controlling precedent existing in 2003 holding an officer must intervene in another's

suppression, fabrication, failure to collect, or failure to preserve evidence. Neither *Koon*, *Cunningham* nor *Ramirez* "'squarely govern[] the specific facts at issue'" here. *West*, 931 F.3d at 983 (quoting *City of Escondido v. Emmons*, 139 S. Ct. 500, 503-04 (2019)).

Because *Koon, Cunningham* and *Ramirez* are factually dissimilar from the constitutional violations Long pursues, Long (and the district court) were forced to rely on their broad and general statements that officers have "a duty to intercede when their fellow officers violate the constitutional rights of a suspect."

But a broad and general statement of constitutional law divorced from the facts of the case cannot demonstrate clearly established law. *White*, 137 S. Ct. at 552; *Mullenix*, 577 U.S. at 11. The "inquiry into whether a particular right is clearly established 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Sabra*, 44 F.4th at 890; *see, e.g., Miller v. Gettel*, 2023 U.S. App. LEXIS 8997, at *35 (6th Cir. Apr. 14,

2023) (unpub.) (Larsen, C.J.., concurring) (*Bunkley's* broad
language gesturing toward other constitutional violations
not at issue in that case cannot clearly establish that officers
have a duty to intervene in any constitutional violation
under any factual circumstances.  Instead, the clearly
established 'inquiry "must be undertaken in light of the
specific context of the case, not as a broad general
proposition."'"); *Harris v. Mahr*, 838 F. App'x 339, 342-43
(10th Cir. 2020) (finding qualified immunity for failure to
intervene in unlawful entry and search because prior
precedent stating "'that all law enforcement officials have an
affirmative duty to intervene to protect the constitutional
rights of citizens from infringement by other law
enforcement officers in their presence'" "fail[s] to show that
the law was clearly established at the time of the incident"
because it "recites a broad duty to intervene [] [and] lacks
any specificity, especially as to unlawful entry and search
cases").

*Tobias* also does not help Long. The case addressed a coerced confession and repeated the generalized statement that "'police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen.'" 966 F.3d at 583 (quoting *Cunningham*, 229 F.3d at 1289). However, *Tobias* was decided in 2021, addressed 2013 conduct, and does not address the constitutional violations Long alleges.

In addition to not showing controlling precedent predating 2003 establishing the rule she seeks to invoke, Long also failed to show "a robust consensus of cases of persuasive authority" from other jurisdictions placing the duty to intervene in the constitutional violations she alleges "beyond debate." *Wesby*, 138 S. Ct. at 589-90.

Neither *Gagnon v. Ball*, 696 F.2d 17 (2d Cir. 1982), *O'Neill*, 839 F.2d 9, *Yang v. Hardin*, 37 F.3d 282 (7th Cir. 1994), nor *Hurt v. Wise*, 880 F.3d 831 (7th Cir. 2018) help Long. ECF Doc. 85, p. 29.

*Gagnon* was an arrest case. 696 F.2d at 21. *O'Neill* was a force case. 839 F.2d at 11. *Yang* was also a force case. 37 F.3d at 283-85. Thus, none involved failing to intervene in constitutional violations for suppressing, fabricating, failing to collect, or failing to preserve evidence.

Although *Hurt* involved constitutional claims occurring in 2012 like those Long alleges, it was decided in 2019. 880 F.3d at 835, 842-43. It is therefore irrelevant. *See Kisela*, 138 S. Ct. at 1154 ("*Glenn* ... was decided after the shooting at issue here. Thus, *Glenn* 'could not have given fair notice to [the officer]' because a reasonable officer is not required to foresee judicial decisions that do not yet exist ....").

Long's cited cases accordingly fall well short of a "consensus of persuasive authority" placing the issue "beyond debate." *Wesby*, 138 S. Ct. at 589-90.

This is particularly true because other jurisdictions hold failure to intervene liability outside of excessive force is not clearly established. *See, e.g.*, *Lozano v. New Jersey*, 9 F.4th 239, 246 n.4 (3d Cir. 2021) (observing failure to

intervene liability has not been extended outside of excessive force); *Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012) ("Assuming law enforcement officers have a constitutional duty to intervene outside of the excessive force context, such a duty was not clearly established in 2006.") (citing cases).

Moreover, courts hold no clearly established obligation exists to intervene in conduct like Long alleges. *See, e.g., Bledsoe*, 53 F.4th at 617 (suppression and fabrication of evidence ); *Weimer*, 972 F.3d at 191-92 (unconstitutional police investigation); *Jones*, 174 F.3d at 1286 (fabricated evidence); *Onyiah v. City of Philadelphia*, 2023 U.S. Dist. LEXIS 40386, at *16 (E.D. Pa. Mar. 10, 2023) (coerced confession or malicious prosecution); *Thorpe v. City of Philadelphia*, 2020 U.S. Dist. LEXIS 158682, at *31 (E.D. Pa. Aug. 31, 2020) (fabrication and suppression of evidence).

In sum, Long failed to meet her burden below to show the law in 2003 clearly established failure to intervene liability for constitutional violations involving suppressing, fabricating, failing to collect, and failing to preserve

evidence. *See Sabra*, 44 F.4th at 887 (finding qualified immunity because "we have never held that *actions like the ones challenged in this case* constitute a violation of the Establishment Clause or Free Exercise clause.") (emphasis added).

### D. Qualified Immunity Bars Long's Civil Rights Conspiracy Claims Against The Officers

Long alleges the Officers "reached an agreement among themselves to frame [her] for a crime she did not commit" by suppressing, fabricating, failing to collect, and failing to preserve evidence, and each Officer "committed overt acts and were otherwise willful participants in joint activity." ER-58 ¶¶ 155, 156.

### 1. The Intracorporate Conspiracy Doctrine Bars Long's Claims

Under the intracorporate conspiracy doctrine, "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy.'" *Ziglar*, 582 U.S. at 153 (citing *Copperweld Corp v. Independence Tube Corp.*, 467 U. S. 752,

769-71 (1984)). This is because a "[c]onspiracy requires ... an agreement to do an unlawful act ... between or among two or more separate persons." *Id.* But "[w]hen two agents of the same legal entity make an agreement in the course of their official duties," "their acts are attributed to their principal" and there is no "agreement between one or more separate people." *Id.*

"Neither the Supreme Court nor the Ninth Circuit have decided whether the intracorporate conspiracy doctrine applies to civil rights actions ..." *Trujillo-Lopez v. City of Vallejo*, 2022 U.S. Dist. LEXIS 203467, at *9 (N.D. Cal. Nov. 8, 2022); *see also Rosenfeld v. Talamantes*, 2022 U.S. Dist. LEXIS 132566, at *15 (C.D. Cal. May 23, 2022) ("The Ninth Circuit has not yet decided whether the intracorporate conspiracy doctrine applies to civil rights actions ....").[9]

---

[9] The Supreme Court and this Court have held the intercorporate conspiracy doctrine's application to section 1985 conspiracy claims is not clearly established. *Ziglar,* 582 U.S. 153-54; *Manansingh v. United States*, 2023 U.S. App. LEXIS 7320, at *3 (9th Cir. Mar. 28, 2023) (unpub.); *Fazaga v. FBI*, 965 F.3d 1015, 1059-60 (9th Cir. 2020), *rev'd on other grounds*, 142 S. Ct. 1051 (2022)).

"Nonetheless, 'district courts within this Circuit …
consistently have held that [the doctrine] does apply.'"
*Rosenfeld*, 2022 U.S. Dist. LEXIS 132566, at *15-16 (quoting
*Hasbrouck v. Yavapai County*, 2021 U.S. Dist. LEXIS 18360,
at *43  (D. Ariz. Feb. 1, 2021); *Norton v. Arpaio*, 2015 U.S.
Dist. LEXIS 199451, at *17-18 (D. Ariz. Nov. 20, 2015)
(collecting cases); *Kroll v. County of Los Angeles*, 2021 U.S.
Dist. LEXIS 195693, at * 32 (C.D. Cal. June 28, 2021);
*Hoefer v. Fluor Daniel, Inc*., 92 F.Supp.2d 1055, 1059 (C.D.
Cal. 2000).

And most circuit courts considering the issue likewise
hold the intracorporate conspiracy doctrine bars civil rights
conspiracy claims.  *Fazaga*, 965 F.3d at 1060 n.41 ("Two
circuits have held that the intracorporate conspiracy
doctrine does not extend to civil rights cases. The majority of
the circuits have reached a contrary result.") (citing cases);
*Bowie v. Maddox*, 642 F.3d 1122, 1130 (D.C. Cir. 2011) ("At
least seven circuits have held the intracorporate conspiracy
doctrine applies to civil rights conspiracies.") (citing cases).

Although the decisions referenced in *Fazaga* and *Bowie* involved section 1985 conspiracies, two circuit courts squarely hold the intracorporate conspiracy doctrine also bars section 1983 conspiracy claims against members of the same police department. And no circuit court holds otherwise.

Joining the Eleventh Circuit, the Sixth Circuit in *Jackson*, 925 F.3d 793, held the intracorporate conspiracy doctrine bars section 1983 conspiracy claims:

> [T]his circuit has never decided whether the intracorporate conspiracy doctrine also applies to suits under § 1983. [Citation] .... [W]e must resolve this issue of first impression. [¶]. We are aware of only one circuit, the Eleventh, that has squarely addressed the issue and has determined that the intracorporate conspiracy doctrine applies in § 1983 actions as in § 1985 actions. *See Grider v. City of Auburn*, 618 F.3d 1240, 1261 (11th Cir. 2010); [citation]. By contrast, we are aware of no circuit that has applied the doctrine in § 1985 actions but declined to apply it in § 1983 actions. [fn]. [¶] We join the Eleventh Circuit and hold that the intracorporate conspiracy doctrine applies in § 1983 suits to bar conspiracy claims where two or more employees of the same entity are alleged to have been acting within the scope of their employment when they allegedly conspired together to deprive the plaintiff of his rights.

*Id.* at 817-18.

*Jackson* reached this conclusion "because the considerations that support applying the intracorporate conspiracy doctrine in § 1985 suits pertain equally to the § 1983 context" and the court "discern[ed] no logical distinction upon which to treat § 1983 conspiracy claims differently." 925 F.3d at 818. *Jackson* elaborated.

First, "the intracorporate conspiracy doctrine was recognized in antitrust and civil rights cases based on the legal notion of corporations as 'persons.'" *Id.* at 818 (citations omitted). "When employees of a corporation act to further the purposes of that 'person,' principles from the law of agency dictate that those employees be treated not as separate 'persons' but as part of the same 'person.'" *Id.* at 818 (citations omitted). "We have recognized the relevance of these principles to suits against employees of local government entities as well as against employees of private corporations. Furthermore, the Supreme Court has made clear that municipalities are 'persons' for purposes of § 1983." *Id.* (citations omitted).

Second, "[b]ecause the intracorporate conspiracy doctrine follows from the legal definition of 'person,' which includes local governments, the doctrine has been developed to deal with the question whether there are two separate persons to form a conspiracy." *Id.* at 819. "The doctrine's application to other civil rights statutes has not been premised upon any factor unique to those statutes. We therefore see no reason to decline to apply the doctrine to § 1983." *Id.* "Section 1983 creates a cause of action against any 'person' who deprives a plaintiff of his rights, just like § 1985. Therefore, if § 1985 cannot be violated by an alleged conspiracy where the alleged conspirators are all employees of the same entity acting within the scope of their employment, neither can § 1983." *Id.*

Third, *Jackson* rejected "the rationale that because § 1985 is in its essence a conspiracy statute, while § 1983 is not, the intracorporate conspiracy doctrine applies to the former but not the latter." *Id.* "Although § 1983 does not expressly contemplate a cause of action for conspiracy, once

we have recognized such a cause of action—which we have, [citation]—the question whether a conspiracy can exist where all alleged conspirators work for the same entity, and are alleged to have been acting in the scope of their employment, naturally arises." *Id.* "That inquiry is identical under § 1983 and § 1985. After all, we did not apply the intracorporate conspiracy doctrine in § 1985 actions on a theory that the text of that particular statutory provision demanded it." *Id.* "Instead, we simply adopted a conspiracy jurisprudence that developed outside the civil rights context." *Id.*

Fourth, "we have recognized an exception to the intracorporate conspiracy doctrine in § 1985(3) suits where the defendants were alleged to have been acting outside the scope of their employment, and we have indicated that the exception would apply equally in the § 1983 context were we to apply the doctrine in § 1983 suits." *Id.* (citations omitted).

"Accordingly, the intracorporate conspiracy doctrine applies to § 1983, and we assume that adopting the doctrine entails adopting the exception." *Id.*

*Jackson's* reasoning is sound. This Court should follow *Jackson* and join the Sixth and Eleventh Circuits in holding the intracorporate conspiracy doctrine precludes intracorporate conspiracy liability under section 1983 against members of the same police department.

Because the Officers are members of the City's police department acting within the course and scope of employment, ER-37 ¶ 12, the intracorporate liability doctrine bars Long's section 1983 civil rights conspiracy claim against the Officers. *Jackson*, 925 F.3d at 820 ("[A]s a matter of law, Stoiker cannot be liable for conspiracy in violation of § 1983 where he is alleged to have conspired with other employees of the same government entity, in the scope of their employment, to violate Plaintiffs' rights.").

Long's arguments below against application of the intracorporate conspiracy doctrine were unpersuasive.

Long argued "the Ninth Circuit has not applied the intracorporate conspiracy doctrine to § 1983 claims" so "it would be error to find that some cobbled-together version of the doctrine – derived originally from anti-trust law and now possibly applicable to § 1985 private conspiracies – applies to actions under § 1983." ECF Doc. 85, p. 24.

Long correctly says this Court has "not applied the intracorporate conspiracy doctrine to section 1983 claims," but that is only half the story. The other half is this Court has never addressed it.

Saying the intracorporate liability doctrine is "some cobbled-together version of the doctrine" "possibly applicable to section 1985" claims is a weak way of discounting the holdings of at least seven circuits.

Long also argued against the doctrine's application to section 1983 claims by citing cases from this Court recognizing section 1983 conspiracy claims against employees of the same government agency. ECF Doc. 85, p. 25.

But none of those cases addressed the intracorporate conspiracy doctrine. Cases do not stand for propositions not considered. *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985). Cases evaluating section 1983 conspiracy claims without analyzing the intracorporate conspiracy doctrine do not establish the doctrine's inapplicability to section 1983 claims. *Id.; Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 938 (9th Cir. 2007) ("'unstated assumptions on non-litigated issues are not precedential holdings'"); *see, e.g., Torres v. City of St. Louis*, 39 F.4th 494, 507 (8th Cir. 2022) ("our opinions recognizing § 1983 conspiracy claims against police officers from the same department who conspired to violate clearly established rights do not address the applicability of the intracorporate conspiracy doctrine").

*Fazaga*, 965 F.3d 1015 well illustrates this point. Before *Fazaga*, this Court recognized section 1985 conspiracy claims involving employees of a government agency. *See, e.g., Thornton v. City of St. Helens*, 425 F.3d

1158, 1168 (9th Cir. 2005).  But this Court did not hold the intracorporate conspiracy doctrine inapplicable.  *Fazaga*, 965 F.3d at 1059-60; *see also Manansingh*, 2023 U.S. App. LEXIS 7320, at *3 (same).

### 2.   Long Failed To Meet Her Burden To Show Clearly Established Law

Because none exist, Long cited no Supreme Court or Ninth Circuit case holding the intracorporate conspiracy doctrine inapplicable to section 1983 conspiracy claims.  ECF Doc. 85, pp. 31-32.

Indeed, the Supreme Court has once addressed the intracorporate conspiracy doctrine's application to a civil rights claim and held the law regarding its application to section 1985 claims is not clearly established. *Ziglar*, 582 U.S. at 153-54.  This Court has subsequently twice held the same.  *Fazaga*, 965 F.3d at 1059-60 & n. 41; *Manansingh*, 2023 U.S. App. LEXIS 7320, at *3.

And Long could not and cannot rely on appellate authority from other jurisdictions to show the intracorporate conspiracy doctrine inapplicable to section 1983 conspiracy

claims.  Again, the only two circuit courts answering the question hold it bars section 1983 claims.  *Jackson*, 925 F.3d at 817-18; *Grider*, 618 F.3d at 1261.

If the applicability of the intracorporate conspiracy doctrine to a section 1985 claim is not clearly established – as the Supreme Court and this Court have held – despite the number of circuit courts holding the doctrine bars the claim, then surely the law is not clearly established regarding the doctrine's application to section 1983 claims where a smaller (albeit consistent) body of appellate court authority exists. *See Alicia St. v. Leyshock*, 41 F.4th 987, 990 (8th Cir. 2022) (holding qualified immunity appropriate because "neither the Supreme Court nor this court had 'definitively addressed the issue whether the doctrine applies to § 1983 conspiracy claims[ ]'" and "two other circuits had held that the doctrine does apply"); *Torres*, 39 F.4th at 507 (holding qualified immunity appropriate "because it is not clearly established that the intracorporate conspiracy doctrine does not apply to § 1983 conspiracy claims"); *Fatai v. City & Cnty. of*

70

*Honolulu*, 2021 U.S. Dist. LEXIS 130037, at *32 (D. Haw. July 13, 2021) ("The fact that so few Circuits—including the Ninth—have yet to rule on the issue demonstrates that, at a minimum, liability in the circumstances presented here— i.e., where officers of the same police department are alleged to have conspired to violate someone's constitutional rights— cannot lie because the law is not clearly established."); *Kroll*, 2021 U.S. Dist. LEXIS at *32 ("Although the existing cases have addressed conspiracy claims brought under section 1985 as opposed to section 1983, there is nothing in the opinions limiting the application of the doctrine to claims brought under that statute. The Court therefore finds the law relating to conspiracies within an agency, such as the sheriff's department, is not clearly established, and Defendants are entitled to qualified immunity.").

## E. Qualified Immunity Bars Long's Fourteenth And Fourth Amendment Claims Against Anderson, Newman, And Verdugo For Failing To Collect Or Preserve Evidence

Long alleges Anderson, Newman, and Verdugo "purposefully failed to collect, or to cause to be collected,

71

evidence that they knew would detail who was present at the time of the murder with Conde, such as fingerprint impressions and/or DNA from: (1) the door and doorknob used by the perpetrator to gain access to the home; (2) the door and doorknob leading from the garage into the house which had been propped open during the assault; (3) the closet door in the master bedroom which contained a shotgun that Defendants knew had gone missing at the time of the murder; and (4) the kitchen cabinet which contained a change bowl associated with alternate suspect Bugarski that disappeared in connection with the murder." ER-49-50 ¶ 72. According to Long, this "denied [her] access to evidence that would have shown the presence and identity of others at the scene of the crime with Conde at the time of his death, and exonerated her." ER-50 ¶ 73. Long further alleges Anderson, Newman, and Verdugo "purposefully ... destroyed physical evidence including a champagne bottle and cup found at the house with Conde that, had it been tested, would have shown that other individuals had been present

with Conde at the time of the crime and identified them."
ER-49 ¶ 69. According to Long, this was all done "because
they could already tie their suspect, Long, to the scene of the
crime based on her discovery of the body at her residence,
and did not want to generate evidence that would call into
question Long's guilt and implicate any additional suspects."
ER-49 ¶ 71.

## 1. Long Fails To Plead Cognizable Claims

At bottom, Long claims Anderson, Newman, and
Verdugo failed to collect or preserve evidence that, if tested,
would have revealed others at the house and "exonerated"
her. These claims fail.

The Constitution does not require officers to collect or
preserve *any* item of evidence. *Miller*, 868 F.2d at 1119-20;
*see Youngblood*, 488 U.S. at 58 (observing "our unwillingness
to read the 'fundamental fairness' requirement of the Due
Process Clause, [citation], as imposing on the police an
undifferentiated and absolute duty to retain and to preserve

all material that might be of conceivable evidentiary significance in a particular prosecution.").

Failing to collect or preserve evidence violates due process *only* when an officer in bad faith fails to collect or preserve what the officer knows at the time is exculpatory evidence. *Youngblood*, 488 U.S. at 56-58; *Cunningham v. City of Wenatchee*, 345 F.3d 802, 812 (9th Cir. 2003). "[I]n the absence of bad faith, the police's failure to preserve evidence that is only potentially exculpatory does not violate due process, then a fortiori neither does the good faith failure to collect such evidence violate due process." *Miller*, 868 F.2d at 1120; *United States v. Robertson*, 895 F.3d 1206, 1211 (9th Cir. 2018) ("[W]ithout knowledge of the potential usefulness of the evidence, the evidence could not have been destroyed in bad faith.").

Thus, uncollected or destroyed evidence "must both possess an exculpatory value that was apparent before the evidence was [not collected] or destroyed, and be of such a

nature that a defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489 (1984); *see Cooper v. Calderon*, 255 F.3d 1104, 1113 (9th Cir. 2001) ("The duty to preserve evidence is limited to material evidence, i.e., evidence whose exculpatory value was apparent before its destruction and that is of such nature that the defendant cannot obtain comparable evidence from other sources.").

As a further limitation on an obligation to collect and preserve evidence, "[t]he exculpatory value of an item of evidence is not 'apparent'" to an officer "when the evidence merely 'could have' exculpated the defendant." *United States v. Drake*, 543 F.3d 1080, 1090 (9th Cir. 2008) (quoting *Youngblood*, 488 U.S. at 56). "[T]hat the evidence may have proven exculpatory . . . does not render it per se material." *United States v. Martinez-Martinez*, 369 F.3d 1076, 1087 (9th Cir. 2004).

Thus, a viable failure to collect or preserve evidence claim requires Long to plausibly allege: (1) Anderson,

Newman, and Verdugo each failed to collect or preserve exculpatory evidence; (2) Anderson, Newman, and Verdugo each knew of the evidence's exculpatory value; and (3) she was unable to obtain comparable evidence.

Long's allegations are insufficient for many reasons.

First, Long does not distinguish between Anderson, Newman, and Verdugo. *Leer*, 844 F.2d at 634. It is not plausible that all three did or failed to do the exact same thing.

Second, if Long in anyway bases her claim on a failure to test evidence, "the police do not have a constitutional duty to perform any particular tests." *Youngblood*, 488 U.S. at 59; *see Moore v. City of Oakland*, 242 F. Supp. 3d 891, 902 (N.D. Cal. 2017) ("Plaintiff cites no authority establishing an obligation of the police to test DNA evidence ....").

Third, Long's assertion that the uncollected and destroyed evidence "would have exonerated" her if tested by "showing" others were at the crime scene is insufficient

76

speculation. *Iqbal*, 556 U.S. at 682. Long alleges no facts plausibly suggesting others were at the crime scene. Moreover, Long alleges no facts suggesting how the presence of others at the crime scene "would have exonerated her." Given she was at the crime scene, this is unsurprising. Just as Long would have it, one's presence at the crime scene does not necessarily mean that person committed the murder. And Long certainly could have committed the murder even if others had been present.

Fourth, it is impossible to say the evidence "would have exonerated" Long. This is because "the value of the untested evidence is speculative." *Cunningham*, 345 F.3d at 812. "It could have exonerated [Long], but it also could have incriminated [her]." *Id.* As such, "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant" does not violate the due process clause. *Youngblood*, 488 U.S. at 57; *Phillips v. Woodford*, 267 F.3d 966, 987 (9th Cir. 2001) ("'[E]vidence which could

have been subjected to tests which might have exonerated the defendant does not constitute a due process violation.'").

Fifth, Long alleges no facts implying Anderson, Newman, or Verdugo knew or should have known about the presence of someone other than Long at the crime scene. Presumably, the scene was processed right after the murder. Long alleges no facts plausibly suggesting that, at that time, Anderson, Newman, or Verdugo knew or should have known about the presence of others. The same is true regarding the bottle and cup because Long does not allege when they were destroyed.

Sixth, Long fails to allege "bad faith" by Anderson, Newman, or Verdugo. Bad faith means "official animus" or "a conscious effort to suppress exculpatory evidence." *Trombetta*, 467 U.S. at 488-89. To plead bad faith, Long must "'put forward specific, nonconclusory factual allegations that establish improper motive.'" *Cunningham*,

345 F.3d at 812.  Long only alleges Anderson, Newman, and Verdugo did not want to develop evidence exonerating her. But she alleges no facts suggesting a plausible reason.

The lack of "specific, nonconclusory factual allegations" supporting even an inference that Anderson, Newman, or Verdugo knew they failed to collect or preserve exculpatory evidence renders Long's claim insufficiently pled.  *Id.*

*Cunningham* is instructive.  In *Cunningham,* the plaintiff alleged the officer "failed to gather any physical evidence, such as bed sheets or clothing, which could have exonerated [him]."  345 F.3d at 812.  This Court found the allegation insufficient to plead bad faith "because the value of the untested evidence is speculative.  It could have exonerated [plaintiff], but it also could have incriminated him. While [the officer's] investigative work may have been negligent or incomplete, it was not conducted in bad faith." *Id.*  The Court concluded plaintiff had "not alleged specific,

nonconclusory facts showing [the officer] engaged in 'a conscious effort to suppress exculpatory evidence.'" *Id.* (quoting *Trombetta*, 467 U.S. at 488).

The same is true here. What Long alleges "can at worst be described as [a] negligent" or an "incomplete" investigation, neither of which violates due process. *Youngblood*, 488 U.S. at 58; *Cunningham*, 345 F.3d at 812; *see Richards v. County of San Bernardino*, 2022 U.S. App. LEXIS 17535, at *6 (9th Cir. June 24, 2022) (unpub.) ("Failing to follow guidelines or to carry out an investigation in a manner that will ensure an error-free result is one thing; failing to collect or preserve evidence in bad faith is quite another.").

And, finally, Long alleged no facts showing her inability to obtain comparable evidence. *Trombetta*, 467 U.S. at 489. Long does not allege an inability to access the crime scene to collect and test whatever fingerprint and DNA evidence she wanted. The omission is particularly poignant given the crime occurred in Long's home. Nor does Long

allege not having access to the bottle and cup before it was destroyed.

## 2. Long Failed To Meet Her Burden Of Showing Clearly Established Law

Although the Supreme Court in *Trombetta* and *Youngblood* held a bad faith failure to preserve evidence may violate due process, neither case dealt with collecting evidence. *See Miller*, 868 F.2d at 1119-20 (discussing *Trombetta* and *Youngblood*); *id.* at 1119 ("Miller has not cited a case, nor have we found one, which holds that the due process clause is violated when the police fail to gather potentially exculpatory evidence. On the contrary, the cases we discovered hold to the contrary.").)

The Supreme Court has never held failing to collect evidence could violate the due process clause, but this Court did in *Miller,* 868 F.2d at 1120. Thus, generally in 2003, a bad faith failure to collect or preserve exculpatory evidence might violate due process.

But the issue here is more specific than that general rule. *White*, 137 S. Ct. at 552. As this Court observed in the

context of a *Brady* claim, the qualified immunity question is not answered by the general constitutional rule that officers cannot suppress exculpatory evidence but whether clearly established law held *Brady* required disclosure of the evidence suppressed. *Carrillo v. County of Los Angeles*, 798 F.3d 1210, 1219, 1233 (9th Cir. 2015).

Thus, the issue is whether it was clearly established in 2003 that the Constitution required officers to collect all fingerprints and blood evidence at a crime scene and to preserve all evidence collected because it might be subject to tests that might exonerate a defendant.

Long did not meet her burden to show clearly established law.

Insufficient was Long's citation to *Youngblood, Miller, and United States v. Cooper*, 983 F.2d 928 (9th Cir. 1993) for the general proposition that bad faith failure to collect or preserve exculpatory evidence violates the due process clause. ECF Doc. 85, p. 27. Long cited no cases establishing any obligation to collect fingerprints or blood at a crime

scene. Nor did she cite any case involving a failure to preserve evidence potentially showing involvement of someone else in a crime.

### F. Qualified Immunity Bars Long's Fourteenth And Fourth Amendment Claims Against Weeks and Glenn For Fabricating Evidence

Long alleges Weeks and Glenn manipulated, coerced, and fed information to witnesses to alter the "timeline" of witness observations the night of the murder, that Weeks coerced witness Jeff Dills into adopting a false timeline by threatening him with prosecution, and that Weeks coerced witness Oscar Castenda into providing an alibi for Sheana Lovejoy by telling him Long was pointing the finger at her. ER-46-49 ¶¶ 56-68.

### 1. Long Fails To Allege A Plausible Claim

One has a "constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux*, 263 F.3d at 1074-75.

A plaintiff must establish "(1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017); *see Black v. Montgomery County*, 835 F.3d 358, 372 (3d Cir. 2016) ("[T]here is a notable bar for evidence to be considered 'fabricated.'").

"Fundamentally, the plaintiff must first point to evidence [s]he contends the government deliberately fabricated." *Bradford v. Scherschligt*, 803 F.3d 382, 386 (9th Cir. 2015). To the extent Long alleges the "timeline" was fabricated evidence, that does not suffice. A "timeline" is not evidence. A timeline is a representation in time of events put together from evidence. Based on Long's allegations, the witness testimony is the evidence at issue.

Deliberate fabrication of evidence can be shown directly or circumstantially. *Richards v. County of San Bernardino*, 39 F.4th 562, 569 (9th Cir. 2022).

Direct fabrication exists when an officer does the fabricating. *See, e.g., id.* at 570 (planting evidence); *McSherry v. City of Long Beach*, 423 F.3d 1015, 1022 (9th Cir. 2005) (false testimony at trial); *Spencer,* 857 F.3d at 789 (false statements in report); *Costanich v. Department of Soc. & Health Servs.*, 627 F.3d 1101, 1107 (9th Cir. 2010) (deliberately misstating witness statements in report).

Because Long does not allege any direct evidence fabrication by Weeks or Glenn, she must have plausibly alleged "circumstantial fabrication." She did not.

Circumstantial fabrication can be shown in two ways: (1) when an officer continues an investigation into a suspect when the officer knows or should know of the suspect's innocence; or (2) when an officer uses "investigative techniques that were so coercive and abusive that [he] knew or should have known that those techniques would yield false information." *Devereaux*, 263 F.3d at 1076; *Spencer*, 857 F.3d at 799.

Long does not plausibly allege Weeks or Glenn interviewed any witnesses when either knew or should have known of her innocence. Indeed, Long never alleges when Weeks or Glenn conducted the interviews.

Long does allege Weeks and Glenn coerced witnesses into providing false testimony about when they heard or saw certain things on the night of the murder, but problems exist with her allegations.

Preliminarily, Long does not plausibly allege the witness testimony was fabricated. Testimony is not fabricated just because it did not assist Long's defense, was contradicted by other evidence, or was wrong. *See Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3d Cir. 2014) ("testimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong").

Moreover, it is well established that overbearing, aggressive or coercive interviewing tactics – which is what Long alleges Weeks and Glenn engaged in – cannot alone establish deliberate fabrication of evidence. *Gausvik v.*

*Perez*, 345 F.3d 813, 817 (9th Cir. 2003); *Devereaux*, 263 F.3d
at 1077.

As the Seventh Circuit aptly explained: "[C]oercive
interrogation techniques [are] insufficient to find fabrication
of evidence" because "[c]oerced testimony is not necessarily
fabricated." *Coleman v. City of Peoria*, 925 F.3d 336, 346 (7th
Cir. 2019); *see also Avery v. City of Milwaukee*, 847 F.3d 433,
439 (7th Cir. 2017) ("We have indeed drawn a distinction
between a coercion case for which there is no cognizable due
process claim and an evidence fabrication case where there
is a cognizable claim.") (simplified). "A reluctant witness or
co-conspirator whose testimony an officer must pry out
through aggressive interrogation techniques may be telling
the truth despite the measures used.  Fabricated testimony,
meanwhile, is invariably false because it is made up by the
officer, who knows he is making it up." *Coleman*, 925 F.3d at
346.

"'Coercively interrogating witnesses, paying witnesses
for testimony, and witness-shopping may be deplorable, and

these tactics may contribute to wrongful convictions, but they do not necessarily add up to a constitutional violation even when their fruits are introduced at trial." *Id.* "Evidence collected with these kinds of suspect techniques, unlike falsified evidence and perjured testimony, may turn out to be true.'" *Id.*; *see also Caldwell v. City & County of San Francisco*, 889 F.3d 1105, 1120 (9th Cir. 2018) ("[W]hile paying a witness for testimony may create adverse incentives to provide false statements, paying a witness alone does not violate due process.").

Long failed to allege conduct by Weeks and Glenn showing "deliberate indifference to or reckless disregard" for her rights, *Gantt v. City of Los Angeles*, 717 F.3d 702, 708 (9th Cir. 2013), because she failed to allege facts plausibly demonstrating "the interview techniques employed" by Weeks or Glenn "were so coercive and abusive" that Weeks or Glenn "knew or should have known that they would yield false information," *Devereaux*, 263 F.3d at 1077.

88

Regarding Glenn, Long does not plausibly allege any coercive or abusive conduct by him.  ER-46-49 ¶¶ 56-68.

Regarding Weeks, Long alleges he coerced Casteneda by telling him Lovejoy needed an alibi.  ER-46-47 ¶ 58.  That is not coercive or abusive and cannot be equated with fabricating evidence.  Asking for alibis to clear suspects is something investigators do every day.

Long further alleges Weeks coerced Dills by threatening him with prosecution.  But that tactic is also commonplace whether Weeks believed Dills was a suspect or not, and thus cannot be so coercive or abusive that Weeks knew or should have known it would yield false information. *See United States v. Crawford*, 372 F.3d 1048, 1060 (9th Cir. 2004) ("Trickery [and] deceit ... do not render a confession inadmissible"); *Williams v. Woodford*, 384 F.3d 567, 594 (9th Cir. 2002) ("An interrogating agent's suggestion that a suspect's cooperation with the government will have a positive effect on the suspect's possible sentence is not an

improper inducement that causes the suspect's later testimony for the government to be involuntary.").

This Court requires much more than threat of prosecution to establish coercion. *See, e.g., Gantt*, 717 F.3d at 704, 708 (coercion shown when detectives interrogated eyewitness after "he had been awake for approximately two days straight on a crack binge" and "was still under the influence" when identifying suspects, threatened to charge him with murder if he did not identify the suspect, interrogated him on multiple days for hours at a time); *Williams*, 384 F.3d at 595 ("[T]he beatings, threatened murder charge, and offer of immunity in exchange for Coleman's testimony against Williams were coercive and rendered involuntary Coleman's statements incriminating Williams at the 1979 interrogation.")

Further, an issue was raised during Long's sentencing regarding Weeks coercing Dills' testimony. Long's attorney reviewed Dills' videotaped interviews and conceded the *absence* of coercion. ER-148-156.

90

Finally, Long cross-examined all witnesses at trial, including Weeks and Glenn and Dills and Lovejoy.[10]  ER-139-147 (listing witnesses).  Long thus had the opportunity to discredit the so-called "false timeline" and to show fabrication, or at the very least create a question on the issue.  *See Pennsylvania v. Ritchie*, 480 U.S. 39, 51-52 (1987) ("the right to cross-examine includes the opportunity to show that a witness is biased, or that the testimony is exaggerated or unbelievable").  Effective cross-examination is a means to establish fabrication.  *See Hendricks v. Calderon*, 70 F.3d 1032, 1044 (9th Cir. 1995) ("the prosecution's devastating cross-examination may have left the jury with the impression that Hendricks' unfortunate history was all a fabrication").  Long's ability to cross-examine any witness establishes the absence of a due process violation.  *Williams*, 384 F.3d at 569.

---

[10] Dills died before trial, so his preliminary hearing testimony was read at trial.  *In re Long*, 10 Cal.5th at 771; ER-143.  Long cross-examined Dills during the preliminary hearing.  ER-72-125.

### 2. Long Failed To Meet Her Burden To Show Clearly Established Law

As a general proposition, it was clearly established in 2003 that bad faith fabrication of evidence violates the Constitution. *Devereaux*, 263 F.3d at 1074-75.

But this general constitutional principle is insufficient for the clearly established analysis. *Kisela*, 138 S. Ct. at 1153. Long must cite controlling precedent squarely govern[ing] the specific facts" of this case, such that it "placed the constitutionality of the officer's conduct 'beyond debate.'" *Id.; Wesby*, 138 S. Ct. at 589.

As already explained, Long never alleges Weeks or Glenn themselves fabricated evidence. Rather, Long's claim is that both coerced witnesses into testifying falsely. Long accordingly had to identify precedent existing in 2003 establishing what Weeks or Glenn did was so coercive or abusive that *all reasonable officers* would have known it could yield fabricated testimony. *Ventura*, 978 F.3d at 1091; *see Gill v. City of Milwaukee*, 850 F.3d 335, 341 (7th Cir. 2017) ("Whether interrogation tactics are unconstitutionally

coercive is an inquiry that depends on the specific facts and circumstances present in a particular case.... The right 'to be free from coercive interrogation' is highly generalized. Therefore, it cannot be the basis for defeating a qualified immunity defense, unless there is closely analogous precedent that is 'particularized' to the facts of the instant case.").

Regarding Glenn, Long cannot meet her burden because she never alleges what he did to any witness that was coercive. Without knowing what Glenn did, it is impossible to conclude the unconstitutionality of Glenn's conduct was "beyond debate" in 2003. *Wesby*, 138 S. Ct. at 589.

Regarding Weeks, Long must identify precedent existing in 2003 holding the threatening of witnesses with prosecution is so coercive or abusive that all reasonable officers would or should know it would yield false information. She did not.

Long cited the following pre-2003 cases: *Pyle v. State*, 317 U.S. 213 (1942); *Napue v. Illinois*, 360 U.S. 264 (1959); and *Devereaux*, 263 F.3d 1070.  ECF Doc. 83, p. 13.  None help Long.

*Devereaux* does not help Long because the Court found "aggressive questioning of a child" changing the child's statement neither coercive nor abusive.  263 F.3d at 1076-77. *Pyle* does not help Long because it was a habeas case where the Supreme Court remanded the case for examination of petitioner's fabricated evidence claim without holding any interviewing technique improper.  317 U.S. at 214-16. *Napue* is likewise unhelpful because it involved a prosecutor's failure to correct known false witness testimony. 360 U.S. at 268-69.

## G. Qualified Immunity Bars Long's Fourteenth And Fourth Amendment Claims Against Anderson, Weeks, Newman, and Bloomfield For Suppressing Evidence

### 1. Long Fails To Allege A Plausible Claim

Under *Brady*, "suppression … of evidence favorable to an accused upon request violates due process where the

evidence is material either to guilt or punishment."  373 U.S. at 87.  *Giglio v. United States* extended *Brady* to impeachment evidence.  405 U.S. 150 (1972).

"The elements of a civil *Brady/Giglio* claim against a police officer are: (1) the officer suppressed evidence … favorable to the accused …, (2) the suppression harmed the accused, and (3) the officer 'acted with deliberate indifference to or reckless disregard for an accused's rights or for the truth in withholding evidence from prosecutors.'"  *Mellen v. Winn*, 900 F.3d 1085, 1096 (9th Cir. 2018) (citation omitted).

Suppressed evidence is only "favorable" when it is exculpatory or impeaching.  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  "To determine whether prejudice exists" from the suppression of "favorable" evidence, a court "look[s] to the materiality of the suppressed evidence."  *Jackson v. Brown*, 513 F.3d 1057, 1071 (9th Cir. 2008).

"Evidence is material within the meaning of *Brady* when there is a reasonable probability that, had the evidence

been disclosed, the result of the proceeding would have been different." *Turner v. United States*, 137 S. Ct. 1885, 1893 (2017) (simplified).

"A reasonable probability of a different result is one in which the suppressed evidence undermines confidence in the outcome of the trial." *Turner*, 137 S. Ct. at 1893 (simplified); *Hooper v. Shinn*, 985 F.3d 594, 620 (9th Cir. 2021) ("A *Brady* violation occurs when the undisclosed favorable evidence 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'"). But "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109-10 (1976).

Deliberate indifference is a "conscious or reckless disregard of the consequence of one's acts or omissions." *Tatum v. Moody*, 768 F.3d 806, 821 (9th Cir. 2014). "It entails something more than negligence but is satisfied by

something less than acts or omissions for the very purpose of causing harm or without knowledge that harm will result." *Id.*

Long's claims against Anderson, Weeks, and Bloomfield fail for several reasons.

Long alleges Anderson, Weeks, and Bloomfield suppressed evidence indicating they thought witnesses were lying and "doubted their alibis." ER-43 ¶¶ 42, 46. Long also alleges Weeks suppressed that he "wouldn't be surprised if" one of the witnesses "was involved in the murder." ER-43 ¶43.

None of that is *Brady* material; it is neither exculpatory nor impeaching. Moreover, *Brady* does not require disclosing beliefs or opinions about witness credibility. *Morris v. Ylst*, 447 F.3d 735, 742 (9th Cir. 2006) (*Brady* does not require disclosing "strategies, legal theories, or impressions of the evidence.").

Even more, *Brady* does not require disclosure of inadmissible evidence unless it is impeachment evidence.

*United States v. Olsen*, 704 F.3d 1172, 1183-84 (9th Cir. 2013).  And an officer's opinion on witness credibility is not impeachment evidence and is inadmissible.  *United States v. Sanchez*, 176 F.3d 1214, 1220 (9th Cir. 1999).  Likewise inadmissible is an officer's speculation about a witness's possible involvement in a crime.  *See* Fed. R. Evid. 701.

Long further alleges Anderson and Weeks deprived her of impeachment evidence by suppressing Lovejoy's prior lies about vandalizing Conde's truck.  ER-43 ¶¶ 44, 45.

Long's allegation is provably false.  Long concedes Lovejoy admitted to the vandalism at trial. ER-43 ¶ 44; *see* ER-189-190.  And Lovejoy's prior lies to the police were not suppressed.  *In re Long*, 10 Cal.5th at 770 ("In a police interview, Lovejoy said she had a great relationship with Conde until the last six months, when he moved in with Long.  *Lovejoy admitted that she lied to the police* when they visited her house to investigate the vandalism of Conde's truck.") (emphasis added).

Ignoring all that, Lovejoy was impeached during trial. ER-199-209; *see also* ER-170-178. "Cumulative impeachment evidence is generally not material because the marginal effect of additional impeachment is relatively small and unlikely to result in a different outcome." *United States v. Emor*, 573 F.3d 778, 782 (D.C. Cir. 2009); *United States v. Vgeri*, 51 F.3d 876, 880 (9th Cir. 1995) (undisclosed impeachment evidence is immaterial and cumulative when the witness is already sufficiently impeached); *Ortiz v. Stewart*, 149 F.3d 923, 936 (9th Cir. 1998) (same).

Even assuming suppression of Lovejoy's lies to police about vandalizing Conde's truck, the evidence is not material under *Brady*. *See United States v. Oruche*, 484 F.3d 590, 599 (D.C. Cir. 2007) (failure to disclose witness's admission she lied to police was not *Brady* violation because the witness was "thoroughly impeached" at trial). That additional piece of impeachment evidence certainly would not have resulted in Long's acquittal. *Vgeri*, 51 F.3d at 880 ("Withheld impeachment evidence must be material such

that 'if disclosed and used effectively ... it may [have made] the difference between conviction and acquittal.'").

Long additionally alleges Weeks, Anderson, and Bloomfield suppressed differing versions of Bugarski's alibi thus precluding her from using "inconsistent early accounts of his alibi" to impeach Bugarski at trial. ER-44 ¶¶ 47-49. Long, however, alleges no facts regarding differing alibis. Just saying differing alibis exist without any factual support is insufficient. *Iqbal*, 556 U.S. at 678.

Long alleges Bloomfield, Newman, Anderson, and Weeks suppressed evidence of Lovejoy's interview prior to her polygraph that "would have showed that police knew Lovejoy's alibi was implausible, that she had the opportunity to commit the murder, and that she lacked credibility." ER-44 ¶ 50.

This allegation makes little sense given an officer's opinion about a witness's credibility or potential involvement in a crime is not material evidence under *Brady*. *Morris*, 447 F.3d at 742.

Assuming Long meant to allege she could have used Lovejoy's prior interview to impeach her, Long had the interview and used it to impeach Lovejoy at trial.  ER-191-199.

Moreover, Long alleges no facts establishing prejudice from the suppressed evidence.  That the evidence "might have helped … or might have affected the outcome of the trial" is insufficient.  *Agurs*, 427 U.S. at 109-10.

Finally, Long makes no non-conclusory allegations suggesting Anderson, Weeks, or Bloomfield "'acted with deliberate indifference to or reckless disregard ... in withholding evidence from prosecutors.'"  *Mellen*, 900 F.3d at 1096.

## 2.   Long Failed To Meet Her Burden To Show Clearly Established Law

The issue is "whether the evidence allegedly withheld [in this] case was clearly established to be *Brady* evidence" such that "every reasonable police officer would have understood the specific evidence allegedly withheld was

clearly subject to *Brady's* disclosure requirements." *Carrillo*, 798 F.3d at 1219, 1223.

Long cited no precedent existing in 2003 holding *Brady* required disclosure of the evidence she alleges Anderson, Weeks, or Bloomfield suppressed.

Long cited these pre-2003 cases: *United States v. Bagley*, 473 U.S. 667 (1985); *Kyles v. Whitley*, 514 U.S. 419 (1995); *Strickler*, 527 U.S. 263; *United States v. Butler*, 567 F.2d 885 (9th Cir. 1978); and *Singh v. Prunty*, 14 F.3d 1157 (9th Cir. 1998). ECF Doc. 84, pp. 26-27.

*Bagley* involved failing to disclose witness payments. 473 U.S. at 671-72. *Kyles* involved prior statements from eyewitnesses impeaching their identification of the defendant. 473 U.S. at 441-54. *Strickler* involved documents created by an eyewitness, and notes from interviews with her where she conceded a poor memory. 527 U.S. at 266, 273-75. *Butler* involved promises to dismiss charges against a witness in exchange for favorable testimony. 567 F.2d at

886-88. *Singh* involved favorable treatment to witnesses in unrelated criminal cases. 142 F.3d at 1159 & n.3, 1161-62.

None of these cases defeat qualified immunity because none deal with the "specific evidence allegedly withheld" by Anderson, Weeks, or Bloomfield. *Carrillo*, 798 F.3d at 1223. Neither payments, favorable treatment nor eyewitness identification are at issue here.

Long cited two post-2003 cases: *Carrillo* and *Tennison v. City & County of San Francisco*, 570 F.3d 1078 (9th Cir. 2009). ECF Doc. 84, pp. 26-27. Neither help her.

Decided in 2015, *Carrillo* discussed the state of the law in 1984 and 1991 and found it clearly established in 1984 and 1991 that *Brady* required disclosing evidence undermining eyewitness identification of a defendant. 798 F.3d at 1226-28. *Carrillo* also found it clearly established in 1984 that *Brady* required disclosing evidence that "another man who resembled the eyewitness's description of the killer had previously tried to kill the victim." *Id.* at 1226. Again, eyewitness identification evidence is not at issue here.

*Tennison* decided in 2009, involved suppressing a confession. 570 F.3d at 1093-94.  No confession is at issue here.

## CONCLUSION

This district court erred in denying the Officers qualified immunity.  This Court should reverse.

Respectfully Submitted,

Dated: May 30, 2003          Dean Gazzo Roistacher LLP


By:  */s/ Lee H. Roistacher*
Lee H. Roistacher
Mitchell D. Dean
Attorneys for
Defendants/Appellants
Thomas Weeks; Ronald
Anderson; Daniel
Bloomfield; Robert
Newman; Daniel Verdugo;
Jeffrey Glenn

# CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. APP. 32(A)(7)(C) AND CIRCUIT RULE 32-1 FOR CASE NO. 23-55004

Pursuant to Federal Rule of Appellate Procedure 32 (a)(7)(C) and Ninth Circuit Rule 32-1, I certify that Appellants' Opening Brief is proportionately spaced, has a typeface of 14 points or more and contains 13,776 words.

Dated: May 30, 2003        Dean Gazzo Roistacher LLP


By: */s/ Lee H. Roistacher*
Lee H. Roistacher
Mitchell D. Dean
Attorneys for
Defendants/Appellants
Thomas Weeks; Ronald
Anderson; Daniel
Bloomfield; Robert
Newman; Daniel Verdugo;
Jeffrey Glenn

# STATEMENT OF RELATED CASES UNDER NINTH CIRCUIT RULE 28-2.6

Defendants/Appellants Thomas Weeks; Ronald Anderson; Daniel Bloomfield; Robert Newman; Daniel Verdugo; Jeffrey Glenn are not aware of any related case currently pending in the Ninth Circuit Court of Appeals.

Dated: May 30, 2003          Dean Gazzo Roistacher LLP

By:  */s/ Lee H. Roistacher*
     Lee H. Roistacher
     Mitchell D. Dean
     Attorneys for
     Defendants/Appellants
     Thomas Weeks; Ronald
     Anderson; Daniel
     Bloomfield; Robert
     Newman; Daniel Verdugo;
     Jeffrey Glenn

## CERTIFICATE OF SERVICE

Re:   *Kimberly Long v. Thomas Weeks, et al.*
      United States Court of Appeals for the Ninth Circuit
      Case No. 23-55004
      USDC Case No. 5:21-cv-02008-FWS-E

I, Maria E. Kilcrease, declare:

That I am and was at the time of service of the papers herein referred to, over the age of 18 years, and not a party to the action; and I am employed in the County of San Diego, California. My business address is 440 Stevens Avenue, Suite 100, Solana Beach, California 92075 and my electronic address is mkilcrease@deangazzo.com.

On May 30, 2023, I served the following documents described as:

## APPELLANTS' OPENING BRIEF

on all interested parties in this action addressed as follows:

> Lauren Carbajal
> Megan Pierce
> Steven Art,
> Loevy & Loevy
> 311 N. Aberdeen St., 3rd Fl.
> Chicago, IL 60607
> Tel: (312) 243-5900
> E-mail: carbajal@loevy.com
>           steve@loevy.com

Elizabeth Wang
Loevy & Loevy
2060 Broadway, Ste. 460
Boulder, CO 80302
Tel: (720) 328-5642
E-mail: elizabethw@loevy.com

Michael D. Seplow
Paul Hoffman
Schonbrun Seplow Harris
Hoffman & Zeldes LLP
9415 Culver Boulevard, #115
Culver City, CA 90232
Tel: (310) 396-0731
E-mail: mseplow@sshhzlaw.com
        hoffpaul@aol.com

Jan Stiglitz
Law Office of Jan Stiglitz
14462 Garden Tr.
San Diego, CA 92127
Tel: (619) 807-5890
E-mail: js@cwsl.edu

**Attorneys for Appellee**

John D. Higginbotham
Neil D. Okazaki
Dean Derleth, City Attorney
City Attorney's Office
City of Corona
400 S. Vicentia Ave., 3rd Floor
Corona, CA 92882
Tel,: (951) 279-3506
E-mail: john.higginbotham@coronaca.gov
        neil.okazaki@coronaca.gov

**Attorneys for Appellants, City of Corona, Thomas Weeks, Ronald Anderson, Daniel Bloomfield, Robert Newman, Daniel Verdugo and Jeffrey Glenn**

X  BY ELECTRONIC SERVICE: On the date stated above, I served the documents described above on designated recipients via CM/ECF.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on May 30, 2023, at Solana Beach, California.

*Maria E. Kilcrease*

Maria E. Kilcrease, declarant

# EXHIBIT 2

No. 23-55004

# IN THE UNITED STATES COURT OF APPEAL
# FOR THE NINTH CIRCUIT

_____

KIMBERLY LONG,
*Plaintiff-Appellee,*

vs.

THOMAS WEEKS, RONALD ANDERSON, DANIEL
BLOOMFIELD, ROBERT NEWMAN, DANIEL VERDUGO,
JEFFREY GLENN,
*Defendants/Appellants.*

_____

On Appeal from the United States District Court for the
Central District of California
Case No. 5:21-cv-02008-FWS-E
Judge: Hon. Fred W. Slaughter

_____

## APPELLANTS' REPLY BRIEF

_____

*Lee H. Roistacher, Esq.
(SBN 179619)
Mitchell D. Dean, Esq.
(SBN 128926)
Dean Gazzo Roistacher LLP
440 Stevens Avenue, Suite 100
Solana Beach, CA 92075
Tel.: (858) 380-4683
Fax: (858) 492-0486
E-mail: lroistacher@deangazzo.com
        mdean@deangazzo.com

John D. Higginbotham (SBN 204179)
Neil D. Okazaki (SBN 201367)
Dean Derleth, City Attorney
City Attorney's Office
City of Corona
400 S. Vicentia Ave., 3rd Floor
Corona, CA 92882
Tel: (951) 279-3506
E-mail: john.higginbotham@coronaca.gov
        neil.okazaki@coronaca.gov

1

# TABLE OF CONTENTS

INTRODUCTION...........................................................12

LONG'S JURISDICTIONAL ARGUMENTS ARE
MERITLESS...................................................14

A.    The Appeal Is Not Moot.......................................14

      1.    Relevant Factual Background.........................15

      2.    Analysis.......................................................18

            a.    Absence Of District Court Jurisdiction.....18

            b.    Long Cannot Strategically Moot The
                  Officers' Appeal With Her Post-Appeal
                  Amended Complaint.............................20

            c.    Finding The Officers' Appeal Moot Thwarts
                  The Purpose Of Allowing Immediate
                  Appeals Of Qualified Immunity Denials...26

B.    This Court Has Jurisdiction Over Long's So-Called
          "Fact-Based Challenges".......................................27

C.    The Officers Forfeit Nothing................................30

LONG FAILS TO MEET HER BURDEN OF
ESTABLISHING THE OFFICERS ARE NOT ENTITLED
TO QUALIFIED IMMUNITY.......................................35

A.    Section 1983 Conspiracy Claim............................35

      1.    No Plausible Conspiracy Claim Because It Is
            Barred By The Intracorporate Conspiracy
            Doctrine.....................................................35

      2.      Long Fails To Show Clearly Established Law…38

B.      Section 1983 Failure To Intervene Claim………………40

      1.      Long Fails To Allege A Plausible Section 1983 Failure To Intervene Claim…………………………40

      2.      Long Fails To Show Clearly Established Law…42

C.      Long's *Brady* Claims - Failure To Show Clearly Established Law…………………………………………46

D.      Long's Fabricated Evidence Claims - Failure To Show Clearly Established Law…………………………50

E.      Long's Collection And Preservation Of Evidence Claims - Failure To Show Clearly Established Law…52

CONCLUSION………………………………………………………55

CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. APP. 32(A)(7)(C) AND CIRCUIT RULE 32-1 FOR CASE NO. 23-55004………………………………………57

CERTIFICATE OF SERVICE…………………………………58

# TABLE OF AUTHORITIES

## Cases

*Alicia St. v. Leyshock*
　　41 F.4th 987 (8th Cir. 2022)............................39, 40

*Ashcroft v. al-Kidd*
　　563 U.S. 731 (2011)..............................................12

*Ashcroft v. Iqbal*
　　556 U.S. 662 (2009)...............................…..………...28

*Avery v. City of Milwaukee*
　　847 F.3d 433 (7th Cir. 2017)................................52

*Bailey v. Rae*
　　339 F.3d 1107 (9th Cir. 2003)................................48

*Banks v. Dretke*
　　540 U.S. 668 (2004)..............................................51

*Benningfield v. City of Houston*
　　157 F.3d 369 (5th Cir. 1998).................................38

*Buschi v. Kirven*
　　775 F.2d 1240 (4th Cir. 1985)................................38

*Caldwell v. City & County of San Francisco*
　　889 F.3d 1105 (9th Cir. 2018)................................51

*Carillo v. County of Los Angeles*
　　798 F.3d 1210 (9th Cir. 2015)…….....……………*Passim*

*Christian Legal Soc'y Chapter of Univ. of Cal. v. Wu*
　　626 F.3d 483 (9th Cir. 2010)..................................36

*Chuman v. Wright*
        960 F.2d 104 (9th Cir. 1992)…………………………...17, 19

*City & County of San Francisco v. Sheehan*
        575 U.S. 600 (2015)…………………………………………47

*City of Escondido v. Emmons*
        139 S. Ct. 500 (2019)………………………………………43

*Coleman v. City of Peoria*
        925 F.3d 336 (7th Cir. 2019)……………………………52

*Conner v Heiman*
        672 F.3d 1126 (9th Cir. 2012)……………………………40

*Cunningham v. City of Wenatchee*
        345 F.3d 802 (9th Cir. 2003)………………………...…44, 54

*Cunningham v. Gates*
        229 F.3d 1271 (9th Cir. 2000)……………….…12, 41, 44

*David v. Kaulukukui*
        38 F.4th 792 (9th Cir. 2022)…………………….19, 32, 33

*Denby v. Engstrom*
        2021 U.S. App. LEXIS 20397
        (9th Cir. July 9, 2021)……………………………...44, 45

*Deveraux v. Abbey*
        263 F.3d 1070 (9th Cir. 2001)……………………………51

*Dickerson v. Alachua County Comm'n*
        200 F.3d 761 (11th Cir. 2000)……………………………38

*District of Columbia v. Wesby*
        138 S. Ct. 577 (2018)………………………………..*Passim*

*Falck N. Cal. Corp. v. Scott Griffith*
    *Collaborative Sols., LLC*
    25 F.4th 763 (9th Cir. 2022)…………….……….*Passim*

*Gausvik v. Perez*
    345 F.3d 813 (9th Cir. 2003)……………………...……..52

*Gill v. City of Milwaukee*
    850 F.3d 335 (7th Cir. 2017)………………………….…52

*Gonzalez v. Planned Parenthood of Los Angeles*
    759 F.3d 1112 (9th Cir. 2014)……………………………30

*Gordon v. County of Orange*
    6 F.4th 961 (9th Cir. 2021)…………………………….…43

*Grider v. City of Aubrun*
    618 F.2d 1240 (11th Cir. 2010)………….…….……35, 36

*Griggs v. Provident Consumer Disc. Co.*
    459 U.S. 56 (1982)…………………….……………….*Passim*

*Hall v. Maioho-Pohina*
    2023 U.S. App. LEXIS 10811 (9th Cir. May 3, 2023)..41

*Hamby v. Hammond*
    821 F.3d 1085 (9th Cir. 2016)………..…………*Passim*

*Hines v. Youseff*
    914 F.3d 1218 (9th Cir. 2019)……………………………45

*Hull v. Cuyahoga Valley Joint Vocational Sch. Dist.*
*Bd. of Educ.*
    926 F.2d 505 (6th Cir. 1991)………………………..38

*Hunter v. Bryant*
    502 U.S. 224 (1991)…………………….…………..21, 26

*Independent Towers v. Washington*
        350 F.3d 925 (9th Cir. 2003)...............................31, 36

*Isturiz v. Garland*
        860 F. App'x 489 (9th Cir. 2021)........................31, 36

*Jackson v. City of Cleveland*
        925 F.3d 793 (6th Cir. 2019)............................35, 36

*Johnson v. 3M Co.*
        55 F.4th 1304 (11th Cir. 2022)..........................14, 15

*Keates v. Koile*
        883 F.3d 1228 (9th Cir. 2018)...........................32, 33

*Khoja v. Orexigen Therapeutics, Inc.*
        899 F.3d 988 (9th Cir. 2018)..................................29

*Kirkpatrick v. County of Washoe*
        843 F.3d 784 (9th Cir. 2016)..................................48

*Kisela v. Hughes*
        138 S. Ct. 1148 (2018)........................................51

*Kramer v. Cullinan*
        878 F.3d 1156 (9th Cir. 2018)................................46

*Kyles v. Whitley*
        514 U.S. 419 (1995).......................................47, 48

*Lane v. Franks*
        573 U.S. 228 (2014)...........................................46

*Lobato v. Las Vegas Metro. Police Dep't*
        No. 22-16440, 2023 U.S. App. LEXIS 26946
        (9th Cir. Oct. 11, 2023) (unpub.)............................39

*Mandel v. Bradley*
    432 U.S. 173 (1977)................................................30

*May v. Sheahan*
    226 F.3d 876 (7th Cir. 2000)...........................*Passim*

*Mellen v. Winn*
    900 F.3d 1085 (9th Cir. 2018)...........................48, 49

*Mendocino Envtl. Ctr. v. Mendocino County*
    192 F.3d 1283 (9th Cir. 1999)................................38

*Miller and Karunyan v. United States*
    578 F. App'x 708 (9th Cir. 2014).........................53, 54

*Miller v. Vasquez*
    868 F.2d 1116 (9th Cir. 1989)...........................53, 54

*Mitchel v. Gen. Elec. Co.*
    689 F.2d 877 (9th Cir. 1982)................................13

*Mitchell v. Forsyth*
    472 U.S. 511 (1985).....................................*Passim*

*Mohamed Sabra v. Maricopa County Community College Dist.*
    44 F.4th 867 (9th Cir. 2022)............................44, 45

*Monell v. Dep't of Soc. Servs.*
    436 U.S. 658 (1978).....................................*Passim*

*Napue v. Illinois*
    360 U.S. 264 (1959).........................................51

*NASD Dispute Resolution, Inc. v. Judicial Council*
    488 F.3d 1065 (9th Cir. 2007)...............................18

*Padgett v. Wright*
     587 F.3d 983 (9th Cir. 2009)……………………………..…19

*Penaloza v. City of Rialto*
     836 F. App'x 547 (9th Cir. 2020)…………………………..43

*Pyle v. Kansas*
     317 U.S. 213 (1942)…………………………………………51

*Ramirez v. Butte-Silver Bow Cty.*
     298 F.3d 1022 (9th Cir. 2002)…………………………….44

*Robbins v. Meecham*
     60 F.3d 1436 (9th Cir. 1995)………………….....44, 45, 46

*Rodarte v. Gutierrez*
     2023 U.S. App. LEXIS 185 (9th Cir. Jan. 5, 2023)…...51

*Rosales-Martinez v. Palmer*
     753 F.3d 890 (9th Cir. 2014)……………………………..30

*Sakamoto v. Duty Free Shoppers, Ltd.*
     764 F.2d 1285 (9th Cir. 1985)…………………………….37

*Saucier v. Katz*
     533 U.S. 194 (2001)…………………………....19, 20, 33

*Sharp v. County of Orange*
     871 F.3d 901 (9th Cir. 2017)……………………………..51

*Sheilanee Sen v. City of Los Angeles*
     2022 U.S. Dist. LEXIS 114487
     (C.D. Cal. Apr. 20, 2022)……………………………….43

*Skinner v. Switzer*
     562 U.S. 521 (2011)…………………………………..30, 31

*Sprewell v. Golden State Warriors*
    266 F.3d 979 (9th Cir. 2001)...............................29

*Taylor v. Barkes*
    575 U.S. 822 (2015)...........................................43

*Tennison v. City & County of San Francisco*
    570 F.3d 1078 (9th Cir. 2009)...........................48

*Tobias v. Artega*
    996 F.3d 571 (9th Cir. 2021)..............................44

*Torres v. City of St. Louis*
    39 F.4th 494 (8th Cir. 2022)..............................40

*Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen*
    558 U.S. 67 (2009)............................................19

*United States v. Koon*
    34 F.3d 1416 (9th Cir. 1994).............................44

*United States v. Zaragoza-Moreira*
    780 F.3d 971 (9th Cir. 2015).............................55

*Walker v. Fred Meyer, Inc.*
    953 F.3d 1082 (9th Cir. 2020)...........................29

*West v. City of Caldwell*
    931 F.3d 978 (9th Cir. 2019)..............................43

*Wooten v. Roach*
    964 F.3d 395 (5th Cir. 2020)......................*Passim*

*Wright v. Ill. Dep't of Children & Family Servs.*
    40 F.3d 1492 (7th Cir. 1994).............................38

*Zaragosa-Solis v. Gutierrez*
        2023 U.S. App. LEXIS 22035
        (9th Cir. Aug. 22, 2023)…………………………………..22

**Statutes**

42 U.S.C. § 1983……………………………………..……..…*Passim*

### INTRODUCTION

The issue in this appeal is whether Kimberly Long's seven distinct claims for constitutional violations against six individual defendants ("Officers") asserted in her four 42 U.S.C. § 1983 claims plausibly alleged claims against each officer and, if so, was there clearly established law in 2003 notifying all reasonable officers that the specific conduct Long alleges against each officer was unconstitutional in the factual context of this case. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *Cunningham v. Gates*, 229 F.3d 1271, 1287 (9th Cir. 2000) (requiring "individualized" analysis).

Long does not want this Court to reach the merits. Pages and pages of her brief argue flawed jurisdictional and forfeiture challenges.

This Court's jurisdiction is secure, and no forfeiture exists.

The Officers spent considerable time in their opening brief on the "first prong" of the qualified immunity analysis explaining why Long's myriad claims were insufficiently

plead.  Long disagrees.  The Officers' arguments are not reiterated unless important to show what Long ignores in her briefing.

On the "second prong" of the qualified immunity analysis, Long fails to meet her burden of showing controlling precedent existing in 2003 clearly establishing the unconstitutionality of each officers' alleged conduct.  Her reliance on broad and general propositions of constitutional law divorced from the Officers' actual conduct in the circumstances presented to each is patently insufficient.[1]

---

[1] Long's brief is deficient. Sections V-VII go on for 10 pages making factual statements with record citations.  But, after that, Long continuously makes factual assertions without record citations most often referring to, for example, the four pages of text in "Statement V(C) *supra*." Answering Brief (AB), pp. 12-15, 38.  By the Officers' count, Long does this *over 40 times*.  Long's violation of Circuit Rule 28-2.8, which requires excerpt of record citations for all factual assertions anywhere in the brief, complicates the Officers' reply and this Court's analysis.  *See Mitchel v. Gen. Elec. Co.*, 689 F.2d 877, 879 (9th Cir. 1982). This Court should disregard all factual assertions unadorned by a record citation. *See* Cir. R. 28-1(a) ("Briefs not complying with FRAP and these rules may be stricken by the Court.").

# LONG'S JURISDICTIONAL ARGUMENTS ARE MERITLESS

## A. The Appeal Is Not Moot

Relying on *Falck N. Cal. Corp. v. Scott Griffith Collaborative Sols., LLC*, 25 F.4th 763 (9th Cir. 2022), Long wrongly argues she mooted the Officers' pending appeal by filing her second amended complaint.

*Falck* is inapplicable because it involved neither qualified immunity nor an amended complaint filed after a notice of appeal. Long ignores these dispositive factual differences.

This Court has not addressed the mootness issue presented here. But the Fifth and Seventh Circuits have, and both held the filing of an amended complaint after a notice of appeal challenging denial of an immunity does not moot the appeal; the amended complaint is a nullity while the appeal is pending because the appeal divests the district court of jurisdiction over issues raised by the appeal. *May v. Sheahan*, 226 F.3d 876, 878-81 (7th Cir. 2000); *Wooten v. Roach*, 964 F.3d 395, 400-04 (5th Cir. 2020); *see also Johnson*

*v. 3M Co.*, 55 F.4th 1304, 1309 (11th Cir. 2022) ("[W]e have held that if a proposed amended complaint would 'alter[] the status of the case' on interlocutory appeal, the district court lacks jurisdiction to allow the plaintiffs to file it.").

Because Long previously raised this issue in a motion to dismiss this Court denied without prejudice, Long knew about *May* and *Wooten* because the Officers discussed the cases in opposition. *See* Ninth Cir. Docs. 12-15. Considering Long wants this Court to create a circuit split, Long should have addressed them.

Nonetheless, this Court should follow *May* and *Wooten*.

## 1. Relevant Factual Background

Long's first amended complaint alleged four claims under section 1983 against the Officers; a section 1983 municipal liability claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) against the City of Corona, and various state law claims against the Officers and the City. ER-34-70.

The Officers moved to dismiss Long's four section 1983 claims arguing qualified immunity, the City moved to

dismiss Long's *Monell* claim, and both the Officers and the City moved to dismiss Long's state law claims. ECF Docs. 70-74.

On December 27, 2022, the district court granted in part and denied in part the motions to dismiss. ER-4-26. The district court denied the Officers qualified immunity on Long's section 1983 claims but granted the City's motion to dismiss Long's *Monell* claim with leave to amend. *Id.* The district court also dismissed with prejudice three of Long's previously dismissed state law claims but denied the motion to dismiss Long's other state law claims. *Id.*

On January 4, 2023, the Officers timely appealed the December 27, 2022 order denying qualified immunity on Long's four section 1983 claims. ECF Doc. 104.

On January 23, 2023, defendants moved to stay the entire action because the appeal divested the district court of jurisdiction over Long's section 1983 claims, and the district court should exercise its discretion to stay the *Monell* and

state law claims pending this appeal's resolution. ECF Doc. 106.

The following day, Long filed a motion to deem the Officers' appeal frivolous under *Chuman v. Wright*, 960 F.2d 104 (9th Cir. 1992). ECF Doc. 107.

On January 26, 2023, Long filed her second amended complaint adding allegations to her *Monell* claim. *See* ECF Doc. 108. However, Long also (as conceded) added allegations expanding the scope of her section 1983 claims against the Officers that are the subject of this appeal. *Id.* Long also included the three state law claims the district court twice dismissed with prejudice. *Id.*

On February 9, 2023, the Officers and the City moved to dismiss the claims still within the district court's jurisdiction: the state law claims and the *Monell* claim. ECF Doc. 112. The Officers specifically noted Long's expansion of her section 1983 claims exceeded the district court's leave to amend, as well as the absence of district court jurisdiction over the section 1983 claims on appeal. *Id.*, p. 8 n.2.

After finding the Officers appeal not frivolous, the district court stayed the action pending resolution of this appeal.  ECF Doc. 121.

## 2.  Analysis

A case is not moot if "the appellate court can give the appellant any effective relief in the event that it decides the matter on the merits in his favor."  *NASD Dispute Resolution, Inc. v. Judicial Council*, 488 F.3d 1065, 1068 (9th Cir. 2007).

The Officers' appeal is not moot.  This Court can give the Officers effective relief because Long's filing of her second amended complaint is a nullity regarding her section 1983 claims on appeal.

## a.  Absence Of District Court Jurisdiction

Denial of qualified immunity is immediately appealable.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

"The filing of a notice of appeal is an event of jurisdictional significance - it confers jurisdiction on the court of appeals and divests the district court of its control

over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). "[A] federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously." *Id.*

These rules apply to interlocutory appeals from denials of qualified immunity. *Chuman*, 960 F.2d at 105; *Padgett v. Wright*, 587 F.3d 983, 985 (9th Cir. 2009) ("a pretrial appeal of an order denying qualified immunity normally divests the district court of jurisdiction to proceed with trial"). The jurisdictional impact of a notice of appeal cannot be waived. *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen*, 558 U.S. 67, 81 (2009).

A notice of appeal divests the district court of jurisdiction to proceed on appealed section 1983 claims "'because qualified immunity is immunity from suit, not just a defense to liability, and the immunity is effectively lost if a case is erroneously permitted to go to trial.'" *David v. Kaulukukui*, 38 F.4th 792, 799 (9th Cir. 2022); *see Saucier v.*

19

*Katz*, 533 U.S. 194, 200 (2001) (qualified immunity is "'an entitlement not to stand trial or face the other burdens of litigation'"); *May*, 226 F.3d at 880 ("[T]he Supreme Court has made clear that a *Forsyth* appeal implicates more than just a public official's right to avoid a trial, it also protects a public official from burdensome pretrial proceedings, including, most notably, discovery.")

### b. Long Cannot Strategically Moot The Officers' Appeal With Her Post-Appeal Amended Complaint

*Falck* does not compel finding the Officers' appeal moot.

In *Falck*, the district court denied the defendant's state law based anti-SLAPP motion challenging the plaintiff's first amended complaint. 25 F.4th at 765. The plaintiff filed a second amended complaint, the defendant moved to dismiss that complaint, and the defendant thereafter appealed from the order denying the anti-SLAPP motion directed at the first amended complaint. *Id.*

Under that scenario, this Court found the second amended complaint superseded the first amended complaint and mooted the defendant's appeal because the first amended complaint was no longer the operative pleading, and no effective relief could be afforded from the order on the first amended complaint. *Id.*

*Falck* is materially different from this case.

First, *Falck* did not involve an interlocutory appeal from a qualified immunity denial. Denials of qualified immunity raise concerns much different than denials of a state law anti-SLAPP motion. Indeed, the Supreme Court has repeatedly emphasized the need for immediate and early review of denials of qualified immunity. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation."); *Forsyth*, 472 U.S. at 526-27 ("[T]he reasoning that underlies the immediate appealability of an order denying absolute immunity indicates to us that the denial of qualified immunity should be similarly

appealable: in each case, the district court's decision is effectively unreviewable on appeal from a final judgment.").

Second, and of jurisdictional importance, the notice of appeal in *Falck* was filed *after* the second amended complaint. 25 F.4th at 765. This Court accordingly had no jurisdiction over any aspect of the case when the plaintiff filed the second amended complaint.[2]

Here, the Officers filed their appeal *before* Long filed her amended complaint which was an act of immediate "jurisdictional significance" *not* present in *Falck* when the plaintiff in that case filed the amended complaint. *Griggs*,

_____

[2] Long also cites to a recent decision from this Court, *Zaragosa-Solis v. Gutierrez*, 2023 U.S. App. LEXIS 22035 (9th Cir. Aug. 22, 2023) (unpub.). In that case, a prisoner appealed the denial of his motion for preliminary injunction and then amended the complaint forming the basis of the appeal. 2023 U.S. App. LEXIS 22035, at *1. Relying on *Falck*, the Court found the appeal moot. The Court also relied on the established proposition that the amended complaint rendered it unable to grant provisional relief on the superseded complaint. *Id.* at *1-2. This case is not compelling. The case has no precedential value, Cir. R. 36-3, and it contains insufficient factual detail to determine whether it is even persuasive. For instance, the amended complaint might have dropped the claim upon which the injunction was based.

459 U.S. at 58. Unlike in *Falck*, jurisdiction over Long's section 1983 claims rested exclusively with this Court when Long filed her amended complaint.

The absence of jurisdiction in the district court over issues involved in the qualified immunity appeal is dispositive; Long's filing of her amended complaint after the Officers' notice of appeal does not moot the appeal from the prior complaint. This is precisely the conclusion the Fifth Circuit reached in *May*, 226 F.3d 876, and the Seventh Circuit reached in *Wooten*, 964 F.3d 395.

In *May*, a district court denied portions of a qualified immunity motion to dismiss. 226 F.3d at 878. After the defendant appealed, the district court twice allowed plaintiff to file amended complaints. *Id.* at 879. Examining the impact, if any, the filing of the amended complaints had over its appellate jurisdiction, the appellate court found it did not; the amended complaint filed after a notice of appeal interferes with the appellate jurisdiction the Supreme Court

allows for qualified immunity appeals by altering the status of the issues on appeal. *Id.* at 879-81.

As *May* succinctly stated: "[T]he amended complaints [plaintiff] filed while this appeal was pending are nullities and the complaint in effect when this appeal was filed, his original Amended Complaint, is the operative document. Accordingly, this appeal is not moot, and our jurisdiction is secure." *Id.* at 881.

Such is the case here.

In *Wooten*, the defendants moved to dismiss asserting qualified immunity. 964 F.3d at 400-01. As plaintiff requested in opposition, the district court granted leave to amend and, thus, either rejected the assertions of immunity or found them moot given the anticipated amended complaint. *Id.* at 401. The defendants timely appealed, and the plaintiff then filed his second amended complaint as the district court directed adding new allegations directed at the immunity defenses. *Id.*

Answering "no" to the question of "whether the district court's acceptance of [plaintiff's] second amended complaint renders this appeal moot," the court held "[d]istrict courts lack power to alter the status of case as it rests before the Court of Appeals," and by "accepting the amended pleading, the district court thus attempted to assert jurisdiction over 'aspects of the case involved in the appeal,' which *Griggs* forbids." *Id.* at 403. "[T]he timing of the district court's grant of leave to amend" was not material; the material question was "whether the amended pleadings would affect 'the issue on appeal.'" *Id.* at 404.

"By accepting an amended pleading that altered the status of the appeal, the district court wrongfully asserted jurisdiction over aspects of the case involved in this appeal. That amended pleading therefore did not supersede the complaint at issue in this appeal, which means that this appeal is not moot." *Id.* at 404 (simplified).

Again, such is the case here.

### c. Finding The Officers' Appeal Moot Thwarts The Purpose Of Allowing Immediate Appeals Of Qualified Immunity Denials

Because qualified immunity is an immunity from suit meant to eliminate the burdens of litigation, courts must promptly resolve issues of qualified immunity to ensure those decisions do not become unreviewable on appeal from a final judgment. *Hunter*, 502 U.S. at 227; *Forsyth*, 472 U.S. at 526-27.

Resolving qualified immunity "at the earliest possible stage in litigation" often is with a motion to dismiss. *Hunter*, 502 U.S. at 227. And complaints often contain section 1983 claims subject to qualified immunity and claims that are not (e.g., *Monell* and state law claims). As occurred here, district courts often deny qualified immunity but dismiss *Monell* claims with leave to amend.

Allowing a plaintiff to strategically moot a qualified immunity appeal with an amended complaint improperly renders the district court's ruling on qualified immunity

unreviewable and exposes the defendant to unnecessary burdens of litigation.

As *May* aptly explained, allowing post-appeal alteration of allegations imposes an unacceptable burden on the defendant and denying a district court jurisdiction over an amended complaint after a qualified immunity appeal strikes an appropriate balance and is consistent with Supreme Court precedent. 226 F.3d at 880. Any other rule would result in orders denying qualified immunity motions to dismiss being effectively unreviewable because a plaintiff could continually file amended complaints after notices of appeal until somehow stopped by the district court. *Id.*

## B. This Court Has Jurisdiction Over Long's So-Called "Fact-Based Challenges"

Long argues this Court lacks jurisdiction over the Officers' appeal because they do not accept Long's allegations as true and challenge the sufficiency of them. Long is wrong.

Appellate courts have jurisdiction over appeals from denial of qualified immunity-based motions to dismiss to

27

determine whether a complaint sufficiently alleges a
constitutional violation in addition to whether the law was
clearly established because "[e]valuating the sufficiency of a
complaint is not a 'fact-based' question of law[.]'" *Ashcroft v.
Iqbal*, 556 U.S. 662, 672-75 (2009). Indeed, "whether a
particular complaint sufficiently alleges a clearly established
violation of law cannot be decided in isolation from the facts
pleaded. In that sense the sufficiency of respondent's
pleadings is both inextricably intertwined with, and directly
implicated by, the qualified-immunity defense." *Id.* at 673
(simplified).

Turning to Long's argument, it relies on two
fundamental errors.

Long's first error is believing the Officers ignore her
complaint's allegations when showing the absence of a
clearly established constitutional violation. The Opening
Brief (OB) demonstrates in painstaking detail how Long's
allegations insufficiently allege clearly established
constitutional violations. OB, at pp. 47-50, 59-69, 73-81, 83-

91, 94-101. And, within this discussion, the Officers relied on both the facts alleged and the facts missing. The latter is not, as Long wrongly argues, disputing the truth of her factual allegations.

There are a few isolated instances where the Officers use judicially noticeable material to show Long's allegations untrue, or at least inaccurate. *See* OB, pp. 90-91, 98-99. Long's second error is thinking this is improper.

Though non-conclusory factual allegations are assumed true, *Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1086 (9th Cir. 2020), a court does not turn a blind eye to contradictions established by judicially noticeable material, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999, 1102-03 (9th Cir. 2018) (relying on judicially noticeable facts does not convert motion to dismiss into summary judgment motion).

Importantly, on a motion to dismiss, judicially noticeable facts contradicting allegations *do not create a*

*factual dispute* - the presumption of truth gives way to the judicially noticeable facts. *Gonzalez v. Planned Parenthood of Los Angeles* 759 F.3d 1112, 1115 (9th Cir. 2014) ("'we need not ... accept as true allegations that contradict matters properly subject to judicial notice'").

And where, as here, the judicially noticeable material is public record of court proceedings underlying a "wrongful conviction" claim – matters not subject to reasonable dispute – taking judicial notice of the material properly provides a complete picture of the case. *Rosales-Martinez v. Palmer*, 753 F.3d 890, 894-95 (9th Cir. 2014).

## C.  The Officers Forfeit Nothing

Long's forfeiture argument is confusing.

Long asks for "summary affirmance." But "summary affirmance" involves affirming a judgment. *Mandel v. Bradley*, 432 U.S. 173, 176 (1977).  No judgment exists here.

Long also cites *Skinner v. Switzer*, 562 U.S. 521, 531 (2011) for the proposition that "[a] complaint need not plead legal theories at all."  AB, p. 34.  Apart from the seemingly

unrelated proposition, *Skinner* discusses the jurisdictional impacts of the *Rooker-Feldman* doctrine at page 531.

Long's argument is also undeveloped. *See Isturiz v. Garland*, 860 F. App'x 489, 493 (9th Cir. 2021). ("[U]ndeveloped arguments are waived and we need not address them."); *Independent Towers v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (courts cannot manufacture arguments for litigants).

Nonetheless, Long's argument makes little sense.

Long seemingly argues the Officers forfeited *all* their qualified immunity arguments by not challenging her Fourth Amendment based malicious prosecution claim, two allegations regarding suppression of evidence and one regarding fabrication of evidence.

Long's argument is factually and legally wrong.

Factually, Long's Fourth and Fourteenth Amendment claims are based on the same underlying conduct. ER-42-50.

31

That is why the Officers discuss (and challenge) those two claims together. *See* OB, pp. 21-23, 71-104. And the Officers challenge the sufficiency of all Long's factual allegations.

Legally, Long's faulty reasoning apparently comes from the following statement in *David*: "'If the operative complaint contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right, then plaintiffs are entitled to go forward with their claims.'" 38 F.4th at 799 (quoting *Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018)).

"Long seemingly believes the presence of a single clearly established unconstitutional act alleged in a count containing several other non-clearly established unconstitutional acts means that all claims within that count are completely off limits to a qualified immunity attack. Long cites no precedent establishing that rule. Even worse, Long seemingly believes a single claim asserting a clearly established constitutional violation in a multi-count complaint precludes a defendant from raising qualified

immunity to any count in the complaint. Long cites no precedent establishing that rule either.

The quoted language in *David* and *Keates* is unclear because neither expound on the meaning of it, nor applied the proposition in the decisions.

What is clear, however, is the language cannot stand for unusual proposition Long asserts.

Two examples prove the point.

A plaintiff's complaint asserts four separate section 1983 claims. One sufficiently alleges a clearly established constitutional violation. But the other three (or two, or even one) do not. Long's rule would mean a defendant could not make a qualified immunity challenge to those insufficiently plead claims. Qualified immunity-based motions to dismiss are not an "all or nothing" proposition. Such a rule makes no sense and confounds the purpose of qualified immunity – early resolution to eliminate public officials from the burden of defending unmeritorious claims. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).

Assume a single claim for Fourth Amendment violations asserts an unlawful search and excessive force during an arrest. Alleging a clearly established constitutional violation regarding the search (e.g., warrantless) would not preclude raising qualified immunity to the force claim. They are distinct constitutional claims. Success on qualified immunity would simply excise the force allegation from the Fourth Amendment claim. No rule requires a defendant to wait for summary judgment to dispose of the force claim through qualified immunity. Any different rule would mean a plaintiff could insulate herself from a qualified immunity-based motion to dismiss by alleging one general section 1983 claim with allegations implicating various constitutional provisions provided there was a single well plead allegation concerning a violation a clearly established constitutional right even if the other allegations were patently insufficient.

## LONG FAILS TO MEET HER BURDEN OF ESTABLISHING THE OFFICERS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

### A.    Section 1983 Conspiracy Claim

### 1.    No Plausible Conspiracy Claim Because It Is Barred By The Intracorporate Conspiracy Doctrine

Without precedent from the Supreme Court or this Court on the intracorporate conspiracy doctrine's application to section 1983 conspiracy claims, the Officers demonstrated the only appellate courts addressing the issue find it applies. *See Jackson v. City of Clevland*, 925 F.3d 793, 817-18 (6th Cir. 2019); *Grider v. City of Aubrun*, 618 F.2d 1240, 1261 (11th Cir. 2010).  Because the Officers believe this Court should join its sister courts, the Officers detailed *Jackson's* persuasive reasoning.  OB, pp. 62-66.

Long's arguments in response, or lack thereof, are troubling for many reasons.

First, Long cites no authority holding the intracorporate conspiracy claim inapplicable to section 1983 conspiracy claims.

Second, Long does not even try to explain why this Court should create a circuit conflict by holding differently than *Jackson* and *Grider*.

Third, Long's entire argument – relegated to a footnote – is that, in her opinion, applying the doctrine to section 1983 claims "does not make sense." AB, p. 56 n. 10. This footnoted argument devoid of authority or analysis deserves no consideration. *Isturiz*, 860 F. App'x at 493; *Indep. Towers*, 350 F.3d at 929 ("'The summary mention of an issue in a footnote, without reasoning in support of the appellant's argument, is insufficient to raise the issue on appeal.'"); *see also Christian Legal Soc'y Chapter of Univ. of Cal. v. Wu*, 626 F.3d 483, 487 (9th Cir. 2010) (refusing to "address claims that were only argued in passing, or that were bare assertions with no supporting argument") (simplified).

Fourth, Long frivolously accuses the Officers of "not addressing any of this Court's cases permitting §1983 conspiracies to proceed. OB-62-69." AB, p. 56 n. 9. Indeed, Long cites the pages where the Officers discussed this

36

Court's prior cases and explained why they do not provide

the answer or preclude this Court from applying the doctrine

(because they did not address the doctrine).  *See* OB, pp. 67-

69.  Yet Long makes no attempt to show why those cases

stand for propositions not addressed.  *See Sakamoto v. Duty*

*Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985).

Fifth, Long misstates the record in trying to remove

the Officers' conduct from the intracorpate conspiracy

doctrine by saying she alleges the Officers "conspired with

private individuals" (i.e., the witnesses Long alleges the

Officers intimidated and threatened into providing

fabricated testimony).  AB, p. 54.

Long's complaint contains no allegations of Officers

conspiring with these "private individual" witnesses.  Nor

could it (truthfully) given Long alleges the Officers forced

these witnesses through threats and intimidation to say

untruthful things, which precludes the existence of any

mutual agreement or meeting of the minds to fabricate

evidence in violation of Long's constitutional rights.  *See*

*Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999) (elements of a conspiracy).

## 2. Long Fails To Show Clearly Established Law

Long argues conspiracies to violate civil rights have long been unlawful. AB, p. 54. True or not, that general statement of the law does not come close to answering the qualified immunity question presented. *See District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018).

It has long been established that the intracorporate conspiracy doctrine precludes conspiracy liability for civil rights violations under section 1985. *Dickerson v. Alachua County Comm'n*, 200 F.3d 761, 767-68 (11th Cir. 2000); *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998); *Wright v. Ill. Dep't of Children & Family Servs.*, 40 F.3d 1492, 1508 (7th Cir. 1994); *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509-10 (6th Cir. 1991); *Buschi v. Kirven*, 775 F.2d 1240, 1252-53 (4th Cir. 1985).

Given that body of law, the question is whether clearly established law existed in 2003 putting all reasonable officers on notice that conspiracy liability could still exist under section 1983 notwithstanding the intracorporate conspiracy doctrine.

On October 11, 2023, this Court answered "no" to that question. *Lobato v. Las Vegas Metro. Police Dep't*, No. 22-16440, 2023 U.S. App. LEXIS 26946, *4 (9th Cir. Oct. 11, 2023) (unpub.).

Long certainly cites no case answering "yes" to the question. Nor does Long address any of the cases from other courts finding the law not presently clearly established. *See, e.g., Alicia St. v. Leyshock*, 41 F.4th 987, 990 (8th Cir. 2022).

Instead, Long merely argues civil rights conspiracies under section 1983 are not separate claims so qualified immunity is inapplicable if the underlying constitutional violations are clearly established. AB, p. 54. Whatever validity there is to the former proposition, and ignoring Long alleges a separate claim for section 1983 conspiracy, the

39

latter is clearly wrong. *Alicia St.*, 41 F.4th at 990 (qualified immunity bars section 1983 conspiracy claim); *Torres v. City of St. Louis*, 39 F.4th 494, 507 (8th Cir. 2022) (same).

Misleading is Long's citation to *Conner v Heiman*, 672 F.3d 1126, 1133 (9th Cir. 2012) for the proposition that "[i]f the underlying violations are clearly established, such that officers are not immune then neither are they immune from a § 1983 conspiracy claim concerning those violations." AB, p. 54. *Conner* held the exact opposite of what Long claims. 672 F.3d at 1133 ("The finding that [defendants] have qualified immunity also bars Conner's § 1983 conspiracy claim. ...[A] § 1983 conspiracy claim 'is not a means of holding state actors liable on claims from which they are otherwise immune.'").

## B. Section 1983 Failure To Intervene Claim

### 1. Long Fails To Allege A Plausible Section 1983 Failure To Intervene Claim

The Officers showed in their Opening Brief why Long failed to allege a plausible failure to intervene claim through insufficient allegations of personal conduct by each

defendant demonstrating how each failed to intervene and, importantly, how each had the opportunity to intervene to prevent the alleged constitutional violations from occurring.

Though Long disputes the insufficiency of her allegations, the Officers do not belabor the issue given the allegations are the allegations.

The Officers instead focus on Long's concession that her failure to intervene claim is based on a failure by each officer to remedy each other's *completed* constitutional violations.  AB, pp. 56-57.

Failure to intervene liability exists to prevent constitutional violations from occurring, hence the requirement for a realistic opportunity for an officer to intervene.  *Cunningham v. Gates*, 229 F.2d 1271, 1290 (9th Cir. 2000).

Long does not address this issue, nor does she address that an officer cannot intervene to prevent a completed constitutional violation. *See Hall v. Maioho-Pohina*, 2023 U.S. App. LEXIS 10811, at *4-5 (9th Cir. May 3, 2023)

(unpub.) ("Hall seeks to hold Maioho-Pohina liable for her inaction after the purported constitutional harm occurred" and "[i]t does seem difficult to prevent what has already happened.").

And none of the cases Long cites show the viability of "failure to remedy" liability, or even support expanding failure to intervene liability to cover that conduct.

## 2. Long Fails To Show Clearly Established Law

Contrary to Long's assertion, the Officers do not argue here that failure to intervene liability is limited to excessive force. AB, p. 57.

The Officers' argument here is precedent providing officers have a general obligation to intervene in constitutional violations is too broad for the qualified immunity analysis, *Wesby*, 138 S. Ct. at 589-90, and no clearly established constitutional obligation existed in 2003 to intervene in another officer's suppression of evidence, fabrication of evidence, failure to collect evidence or failure to preserve evidence. OB, pp. 50-59.

Preliminarily, qualified immunity applies because this Court's "precedent does not clearly establish when an officer has a 'realistic opportunity to intercede." *Penaloza v. City of Rialto*, 836 F. App'x 547, 549 (9th Cir. 2020); *see Sheilanee Sen v. City of Los Angeles*, 2022 U.S. Dist. LEXIS 114487, at *33-34 (C.D. Cal. Apr. 20, 2022) (granting qualified immunity based on *Penaloza*).

Notwithstanding, Long does not point to any controlling case – from the Supreme Court or this Court, *Gordon v. County of Orange*, 6 F.4th 961, 969 (9th Cir. 2021) – existing in 2003 imposing failure to intervene liability on an officer for the constitutional violations alleged here. *See West v. City of Caldwell*, 931 F.3d 978, 983 (9th Cir. 2019) (plaintiff must show a "controlling case" "that 'squarely governs the specific facts at issue'") (quoting *City of Escondido v. Emmons*, 139 S. Ct. 500, 503-04 (2019)); *see Hamby v. Hammond*, 821 F.3d 1085, 1091 (9th Cir. 2016) ("[A] plaintiff must prove that 'precedent on the books' at the time the officials acted 'would have made clear to [them] that

43

[their actions] violated the Constitution.'") (quoting *Taylor v. Barkes*, 575 U.S. 822, 827 (2015)).

In a futile effort to show clearly established law in 2003 obligating officers to intervene in other officers' evidence based constitutional violations Long cites: *Cunningham*, 229 F.3d 1271; *United States v. Koon*, 34 F.3d 1416 (9th Cir. 1994), *rev'd on other grounds*, 518 U.S. 81 (1996); *Tobias v. Artega*, 996 F.3d 571 (9th Cir. 2021); *Ramirez v. Butte-Silver Bow Cty.*, 298 F.3d 1022, 1029 (9th Cir. 2002); *Robbins v. Meecham*, 60 F.3d 1436 (9th Cir. 1995); and *Denby v. Engstrom*, 2021 U.S. App. LEXIS 20397 (9th Cir. July 9, 2021) (unpub.).

Relying on these cases, Long relies on a general duty to intervene and reasons a duty to intervene in one specific type of constitutional violation means a duty exists to intervene in all constitutional violations. Long's "overbroad proposition, 'cast at a high level of generality,' is just the sort of sweeping statement of the law that is inappropriate for assessing whether qualified immunity applies." *Mohamed*

44

*Sabra v. Maricopa County Community College Dist.*, 44 F.4th 867, 888 (9th Cir. 2022).

Other than *Robbins* and *Denby*, the Officers addressed and demonstrated at pages 51-56 of the Opening Brief why the cases Long cites are not "precedent ... clear enough that every responsible official would interpret it to establish the particular rule [Long] seeks to apply" in this case. *Wesby*, 138 S. Ct. at 590 (simplified).

The Officers do not repeat the argument here, other than to say none of Long' cases involve suppression or fabrication of evidence, or a failure to collect or preserve evidence.

*Denby* does not help Long. First, it is unpublished. *Hines v. Youseff*, 914 F.3d 1218, 1230 (9th Cir. 2019) ("'[I]t will be a rare instance in which, absent any published opinions on point or overwhelming obviousness of illegality, we can conclude that the law was clearly established on the basis of unpublished decisions only.'"). Second, issued in

2021, it involved destruction of property during a search in violation of the Fourth Amendment.

*Robbins* likewise does not help Long. *Robbins* involved failing to intervene in force violating the Eighth Amendment. 60 F.3d at 60 F.3d at 1442.

## C. Long's *Brady* Claims - Failure To Show Clearly Established Law

The Officers argued no clearly established law existed in 2003 telling these officers it violated *Brady* to withhold the evidence Long alleges the Officers withheld. *See Wesby*, 138 S. Ct. at 589-90; *Kramer v. Cullinan*, 878 F.3d 1156, 1163 (9th Cir. 2018) ("So long as existing caselaw 'did not preclude' an official from reasonably believing that his or her conduct was lawful, the official has a right to qualified immunity.") (quoting *Lane v. Franks*, 573 U.S. 228, 243 (2014)).

Curious is Long's argument that the Officers define the "clearly established" requirement "too narrowly" and it is "unnecessary [for her] to identify a case concerning suppression of the precise type of evidence at issue." More

curious, or perhaps concerning, is Long's citation to *Carillo v. County of Los Angeles*, 798 F.3d 1210 (9th Cir. 2015) as support. The case establishes the exact opposite:

> Even though it was clearly established at the time of the investigations that police officers were bound to disclose *Brady* evidence, we must next consider whether every reasonable police officer would have understood the specific evidence allegedly withheld was clearly subject to Brady's disclosure requirements.

*Id.* at 1223. *Carillo* articulated this rule because a less specific analysis conflicts with Supreme Court's demand for "specificity." *City & County of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015) ("We have repeatedly told courts— and the Ninth Circuit in particular—not to define clearly established law at a high level of generality."); *see Hamby*, 821 F.3d at 1091 ("[W]e must emphasize that the fact-specific, highly contextualized nature of the inquiry does not depend on which particular constitutional right a given plaintiff claims the officials have violated.").

Long cites the following cases, none of which help her: *Kyles v. Whitley*, 514 U.S. 419 (1995); *Carillo*, 798 F.3d

1210; *Tennison v. City & County of San Francisco*, 570 F.3d 1078 (9th Cir. 2009); *Mellen v. Winn*, 900 F.3d 1085 (9th Cir. 2018); and *Bailey v. Rae*, 339 F.3d 1107 (9th Cir. 2003).

The Officers showed at pages 102-104 of their Opening Brief why *Kyles*, *Carrillo*, and *Tennison* are insufficient to meet qualified immunity's "demanding" and "exacting" standard, *Wesby*, 138 S. Ct. at 589; *Kirkpatrick v. County of Washoe*, 843 F.3d 784, 792 (9th Cir. 2016) (en banc), and do not do it again. The Officers do note Long mischaracterizes the relevant evidence in *Tennison* as an "alternative suspect's incriminating statements." AB, p. 48. The evidence was a full-blown confession. *Tennison*, 570 F.3d at 1093-94. Nonetheless, Long does not allege suppression of an alternative suspect's incriminating statements.

Neither *Mellen* nor *Bailey* carry the day for Long.

The evidence in *Bailey* was nothing like the allegedly suppressed evidence here. The issue in *Bailey* was "whether a state prosecutor's failure to disclose therapy reports concerning a victim's mental capacity constitutes a due

process violation under *Brady*" when "[t]he state criminal
convictions at issue, for sexual abuse and sexual penetration,
require that the victim be incapable of consent due to a
mental defect." 339 F.3d at 1109. This Court concluded
reports showing the victim's ability to consent constituted
exculpatory evidence under *Brady*. *Id.* at 1116-18.

Long asserts *Mellen* held "by 1997, evidence that gave
police officer reason to believe that a key person in the
investigation was a liar" constituted *Brady* material. AB,
45. First, this Court only held it was clearly established that
impeachment evidence constituted *Brady* evidence. *Mellen*,
900 F.3d at 1103-04. Second, Long takes significant liberty
in her characterization of the evidence in *Mellen*. Long
wants the evidence to be an *officer's opinion* on a witness
credibility because that is one thing she alleges was
withheld. But it was not. The evidence withheld were
*statements by a witness* about a key prosecution witness
being a habitual liar. *Id.* at 1096, 1101. Long does not

allege any officer failing to disclose a witness statement regarding the veracity of another witness.

## D. Long's Fabricated Evidence Claims - Failure To Show Clearly Established Law

Fabrication of evidence to arrest, prosecute or convict someone is, as a general proposition, unconstitutional. But that general constitutional proposition, much like excessive force violates the Fourth Amendment, does not control the qualified immunity analysis. *Wesby*, 138 S. Ct. at 590; *Hamby*, 821 F.3d at 1091; *see, e.g., Carillo*, 798 F.3d at 1223.

Long's fabrication of evidence claim is specific and leads to its downfall.

Long does not allege an officer tampered with evidence. She does not allege an officer provided perjured testimony. Long does not allege any officer prepared a falsified report.

Long's specific claim is that two officers (Weeks and Glenn) through threats, coercion and manipulation got witnesses to say things undermining her timeline of events on the night of the murder.

Long "must" but does not "point to prior case law that articulates a constitutional rule specific enough to alert *these* [officers] *in this case* that *their particular conduct* was unlawful. *Sharp v. County of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (original emphasis).

Neither *Pyle v. Kansas*, 317 U.S. 213 (1942), *Napue v. Illinois*, 360 U.S. 264 (1959), *Banks v. Dretke*, 540 U.S. 668 (2004), *Deveraux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001), *Caldwell v. City & County of San Francisco*, 889 F.3d 1105 (9th Cir. 2018) or *Rodarte v. Gutierrez*, 2023 U.S. App. LEXIS 185 (9th Cir. Jan. 5, 2023) (unpub.), involve the so-called "fabricated evidence" or the factual situations Long alleges.  None "squarely govern[]" what is alleged here. *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018).

Not one of those cases holds that witness testimony can subject an officer to fabrication liability, even if the officer engaged in coercive interrogation techniques prior to the witness testifying.  This is, however, unsurprising because coerced testimony is not necessarily fabricated evidence.  *See*

*Gausvik v. Perez*, 345 F.3d 813, 817 (9th Cir. 2003) ("Gausvik alleges Perez used overbearing tactics in interviewing the children, which he knew would yield false information. However, such tactics do not establish a deliberate-fabrication-of-evidence claim."); *see also Coleman v. City of Peoria*, 925 F.3d 336, 346 (7th Cir. 2019); *Avery v. City of Milwaukee*, 847 F.3d 433, 439 (7th Cir. 2017).

Nor does Long cite a case holding the interrogation techniques allegedly used unconstitutional. *See Gill v. City of Milwaukee*, 850 F.3d 335, 341 (7th Cir. 2017) ("Whether interrogation tactics are unconstitutionally coercive is an inquiry that depends on the specific facts and circumstances present in a particular case. ... The right 'to be free from coercive interrogation' is highly generalized. Therefore, it cannot be the basis for defeating a qualified immunity defense, unless there is closely analogous precedent that is 'particularized' to the facts of the instant case.").

### E. Long's Collection And Preservation Of Evidence Claims - Failure To Show Clearly Established Law

Regarding Long's failure to collect evidence claim, the Supreme Court has never held there is a constitutional duty to collect evidence. This Court has held "a bad faith failure to collect potentially exculpatory evidence would violate the due process clause." *Miller v. Vasquez*, 868 F.2d 1116, 1120 (9th Cir. 1989). But this extremely generalized constitutional proposition is of no assistance in the qualified immunity analysis.

Long alleges a failure to collect blood and DNA evidence. ER-49-50 ¶ 69.

The issue is therefore whether Long points to "'precedent on the books'" in 2003 that "'would have made clear to [the officers] that [failing to collect blood and DNA evidence] violated the Constitution.'" *Hamby*, 821 F.3d at 1091.

Long does not cite that precedent. She cites two failure to collect evidence cases, *Miller* and *Karunyan v. United*

*States*, 578 F. App'x 708 (9th Cir. 2014), neither of which help her.  AB, p. 50-51.

*Miller* involved not collecting a crime victim's jacket and not photographing scratches on the defendant.  *Miller*, 868 F.2d at 1119.  *Miller* did not address swabbing a scene for blood or DNA evidence.  Neither did *Karunyan*. 578 F. App'x at 710 ("Potentially exculpatory evidence—that Karunyan immediately had returned the funds to the billing entity months earlier—was readily available to Hanover, yet he allegedly failed to collect that evidence.").

Indeed, "precedent on the books" in 2003 would have at the very least suggested to an officer the absence of a constitutional obligation to collect blood or DNA evidence. *See Cunningham v. City of Wenatchee*, 345 F.3d 802, 812 (9th Cir. 2003) (failing "to gather any physical evidence, such as bed sheets or clothing, which could have exonerated Cunningham" not a constitutional violation).

Long alleges a failure to preserve a champagne bottle and cup.  ER-49 ¶ 69.

No "'precedent on the books'" in 2003 prohibited getting rid of the bottle and cup. *Hamby*, 821 F.3d at 1091.

Long's citation to *United States v. Zaragoza-Moreira*, 780 F.3d 971 (9th Cir. 2015) does not show otherwise. In that case, the defendant was indicted for importing drugs into the United States and the government failed to preserve a video of the defendant's entry that supported a duress defense. *Id.* at 974-78. A video of the defendant potentially showing duress is much different than a random bottle and cup at a crime scene.

## CONCLUSION

The Officers believe the district court erred in how it analyzed qualified immunity and further erred in finding

qualified immunity did not preclude Long's claims. This Court should reverse.

Respectfully Submitted,

Dated: October 18, 2023     Dean Gazzo Roistacher LLP


By: */s/ Lee H. Roistacher*___
    Lee H. Roistacher
    Mitchell D. Dean
    Attorneys for
    Defendants/Appellants
    Thomas Weeks; Ronald
    Anderson; Daniel
    Bloomfield; Robert
    Newman; Daniel Verdugo;
    Jeffrey Glenn

# CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. APP. 32(A)(7)(C) AND CIRCUIT RULE 32-1 FOR CASE NO. 23-55004

Pursuant to Federal Rule of Appellate Procedure 32 (a)(7)(C) and Ninth Circuit Rule 32-1, I certify that Appellants' Reply Brief is proportionately spaced, has a typeface of 14 points or more and contains 6,977 words.

Dated: October 18, 2023    Dean Gazzo Roistacher LLP

By:  */s/ Lee H. Roistacher*____
     Lee H. Roistacher
     Mitchell D. Dean
     Attorneys for
     Defendants/Appellants
     Thomas Weeks; Ronald
     Anderson; Daniel
     Bloomfield; Robert
     Newman; Daniel Verdugo;
     Jeffrey Glenn

## CERTIFICATE OF SERVICE

Re:   *Kimberly Long v. Thomas Weeks, et al.*
      United States Court of Appeals for the Ninth Circuit
      Case No. 23-55004
      USDC Case No. 5:21-cv-02008-FWS-E

I, Maria E. Kilcrease, declare:

That I am and was at the time of service of the papers herein referred to, over the age of 18 years, and not a party to the action; and I am employed in the County of San Diego, California. My business address is 440 Stevens Avenue, Suite 100, Solana Beach, California 92075 and my electronic address is mkilcrease@deangazzo.com.

On October 18, 2023, I served the following documents described as:

### APPELLANTS' REPLY BRIEF

on all interested parties in this action addressed as follows:

        Lauren Carbajal
        Megan Pierce
        Steven Art,
        Loevy & Loevy
        311 N. Aberdeen St., 3rd Fl.
        Chicago, IL 60607
        Tel: (312) 243-5900
        E-mail: carbajal@loevy.com
                steve@loevy.com

Elizabeth Wang
Loevy & Loevy
2060 Broadway, Ste. 460
Boulder, CO 80302
Tel: (720) 328-5642
E-mail: elizabethw@loevy.com

Michael D. Seplow
Paul Hoffman
Schonbrun Seplow Harris
Hoffman & Zeldes LLP
9415 Culver Boulevard, #115
Culver City, CA 90232
Tel: (310) 396-0731
E-mail: mseplow@sshhzlaw.com
        hoffpaul@aol.com

Jan Stiglitz
Law Office of Jan Stiglitz
14462 Garden Tr.
San Diego, CA 92127
Tel: (619) 807-5890
E-mail: js@cwsl.edu

**Attorneys for Appellee**

John D. Higginbotham
Neil D. Okazaki
Dean Derleth, City Attorney
City Attorney's Office
City of Corona
400 S. Vicentia Ave., 3rd Floor
Corona, CA 92882
Tel,: (951) 279-3506
E-mail: john.higginbotham@coronaca.gov
        neil.okazaki@coronaca.gov

**Attorneys for Appellants, City of Corona, Thomas Weeks, Ronald Anderson, Daniel Bloomfield, Robert Newman, Daniel Verdugo and Jeffrey Glenn**

X      BY ELECTRONIC SERVICE: On the date stated above, I served the documents described above on designated recipients via CM/ECF.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on October 18, 2023, at Solana Beach, California.

*Maria E. Kilcrease*
Maria E. Kilcrease, declarant

60