John D. Higginbotham (SBN 204179)
Neil D. Okazaki (SBN 201367)
Dean Derleth, City Attorney
City Attorney's Office
City of Corona
400 S. Vicentia Ave., 3rd Floor
Corona, California 92882
Tel.: (951) 279-3506
E-mail: john.higginbotham@coronaca.gov
neil.okazaki@coronaca.gov

Dean Gazzo Roistacher LLP
Mitchell D. Dean, Esq. (SBN 128926)
Lee H. Roistacher, Esq. (SBN 179619)
440 Stevens Avenue, Suite 100`
Solana Beach, CA  92075
Tel.:  (858) 380-4683
E-mail: mdean@deangazzo.com
lroistacher@deangazzo.com

Attorneys for Defendants
City of Corona, Thomas Weeks,
Ronald Anderson, Daniel Bloomfield,
Robert Newman, Daniel Verdugo, and
Jeffrey Glenn

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY LONG,<br><br>        Plaintiff,<br><br>    v.<br><br>THOMAS WEEKS, RONALD ANDERSON, DANIEL BLOOMFIELD, ROBERT NEWMAN, DANIEL VERDUGO, JEFFREY GLENN, and the CITY OF CORONA,<br><br>        Defendants. | Case No. 5:21-cv-02008-FWS-E<br><br>DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY<br><br>Date:     July 11, 2024<br>Time:     10:00 p.m.<br>Room:    10D<br>Judge:    Fred W. Slaughter |

Defendants Thomas Weeks, Ronald Anderson, Daniel Bloomfield, Robert Newman, Daniel Verdugo, and Jeffrey Glenn, through their attorneys, respectfully submit this Notice of Supplemental Authority and state as follows:

On July 10, 2024 (today), the Ninth Circuit issued a published decision in *Cuevas v. City of Tulare*, No. 23-15953, --- F.4th ----, 2024 WL 3352710 (9th Cir. July 10, 2024). *Cuevas* is the latest in an already long and ever-growing string of recent Ninth Circuit opinions – several of which are discussed in Defendants' supplemental briefing – which apply qualified immunity in the highly particularized, non-generalized manner required by numerous United States Supreme Court decisions. Continuing that pattern, *Cuevas* found qualified immunity because "None of [the cases cited by plaintiff had] facts similar enough to 'clearly establish' that the officers used excessive force" *Id*. at *4-5, and the alleged constitutional violation did not fall within the 'obvious category.' *Id*. at *6.

A Westlaw copy of *Cuevas* is attached hereto for the Court's convenience.

Respectfully submitted,

Dated: July 10, 2024                    CITY ATTORNEY'S OFFICE

By: /s/ _____
JOHN D. HIGGINBOTHAM
Attorneys for Defendants
CITY OF CORONA, *et al*.

- 1 -

2024 WL 3352710
Only the Westlaw citation is currently available.
United States Court of Appeals, Ninth Circuit.

Rosa CUEVAS, Plaintiff-Appellant,
and
Letitia Tuggle, as Representative of The Estate of Quinntin Castro; Cameron Ware, Plaintiffs,
v.
CITY OF TULARE; Matt Machado, Police Chief; Ryan Garcia; Andy Garcia; Edward Puente, Officer; Daniel Bradley, Officer, Defendants-Appellees.

No. 23-15953
|
Argued and Submitted June 13, 2024 San Francisco, California
|
Filed July 10, 2024

Appeal from the United States District Court for the Eastern District of California Jennifer L. Thurston, District Judge, Presiding, D.C. No. 1:19-cv-01525-JLT-SAB

**Attorneys and Law Firms**

Michael J. Haddad (argued), Julia Sherwin, and Teresa Allen, Haddad & Sherwin LLP, Oakland, California, for Plaintiffs-Appellants.

Bruce D. Praet (argued), Ferguson Praet & Sherman APC, Santa Ana, California; for Defendants-Appellees.

Before: Ronald M. Gould, Richard C. Tallman, and Ryan D. Nelson, Circuit Judges.

**OPINION**

R. NELSON, Circuit Judge:

Quinntin Castro led police on a high-speed felony chase. Although Castro got stuck in mud, he kept trying to flee. A responding officer broke the car window to order him to stop and another officer put his police dog through the car's window. Castro responded by shooting—and killing—the dog, hitting the dog's handler in the process. The remaining officers returned fire in defense of themselves and the fallen officer, ultimately killing Castro. During the gunfight, they accidentally hit Rosa Cuevas, a passenger in the front seat, multiple times. She survived, but she was severely

injured. She sued under 🚩42 U.S.C. § 1983 and California law. The district court granted summary judgment to defendants based on an erroneous finding that Cuevas was not seized for Fourth Amendment purposes, and alternatively, that even if she were seized the officers are entitled to qualified immunity. Because we find that the officers are entitled to qualified immunity, we affirm.

I

We begin by reviewing the facts in the light most favorable to Rosa Cuevas. A few weeks after Cuevas befriended Quinntin Castro in 2018, she met up with him and his friend, Cameron Ware. They gave Ware a ride in Cuevas's car. Castro drove, Cuevas sat in the front passenger seat, and Ware sat in the back.

Officer Daniel Bradley observed their car as Castro rolled through several intersections without stopping. Officer Bradley decided not to pull him over for the first infraction, but he started a stop after Castro turned left without using a blinker and rolled through another stop sign. Officer Bradley told dispatch that two other people were with Castro.

**\*2** Rather than stopping, Castro fled, driving over several residential lawns. This was only a misdemeanor. But as officers pursued him for the next four to ten miles, he drove recklessly, resulting in multiple near collisions with other drivers. Because of this, the officers intended to perform a typical felony stop.[1] Although the police were pursuing Castro, no one had any reason to suspect either Cuevas or Ware of any wrongdoing.

[1] California Vehicular Code § 2800.2, which criminalizes driving in wanton or willful disregard for public safety while fleeing an officer, can be charged as a misdemeanor or a felony.

The chase ended after Castro got stuck in mud on the roadside. Officer Bradley's vehicle also got stuck in the mud. Soon after, K-9 Officer Ryan Garcia and Officer Edward Puente arrived with Sergeant Andy Garcia. The officers surrounded Cuevas's car as Castro kept trying to escape.[2] But the more Castro revved the engine, the more Cuevas's car sank into the mud. As this happened, Cuevas sat terrified in the front seat with her hands up, waiting for orders.

[2] The officers offer inconsistent testimony about whether Castro was in drive, which would have propelled him into a wheat field, or whether he was in reverse, which would have thrown the car into the officers.

Castro continued hitting the gas, and the officers repeatedly shouted at him to stop. The engine, however, was so loud that the officers did not believe Castro could hear their orders. Sergeant

Garcia broke the driver's side window and quickly retreated to continue ordering Castro to turn off the car. Once Sergeant Garcia broke the window, Castro stopped revving the engine. Without warning, K-9 Officer Garcia threw his police dog, Bane, through the window with a command to bite Castro.

Castro grabbed a gun from the car's center console and fired at least five shots. Two hit and killed Bane. Another two hit K-9 Officer Garcia. Throughout the encounter, Cuevas sat in the front passenger seat with her hands raised.

The officers—without warning that they would shoot back—returned thirty-four shots into the vehicle. Although they aimed for Castro, the officers hit Cuevas several times. Once the shooting stopped, Castro climbed out of the car's passenger side, firing two additional shots. These last shots did not hit an officer, but one did hit Officer Bradley's patrol car. Castro died at the scene.

Cuevas sued the City of Tulare, its Police Chief Matt Machado, Sergeant Garcia, and Officers Garcia (who survived the encounter), Puente, and Bradley under 42 U.S.C. § 1983.[3] Cuevas alleged that the officers violated her Fourth Amendment right to be free from excessive force, that the city was liable under *Monell v. Department of Social Services of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and that Chief Machado was liable as the officers' supervisor. She also raised a bevy of state-law claims. *Tuggle v. City of Tulare*, No. 1:19-cv-01525-JLT-SAB, 2023 WL 4273900, at *3 (E.D. Cal. June 29, 2023). K-9 Officer Garcia and the City of Tulare counterclaimed against Cuevas and the other plaintiffs. *Id.*

---

[3] Castro's executor and Ware were also plaintiffs, but this appeal deals only with Cuevas's claims.

Cuevas and the defendants cross-moved for summary judgment. *Id.* at *1. The district court granted summary judgment to the defendants on the federal claims. *Id.* It first held that Cuevas's excessive-force claim failed because Cuevas was never seized. *Id.* at *16. It then held that, even if the officers had seized Cuevas, it was not clearly established that the officers' use of force was constitutionally excessive. *Id.* at *16–17. The district court thus concluded that they were entitled to qualified immunity.

**\*3** Having rejected the federal claims, the district court declined to exercise supplemental jurisdiction over either the state claims or the defendants' counterclaims. It denied Cuevas's motion for summary judgment as moot. *Id.* at *19. This appeal followed.

II

We review a grant of summary judgment de novo. *[Waid v. County of Lyon](...)*, [87 F.4th 383, 387 (9th Cir. 2023)](...). "In qualified immunity cases, as in other cases, we view the facts in the light most favorable to the nonmoving party." *Id.* (internal quotation marks and citations omitted).

### III

Qualified immunity protects government officials from liability under [§ 1983](...) "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Id.* (internal quotation marks and citations omitted). "A [g]overnment official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.' " *[Ashcroft v. al-Kidd](...)*, [563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)](...) (alteration in original) (quoting *[Anderson v. Creighton](...)*, [483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)](...)). A case need not be "directly on point, but existing precedent must have placed the ... constitutional question beyond debate." *Id.*

"The dispositive question is therefore 'whether the violative nature of *particular* conduct is clearly established' in the specific context of the case." *[Vos v. City of Newport Beach](...)*, [892 F.3d 1024, 1035 (9th Cir. 2018)](...) (quoting *[Mullenix v. Luna](...)*, [577 U.S. 7, 12, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015)](...)). The Supreme Court has "repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." *[al-Kidd](...)*, [563 U.S. at 742, 131 S.Ct. 2074](...) (internal citation omitted). The "specificity" of clearly established law "is especially important in the Fourth Amendment context, where the Court has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine ... will apply to the factual situation the officer confronts.' " *[Mullenix](...)*, [577 U.S. at 12, 136 S.Ct. 305](...) (alteration in original) (quoting *[Saucier v. Katz](...)*, [533 U.S. 194, 205, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)](...)).

#### A

Cuevas argues that the district court erred in granting qualified immunity to the officers on her excessive-force claim. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." [U.S. CONST. amend. IV](...). The Supreme Court has interpreted that amendment to prevent excessive force. *[Scott v. Harris](...)*, [550 U.S. 372, 381, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)](...). Excessive

force claims require (1) a seizure and (2) excessive force. *See id.* We first hold that, under clearly established law, Cuevas was seized. We then hold that it was not clearly established that the force the officers used was excessive.

1

The district court held that Cuevas was not seized. We disagree.

There are two types of Fourth Amendment seizures. "[A]n officer seizes a person when he uses force to apprehend her." *Torres v. Madrid*, 592 U.S. 306, 309, 141 S.Ct. 989, 209 L.Ed.2d 190 (2021). An officer can also seize a person through a "show of authority" that "in some way restrain[s] the liberty" of a person. *Terry v. Ohio*, 392 U.S. 1, 19 n.16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). For this latter type of stop, "there is no seizure without actual submission." *Brendlin v. California*, 551 U.S. 249, 254, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007); *accord California v. Hodari D.*, 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) ("An arrest requires *either* physical force ... *or*, where that is absent, *submission* to the assertion of authority."). "Attempted seizures ... are beyond the scope of the Fourth Amendment." *County of Sacramento v. Lewis*, 523 U.S. 833, 845 n.7, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (discussing *Hodari D.*, 499 U.S. at 626 n.2, 111 S.Ct. 1547). Without actual force, an officer's pursuit of a fleeing felon or misdemeanant, though a "show of authority," is not a seizure if the person does not "comply with" commands to halt. *Hodari D.*, 499 U.S. at 629, 111 S.Ct. 1547.

**\*4** Thus, when a person is pulled over by the police, that person is seized because she complied with a show of authority. Passengers in the car are seized together with the driver. *Brendlin*, 551 U.S. at 251, 127 S.Ct. 2400. In 2021, we held that, as of 2016, it was established "that a passenger struck by a bullet intended to stop the driver of a vehicle" has been seized. *Villanueva v. California*, 986 F.3d 1158, 1165 (9th Cir. 2021).

Under these clearly established principles, the officers seized Castro. True, Castro was not seized when he first got stuck in the mud. His repeated attempts to flee suggest that he did not consider himself restrained and belie that he submitted to the officers. But there are multiple points at which Castro—and therefore Cuevas—was seized after he became stuck in the mud. The exact point at which the seizure occurred is less important.

Castro was seized, at the very least, when K-9 Officer Garcia put Bane through the broken window instructing him to bite Castro. This was a use of force. So too were the shots that the officers

fired at Castro after he shot Bane and his handler. *See **id.* at 1165*. Since Cuevas was Castro's passenger, she too was seized. The district court's contrary conclusion was incorrect.

2

Because Cuevas was seized, we next turn to the excessive-force prong. The district court held that no case clearly established that the officers could not return fire at Castro, collaterally hitting Cuevas. We agree. And because "we find the clearly established prong dispositive," we "exercise our discretion to resolve [the] case only on" that ground. *Waid*, 87 F.4th at 387 (internal citation omitted).

Cuevas relies on several cases to argue that her rights were established when the officers, returning fire at Castro, also shot her. None of them have facts similar enough to "clearly establish" that the officers used excessive force.

The first case is *Boyd v. Benton County*, 374 F.3d 773 (9th Cir. 2004). There, officers executed a search warrant on an apartment where they believed "five to eight people," including "an armed robbery suspect," may have been located. *Id.* at 777. They used "a flash-bang device ... to gain entry and secure the premises." *Id.* To minimize the risk to "someone sleeping," the officers "determined that the flash-bang should be deployed against the apartment's front wall and near the door." *Id.* They did just that. Boyd, who was sleeping on the floor, "suffered burns on her forearm" from the flash bang. *Id.* at 778. We held that this violated Boyd's right to be free from excessive force because, given the time available, they did not "consider[ ] alternatives such as a controlled evacuation followed by a search." *Id.* at 779. But we recognized that there may be "circumstances in which a risk to officers' safety would make the use of a flash-bang device appropriate." *Id.* *Boyd* thus established that a flash bang cannot be blindly thrown into a room with innocent bystanders "absent a strong governmental interest, careful consideration of alternatives and appropriate measures to reduce the risk of injury." *Id.*

The material facts here differ from those in *Boyd*. Although *Boyd* involved a high-risk raid with armed suspects, the *Boyd* suspect was neither trying to escape nor shooting at the officers when Boyd herself was injured. Further, the officers in *Boyd* had the benefit of time to decide how to proceed—they had a plan before they deployed the flash bang. The officers devised that plan recognizing the risk that the flash bang could hurt someone in the apartment. And even with the benefit of time and a plan, the *Boyd* officers deployed the flash bang indiscriminately

by throwing it into a building, meaning that they did not know whether they would be affecting the suspect they were seeking to arrest.

 **\*5** By contrast, the officers here did not use force until Castro killed Bane and shot K-9 Officer Garcia. *Boyd*'s facts differ enough from this case that it cannot have clearly established that officers returning fire aimed at an armed suspect who has shot an officer and killed a police dog violates the Fourth Amendment. The officers had a compelling interest in ensuring that Castro did not harm themselves or others. And they did not have time to come up with a better plan— they needed to act to prevent further harm to themselves, Cuevas, or Ware. While some bullets hit Cuevas, the officers were not firing indiscriminately into the car but were instead aiming—as best they could—at Castro as he moved from the front driver's seat to the right passenger side during the gunfight. This is apparent because Ware left the encounter unharmed despite being in the car with Castro and Cuevas. *Boyd* does not establish Cuevas's rights.

Cuevas next cites *Nelson v. City of Davis*, 685 F.3d 867 (9th Cir. 2012). There, we considered whether officers used excessive force against Nelson, a university student, when they fired a pepperball into a crowd to "clear an apartment complex of partying students," including a group of "individuals hurling both bottles and expletives at officers." *Id.* at 872, 883. Nelson was not in that group, and the officers "did not see anyone in Nelson's group throwing bottles or engaging in any other threatening or dangerous behavior." *Id.* at 880. Still, the officers shot "projectiles in the direction of Nelson" as he "stood in the breezeway of the apartment complex, attempting to leave the party and awaiting instruction from the officers." *Id.* at 872. On these facts, we held that the officers violated Nelson's right to be free from excessive force because the application of force was not "justified by the government's interest in stopping any and all disorderly behavior," particularly when the rowdy students could have been "dispersed by less forceful means." *Id. at 883*.

*Nelson* is also distinguishable. There, while some students were engaged in the dangerous activity of throwing bottles at the police, others—including Nelson's group—were not. They were partying. Worse, Nelson was trying to leave the party when he was hit. He thus posed no risk to the responding officers. And while the evidence shows that, like Nelson, Cuevas was submitting to police orders, no one around Nelson had done anything to harm the police that would have warranted a violent response. Once more, Castro's firing at the officers before they returned fire in Cuevas's direction is a material fact—indeed, *the* material fact—that hinders *Nelson*'s ability to establish Cuevas's rights.

Cuevas's final case is *Villanueva*, 986 F.3d 1158. That case, which was decided after the shooting here, held that it was "clearly established that an officer who shoots at a slow-moving car when he

can easily step out of the way violates the Fourth Amendment" as of 2016. *Id.* at 1171 (citations omitted). We are bound by that conclusion. But that established rule does not control here. The car was stuck in the mud, and unlike in *Villanueva*, Castro was shooting at the officers. And there is no evidence that, in this intense scenario, any of the officers could have safely moved out of the way. Bullets, unlike slow-moving cars, are not so easy to dodge—K-9 Officer Garcia had already been hit.

In short, none of Cuevas's cases clearly establish that officers violated her rights when they shot her while defensively returning fire during an active shooting. Cuevas has not carried her burden. *See Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). [4]

[4] The number of shots fired does not alter our conclusion. "[I]f police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended." *Plumhoff v. Rickard*, 572 U.S. 765, 777, 134 S.Ct. 2012, 188 L.Ed.2d 1056 (2014). That Castro continued firing shots even after he was hit makes clear that the threat had not ended.

B

**\*6** Although it was not clearly established that the officers' force was excessive, that does not end our analysis. Cuevas also argues that the constitutional violation was obvious. We are not persuaded.

Although the Supreme Court has recognized that some constitutional violations are so obvious that qualified immunity is inappropriate, it has only done so in Eighth Amendment cases. *See generally Hope v. Pelzer*, 536 U.S. 730, 734–38, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); *Taylor v. Riojas*, 592 U.S. 7, 141 S.Ct. 52, 208 L.Ed.2d 164 (2020) (per curiam). And while our court has found an obvious constitutional violation in an excessive-force case, it did so only where officers killed a man who posed "no immediate threat." *Est. of Aguirre v. County of Riverside*, 29 F.4th 624, 626–27, 629 (9th Cir. 2022). As we have already explained, the officer in *Estate of Aguirre* obviously violated the Constitution when he "shot and killed a suspect holding a baseball bat because the suspect was not facing the officer, was holding the bat pointed downwards, and was not threatening anyone else when he was shot." *Waid*, 87 F.4th at 389 (discussing *Est. of Aguirre*, 29 F.4th at 626–27, 629).

But the fact that officers cannot kill a man who is not a threat says little about what they can do in the myriad cases where a suspect does pose a threat. The Supreme Court has instructed us that "[t]he

calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Indeed, "[w]e have noted that 'this obviousness principle, an exception to the specific-case requirement, is especially problematic in the Fourth-Amendment context.' " *Waid*, 87 F.4th at 388 (quoting *Sharp v. County of Orange*, 871 F.3d 901, 912 (9th Cir. 2017)). A categorical statement that conduct obviously violates the Fourth Amendment "is particularly hard to make when officers encounter suspects every day in never-before-seen ways," including "countless confrontations ... that yield endless permutations of outcomes and responses." *Sharp*, 871 F.3d at 912. For this reason, in excessive-force cases where police officers face a threat, the obviousness principle will rarely—if ever—be available as an end-run to the requirement that law must be clearly established.

With this understanding in mind, the officers' returning fire was not obviously unconstitutional—even though they collaterally hit Cuevas. The alternative would be untenable. Officers would have to either not defend themselves or risk liability if they accidentally hit a bystander when they return fire. The officers are therefore entitled to qualified immunity.

IV

No case clearly established, and it was not obvious, that the officers could not return fire after Castro killed their police dog and shot K-9 Officer Garcia. Accordingly, the officers are entitled to qualified immunity.

**AFFIRMED.**

**All Citations**

--- F.4th ----, 2024 WL 3352710

---

End of Document       © 2024 Thomson Reuters. No claim to original U.S. Government Works.