UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 5:21-cv-02008-FWS-E                          Date: July 17, 2024
Title: Kimberly Long v. Thomas Weeks *et al.*

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

|  Melissa H. Kunig  | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiff:              Attorneys Present for Defendants:

Not Present                                    Not Present

**PROCEEDINGS: ORDER REGARDING QUALIFIED IMMUNITY ON REMAND**

In this case, Plaintiff Kimberly Long ("Plaintiff") brings claims against Defendants City of Corona ("the City"), Thomas Weeks ("Weeks"), Ronald Anderson ("Anderson"), Daniel Bloomfield ("Bloomfield"), Robert Newman ("Newman"), and Daniel Verdugo ("Verdugo") (together, the "Officer Defendants") (collectively, "Defendants") related to Plaintiff's wrongful conviction for a 2003 murder.[1]  The Ninth Circuit determined that the Officer Defendants "are entitled to qualified immunity on the conspiracy claim because it is not clearly established that the intracorporate conspiracy doctrine is inapplicable to Section 1983 claims."  (Dkt. 129 at 3.)  The Ninth Circuit therefore remanded for this court "to conduct an individualized assessment of whether each [Officer Defendant] is entitled to qualified immunity for [Plaintiff's] remaining Section 1983 claims."  (*Id.*)

The court has considered the parties' briefing in support of Defendants' motions to dismiss Plaintiff's First Amended Complaint ("FAC").  (Dkts. 69, 70, 71, 72, 82, 83, 84, 85, 87,

---

[1] Plaintiff previously also pursued claims against Jeffrey Glenn ("Glenn"), a patrol officer dispatched to the scene.  (*See* Dkt. 61 (First Amended Complaint) ¶¶ 19, 35.)  However, after the hearing on this matter, the parties filed and the court approved a stipulation to permit Plaintiff to dismiss with prejudice her claims against Glenn.  (Dkts. 155, 157.)  Accordingly, the court does not analyze Glenn's qualified immunity in this order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 5:21-cv-02008-FWS-E                    Date: July 17, 2024
Title: Kimberly Long v. Thomas Weeks *et al.*

88, 89, 90.)  The court has also considered the parties' supplemental briefing filed after remand. (Dkts. 141, 144; *see also* Dkts. 149-53.)  In addition, the court held a hearing on this matter on July 11, 2024.  (Dkt. 154.)  Based on the state of the record, as applied to the applicable law, the court determines that on Plaintiff's remaining Section 1983 claims as alleged in the FAC for due process violations and malicious prosecution, the Officer Defendants are not entitled to qualified immunity, and on Plaintiff's remaining Section 1983 claim as alleged in the FAC for failure to intervene, the Officer Defendants are entitled to qualified immunity.

I.    **Background**[2]

On October 6, 2003, Plaintiff came home in the early morning hours to find her live-in boyfriend Oswaldo Conde ("Conde") "lying motionless on the couch with severe injuries to his head."  (FAC ¶¶ 22-24.)  Hysterical and in shock on discovering Conde, Plaintiff called 911. (*Id.* ¶¶ 24, 27.)

In this case, in summary and as relevant to the qualified immunity question currently before the court, Plaintiff alleges the Officer Defendants, who investigated Conde's murder, "framed [Plaintiff]" by suppressing, failing to preserve, and failing to collect evidence tending to exculpate her, and fabricating evidence tending to inculpate her.  (*Id.* ¶¶ 4-8, 12.)  The Officer Defendants had various roles in the homicide investigation: Weeks was a detective sergeant and the supervisor in charge of the homicide unit, Anderson was a senior detective, Bloomfield and Newman were detectives working under Weeks' and Anderson's supervision, and Verdugo was an evidence technician.  (*Id.* ¶¶ 13, 15-16, 20.)

---

[2] For purposes of this order, the court accepts as true the FAC's factual allegations and construes them in the light most favorable to Plaintiff.  *See, e.g.*, *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 5:21-cv-02008-FWS-E                              Date: July 17, 2024
Title: Kimberly Long v. Thomas Weeks *et al.*

When the Officer Defendants responded to the scene after Plaintiff's 911 call, there "was blood on every wall of the living room in a 360-degree radius." (*Id.* ¶¶ 25-26; *see id.* ¶ 53.) The Officer Defendants found no one else present at the house, no attempt to clean up the house, no blood anywhere in the house other than in the living room, and nothing to suggest the sinks or showers had been used. (*Id.* ¶¶ 27-28.)

Plaintiff voluntarily went to the police station and waited for five hours to be interviewed. (*Id.* ¶ 29.) Weeks and Bloomfield conducted Plaintiff's initial interview, in which she consented to the search of her house and collection of evidence including the clothes she was wearing. (*Id.* ¶¶ 31-32.) Plaintiff further identified Conde's ex-girlfriend, Shaina Lovejoy ("Lovejoy"), as a possible suspect. (*Id.* ¶ 33.) Conde's relatives also told Newman in interviews that Lovejoy had threatened to kill Conde and Plaintiff, and that Lovejoy was violent and "not all there." (*Id.* ¶¶ 34, 36.) Another potential suspect was Plaintiff's ex-husband, Joe Bugarski ("Bugarski"), who had a recent history of threatening behavior toward Conde and Plaintiff. (*Id.* ¶ 37.)

Despite the existence of other possible suspects, Plaintiff alleges the Officer Defendants "settled on [Plaintiff] alone" as a suspect for Conde's murder, suppressing and destroying evidence about Lovejoy and Bugarski and fabricating evidence against Plaintiff. (*Id.* ¶ 40.) For example, Weeks and Anderson suppressed a police report Anderson wrote stating he thought Bugarski was lying during the investigation, another police report Anderson wrote indicating Anderson "wouldn't be surprised if Bugarski was involved in the murder," and police reports documenting that Lovejoy had previously lied to police officers about vandalizing Conde's truck. (*Id.* ¶¶ 42-45.) Weeks, Anderson, and Bloomfield also suppressed evidence that police doubted Lovejoy and Bugarski's alibis. (*Id.* ¶ 46.) This included documentation or recordings of Bugarski's early interviews in which he gave inconsistent accounts of his alibi and Lovejoy's early interviews that "would have show[n] that police knew Lovejoy's alibi was implausible, that she had the opportunity to commit the murder, and that she lacked credibility." (*Id.* ¶¶ 47-50.) Anderson and Weeks also suppressed exculpatory physical evidence and related

3

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 5:21-cv-02008-FWS-E                    Date: July 17, 2024
Title: Kimberly Long v. Thomas Weeks *et al.*

═══════════════════════════════════════════════════════════════════════════════

documentation showing Anderson "had found [Plaintiff's] jacket on the rug near where
[Plaintiff] had discovered Conde's body and recognized that the jacket had no blood on it,
unlike the rug and everything around it, which were covered in blood." (*Id*. ¶¶ 51-55.)

Weeks also fabricated evidence by manipulating, coercing, and feeding information to
witnesses. (*Id.* ¶¶ 56-68.) To begin, he got Lovejoy's alibi witness, Oscar Castaneda
("Castaneda"), to "mov[e] the [relevant] timeline later such that Castaneda would support,
rather than defeat, Lovejoy's alibi for the time of the murder" and then suppressed evidence of
those tactics. (*Id.* ¶¶ 58-59.) Weeks also falsely told Plaintiff's alibi witness, Jeff Dills
("Dills"), that he was a suspect in the murder and then "fed Dills information about the
investigation and manipulated Dills to adopt a false timeline of events that placed him far away
from the crime scene at the time of the murder," using pressure from the threat of prosecution to
adopt the timeline. (*Id.* ¶¶ 60-62.) The false timeline Weeks pressured Dills to adopt "was
manufactured to place [Plaintiff] at the scene of the crime at 1:20am, sufficiently in advance of
her 911 call at 2:09am." (*Id.* ¶ 63.) Weeks covered up this misconduct by failing to record or
document his communications with Dills. (*Id.* ¶ 65.) Weeks also "manipulated neighborhood
witnesses into corroborating the false timeline that they had fabricated to match [the Officer]
Defendants' theory of the case." (*Id.* ¶ 66.) For example, although "one eyewitness heard a car
alarm go off and motorcycle leave, and then heard a female voice screaming hysterically shortly
thereafter, consistent with [Plaintiff's] account of her arrival home on Dills's motorcycle,
subsequent discovery of the body, and 911 call," Weeks manipulated her "to significantly
lengthen the time between which she supposedly heard the car alarm and motorcycle, and the
time when she heard the screaming, so that the eyewitness account *inculpated* [Plaintiff] and
was consistent with [the Officer] Defendants' theory that [Plaintiff] had had sufficient time after
arriving home to kill Conde, dispose of the murder weapon, clean herself up, and then call 911."
(*Id.* ¶¶ 67-68.)

In addition, Anderson, Newman, and Verdugo destroyed physical evidence, namely a
champagne bottle and cup, found at the scene which if tested "would have shown that other

4

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 5:21-cv-02008-FWS-E                    Date: July 17, 2024
Title: Kimberly Long v. Thomas Weeks *et al.*

individuals had been present with Conde at the time of the crime." (*Id.* ¶ 69.) Anderson, Newman, and Verdugo also declined to collect other key evidence at the scene, including fingerprints or DNA from "(1) the door and doorknob used by the perpetrator to gain access to the home; (2) the door and doorknob leading from the garage into the house which had been propped open during the assault; (3) the closet door in the master bedroom which contained a shotgun that [the Officer] Defendants knew had gone missing at the time of the murder; and (4) the kitchen cabinet which contained a change bowl associated with alternate suspect Bugarski that disappeared in connection with the murder," so as to not "generate evidence that would call into question [Plaintiff's] guilt and implicate any additional suspects." (*Id.* ¶¶ 71-72.)

There was no physical evidence, fingerprints, DNA, or other forensic evidence tying Plaintiff to Conde's murder, and in fact there was physical evidence—Plaintiff's bloodless jacket—proving Plaintiff could not have committed the crime. (*Id.* ¶¶ 82-84.) But because of the Officer Defendants' misconduct, Plaintiff was wrongfully prosecuted for Conde's murder. (*Id.* ¶¶ 74, 77, 85.) Prosecutors pursued the theory that Plaintiff killed Conde, disposed of the murder weapon, and cleaned herself at the scene before calling 911. (*Id.* ¶ 55.) "The first jury trial ended in a mistrial, with most of the jurors believing that [Plaintiff] was innocent of the crime." (*Id.* ¶ 78.) But the second jury trial resulted in a murder conviction. (*Id.* ¶ 79.) Even though the judge denied Plaintiff's motion for new trial, the judge "noted that had it been a bench trial, he would have acquitted [Plaintiff]." (*Id.* ¶ 80.) Plaintiff was sentenced to 15 years to life in prison for Conde's murder. (*Id.* ¶¶ 4, 81.) In November 2020, the California Supreme Court vacated Plaintiff's conviction, and in April 2021, after more than seven years of wrongful incarceration, all charges against her were dismissed. (*Id.* ¶¶ 92-93.)

## II.    Legal Standard

### A.    Motions to Dismiss

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 5:21-cv-02008-FWS-E                            Date: July 17, 2024
Title: Kimberly Long v. Thomas Weeks *et al.*

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss brought under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action" such that the factual allegations "raise a right to relief above the speculative level." *Id.* at 555 (citations and internal quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (reiterating that "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

"Establishing the plausibility of a complaint's allegations is a two-step process that is 'context-specific' and 'requires the reviewing court to draw on its judicial experience and common sense.'" *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995-96 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679). "First, to be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Id.* at 996 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). "Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* (quoting *Starr*, 652 F.3d at 1216); *see also Iqbal*, 556 U.S. at 681.

Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. 544, 556 (2007)). On one hand, "[g]enerally, when a plaintiff alleges facts consistent with both the plaintiff's and the defendant's explanation, and both explanations are plausible, the plaintiff survives a motion to dismiss under Rule 12(b)(6)." *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 47 (9th Cir. 2022) (citing *Starr*, 652 F.3d at 1216). But, on the other, "'[w]here a complaint pleads facts that are merely

6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 5:21-cv-02008-FWS-E                    Date: July 17, 2024
Title: Kimberly Long v. Thomas Weeks *et al.*

consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" *Eclectic Props. E., LLC*, 751 F.3d at 996 (quoting *Iqbal*, 556 at U.S. 678). Ultimately, a claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 at 556); *accord Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

In *Sprewell v. Golden State Warriors*, the Ninth Circuit described legal standards for motions to dismiss made pursuant to Rule 12(b)(6):

> Review is limited to the contents of the complaint. *See Enesco Corp. v. Price/Costco, Inc.*, 146 F.3d 1083, 1085 (9th Cir. 1998). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *See id*. The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. *See Mullis v. United States Bankr. Ct.,* 828 F.2d 1385, 1388 (9th Cir. 1987). Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994).

266 F.3d 979, 988 (9th Cir. 2001).

**B.    Qualified Immunity**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity is an entitlement not to go to trial, not merely a defense from liability. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). It should be decided early in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 5:21-cv-02008-FWS-E                                        Date: July 17, 2024
Title: Kimberly Long v. Thomas Weeks *et al.*

proceedings. *Id.* Analysis of the qualified immunity defense is a two-prong inquiry. *Id.* Under the first prong, a court must consider "whether a constitutional right would have been violated on the facts alleged." *Id.* Under the second prong, a court must also consider whether that right was "clearly established." *Id.* "Clearly established" means the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 201 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 201. "While we do not require a case on all fours, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Rico v. Ducart*, 980 F.3d 1292, 1298 (9th Cir. 2020) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

A plaintiff "bears the initial burden of proving that the rights allegedly violated. . . were clearly established at the time of the alleged misconduct." *Houghton v. South*, 965 F.2d 1532, 1534 (9th Cir. 1992). If the plaintiff meets his burden, then the burden shifts to the defendant to establish his actions were reasonable, even if they violated the plaintiff's rights. *Id.* "[T]he proper fact-specific inquiry . . . is not whether the law is settled, but whether, in light of clearly established law and the information available to him, a reasonable person in [the defendant's] position could have objectively believed his actions to be proper." *Floyd v. Laws*, 929 F.2d 1390, 1394 (9th Cir. 1991) (citing *Anderson*, 483 U.S. at 641). "Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Rico*, 980 F.3d at 1298 (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018)).

## III.   Discussion

After the Ninth Circuit's decision, there are three remaining claims under 42 U.S.C. Section 1983 in Plaintiff's FAC against the Officer Defendants: (1) for violation of her due process rights under the Fourteenth Amendment, (2) for malicious prosecution under the Fourth Amendment, and (3) for failure to intervene to prevent the violation of her constitutional rights.

8

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 5:21-cv-02008-FWS-E                    Date: July 17, 2024
Title: Kimberly Long v. Thomas Weeks *et al.*

(*See* Dkt. 129 at 3; FAC ¶¶ 94-119.)  As the Ninth Circuit instructed, the court now "conduct[s] an individualized assessment of whether each [Officer Defendant] is entitled to qualified immunity for" these claims.  (Dkt. 129 at 3.)  As noted, qualified immunity protects the Officer Defendants from liability for civil damages unless Plaintiff pleads sufficient facts showing (1) that the officer violated a constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.  *See Wood v. Moss*, 572 U.S. 744, 757 (2014); *see also Torres v. Goddard*, 194 F. Supp. 3d 886, 890-91 (D. Ariz. 2016), *aff'd,* 739 F. App'x 392 (9th Cir. 2018) ("Before a government official can be subject to liability for civil damages, *both prongs of the qualified immunity analysis must be satisfied*: (1) whether the official violated the plaintiff's constitutional rights, and if so, (2) whether the right violated was clearly established at the time of the official's conduct.") (emphasis added).

## A.  Due Process (Fourteenth Amendment)

In summary, Plaintiff alleges the Officer Defendants violated her Fourteenth Amendment rights by suppressing exculpatory evidence, fabricating inculpatory evidence, failing to preserve evidence, and failing to collect evidence.  (FAC ¶¶ 41-73, 94-105.)  The court finds the Officer Defendants are not entitled to qualified immunity against Plaintiff's Fourteenth Amendment claim as stated in the FAC at this stage of the proceedings.

### 1.  Weeks

Weeks—a detective sergeant and the supervisor in charge of the homicide unit—responded to the scene, led many interviews, and determined many investigative steps, while also supervising Bloomfield and Newman.  (FAC ¶¶ 14-16.)  The court analyzes Plaintiff's allegations that Weeks suppressed evidence and then analyzes Plaintiff's allegations that Weeks fabricated evidence.

#### a.  Suppression of Evidence

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 5:21-cv-02008-FWS-E                          Date: July 17, 2024
Title: Kimberly Long v. Thomas Weeks *et al.*

According to the FAC, Weeks suppressed significant exculpatory documentary and physical evidence. Weeks suppressed police reports showing that Lovejoy had previously lied to police officers, thereby depriving her of the opportunity to call into doubt Lovejoy's credibility based on those lies. (FAC ¶¶ 41, 44-45.) Weeks suppressed documentation or recordings of Bugarski's early interviews, in which Bugarski gave statements regarding his alibi that were inconsistent with his later statements regarding his alibi. (*Id.* ¶¶ 47, 49.) Weeks suppressed exculpatory physical evidence in the form of Plaintiff's bloodless jacket. (*See id.* ¶ 51.) And Weeks suppressed a report Anderson wrote about the significance of finding Plaintiff's bloodless jacket "on the rug near where [Plaintiff] had discovered Conde's body" when "the rug and everything around it . . . were covered in blood." (*Id.* ¶ 52; *see id.* ¶ 54.) The jacket and related report showed Weeks "knew [Plaintiff] could not have been the perpetrator." (*Id.* ¶ 51; *see id.* ¶ 53 ("Given the 360-degree radius of the blood spatter, these Defendants knew that it would have been impossible for the perpetrator to have remained blood-free during the commission of the murder.").) The court considers whether these facts, taken as true, sufficiently allege that (1) Weeks violated a constitutional right by suppressing evidence, and (2) the constitutional right was clearly established at the time of the investigation. *See Wood*, 572 U.S. at 757.

### i.    *Constitutional Right Violation*

Accepting as true Plaintiff's allegations and construing those allegations in the light most favorable to her, the court finds Plaintiff plausibly alleges in the FAC that Weeks violated her constitutional rights by suppressing material exculpatory evidence. *See Saucier*, 533 U.S. at 201. Under *Brady v. Maryland*, the government has a duty to disclose evidence favorable to a defendant when the evidence is material to either guilt or punishment. 373 U.S. 83, 87 (1963). Police officers may be held liable for *Brady* violations if they withhold *Brady* information from prosecutors. *See Tennison v. City & Cnty. of San Francisco*, 570 F.3d 1078, 1088 (9th Cir. 2009). The elements of a *Brady* violation are: "(1) the officer suppressed evidence that was favorable to the accused from the prosecutor and the defense, (2) the

10

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 5:21-cv-02008-FWS-E                          Date: July 17, 2024
Title: Kimberly Long v. Thomas Weeks *et al.*

suppression harmed the accused, and (3) the officer acted with deliberate indifference to or
reckless disregard for an accused's rights or for the truth in withholding evidence from
prosecutors." *Mellen v. Winn*, 900 F.3d 1085, 1096 (9th Cir. 2018) (cleaned up).

The court finds Plaintiff sufficiently alleges these elements.  First, the court finds Plaintiff
adequately alleges Weeks suppressed evidence that was favorable to her from the prosecution
and the defense.  *See id.*  Plaintiff alleges Weeks suppressed police reports showing that
Lovejoy had previously lied to police officers, documentation or recordings of Bugarski's early
interviews in which he gave statements about his alibi that he later contradicted, and Plaintiff's
bloodless jacket and related police report.  (FAC ¶¶ 47, 49, 51-54.)  This evidence was
favorable to Plaintiff because it tended to show that Plaintiff could not have been the
perpetrator, and also because it could undermine the credibility of other possible suspects
Bugarski and Lovejoy, whose testimony was not favorable to Plaintiff.  (*Id.* ¶¶ 41, 54-55.)

As to the second element of a *Brady* violation, the court finds Plaintiff sufficiently alleges
that Weeks' suppression of evidence harmed her.  *See Mellen*, 900 F.3d at 1096.  Given how
close the case against Plaintiff was—the first jury hung, and though the second jury convicted
Plaintiff, the judge that presided over the second trial stated that he would have acquitted
Plaintiff in a bench trial—there is "a reasonable probability that, had the evidence been
disclosed to the defense, the result of the proceeding would have been different." *Martinez v.
City of Los Angeles*, 2023 WL 8686729, at *13 (C.D. Cal. Jan. 4, 2023).  Indeed, Plaintiff
alleges that the suppressed evidence "fatally undermined Defendants' theory that [Plaintiff] was
the murderer" and that if it had been turned over, "it would have been impossible for
prosecutors to pursue a theory (as they did) that [Plaintiff] killed Conde, disposed of the murder
weapon, and cleaned herself at the scene before calling 911."  (FAC ¶¶ 54-55.)

And as to the final *Brady* element, the court finds Plaintiff plausibly alleges Weeks acted
with deliberate indifference to or reckless disregard for her rights and for the truth in
withholding the evidence from prosecutors.  *See Mellen*, 900 F.3d at 1096.  This is particularly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 5:21-cv-02008-FWS-E                    Date: July 17, 2024
Title: Kimberly Long v. Thomas Weeks *et al.*

true because Plaintiff alleges multiple instances of suppression that would be contrary to Weeks' training and experience as a police officer.  (FAC ¶¶ 42-46, 51-55); *see Martinez*, 2023 WL 8686729, at *14 (explaining on summary judgment that when the plaintiff pointed to "multiple instances of suppression, which would each constitute a deviation from police procedure," this "support[ed] a finding that the suppression was deliberate"); *Mellen*, 900 F.3d at 1102 (finding genuine dispute of material fact regarding deliberate indifference when "[a]t the time of the investigation, Detective Winn was an experienced detective, who had participated in a hundred homicide investigations, and who had the training and experience to know the value of Laura's statements").

## ii.      *Clearly Established*

The court finds this constitutional right was clearly established at the time of the 2003 investigation.  *Brady v. Maryland* clearly held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  373 U.S. at 87.  Courts have found that *Brady* also made it clear to reasonable police officers that withholding material, exculpatory evidence during an investigation is unlawful.  *Martinez*, 2023 WL 8686729, at *14.  This right was clearly established in 2003.  *See Carrillo v. Cnty. of Los Angeles*, 798 F.3d 1210, 1219 (9th Cir. 2015) (determining it was clearly established in 1984 that police officers have a duty to disclose material exculpatory evidence); *Mellen*, 900 F.3d at 1103 (explaining that "it was clearly established, in 1997, that police officers had a duty to disclose material impeachment evidence to prosecutors"); *see, e.g.*, *Wilkins v. State of California*, 2021 WL 9315231, at *10 (C.D. Cal. Nov. 4, 2021) ("reject[ing officer's] qualified immunity argument" because the plaintiff "had a clearly established due process right not to have material, exculpatory evidence suppressed from his defense," citing *Brady*, and "[i]n fabricating inculpatory evidence, destroying exculpatory evidence, and failing to disclose his tampering with the evidence to the prosecution, [the officer] violated this clearly established right"); *cf. Wilkins v. VanDiver*, 2022 WL 18229997, at *8 (C.D. Cal. Oct. 25,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 5:21-cv-02008-FWS-E                              Date: July 17, 2024
Title: Kimberly Long v. Thomas Weeks *et al.*

2022) ("It was clearly established by 2006 that both Morrison and Vandiver suppressing material exculpatory evidence was a violation of a defendant's due process rights."); *Martinez*, 2023 WL 8686729, at *14 ("*Brady* made it clear to a reasonable officer that withholding material, exculpatory evidence was unlawful at the time of the investigation in 2007.").

In summary, the court finds at this stage of the proceedings that Weeks is not entitled to qualified immunity on Plaintiff's Fourteenth Amendment claim in the FAC based on suppression of evidence because Plaintiff plausibly alleges that Weeks violated her constitutional rights by suppressing evidence, and that the right not to have material exculpatory evidence suppressed was clearly established at the time of the 2003 investigation.

   **b.**  **Fabrication of Evidence**

According to the FAC, in addition to suppressing evidence, Weeks deliberately fabricated evidence by manipulating, coercing, and feeding information to witnesses. (FAC ¶ 56.) Specifically, "Weeks intentionally used manipulation and coercion to fabricate the timeline by which Castaneda stated that he returned home from an outing with Lovejoy on the night of the murder—moving the timeline later such that Castaneda would support, rather than defeat, Lovejoy's alibi for the time of the murder." (*Id.* ¶ 58.) "Weeks coerced Castaneda in part by informing Castaneda that Lovejoy was not involved in the murder, that [Plaintiff] was accusing Lovejoy, and that police needed Castaneda to say he was with Lovejoy at the time of the crime." (*Id.*) Separately, Weeks also falsely told Plaintiff's alibi witness, Dills, that he was a suspect in the murder and pressured Dills with threat of prosecution to get Dills to adopt a false timeline of events putting Dills away from the scene and Plaintiff at the scene at the relevant time. (*Id.* ¶¶ 60-63.) Weeks covered up this misconduct by failing to record or document his communications with Dills. (*Id.* ¶ 65.) Weeks further manipulated a neighborhood eyewitnesses into corroborating a false timeline by getting the eyewitness to "significantly lengthen the time between which she supposedly heard [a] car alarm [go off] and [a] motorcycle [leave], and the time when she heard [a female voice screaming hysterically], so that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 5:21-cv-02008-FWS-E                    Date: July 17, 2024
Title: Kimberly Long v. Thomas Weeks *et al.*

eyewitness account inculpated [Plaintiff] and was consistent with Defendants' theory that
[Plaintiff] had had sufficient time after arriving home to kill Conde, dispose of the murder
weapon, clean herself up, and then call 911." (*Id.* ¶¶ 66-68.)

*i.      Constitutional Right Violation*

Accepting as true Plaintiff's allegations and construing those allegations in the light most
favorable to her, the court finds Plaintiff plausibly alleges that Weeks violated her constitutional
rights by fabricating evidence. *See Saucier*, 533 U.S. at 201. "To prevail on a § 1983 claim of
deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately
fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of
liberty." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017).

First, the court finds Plaintiff plausibly alleges that Weeks fabricated evidence, including
Castaneda's timeline related to Lovejoy's alibi, Dills' timeline related to Plaintiff's alibi, and
the neighborhood eyewitness' timeline. (FAC ¶¶ 56-68); *see Spencer*, 857 F.3d at 798.
Regarding deliberateness, a plaintiff may produce direct evidence of deliberate fabrication or
circumstantial evidence related to a defendant's motive, including that the defendant continued
their investigation even though they knew or should have known that the plaintiff was innocent,
or the defendant used investigative techniques that were so coercive and abusive that they knew
or should have known that those techniques would yield false information. *Caldwell v. City &
Cnty. of San Francisco*, 889 F.3d 1105, 1112 (9th Cir. 2018). The court finds that Plaintiff's
allegations regarding how Weeks fabricated the evidence—including that he "fed Dills
information about the investigation and manipulated Dills to adopt a false timeline of events
that placed him far away from the crime scene at the time of the murder," using pressure from
the threat of prosecution to adopt the timeline, (FAC ¶¶ 60-62)—gives rise to the plausible
inference that Weeks acted deliberately because his techniques were so coercive or abusive that
he should have known the techniques would yield false information. (FAC ¶¶ 56-68); *see
Caldwell*, 889 F.3d at 1112.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 5:21-cv-02008-FWS-E                                      Date: July 17, 2024
Title: Kimberly Long v. Thomas Weeks *et al.*

Second, the court finds Plaintiff plausibly alleges that Weeks' fabrication of evidence in
relation to Castaneda, Dills, and the neighborhood eyewitness' testimony caused Plaintiff's
deprivation of liberty.  *See Spencer*, 857 F.3d at 798.  To show causation, "the plaintiff must
show that (a) the act was the cause in fact of the deprivation of liberty, meaning that the injury
would not have occurred in the absence of the conduct; and (b) the act was the 'proximate
cause' or 'legal cause' of the injury, meaning that the injury is of a type that a reasonable person
would see as a likely result of the conduct in question." *Id.*  As already discussed, (*supra*
Section III.A.1.a.i.), given how close the case against Plaintiff was, it is plausible that the
allegedly fabricated evidence caused Plaintiff to be prosecuted.  *See id.*; *Caldwell*, 889 F.3d at
1115 ("As to what constitutes an injury, a § 1983 plaintiff need not be convicted on the basis of
the fabricated evidence to have suffered a deprivation of liberty—being criminally charged is
enough.").  Indeed, the court notes Plaintiff alleges that the altered timelines Castaneda, Dills,
and the neighborhood eyewitness gave enabled police and the prosecution "to argue that [she]
had had time to commit the murder, dispose of the murder weapon, and clean herself off and the
scene prior to calling 911" when they otherwise could not have.  (FAC ¶¶ 58, 64, 68.)

### ii.      *Clearly Established*

Additionally, the court finds this constitutional right was clearly established at the time of
the 2003 investigation.  In *Devereaux v. Abbey*, the Ninth Circuit found that the "virtually self-
evident" proposition that there is a "constitutional due process right not to be subjected to
criminal charges on the basis of false evidence that was deliberately fabricated by the
government" was clearly established.  263 F.3d 1070, 1074-75 (9th Cir. 2001). This right was
clearly established at the time of the 2003 investigation.  *See id.*; *Martinez*, 2023 WL 8686729,
at *10 ("[I]t would have been clear to a reasonable officer that fabricating evidence was
unlawful at the time of the investigation in 2007 based on binding case law predating that
year."); *Wilkins*, 2021 WL 9315231, at *7 ("This right [not to be criminally charged on the
basis of fabricated evidence] was clearly established in 2006 when Morrison destroyed and

15

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 5:21-cv-02008-FWS-E                    Date: July 17, 2024
Title: Kimberly Long v. Thomas Weeks *et al.*

fabricated the traffic collision reports."); *VanDiver*, 2022 WL 18229997, at *8 ("Here, the Court
again finds that Wilkins's rights not to be subject to criminal charges on the basis of fabricated
evidence and not to have exculpatory evidence withheld by officials were clearly established.
Qualified immunity therefore does not apply."). "It is not necessary, as [the Officer
Defendants] suggest[], that there be a case establishing that it is unconstitutional to fabricate
every particular type of evidence. The exculpatory evidence that [Weeks] destroyed and the
inculpatory evidence he created was going to the prosecutor to be used to make charging
decisions; this is the obvious case that every reasonable officer would understand falls directly
under *Devereaux*." *VanDiver*, 2022 WL 18229997, at *8; *see Bledsoe v. Carreno*, 53 F.4th
589, 607 (10th Cir. 2022) ("[A] general constitutional rule already identified in the decisional
law may apply with obvious clarity to the specific conduct in question, even though the very
action in question has not previously been held unlawful.") (internal quotation omitted).

In summary, the court finds at this stage of the proceedings that Weeks is not entitled to
qualified immunity on the Fourteenth Amendment claim in the FAC based on fabrication of
evidence because Plaintiff plausibly alleges that Weeks violated her constitutional rights by
fabricating evidence against her, and that the right not to be charged on the basis of fabricated
evidence was clearly established at the time of the 2003 investigation.

> 2.   **Anderson**

Anderson—a senior detective assigned to the case—responded to the scene, led many
interviews, and determined many investigative steps, while also supervising Bloomfield and
Newman. (FAC ¶¶ 14-16.) The court analyzes Plaintiff's allegations that Anderson suppressed
evidence and then analyzes Plaintiff's allegations that Anderson failed to preserve and collect
evidence.

> a.   **Suppression of Evidence**

16

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 5:21-cv-02008-FWS-E                                Date: July 17, 2024
Title: Kimberly Long v. Thomas Weeks *et al.*

According to the FAC, Anderson, like Weeks, suppressed significant exculpatory documentary and physical evidence.  Anderson suppressed a police report he wrote reflecting that he thought that Bugarski was lying during the Conde murder investigation, and another police report he wrote indicating that he "wouldn't be surprised if Bugarski was involved in the murder."  (FAC ¶¶ 42-43.)  Without these reports, Plaintiff was deprived of the opportunity to cast doubt on Bugarski's credibility.  (*Id.* ¶ 41.)  Anderson also suppressed police reports showing Lovejoy previously lied to police officers, denying she had vandalized Conde's truck before later admitting it.  (*Id.* ¶ 44.)  Without this evidence, Plaintiff was deprived of the opportunity to challenge Lovejoy's credibility.  (*Id.* ¶¶ 44-45.)  In addition, Anderson suppressed evidence that police had reason to doubt, and did doubt, Lovejoy and Bugarski's alibis.  (*Id.* ¶ 46.)  Anderson purposefully conducted part of an interview with Bugarski away from a recording device in order to conceal the communications from Plaintiff's defense team. (*Id.* ¶ 48.)  Anderson also participated in interviews with Lovejoy before her recorded polygraph examination in which she made statements about her alibi, but suppressed the contents and recordings of those interviews so Plaintiff's defense team could not use them.  (*Id.* ¶ 50.)  "The contents and recordings of these interviews would have show[n] that police knew Lovejoy's alibi was implausible, that she had the opportunity to commit the murder, and that she lacked credibility."  (*Id.*)

Anderson also suppressed Plaintiff's bloodless jacket and the report Anderson wrote underscoring the significance of finding the jacket "on the rug near where [Plaintiff] had discovered Conde's body" with "no blood on it, unlike the rug and everything around it, which were covered in blood."  (*Id.* ¶¶ 51-55.)  If prosecutors had the jacket and the report, it would have been impossible for the police and prosecution to pursue their theory that Plaintiff killed Conde, disposed of the murder weapon, and cleaned herself at the scene before calling 911.  (*Id.* ¶ 55.)

Accepting as true Plaintiff's allegations and construing those allegations in the light most favorable to her, the court finds Plaintiff plausibly alleges that Anderson violated her

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 5:21-cv-02008-FWS-E                                    Date: July 17, 2024
Title: Kimberly Long v. Thomas Weeks *et al.*

constitutional rights by suppressing material exculpatory evidence. *See Saucier*, 533 U.S. at
201. On the first element of a *Brady* violation, the court finds Plaintiff adequately alleges
Anderson suppressed evidence that was favorable to her from the prosecution and the defense.
*See Mellen*, 900 F.3d at 1096. Plaintiff alleges Anderson suppressed police reports stating he
thought Bugarski was lying and that Bugarski might be involved in the murder, reports showing
Lovejoy had previously lied to the police, and reports casting doubt on Lovejoy and Bugarski's
alibis. (FAC ¶¶ 41-43, 46.) Plaintiff further alleges that Anderson purposefully conducted part
of a Bugarski interview away from a recording device to prevent Plaintiff's defense team from
hearing it. (*Id.* ¶ 48.) And Plaintiff alleges Anderson suppressed Plaintiff's bloodless jacket
and related report, which she alleges showed she could not have committed the murder. (*Id.*
¶¶ 51-55.) Finally, Plaintiff alleges Anderson purposefully suppressed evidence including the
champagne bottle and cup found at the house with Conde that, if tested, "would have shown
that other individuals had been present with Conde at the time of the crime and identified
them." (*Id.* ¶ 69.) The court notes suppressed evidence was favorable to Plaintiff because it
could undermine Bugarski and Lovejoy's credibility, both as possible other suspects and as
witnesses whose testimony was not favorable to her. (*Id.* ¶¶ 41, 44-45.) The court further
observes the suppressed evidence tended to show that Plaintiff could not have been the
perpetrator. (*Id.* ¶¶ 54-55.)

As to the second and third *Brady* elements, for the same reasons described above related
to Weeks, the court finds Plaintiff sufficiently alleges that Anderson's suppression of evidence
harmed her and that Anderson acted with deliberate indifference to or reckless disregard for her
rights and for the truth in withholding the evidence from prosecutors. *See Mellen*, 900 F.3d at
1096; (*supra* Section III.A.1.a.i.).

Finally, the court finds this constitutional right to not have material exculpatory evidence
suppressed was clearly established for the same reasons described above with regard to Weeks.
(*See supra* Section III.A.1.a.ii.)

18

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 5:21-cv-02008-FWS-E                           Date: July 17, 2024
Title: Kimberly Long v. Thomas Weeks *et al.*

### b.    Failure to Preserve and Collect Evidence

In addition to suppressing evidence, according to the FAC, Anderson purposefully failed
to preserve or declined to collect other key evidence at the crime scene because he "did not
want to generate evidence that would call into question [Plaintiff's] guilt and implicate any
additional suspects." (FAC ¶¶ 70-71.)  This included fingerprints or DNA from the door used
to enter the home, the door leading from the garage to the house that was propped open during
the murder, the door to the master closet with a shotgun Anderson knew had gone missing at the
time of the murder, and the door to the kitchen cabinet with a change bowl associated with
Bugarski that disappeared in connection with the murder.  (*Id.* ¶ 72.)  Plaintiff alleges that if she
had access to this evidence, she could have "shown the presence and identity of others at the
scene of the crime with Conde at the time of his death, and exonerated her." (*Id.* ¶ 73.)  As
noted, Anderson also purposefully failed to preserve the champagne bottle and cup that would
have revealed the identity of other people present at the time of the crime.  (*Id.* ¶ 69.)

The court considers whether Plaintiff pleads sufficient facts showing (1) that Anderson
violated a constitutional right by failing to collect evidence, and (2) that the right was clearly
established at the time of the challenged conduct.  *See Wood*, 572 U.S. at 757.

### i.    Constitutional Right Violation

Accepting as true Plaintiff's allegations and construing those allegations in the light most
favorable to her, the court finds Plaintiff plausibly alleges that Anderson violated her
constitutional rights by failing to collect or preserve potentially exculpatory evidence in bad
faith.  *See Saucier*, 533 U.S. at 201.

Police violate the due process clause when they fail to collect or preserve potentially
exculpatory evidence in bad faith.  *Miller v. Vasquez,* 868 F.2d 1116, 1120 (9th Cir. 1989);
*Arizona v. Youngblood,* 488 U.S. 51, 57 (1988).  "The presence or absence of bad faith turns on

19

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 5:21-cv-02008-FWS-E                    Date: July 17, 2024
Title: Kimberly Long v. Thomas Weeks *et al.*

the government's knowledge of the apparent exculpatory value of the evidence at the time it
was lost or destroyed, because without knowledge of the potential usefulness of the evidence,
the evidence could not have been destroyed in bad faith." *United States v. Robertson*, 895 F.3d
1206, 1211 (9th Cir. 2018) (quoting *United States v. Zaragoza-Moreira*, 780 F.3d 971, 977 (9th
Cir. 2015)).

The court finds Plaintiff sufficiently alleges that Anderson failed to collect or preserve
potentially exculpatory evidence in bad faith.  Specifically, the court observes Plaintiff
describes exactly which pieces of evidence Anderson failed to collect or preserve, and she also
alleges facts showing why Anderson would have known about the possible exculpatory value of
the evidence at the time he failed to collect it or destroyed it.  (FAC ¶¶ 69, 72-73.)  For
example, the facts Plaintiff alleges indicate that Anderson would have known that fingerprints
on the master closet door could be possibly exculpatory because there was a shotgun missing
from that closet, and fingerprints from the door could have shown who accessed the closet.  (*Id.*
¶ 72.)  Similarly, Anderson would have known that the champagne bottle and cup could have
shown that other people were with Conde when he was murdered.  (*Id.* ¶ 69.)  The court finds
these facts in the FAC plausibly allege a constitutional violation.  *See Karunyan v. United
States*, 578 F. App'x 708, 710 (9th Cir. 2014) ("The district court also erred by dismissing the
claim of bad faith failure to collect potentially exculpatory evidence" because "[f]ailure to
collect potentially exculpatory evidence, coupled with a potentially prejudicially motivated
arrest, is sufficient to constitute a *Bivens* claim.").

### ii.    *Clearly Established*

Moreover, the court finds this constitutional right was clearly established at the time of
the investigation.  It was clearly established in 2003 that it was unlawful to fail to preserve or
collect potentially exculpatory evidence in bad faith.  *Miller*, 868 F.2d at 1121; *Youngblood*,
488 U.S. at 58; *see Moulin v. City of Cent. Point*, 2022 WL 2442236, at *15 (D. Or. Apr. 1,
2022), *report and recommendation adopted,* 2022 WL 2440046 (D. Or. July 5, 2022), *appeal*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 5:21-cv-02008-FWS-E                    Date: July 17, 2024
Title: Kimberly Long v. Thomas Weeks *et al.*

_____

*dismissed sub nom. Moulin v. Allison*, 2023 WL 4998583 (9th Cir. Feb. 15, 2023) ("Defendants were therefore on notice that a bad faith failure to preserve potentially exculpatory evidence that is unavailable by other means was a denial of Plaintiff's right to due process.").

The Officer Defendants' argument that "[n]o legal standard existed in 2003 requiring a police officer to collect all fingerprints and blood at a crime scene, or to preserve a champagne bottle or cup" misses the point. (Dkt. 141 at 19.) Plaintiff's claim is not that Anderson violated her constitutional rights by failing to collect all fingerprints at the crime scene, but rather that Anderson did so by *in bad faith* failing to collect fingerprints from particular areas *that he knew at that time* could be potentially exculpatory. (*See* FAC ¶¶ 69, 72-73.) Thus, the court finds it was clearly established in 2003 that Anderson's conduct was unlawful. *See Miller*, 868 F.2d at 1121; *Youngblood*, 488 U.S. at 58; *Moulin*, 2022 WL 2442236, at *15.

In summary, the court finds at this stage of the proceedings that Anderson is not entitled to qualified immunity on Plaintiff's Fourteenth Amendment claim in the FAC because Plaintiff plausibly alleges that he violated her constitutional rights by suppressing evidence and failing to preserve and collect evidence, and that those constitutional rights were clearly established at the time of the investigation.

### 3.    Bloomfield

Bloomfield—a detective investigating the case under Weeks' and Anderson's supervision—responded to the scene, searched for and collected evidence, and interviewed suspects and witnesses. (FAC ¶¶ 16-17.) According to the FAC, Bloomfield suppressed evidence that police doubted Lovejoy and Bugarski's alibis, including documentation or recordings of Bugarski's early interviews with police. (*Id.* ¶¶ 46-47.) Bloomfield also suppressed the contents and recordings of the pre-polygraph interviews with Lovejoy where she made alibi statements, which "would have showed that police knew Lovejoy's alibi was implausible, that she had the opportunity to commit the murder, and that she lacked credibility."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 5:21-cv-02008-FWS-E                              Date: July 17, 2024
Title: Kimberly Long v. Thomas Weeks *et al.*

(*Id.* ¶ 50.)  Bloomfield also saw Plaintiff's bloodless jacket but did nothing to preserve it.  (*See id.* ¶¶ 52-53.)

Accepting as true Plaintiff's allegations and construing those allegations in the light most favorable to her, the court finds Plaintiff plausibly alleges that Bloomfield violated her constitutional rights by suppressing evidence and failing to preserve or collect possibly exculpatory evidence in bad faith for the reasons described regarding these same alleged violations above.  *See Saucier*, 533 U.S. at 201; (*supra* Sections III.A.1.a.i., III.A.2.a., III.A.2.b.i.).  The court also finds these constitutional rights were clearly established at the time of Bloomfield's conduct, because any reasonable officer in 2003 would have known that *Brady* evidence needed to be turned over to prosecutors and that a bad faith failure to preserve potentially exculpatory evidence was unlawful.  (*See supra* Sections III.A.1.a.ii., III.A.2.a., III.A.2.b.ii.)  Accordingly, the court finds at this stage of the proceedings that Bloomfield is not entitled to qualified immunity on Plaintiff's Fourteenth Amendment claim in the FAC.

### 4.    Newman

Newman—a detective investigating the case under Weeks' and Anderson's supervision—responded to the scene, searched for and collected evidence, and interviewed suspects and witnesses including Conde's relatives.  (FAC ¶¶ 16, 18, 34.)  According to the FAC, Newman suppressed the contents and recordings of the pre-polygraph interviews with Lovejoy where she made alibi statements, which "would have show[n] that police knew Lovejoy's alibi was implausible, that she had the opportunity to commit the murder, and that she lacked credibility."  (*Id.* ¶ 50.)  Newman also saw Plaintiff's bloodless jacket but did nothing to preserve it.  (*See id.* ¶¶ 52-53.)  Newman further purposefully suppressed and failed to preserve the champagne bottle and cup that, if tested, would have shown that other people were with Conde when he was murdered.  (*Id.* ¶ 69.)  Newman also purposefully declined to collect fingerprints or DNA from the front door, the propped-open door, the door to the master closet with the missing shotgun, and the door to the kitchen cabinet with the disappeared change

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 5:21-cv-02008-FWS-E                    Date: July 17, 2024
Title: Kimberly Long v. Thomas Weeks *et al.*

bowl associated with Bugarski. (*Id.* ¶ 72.) Newman failed to collect this evidence because he did not want to collect evidence that could implicate any other suspects, and if Plaintiff had access to this evidence, she could have been exonerated. (*Id.* ¶¶ 70-71, 73.)

Accepting as true Plaintiff's allegations and construing those allegations in the light most favorable to Plaintiff, the court finds Plaintiff plausibly alleges that Newman violated her constitutional rights by suppressing material exculpatory evidence and failing to preserve or collect possibly exculpatory evidence in bad faith for the reasons described regarding these same alleged violations above. *See Saucier*, 533 U.S. at 201; (*supra* Sections III.A.1.a.i., III.A.2.a., III.A.2.b.i., III.A.3.). The court also finds these constitutional rights were clearly established at the time of Newman's conduct. (*See supra* Sections III.A.1.a.ii., III.A.2.a., III.A.2.b.ii., III.A.3.) Accordingly, the court finds at this stage of the proceedings that Newman is not entitled to qualified immunity on Plaintiff's Fourteenth Amendment claim in the FAC.

**5.    Verdugo**

Verdugo—an evidence technician—responded to the scene and collected and logged forensic evidence. (FAC ¶¶ 20, 25.) According to the FAC, Verdugo saw Plaintiff's bloodless jacket but did nothing to preserve it. (*See id.* ¶¶ 52-53.) Verdugo also purposefully suppressed and failed to preserve the champagne bottle and cup that would have shown other people were with Conde when he was murdered. (*Id.* ¶ 69.) And Verdugo purposefully declined to collect fingerprints or DNA from the front door, the propped-open door, the door to the master closet with the missing shotgun, and the door to the kitchen cabinet with the disappeared change bowl associated with Bugarski, all because Verdugo did not want to collect evidence possibly implicating other suspects. (*Id.* ¶¶ 70-73.)

Accepting as true Plaintiff's allegations and construing those allegations in the light most favorable to Plaintiff, the court finds Plaintiff plausibly alleges that Verdugo violated her constitutional rights by suppressing material exculpatory evidence and failing to preserve or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 5:21-cv-02008-FWS-E                           Date: July 17, 2024
Title: Kimberly Long v. Thomas Weeks *et al.*

collect possibly exculpatory evidence in bad faith for the reasons described regarding these
same alleged violations above.  *See Saucier*, 533 U.S. at 201; (*supra* Sections III.A.1.a.i.,
III.A.2.a., III.A.2.b.i., III.A.3., III.A.4.).  The court also finds these constitutional rights were
clearly established at the time of Newman's conduct.  (*See supra* Sections III.A.1.a.ii.,
III.A.2.a., III.A.2.b.ii., III.A.3, III.A.4.)  Accordingly, the court finds at this stage of the
proceedings that Verdugo is not entitled to qualified immunity on Plaintiff's Fourteenth
Amendment claim in the FAC.

### B.    Malicious Prosecution (Fourth Amendment)

Plaintiff's claim that the Officer Defendants violated her Fourth Amendment rights by
maliciously prosecuting her is based on the same factual allegations underlying her Fourteenth
Amendment claim: she alleges in the FAC that by suppressing, fabricating, failing to collect,
and failing to preserve evidence, the Officer Defendants "accused Plaintiff of criminal activity
and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff
without any probable cause for doing so and in spite of the fact that they knew Plaintiff was
innocent, in violation of her rights secured by the Fourth and Fourteenth Amendments."  (FAC
¶ 107.)  A malicious prosecution claim is cognizable under 42 U.S.C. § 1983 only when the
plaintiff sufficiently alleges a "malicious prosecution[] conducted with the intent of denying a
person equal protection or which otherwise subject a person to a denial of constitutional rights."
*Cline v. Brusett*, 661 F.2d 108, 112 (9th Cir. 1981).  To state such a claim, a plaintiff "must
show that the defendants prosecuted her with malice and without probable cause, and that they
did so for the purpose of denying her equal protection or another specific constitutional right."
*Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995).  A plaintiff must also show
that they are "not guilty of the offense charged and that the proceedings have terminated in
favor of the accused."  *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 919 (9th Cir. 2012) (cleaned
up); *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1068 (9th Cir. 2004) ("An individual seeking
to bring a malicious prosecution claim must generally establish that the prior proceedings
terminated in such a manner as to indicate his innocence.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 5:21-cv-02008-FWS-E                              Date: July 17, 2024
Title: Kimberly Long v. Thomas Weeks *et al.*

The court finds Plaintiff plausibly alleges in the FAC that each of the Officer Defendants maliciously prosecuted her. Specifically, the court finds that Plaintiff's allegations in the FAC regarding each of the Officer Defendants' conduct, which the court thoroughly described above, (*supra* Section III.A.), present sufficient facts to plausibly allege the intent, malice, and deliberateness required to state a claim for malicious prosecution. *See Cline*, 661 F.2d at 112; *Freeman*, 68 F.3d at 1189. Plaintiff also sufficiently alleges in the FAC that she is not guilty of the offense charged and that the proceedings have terminated in her favor. (FAC ¶¶ 92-93.)

Moreover, based on the law cited, the court concludes the law prohibiting malicious prosecution was clearly established in 2003 at the time of the Officer Defendants' investigation into Conde's murder. *See Cline*, 661 F.2d at 112; *Freeman*, 68 F.3d at 1189; *cf. Martinez*, 2023 WL 8686729, at *15 (denying qualified immunity on malicious prosecution claim at summary judgment "because under the first prong, if the factual disputes regarding probable cause and malice were resolved in favor of Plaintiffs, a constitutional violation could be made out" based on fabrication and suppression of evidence, and "[u]nder the second prong, the court also finds the constitutional right was clearly established—in other words, it would have been clear to a reasonable officer that malicious prosecution was unlawful at the time of the investigation in 2007").

Accordingly, the court finds at this stage of the proceedings that the Officer Defendants are not entitled to qualified immunity on Plaintiff's Fourth Amendment claim in the FAC.

**C.    Failure to Intervene**

In the final claim of the FAC at issue on remand, Plaintiff alleges the Officer Defendants failed to intervene to prevent the violation of Plaintiff's constitutional rights during the investigation, prosecution, and trial. (FAC ¶¶ 114-19.) "[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000). "If an officer fails to intercede, "the constitutional right violated by the passive defendant is analytically the same as the right violated by the person who" performed the offending action." *Tobias v. Arteaga*, 996

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 5:21-cv-02008-FWS-E                                Date: July 17, 2024
Title: Kimberly Long v. Thomas Weeks *et al.*

F.3d 571, 583-84 (9th Cir. 2021) (cleaned up). "[H]owever, officers can be held liable for
failing to intercede only if they had an opportunity to intercede." *Gates*, 229 F.3d at 1289.
Based on the law cited, the court concludes at this stage of the proceedings that it was clearly
established at the time of the 2003 investigation that an officer's failure to intervene when other
officers violated a suspect's constitutional rights was unlawful.

However, the court concludes that Plaintiff fails to adequately allege facts in the FAC
supporting her contention that Defendants failed to intervene. *See Wood*, 572 U.S. at 757
(explaining that to overcome qualified immunity a plaintiff must allege facts showing that the
official violated a constitutional right). Specifically, the main allegation in the FAC supporting
Plaintiff's failure to intervene claim is this: "In the manner described above, during the
constitutional violations described herein, one or more of the Defendants stood by without
intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the
opportunity to do so during the prolonged prosecution and trial of Plaintiff." (*Id.* ¶ 115.) The
court observes this general and broad statement does not describe what unconstitutional conduct
any Officer Defendant had an opportunity to intervene to prevent yet failed to. Instead, the few
allegations supporting Plaintiff's claim for failure to intervene in the FAC relate to
"Defendants" and refer generally to all of the preceding allegations in the FAC, which fail to
give the Officer Defendants sufficient notice of exactly what they did wrong. *Sollberger v.
Wachovia Sec., LLC*, 2010 WL 11595839, at *6 (C.D. Cal. Feb. 22, 2010) ("One [c]ommon
theme of" federal pleading standards—including those in Rule 8(a), *Iqbal,* and *Twombley*—"is
that plaintiffs must give the defendants a clear statement about what the defendants allegedly
did wrong," which does not happen "in cases with multiple defendants where the plaintiff uses
the omnibus term 'Defendants' throughout a complaint by grouping defendants together
without identifying what the particular defendants specifically did wrong" and in cases "where
the plaintiff recites a collection of general allegations toward the beginning of the Complaint,
and then each count incorporates every antecedent allegation by reference.") (internal citation
omitted)); *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (affirming dismissal of
"shotgun pleading" that made general "everyone did everything" allegations and failed to

26

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 5:21-cv-02008-FWS-E                                    Date: July 17, 2024
Title: Kimberly Long v. Thomas Weeks *et al.*

"state[ ] clearly how each and every defendant [was] alleged to have violated [the] plaintiffs'
legal rights").[3]  Because the FAC fails to give the Officer Defendants fair notice of when and
how they failed to intervene, the court finds Plaintiff has failed to allege facts in the FAC
showing that the Officer Defendants violated her constitutional rights in failing to intervene.
*See Wood*, 572 U.S. at 757.  Accordingly, the court finds at this stage of the proceedings that
the Officer Defendants are entitled to qualified immunity on Plaintiff's failure to intervene
claim in the FAC.[4]

---

[3] *See also Khachatryan v. 1 Hotel West Hollywood LLC*, 2024 WL 3015504, at \*9 (C.D. Cal.
June 14, 2024) (granting motion to dismiss with leave to amend when the plaintiff's allegations
were "collectively pleaded against all Defendants, and [did] not specify which Defendant—1
Hotel, SH Group Operations, or SH Group Global IP Holdings—committed any particular act,"
instead "stat[ing] consistently that 'Defendants' performed a certain act or wrong"); *Candyman
Kitchens, Inc. v. Sweets Indeed, LLC*, 2020 WL 3803936, at \*6 (C.D. Cal. Apr. 9, 2020)
("However, Plaintiffs do not make any specific allegations as to defendant Nathanson, such as
what 'individual actions' defendant Nathanson should be aware of.  Thus, the Court grants
Defendants' Motion [to Dismiss] with leave to amend as to defendant Nathanson."); *Myers v.
Winn L. Grp., APC*, 2012 WL 5187771, at \*3 (E.D. Cal. Oct. 17, 2012) (granting motion to
dismiss with leave to amend because "each defendant is entitled to notice of the bases for the
claim(s) against him or her," and "[i]t remains impossible to tell which defendant took which
alleged actions, given plaintiff's 'shotgun' approach of attributing every alleged action to all
'defendants'"); *Yagman v. Wunderlich*, 2021 WL 5707166, at \*3 (C.D. Cal. Nov. 22, 2021),
*aff'd*, 2022 WL 2800816 (9th Cir. July 18, 2022) (granting motion to dismiss without leave to
amend when the plaintiff "failed to satisfy Rule 8 by specifying the acts taken by each
Defendant for each cause of action" despite being given an opportunity to cure the same
violation in a previous complaint).

[4] Based on the court's findings and conclusions in this order, the court would dismiss this claim
and grant Plaintiff leave to amend.  However, the court notes that Plaintiff filed a Second
Amended Complaint ("SAC," Dkt. 108) after Defendants filed their Notice of Appeal
(Dkt. 104), that there is a pending motion to dismiss the SAC (Dkt. 112), and that Plaintiff filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 5:21-cv-02008-FWS-E                    Date: July 17, 2024
Title: Kimberly Long v. Thomas Weeks *et al.*

## IV.  Disposition

For the reasons set forth above, in response to the Ninth Circuit's mandate that this court "conduct an individualized assessment of whether each [Officer Defendant] is entitled to qualified immunity for [Plaintiff's] remaining Section 1983 claims," (Dkt. 129 at 3), the court determines that the Officer Defendants are not entitled to qualified immunity on Plaintiff's Fourth and Fourteenth Amendment claims in the FAC, but the Officer Defendants are entitled to qualified immunity on Plaintiff's failure to intervene claim in the FAC.

Initials of Deputy Clerk:  mku

---

a motion for leave to file a Third Amended Complaint (Dkt. 134), which is currently set for hearing on August 1, 2024.  The court will address the issue of leave to amend the FAC at the time the court addresses the pending motions for leave to file a Third Amended Complaint and to dismiss the SAC.